UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AMELIA YEHOSHUA

                              Plaintiff,                    Case No. 1:21-cv-04055 (FB) (SJB)

        -against-

MANHATTAN AND BRONX SURFACE TRANSIT
OPERATING AUTHORITY, THE NEW YORK CITY
TRANSIT AUTHORITY, and WESLII KHAHAIFA,

                              Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT**

SEYFARTH SHAW LLP
Gena Usenheimer
Daniel Small
gusenheimer@seyfarth.com
dsmall@seyfarth.com
620 Eighth Avenue
New York, New York  10018
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 3

      A.    Plaintiff's Employment With Transit.................................................. 3

      B.    2016 Timekeeping Incident ................................................................ 3

      C.    Trial Assistant Change ....................................................................... 4

      D.    Khahaifa's Even Assignment of Cases ............................................. 4

      E.    NY Co. Justices ██████ Frank and Freed Complain About Plaintiff.................. 4

      F.    NY Co. Justices Adams and Silvera Complain About Plaintiff ........................... 6

      G.    NY Co. Justice Kaplan, Complains About Plaintiff ......................... 6

      H.    January 23, 2020 MTA Office of Inspector General's Report ............................ 7

      I.    June 2020 Disciplinary Action Notice ................................................ 7

      J.    In February 2021, Farber Learns That Six Judges Complained About Plaintiff ......... 8

III.  LEGAL STANDARD APPLICABLE TO SUMMARY JUDGMENT ........................... 8

IV.   LEGAL STANDARD APPLICABLE TO PLAINTIFF'S TITLE VII CLAIMS............. 9

V.    PLAINTIFF'S TITLE VII DISCRIMINATION & RETALIATION CLAIMS FAIL.......... 10

      A.    Time-Barred 2016 Timekeeping Issue (Alleged to be Discriminatory) .............. 11

      B.    Reassignment of Plaintiff's Trial Assistant (Alleged to be Discriminatory & Retaliatory) ......... 12

      C.    Disproportionate Assignments (Alleged to be Discriminatory & Retaliatory) ......... 13

      D.    June 2020 DAN (Alleged to be Discriminatory & Retaliatory) ........................ 14

            1.    Defendants' Legitimate Non-Discriminatory and Non-Retaliatory Reason ........... 14

            2.    No Evidence of Falsity............................................................ 14

            3.    No Evidence of Discrimination ................................................. 15

            4.    No Evidence of Retaliation...................................................... 16

      E.    March 2021 DAN (Alleged to be Discriminatory & Retaliatory) ........................ 18

            1.    Defendants' Legitimate Non-Discriminatory and Non-Retaliatory Reason ........... 18

2.    No Evidence of Falsity ................................................................. 18

3.    No Evidence of Discriminatory Animus ....................................... 18

4.    No Evidence of Retaliatory Animus ............................................. 19

VI.    PLAINTIFF'S TITLE VII HOSTILE WORK ENVIRONMENT CLAIM FAILS ......... 20

A.    There Is No Evidence of Discriminatory Animus ................................. 20

B.    There Is No Evidence of Retaliatory Animus ........................................ 22

C.    There Is No Evidence of Severe or Pervasive Conduct ........................ 22

VII.    PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS FAIL .............................. 23

CONCLUSION ............................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Abdu-Brisson v. Delta Air Lines, Inc.*,
  239 F.3d 456 (2d Cir. 2001)....................................................................11

*Adeyanju v. St. Luke's-Roosevelt Hosp.*,
  No. 96 -1925, 2000 U.S. Dist. LEXIS 22184 (E.D.N.Y. Mar. 30, 2000)...............................15

*Alston v. New York City Transit Auth.*,
  No. 97-1080, 1999 WL 540442 (S.D.N.Y. July 26, 1999), aff'd, 208 F.3d 202
  (2d Cir. 2000)....................................................................................12, 17

*Atkins v. Rochester City Sch. Dist.*,
  764 F. App'x 117 (2d Cir. 2019) ...........................................................11

*Ausch v. Garland*,
  619 F. Supp. 3d 277 (E.D.N.Y. 2022) .....................................................8

*Bernstein v. Michael C. Fina Co.*,
  No. 151240/2014, 2016 WL 5816210 (Sup. Ct. N.Y. Cnty. Oct. 5, 2016) ...........................21

*Briggs v. SCO Fam. of Servs.*,
  No. 21 -3065, 2023 WL 3589896 (2d Cir May 23, 2023) .....................................17

*Brown v. City of New York*,
  622 F. App'x 19 (2d Cir. 2015) .............................................................16

*Brown v. Northrop Grumman Corp.*,
  No. 12 -1488, 2014 WL 4175795 (E.D.N.Y. Aug. 19, 2014) ................................22

*Burniche v. General Elec. Automation Servs., Inc.*,
  306 F. Supp 2d 233 (N.D.N.Y. 2004) ....................................................16

*Campbell v. N.Y. City Transit Auth.*,
  93 F. Supp. 3d 148 (E.D.N.Y. 2015) ......................................................19

*Cellucci v. O'Leary*,
  No. 19-2752, 2020 WL 977986 (S.D.N.Y. Feb. 28, 2020).................................17

*Chojar v. Levitt*,
  773 F. Supp. 645 (S.D.N.Y. 1991) .........................................................22

*Coffey v. Dobbs Int'l Servs., Inc.*,
  170 F.3d 323 (2d Cir. 1999).................................................................13

*Connaughton v. Mount Vernon City Sch. Dist.*,
  No. 21 -692, 2024 WL 1702148 (S.D.N.Y. Apr. 18, 2024) .............................................13, 18

*Cooper v. Templeton*,
  629 F. Supp. 3d 223 (S.D.N.Y. 2022)......................................................................................15

*Cox v. City of New York.*,
  No. 13-163, 2014 WL 3696003 (E.D.N.Y. June 22, 2014)......................................................15

*Cuttler v. Fried*,
  No. 10-296, 2012 WL 1003511 (S.D.N.Y. Mar. 23, 2012)......................................................11

*Davis-Molina v. Port Auth. of N.Y. & N.J.*,
  No. 08- 7584, 2011 WL 4000997 (S.D.N.Y. Aug. 19, 2011)...................................................21

*Ferguson v. N.Y. City Transit Auth.*,
  No. 01-1259, 2005 WL 3149524 (E.D.N.Y. Nov. 23, 2005) ...................................................22

*Figueroa v. City of New York*,
  118 F. App'x 524 (2d Cir. 2004) ..............................................................................................20

*Ford v. Am. Signature*,
  No. 18-1200, 2021 WL 4268298 (W.D.N.Y. Feb. 18, 2021) ...................................................14

*Georgy v. O'Neill*,
  No. 00 -0660, 2002 WL 449723 (E.D.N.Y. Mar. 22, 2002)...............................................10, 22

*Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*,
  No. 18-cv-04344, 2021 WL 8013836 (E.D.N.Y. Mar. 2, 2021)..............................................21

*Gray v. City of New York*,
  No. 08 -2840, 2011 WL 6153635 (E.D.N.Y. Dec. 12, 2011)...................................................14

*Hazen v. Hill Betts & Nash, LLP*,
  92 A.D.3d 162 (2012) .........................................................................................................11, 18

*Hirschberg v. Bank of Am., N.A.*,
  754 F. Supp. 2d 500 (E.D.N.Y. 2010) ........................................................................................9

*Hollander v. Am. Cyanamid Co.*,
  895 F.2d 80 (2d Cir.1990).....................................................................................................16, 19

*Jenkins v. Holder*,
  No. 11- 0268, 2014 U.S. Dist. LEXIS 42520 (E.D.N.Y. Mar. 28, 2014)................................17

*Jenkins v. N.Y.S. Banking Dep't*,
  No. 07-6322, 2010 WL 2382417 (S.D.N.Y. June 14, 2010) ...................................................22

*Johnson v. Riverhead Cent. Sch. Dist.*,
    420 F. Supp. 3d 14 (E.D.N.Y. 2019) ..................................................12

*Jones v. N.Y. City Dep't of Educ.*,
    286 F. Supp. 3d 442 (E.D.N.Y. 2018) ...................................................9

*Kagen v. Flushing Hosp. Med. Ctr.*,
    No. 96- 5795, 2000 WL 1678015 (E.D.N.Y. Nov. 3, 2000) ....................................13

*Ko Sheng Chuang v. T.W. Wang Inc.*,
    647 F. Supp. 2d 221 (E.D.N.Y. 2009) ..................................................15

*Kobos v. Target Corp.*,
    No. 15-5573, 2018 WL 2943575 (E.D.N.Y. June 12, 2018) ....................................18

*Lambert v. Macy's E., Inc.*,
    34 Misc. 3d 1228(A), (Sup. Ct. Kings Cnty. Apr. 30, 2010) ...................................23

*Levin v. Madgan*,
    No. 07 C 4765, 2011 WL 2708341 (N.D. Ill. July 12, 2011) ...................................18

*Livingston v. City of New York*,
    563 F. Supp. 3d 201 (S.D.N.Y. 2021) ..................................................21

*Mathew v. North Shore - Long Island Jewish Health Sys.*,
    582 F. App'x 70 (2d Cir. 2014) .......................................................24

*Mathews v. Huntington*,
    499 F. Supp. 2d 258 (E.D.N.Y. 2007) ..................................................16

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ...............................................................9, 10

*McDonnell v. Schindler Elevator Corp.*,
    No. 12-4614, 2014 WL 3512772 (S.D.N.Y. July 16, 2014) ....................................11

*Melman v. Montefiore Med. Ctr.*,
    98 A.D.3d 107 (1st Dep't 2012) ....................................................14, 23

*Mestecky v. N.Y. City Dep't of Educ.*,
    791 F. App'x 236 (2d Cir. 2019) ...................................................9, 10

*Meyer v. McDonald*,
    241 F. Supp. 3d 379 (E.D.N.Y. 2017) ...............................................16, 21

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) .........................................................23

*Mohamed v. NYU*,
   No. 14-8373, 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015) ...................................................9

*Moore v. City of New York*,
   No. 15- 6600, 2018 WL 3491286 (S.D.N.Y. July 20, 2018)...................................................11

*Ndong v. Bank of China Ltd.*,
   No. 22-05896, 2023 WL 2215261 (S.D.N.Y. Feb. 24, 2023)...................................................24

*Newman v. Montefiore Med. Ctr.*,
   No. 96-2687, 1996 WL 741599 (S.D.N.Y. Dec. 27, 1996) ....................................................12

*Reyes v. N. Shore Long Island Jewish Health Sys.*,
   No. 00-6400, 2005 WL 1941634 (E.D.N.Y. Aug. 15, 2005) ...................................................8

*Rightnour v. Tiffany & Co.*,
   354 F. Supp. 3d 511 (S.D.N.Y. 2019)...................................................................................23

*Ruhling v. Tribune Co.*,
   No. 04- 2430, 2007 WL 28283 (E.D.N.Y. Jan. 3, 2007) ...................................................9-10

*Russo v. N.Y. Presbyterian Hosp.*,
   972 F. Supp. 2d 429 (E.D.N.Y. 2013) ...................................................................................10

*Saenger v. Montefiore Med. Ctr.*,
   706 F. Supp. 2d 494 (S.D.N.Y. 2010)...................................................................................16

*Santos v. Brooks Pharm.*,
   No. 05-889, 2008 WL 185534 (D. Conn. Jan. 17, 2008)........................................................12

*Schweit v. City of New York*,
   No. 04-5462, 2007 WL 1133440 (E.D.N.Y. Apr. 17, 2007) ...................................................15

*Setelius v. Nat'l Grid Elec. Servs. LLC*,
   No. 11-5528, 2014 WL 4773975 (E.D.N.Y. Sept. 24, 2014) ...................................................15

*Shepard v. Frontier Commc'ns Servs., Inc.*,
   92 F. Supp. 2d 279 (S.D.N.Y. 2000).....................................................................................18

*Short v. Deutsche Bank Sec., Inc.*,
   79 A.D.3d 503 (1st Dep't 2010) ...........................................................................................24

*Simpson v. Metro-North Commuter R.R.*,
   No. 04-2565, 2006 WL 2056366 (S.D.N.Y. July 20, 2006)...................................................12

*Smith v. N.Y. & Presbyterian Hosp.*,
   440 F. Supp. 3d 303 (S.D.N.Y. 2020).................................................................................9, 12

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993)................................................................................9

*Stavis v. GFK Holding, Inc.*,
    769 F. Supp. 2d 330 (S.D.N.Y. 2011).............................................13, 21

*Summit v. Equinox Holdings, Inc.*,
    No. 20-4905, 2022 WL 2872273 (S.D.N.Y. July 21, 2022)....................19

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981)................................................................................9

*United States v. N.Y.C. Dep't of Educ.*,
    407 F. Supp. 3d 365 (S.D.N.Y. 2018)...................................................24

*Wellner v. Montefiore Med. Ctr.*,
    No. 17-3479, 2019 WL 4081898 (S.D.N.Y Aug. 29, 2019)....................23

*Willford v. United Airline*s,
    No. 21-2483, 2023 WL 309787 (2d Cir. Jan. 19, 2023).........................15

*Williams v. N.Y.C. Hous. Auth.*,
    No. 18-5912, 2021 WL 1109842 (S.D.N.Y. Mar. 23, 2021)...................23

*Williams v. N.Y. City Dep't of Educ.*,
    No. 19-01353, 2021 WL 1178118 (S.D.N.Y. Mar. 29, 2021)..............14, 16, 23, 24

*Williams v. N.Y. City Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009).............................................................23

*Wilson v. Cleveland Clinic Found.*,
    No. 1 -1681, 2013 WL 329051 (N.D. Ohio Jan. 28, 2013)....................17

*Winston v. City of N.Y.*,
    No. 12-395, 2013 WL 4516097 (E.D.N.Y. Aug. 23, 2013)..............10, 22

*Yoselovsky v. Associated Press*,
    917 F. Supp. 2d 262 (S.D.N.Y. 2013).............................................13, 21

## Statutes

Civil Rights Act of 1964 Title VII.................................................... *passim*

New York City Human Rights Law.............................................1, 23, 24

New York State Human Rights Law .........................................1, 23, 24

Defendants Manhattan and Bronx Surface Transit Operating Authority, the New York City Transit Authority (collectively, "NYCTA"), and Weslii Khahaifa ("Khahaifa"), respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment.[1]

## I.    INTRODUCTION

NYCTA suspended and later terminated Plaintiff Amelia Yehoshua, a former in-house attorney, due to repeated unethical and dishonest conduct in which she engaged while representing NYCTA.  Complaints of Plaintiff's misconduct were brought to NYCTA from objective third-parties, including: (i) the MTA Office of the Inspector General, which, after an independent investigation, determined that Plaintiff violated multiple All-Agency ethical rules, and (ii) six Justices of the New York State Supreme Court, County of New York ("NY Co."), who complained about Plaintiff's dishonest, disruptive and disrespectful behavior, and who refused to allow Plaintiff in their courtrooms.  There is no dispute that Plaintiff engaged in the conduct of which she is accused.  Plaintiff conceded much of it at deposition, and the remaining conduct is detailed in declarations of five NY Co. Justices submitted with this motion.[2]

Refusing to take responsibility for her actions, Plaintiff brings this lawsuit, in which she asserts discrimination (religion), retaliation and harassment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL").  Ignoring the overwhelming evidence that required NYCTA to take disciplinary action, Plaintiff claims that her March 2021 suspension and October 2021 termination were motivated by the anti-Semitic and retaliatory animus of her former manager, Weslii Khahaifa, and of NYCTA's General Counsel, David Farber (who is Jewish).  Plaintiff also

---

[1] Defined terms have the meaning ascribed to them in Defendants' SUF, unless otherwise noted.
[2] Plaintiff's dishonesty continued after her separation from NYCTA.  At deposition, Plaintiff admitted to committing perjury by submitting materially false statements about her NYCTA employment in a job application to the City of New York. *See* Usen. Dec. Ex A at 9:9-10:17, 95:20-115:25; Usen. Dec. Ex. J.

advances a host of facially neutral, work-related incidents that she claims constitute unlawful harassment and which she attributes to Khahaifa's alleged discriminatory and retaliatory animus. Defendants are entitled to summary judgment as Plaintiff either fails to articulate any facts to link the challenged conduct to unlawful animus, or else, her claims are legally deficient compelling their dismissal.

For instance, as to discrimination, Plaintiff asserts the conclusory allegation that Khahaifa, motivated by discriminatory animus, was the driving force behind Plaintiff's March 2021 suspension. The record is undisputed, however, that Khahaifa played no role in the decision to impose discipline upon Plaintiff. As to Plaintiff's October 2021 termination, Plaintiff claims that Khahaifa manufactured the above-referenced complaints of six Justices of the NY Co. Supreme Court. The record, including declarations of five Justices, conclusively refutes this allegation. Similarly, although Plaintiff asserts discrimination claims against Farber, she admitted at deposition that Farber was not motivated by anti-Semitic animus and Plaintiff was unable to articulate any other basis upon which he may have discriminated against her.

Plaintiff's retaliation claims are similarly flawed. Plaintiff's claims are based on the argument that: (i) she engaged in a protected activity in early 2016, and therefore, (ii) every discrete act about which she complains, *i.e.,* isolated incidents in the years that follow, are necessarily retaliatory. Plaintiff asserts other, equally unsustainable retaliation claims, such as claims based on protected activities which either post-date the commencement of disciplinary action or about which the alleged wrongdoer had no knowledge.

For these reasons, and those below, Defendants are entitled to summary judgment.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Employment With Transit[3]

NYCTA hired Plaintiff in April 2013 as a trial attorney in the Torts Division of the Law Department ("Torts").  SUF ¶ 1.  Plaintiff was assigned to the NY Co. Trial Unit (the "Unit") where she was responsible for defending NYCTA in tort actions filed in NY Co.  *Id*. ¶ 5.  Plaintiff, who is Jewish, testified that she is a Sabbath observer, which required her to leave NYCTA's office early on Fridays.  *Id*. ¶ 6.

From 2015 through 2020, Plaintiff reported to Khahaifa, who was Borough Chief of the New York County Trial Unit.  *Id*. ¶¶ 5-8.  During this same period, Lawrence Heisler (Jewish) was the Head of Torts, and Gail Goode was the Head of Trials.  *Id*. ¶¶ 11, 20.

### B.    2016 Timekeeping Incident

On Friday, January 15, 2016, Plaintiff arrived at work 45-minutes late.  *Id.* ¶ 15.  On Friday, January 29, 2016, Plaintiff asked Khahaifa to excuse this late arrival and to authorize Plaintiff to be paid for the 45-minutes she did not work.  *Id*. ¶ 17.  Plaintiff offered Khahaifa a train incident report that purported to show that a train delay caused Plaintiff's late arrival.  *Id*. ¶ 18.  Having never received such a request before, Khahaifa conferred with Goode, other Borough Chiefs, and individuals responsible for timekeeping.  *Id*. ¶¶ 19-21.  Khahaifa was informed, uniformly, that a train incident report did not excuse a late arrival.  *Id*.  On February 2, 2016, Khahaifa advised Plaintiff that she could not excuse the late arrival, but suggested Plaintiff speak with Heisler, who may have authority to do so.  *Id*. ¶¶ 22-23.  Heisler authorized Plaintiff to be paid for time she did not work.  *Id*. ¶ 24.

In 2017, Khahaifa recommend Plaintiff receive a promotion and a raise.  *Id*. ¶ 103.

---

[3] Unless otherwise noted, all facts relate to the time period of 2016 to 2021.

### C.      Trial Assistant Change

Adrian Thompson was the trial assistant who primarily assisted Plaintiff. *Id.* ¶ 25. Khahaifa determined, based on her personal observations, that Plaintiff relied too heavily on Thompson, and that, as a result, Plaintiff was not as familiar with the facts and details of her cases as she should have been. *Id.* ¶¶ 26-27. Thus, in order to strengthen Plaintiff's skillset and further her professional development, Khahaifa changed the trial assistant assignments throughout the Unit, assigning a different assistant to work with Plaintiff. *Id.* ¶ 28. Plaintiff complained to Heisler and Goode, and Goode directed Khahaifa to restore Thompson as Plaintiff's assistant. *Id.* ¶¶ 29-30. This change lasted no more than a few weeks, during which time Plaintiff did not have a trial. *Id.* ¶ 31.

### D.      Khahaifa's Even Assignment of Cases

When assigning cases, Khahaifa worked hard to, and did, maintain an overall even caseload amongst attorneys in the Unit. *Id.* ¶¶ 32-33. Plaintiff was assigned, overall, <u>the same number or fewer</u> cases than other attorneys in her Unit between 2016 and 2020. *Id.* While business needs sometimes necessitated assignment of work to attorneys in the Unit on Fridays or Friday afternoons (including Plaintiff), none of the work assigned had immediate deadlines and Plaintiff was not required to complete her work on the Sabbath. *Id.* ¶¶ 34-37.

### E.      NY Co. Justices ███████, Frank and Freed Complain About Plaintiff

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Khahaifa elevated Judge ████████ concerns to Heisler and Goode that day, however, Heisler downplayed the severity of the complaints. *Id*. ¶¶ 43-44.

███████████████████████████████████████████████████████████

Khahaifa met with Judge Frank. *Id.* ¶ 47. Judge Frank relayed exasperation with Plaintiff's conduct during a July 2019 trial, noting that Plaintiff engaged in conduct which was unbecoming of an attorney. *Id.* ¶¶ 48-50. Judge Frank also advised Khahaifa that Plaintiff was "overly adversarial, disrespectful and disruptive," that Plaintiff badgered a witness during cross examination and that she demonstrated a lack of understanding of the law. *Id.* Judge Frank expressed reluctance to preside over another trial with Plaintiff. *Id.* ¶ 51.

On December 4, 2019, Khahaifa met with Judge Freed. *Id.* ¶ 53. Judge Freed relayed to Khahaifa her "general disdain for [Plaintiff's] unprofessional conduct throughout the *Garcia* trial," which took place in 2017. *Id.* ¶¶ 54-58. Judge Freed complained that Plaintiff was repeatedly late, dishonest, disrespectful and unprofessional. *Id.* Judge Freed advised that she found Plaintiff's conduct to fall "outside the bounds of normal courtroom behavior," and articulated that "[i]n all my years on the bench, [Plaintiff's] conduct negatively stood apart." *Id.* Judge Freed described Plaintiff as "a judge's worst nightmare," and informed Khahaifa that Plaintiff was no longer welcome in her courtroom. *Id.* Following her experiences with Plaintiff during the *Garcia* trial

and post-trial briefing, Judge Freed no longer accepted new cases involving NYCTA. *Id.* ¶ 59. Further, NYCTA cases that were assigned to Judge Freed were slowly re-assigned to other judges. *Id.*

On December 4, 2019, Khahaifa reported the complaints of Judges Frank and Freed to Heisler. *Id.* ¶ 60. Receiving no meaningful response, on January 9, 2020, Khahaifa emailed Heisler, noting "[i]t has been 2 months since this issue arose and I would like some clarity on what action, if any, will be taken," explaining that she was "trying to plan [her] calendar and case assignments and would appreciate if this could be addressed as soon as possible." *Id.* ¶ 61. That day, Heisler stated he would transfer Plaintiff to the Kings County Trial Unit, which would not require Plaintiff to appear in NY Co. *Id.* ¶ 62. Although Plaintiff's transfer was effective March 2020, she was required to complete her outstanding assignments for Khahaifa even after she transferred units. *Id.* ¶¶ 72-73.

### F.    NY Co. Justices Adams and Silvera Complain About Plaintiff

On or about January 23, 2020, Judge Adams, who took over the NYCTA Part in NY Co. from Judge ████████ advised Khahaifa that she would recuse herself from any cases in which Plaintiff was involved. *Id.* ¶ 65.[4] Also on January 23, Judge Silvera advised Khahaifa that he did not want Plaintiff in his courtroom. *Id.* ¶ 66.

### G.    NY Co. Justice Kaplan, Complains About Plaintiff

Justices ████████ Freed, and Frank relayed their concerns about Plaintiff to the then Administrative Law Judge, Justice Kaplan. *Id.* ¶ 67. Judge Kaplan called a meeting with Khahaifa and another NYCTA attorney, Sherri Ehrlich (Jewish) on January 30, 2020 to discuss other matters. *Id.* ¶¶ 68-69. During that meeting, Judge Kaplan advised that, *inter alia*, due to

---

[4] *See* Farber Ex. A at 10, refuting Plaintiff's claim that Adams' recusal was not due to the fact that she had previously worked with Plaintiff.

complaints made by various judges, Judge Kaplan had to personally step in for the assigning clerk to find a judge willing to preside over trials handed by Yehoshua. *Id.* ¶ 70. Judge Kaplan also stated the Court would no longer tolerate Yehoshua. *Id.* ¶ 71.

### H.    January 23, 2020 MTA Office of Inspector General's Report

In January 2020, the MTA Office of Inspector General ("OIG") completed an investigation into Plaintiff regarding allegations that she engaged a NYCTA vendor (*i.e.*, outside counsel) to represent her in a personal litigation without compensation. *Id.* ¶¶ 78-79. During its investigation, the OIG interviewed Plaintiff and Khahaifa. *Id.* ¶ 80-82. Plaintiff confirmed that she engaged in the underlying conduct. *Id.* ¶ 80. Khahaifa was interviewed as part of the OIG investigation, but her involvement was limited to confirming the scope of Plaintiff's authority to engage outside counsel. *Id.* ¶¶ 81-82. In a report dated January 23, 2020, the OIG concluded that Plaintiff's conduct violated various provisions of the All-Agency Code of Ethics, the New York State Public Officers Law, and the MTA All-Agency Computer and Social Media Usage Policy Directive. *Id.* ¶ 83.

### I.    June 2020 Disciplinary Action Notice

NYCTA maintains a zero-tolerance stance with respect to ethical violations given that even the appearance of impropriety is prohibited by applicable law. *Id.* ¶ 84. Farber, therefore, determined that termination of Plaintiff's employment was the only appropriate discipline. *Id.* at ¶¶ 83-86. There are no comparators who were treated more favorably by Farber. *Id.* ¶ 85. Because Khahaifa was Yehoshua's manager at the time of the conduct that formed the basis of the OIG's report, Farber directed Khahaifa to sign and deliver a disciplinary action notice ("DAN") to Yehoshua. *Id.* ¶ 88. Other than signing and sending the DAN at Farber's direction, Khahaifa was uninvolved in the disciplinary process. *Id.* ¶ 90. Ultimately, on February 3, 2021, after considering

7

Plaintiff's response to the DAN, Farber reduced Plaintiff's discipline to a 20-day unpaid suspension. *Id*. ¶ 91.

### J.    In February 2021, Farber Learns That Six Judges Complained About Plaintiff

On December 30, 2020, Plaintiff filed a Complaint with the New York State Division of Human Rights ("Complaint"). *Id*. ¶ 92. In February 2021, during NYCTA's investigation into that Complaint, Farber first became aware of the complaints raised by the NY Co. judges about Plaintiff's unprofessional and disruptive courtroom behavior. *Id*. ¶ 93. On February 27, 2021, at Farber's request, Khahaifa delivered a memorandum summarizing the complaints she received. *Id*. ¶¶ 94-95. Based on the nature of the complaints levied against Plaintiff, and on what was a pattern of escalating unethical conduct, Farber issued Plaintiff a DAN dated March 29, 2021, recommending Plaintiff's termination. *Id*. ¶¶ 96-98. There are no comparators who were treated more favorably by Farber. *Id*.

Plaintiff again appealed the recommended penalty of dismissal. *Id*. ¶ 99. In July 2021, Farber directed Mariel Thompson (Jewish), a NYCTA attorney, to further investigate the specifications in the DAN. *Id*. ¶ 100. On September 17, 2021, Thompson issued an 11-page report corroborating those specifications. *Id*. ¶ 101. Farber upheld the penalty of dismissal. *Id.* ¶ 102.

Plaintiff admits that she never heard anyone at NYCTA, including Khahaifa or Farber, make any disparaging comments, jokes, or slurs about Jews or Orthodox Jews. *Id.* ¶ 107. Further, Khahaifa grew up in a home that followed many Jewish customs, including keeping the laws of Kashrut and eating matzah. *Id.* ¶ 105.

## III.    LEGAL STANDARD APPLICABLE TO SUMMARY JUDGMENT

"Summary judgment is appropriate [] if 'there is no genuine dispute as to any material fact . . .'" *Ausch v. Garland*, 619 F. Supp. 3d 277, 289 (E.D.N.Y. 2022) (Block, J.). To defeat such a motion, the non-moving party must offer specific, admissible evidence of a genuine, material

dispute.  *Id*.  "[C]onclusory statements, conjecture and other types of unsupported assertions are not sufficient" to defeat a motion.  *Reyes v. N. Shore Long Island Jewish Health Sys.*, No. 00 - 6400, 2005 WL 1941634, at \*6 (E.D.N.Y. Aug. 15, 2005) (Block, J.); *Hirschberg v. Bank of Am., N.A.*, 754 F. Supp. 2d 500, 509 (E.D.N.Y. 2010) (internal quotations and citations omitted) (more than "scintilla of evidence" or "metaphysical doubt as to the material facts" is required).

## IV.    LEGAL STANDARD APPLICABLE TO PLAINTIFF'S TITLE VII CLAIMS[5]

Title VII discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Once a plaintiff establishes a *prima facie* case of discrimination, the defendant must offer a legitimate, nondiscriminatory reason for the challenged action.  *Id.*  Upon such a showing, any presumption of discrimination disappears, and the plaintiff must produce specific, admissible evidence that the defendant's reason was false *and* that discrimination was the real reason.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).  Plaintiff retains the burden of proving discrimination at all times.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Title VII retaliation claims are also analyzed under the *McDonnell Douglas* framework.  *Mestecky v. N.Y. City Dep't of Educ.*, 791 F. App'x 236, 238 (2d Cir. 2019).  To establish a *prima facie* case of retaliation, a plaintiff must show, *inter alia*, ". . . a causal connection between the protected activity and the adverse employment action."  *Mohamed v. NYU*, No. 14-8373, 2015 WL 5307391, at \*5 (S.D.N.Y. Sept. 10, 2015); *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (protected activity must be "but-for cause").  In assessing whether temporal proximity between two events gives rise to a causal connection, periods of longer than

---

[5] Title VII claims "must be filed . . . within 300 days of the alleged unlawful employment practice."  *Jones v. N.Y. City Dep't of Educ.*, 286 F. Supp. 3d 442, 447 (E.D.N.Y. 2018) (Block, J.).  Plaintiff filed her EEOC Charge on May 25, 2021.  SUF ¶ 106.  Any claim based upon acts of alleged discrimination or retaliation which occurred prior to July 9, 2020, therefore is time-barred and should be dismissed.

two months are too attenuated to meet this burden. *Ruhling v. Tribune Co.*, No. 04- 2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("courts in this Circuit have consistently held that a passage of two months. . . [is] the dividing line"). The remainder of the *McDonnell Douglas* analysis set forth above applies to retaliation claims. *Mestecky*, 791 F. App'x at 238.

To establish a hostile work environment under Title VII, a plaintiff must show that "the complained of conduct (1) is objectively severe or pervasive — that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [religion], or another protected characteristic." *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 446 (E.D.N.Y. 2013). A "plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Winston v. City of N.Y.*, No. 12 -395, 2013 WL 4516097, at *3 (E.D.N.Y. Aug. 23, 2013) (Block, J.) (internal quotations omitted). Further, "episodic, isolated incidents" do not give rise to a Title VII claim; "rather, the incidents must be sufficiently continuous and concerted in order to be deemed pervasive." *Georgy v. O'Neill*, No. 00 -0660, 2002 WL 449723, at *10 (E.D.N.Y. Mar. 22, 2002) (Block, J.) (internal quotations omitted).

## V.  PLAINTIFF'S TITLE VII DISCRIMINATION & RETALIATION CLAIMS FAIL

Plaintiff articulates the following allegations of discrimination: (i) in February 2016, Khahaifa did not authorize Plaintiff to be paid for 45-minutes that Plaintiff did not work; (ii) Khahaifa temporarily changed Plaintiff's trial assistant assignment; (iii) Khahaifa allegedly assigned a disproportionate number of cases to Plaintiff and overloaded her with work on Fridays; and (iv) that the June 2020 DAN, March 2021 DAN, and resulting discipline, were motivated by

Khahaifa and Farber's anti-Semitic animus.  Plaintiff also claims that the challenged actions set forth at (ii), (iii) and (iv) are retaliatory.[6]

### A.    Time-Barred 2016 Timekeeping Issue (Alleged to be Discriminatory)

Plaintiff arrived to work 45-minutes late on Friday January 15, 2016.  Because of her religious observance, Plaintiff was unable to work an extra 45-minutes that evening to "make up" the time.  Plaintiff claims it was therefore discriminatory when Khahaifa did not "excuse" this absence and allow Plaintiff to be paid for time she did not work.

Such a claim is not recognized by law.  *Cuttler v. Fried*, No. 10 -296, 2012 WL 1003511, at *9 (S.D.N.Y. Mar. 23, 2012) (defendant "not require[d]. . . to excuse [] admitted workplace misconduct as an accommodation"); *Hazen v. Hill Betts & Nash, LLP*, 92 A.D.3d 162, 170, (2012) (same); *see also Moore v. City of New York*, 15- 6600, 2018 WL 3491286, at *15 (S.D.N.Y. July 20, 2018) (religious accommodation does not require guarantee that work conflicts are eliminated).

Further, Defendants have presented a legitimate non-discriminatory business reason for Khahaifa's denial:  it is undisputed that Khahaifa, who had never received such a request before, consulted with numerous managers in Torts *and* individuals responsible for timekeeping, and was advised that she was not permitted to authorize this theft of time.  There is no evidence in the record suggesting that Khahaifa's stated reasons, grounded in NYCTA's non-discriminatory and eminently reasonable timekeeping policies, and which were memorialized in contemporaneous correspondence, are false.  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 470 (2d Cir. 2001); *McDonnell v. Schindler Elevator Corp.*, No. 12 -4614, 2014 WL 3512772, at *15 (S.D.N.Y. July 16, 2014) (contemporaneous documents afforded weight).

---

[6] Plaintiff's claims at (i) is time-barred and should be dismissed.  *See* fn. 5 *supra*.  Similarly, claims at (i), (ii) and (iii) do not constitute adverse employment actions under Title VII, compelling their dismissal.  *Atkins v. Rochester City Sch. Dist.*, 764 F. App'x 117, 119 (2d Cir. 2019).

It is further undisputed that Khahaifa suggested that Plaintiff elevate her request to Heisler, who may have been empowered to "excuse" the lateness. Volunteering an avenue to allow Plaintiff to obtain the exact relief sought, undermines any claim of discriminatory animus. *Santos v. Brooks Pharm.*, No. 05-889, 2008 WL 185534, at *1 (D. Conn Jan. 17, 2008) (dismissing claim where defendant offered plaintiff training necessary to receive requested promotion). In addition, the record is devoid of evidence of any comparator whom Khahaifa treated more favorably. *Johnson v. Riverhead Cent. Sch. Dist.*, 420 F. Supp. 3d 14, 35 (E.D.N.Y. 2019) (in "absence of direct evidence of discrimination, Plaintiff was required to identify . . . comparators"); *Alston v. New York City Transit Auth.*, No. 97-108, 1999 WL 540442, at *6 (S.D.N.Y. July 26, 1999), aff'd, 208 F.3d 202 (2d Cir. 2000) (inability to show employees engaged in similar conduct treated more favorably counsels in favor of summary judgment); *Newman v. Montefiore Med. Ctr.*, No. 96-2687, 1996 WL 741599, at *5 (S.D.N.Y. Dec. 27, 1996) (finding significant that plaintiff was unable to present evidence of employees charged with same misconduct treated more favorably).

**B.    Reassignment of Plaintiff's Trial Assistant (Alleged to be Discriminatory & Retaliatory)**

Plaintiff claims that, due to anti-Semitic and retaliatory animus, Khahaifa, on an unknown date, assigned Plaintiff a new trial assistant to make her job harder and to punish her for the 2016 timekeeping incident. It is undisputed that Khahaifa's brief change in the assignment of all trial assistants in the Unit was designed to facilitate Plaintiff's professional development. This is a legitimate nondiscriminatory and non-retaliatory business reason. *Simpson v. Metro-North Commuter R.R.*, No. 04-2565, 2006 WL 2056366, at *12 (S.D.N.Y. July 20, 2006) (no discrimination where transfer was to provide plaintiff with the "skills . . . needed in order to become [] more effective"); *Smith* 440 F. Supp. 3d at 335 ("temporary reassignment" was legitimate where it was "giving [plaintiff] the opportunity to improve in her position").

Plaintiff has offered no admissible evidence of falsity, and there is no evidence that the real reason for this staffing change was discrimination or retaliation. Rather, Plaintiff's advances only speculative claims that the transfer was designed to make her job harder or to punish her. This testimony is insufficient to survive summary judgment, especially as all attorneys in the Unit were treated in the same manner. *Kagen v. Flushing Hosp. Med. Ctr.,* No. 96- 5795, 2000 WL 1678015, at *3 (E.D.N.Y. Nov. 3, 2000) (Block, J.) ("speculation is not enough; [plaintiff] must offer some 'hard evidence'").

### C.    Disproportionate Assignments (Alleged to be Discriminatory & Retaliatory)

The record is unequivocal that Plaintiff was assigned the same number or fewer cases than other attorneys in Khahaifa's Unit. No finding of unlawful treatment may flow from a fair and balanced allocation of work assignments. *Coffey v. Dobbs Int'l Servs., Inc.,* 170 F.3d 323, 327 (2d Cir. 1999)*; see also Connaughton v. Mount Vernon City Sch. Dist.*, No. 21-692, 2024 WL 1702148, at *6 (S.D.N.Y. Apr. 18, 2024) (summary judgment appropriate when "undisputed [] evidence directly contradicts" allegations).

It is further undisputed that while business needs sometimes necessitated Khahaifa's assignment of work to all attorneys in the Unit on Fridays or Friday afternoons (including Plaintiff), none of the work assigned had immediate deadlines and Plaintiff was not expected to complete her work on the Sabbath or, absent emergency situations, over the weekend. In fact, in over four years of working with Khahaifa, Plaintiff identified just one emergency instance, on an unidentified date, in which she was allegedly surprised by a Monday deadline. *Yoselovsky v. Associated Press,* 917 F. Supp. 2d 262, 277 (S.D.N.Y. 2013) (plaintiff never had to "work on a Saturday (or any Jewish holiday)" weighing against discrimination) (internal citations omitted); *Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 336 (S.D.N.Y. 2011) (same, where plaintiff was

never told "[he] could not take a religious day off") (alterations in original) (internal quotations omitted).

### D. June 2020 DAN (Alleged to be Discriminatory & Retaliatory)

#### 1. Defendants' Legitimate Non-Discriminatory and Non-Retaliatory Reason

It is undisputed that the OIG concluded Plaintiff violated multiple ethical rules, and that, coupled with NYCTA's zero-tolerance stance for ethical violations, Farber concluded termination (and later, suspension) was the appropriate discipline. *Jenkins v. Holder*, No. 11- 0268, 2014 U.S. Dist. LEXIS 42520, at *49 (E.D.N.Y. Mar. 28, 2014) ("disciplinary proceedings based on [] findings of misconduct by [] independent investigative bodies," was "overwhelming evidence"); *Gray v. City of New York*, No. 08 -2840  , 2011 WL 6153635, at *12, *27-35 (E.D.N.Y. Dec. 12, 2011) (misconduct determined by independent entity, "responsible for investigating . . . conflicts of interest [and] unethical conduct"); *see also Williams*, 2021 WL 1178118, at *2, 10 (violation of DOE regulations and education law, as determined by DOE Office of Special Investigations, legitimate reason).

#### 2. No Evidence of Falsity

Plaintiff admits that she engaged in the challenged conduct.  The mere fact that Plaintiff disagrees with the OIG's application of the law to the undisputed facts, or the severity of Farber's proposed discipline, does not establish pretext. *Ford v. Am. Signature*, No. 18 -1200, 2021 WL 4268298, at *6 (W.D.N.Y. Feb. 18, 2021) ("Even if Ford is correct that . . . [defendant] overreacted to her [misconduct], that is not enough"); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 121, (1st Dep't 2012) (challenge to "'correctness of an employer's decision does not, without more, give rise to the inference that the [adverse action] was due to . . . discrimination.'").  It is well settled that courts "do not sit as a super-personnel department that reexamine[] an entity's business

decisions." *Willford v. United Airline*s, No. 21 -2483, 2023 WL 309787, at *3 (2d Cir. Jan. 19, 2023); *Ko Sheng Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 238 (E.D.N.Y. 2009).

### 3.    No Evidence of Discrimination

Plaintiff claims, without factual support, that the DAN and resulting discipline was the result of Khahaifa's hostility.  It is undisputed, however, that other than signing and sending the DAN at Farber's direction, Khahaifa played no role in determining whether, or how much discipline, to impose upon Plaintiff.  *Schweit v. City of New York*, No. 04-5462, 2007 WL 1133440, at *5 (E.D.N.Y. Apr. 17, 2007) (Block, J.) ("Actions by an individual not involved in the adverse employment decision at issue do not give rise to an inference of discrimination.") (internal citations omitted); *Adeyanju v. St. Luke's-Roosevelt Hosp.*, No. 96 -1925, 2000 U.S. Dist. LEXIS 22184, at *53 (E.D.N.Y. Mar. 30, 2000) (no evidence of discrimination where "alleged wrongdoer . . . not involved in the termination decision").[7]

Further, Plaintiff claims that Farber discriminated against her by not sufficiently investigating the OIG's conclusions or interviewing Plaintiff prior to implementing discipline. Plaintiff's "dissatisfaction with the adequacy of Defendants' investigation . . . is insufficient to support an inference of discrimination." *Cooper v. Templeton,* 629 F. Supp. 3d 223, 233 (S.D.N.Y. 2022); *Setelius v. Nat'l Grid Elec. Servs. LLC,* No. 11 -5528, 2014 WL 4773975, at *11 (E.D.N.Y. Sept. 24, 2014) ("shortcomings in an investigation do not . . . support an inference of discrimination.") (internal citations and quotations omitted).

---

[7] Plaintiff also claims that Khahaifa emailed the DAN at 1:24 pm on Friday, June 12, 2020, and that this interfered with her ability to enjoy the Sabbath, commencing at sunset that evening.  Pl's Tr. 216:21-219:3.  It is undisputed that on that date sundown was ~8:30 p.m.  Sunrise/Sunset Calculator, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, http://www.esrl.noaa.gov/gmd/grad/solcalc/sunrise.html (last visited July 11, 2024); *see also Cox v. City of New York.*, No. 13 -163, 2014 WL 3696003, at *1 (E.D.N.Y. June 22, 2014) (judicial notice appropriate).

Dispositively, Plaintiff denied at deposition that Farber discriminated against her based on her religion, and she was unable to identify any other basis upon which he may have discriminated against her. Pl's Tr. 164:8-165:2; *Burniche v. General Elec. Automation Servs., Inc.*, 306 F. Supp 2d 233, 242-43 (N.D.N.Y. 2004) (granting summary judgment where plaintiff "admit[ed] in her deposition she was not terminated on the basis of [religion]" as alleged). It is also undisputed that Farber is Jewish. When the alleged wrongdoer "is a member of the same protected class as plaintiff, the court applies an inference against discrimination." *Meyer v. McDonald*, 241 F. Supp. 3d 379, 391 (E.D.N.Y. 2017), *aff'd* 722 F. App'x 26 (2d Cir. 2018); *Mathews v. Huntington*, 499 F. Supp. 2d 258, 267-268 (E.D.N.Y. 2007).

Further, the fact that Farber ultimately reduced Plaintiff's discipline from termination to an unpaid suspension undermines a finding of discrimination. *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 512 (S.D.N.Y. 2010) ("restraint in choosing not to fire [plaintiff] when it had clear justification to do so, . . . shows that [defendant] did not harbor discriminatory animus"). Finally, Plaintiff has not identified any comparator whom Farber treated more favorably in similar circumstances. *See* Supra at p. 12.

4.    No Evidence of Retaliation

Plaintiff has not established a causal connection between the February 2016 timekeeping incident and the June 2020 DAN, issued over four years later. Periods far shorter are insufficient to establish causality. *Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (two months is "too attenuated"); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir.1990) (2.5 month interval insufficient). Further, in 2017, Khahaifa facilitated Plaintiff's promotion, thus breaking any causal link. *Williams v. N.Y. City Dep't of Educ.,* No. 19 -01353, 2021 WL 1178118, at *10 (S.D.N.Y. Mar. 29, 2021) ("intervening [promotion] . . . defeat[s] any prima facie case of retaliation"). Plaintiff also attributes retaliatory animus to Khahaifa as a result of Plaintiff's alleged

16

request(s) to be transferred out of the NY Co. Trial Unit.  Even assuming that such a request was a protected activity (SUF ¶ 63), it is undisputed that until this litigation, Khahaifa had no knowledge of any such request.  *Cellucci v. O'Leary,* No. 19- 2752, 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020) (no causality if actor unaware of protected activity).

Further, although Plaintiff claims that Khahaifa, motivated by retaliatory animus, took the opportunity to sign the DAN even though she was no longer Plaintiff's supervisor, it is undisputed that Khahaifa signed and sent the DAN to Plaintiff at Farber's direction and played no other role in her discipline.  *See* Supra at p. 15.

As to Farber, Plaintiff claims that the DAN and suspension were retaliatory because the March 2021 suspension followed the filing of the December 2020 Complaint.  Plaintiff's argument ignores that the June 2020 DAN was issued <u>six months before</u> her Complaint.  Where "gradual adverse job actions began well before the plaintiff [] engaged in any protected activity, an inference of retaliation does not arise."  *Briggs v. SCO Fam. of Servs.*, No. 21 -3065, 2023 WL 3589896, at *2 (2d Cir. May 23, 2023); *Jenkins v. Holder*, No. 11- 0268, 2014 U.S. Dist. LEXIS 42520 (E.D.N.Y. Mar. 28, 2014) (no causation where termination followed "extensive period of progressive discipline," including OIG investigation, pre-dating protected activity).

Moreover, as noted above, while the June 2020 DAN recommended Plaintiff's termination, in February 2021, months <u>after</u> Plaintiff's Complaint, Farber reduced the discipline to an unpaid suspension.  *Wilson v. Cleveland Clinic Found.*, No. 11 -1681, 2013 WL 329051, at *7 (N.D. Ohio Jan. 28, 2013) ("assertion that [suspension] was retaliatory is undermined by the fact that defendant could have terminated her for the infraction"); *Alston v. New York City Transit Auth.*, No. 97 CIV. 1080 (RWS), 1999 WL 540442, at *10 (S.D.N.Y. July 26, 1999), aff'd, 208 F.3d 202 (2d Cir. 2000) (that "plaintiff may have engaged in a protected activity does not insulate him from being

17

disciplined or discharged for his misconduct"). Finally, here too, Plaintiff offers no comparator evidence. *See Supra* at p. 12.

### E.    March 2021 DAN (Alleged to be Discriminatory & Retaliatory)

#### 1.    Defendants' Legitimate Non-Discriminatory and Non-Retaliatory Reason

Defendants have proffered a legitimate, non-discriminatory and non-retaliatory reason for issuing the March 2021 DAN, and Plaintiff's resulting termination. Specifically, Plaintiff's dishonest and unethical behavior in Court, which resulted in complaints from six New York State Supreme Court Justices, five of whom have signed declarations which are submitted in connection with this motion. *Shepard v. Frontier Commc'ns Servs., Inc.,* 92 F. Supp. 2d 279, 292 (S.D.N.Y. 2000) ("unethical and improper business practices" are legitimate, nondiscriminatory reasons); *Kobos v. Target Corp.,* No. 15-5573, 2018 WL 2943575, at *3 (E.D.N.Y. June 12, 2018) ("legitimate, nondiscriminatory reasons [include]. . . being the subject of a complaint, [and] unprofessional conduct"); *Hazen v. Hill Betts & Nash, LLP*, 92 A.D.3d 162, 170, (2012) (attorney's ethical breaches were legitimate basis for termination); *Levin v. Madgan,* No. 07 C 4765, 2011 WL 2708341, at *18 (N.D. Ill. July 12, 2011) (legitimate basis for termination as lawyer demonstrated poor "work ethic, . . . performance, [and] judgment. . .").

#### 2.    No Evidence of Falsity

Plaintiff claims that Khahaifa "completely manufactured" the complaints by the Justices. These allegations of falsity are, however, conclusively refuted by the extensive contemporaneous notes prepared by Khahaifa and the declarations of five New York State Supreme Court Justices accompanying this motion. *Connaughton*, 2024 WL 1702148, at *6 (summary judgment appropriate when "undisputed [] evidence directly contradicts" allegations).

#### 3.    No Evidence of Discriminatory Animus

Plaintiff claims that Farber did not sufficiently investigate the complaints against her. As

is noted above, however, Plaintiff's dissatisfaction with the adequacy of Farber's investigation does not constitute evidence of discriminatory animus. *See* Supra at p. 15. Moreover, as discussed above, Farber is Jewish and Plaintiff denied that he was motivated by anti-Semitic animus. *See* Supra at p. 16. Further, Farber directed Thompson (Jewish), to conduct further investigation into the specifications in the DAN, and it is undisputed that Thompson's investigation substantiated those specifications. Finally, here, too, Plaintiff has not come forward with any comparator evidence. *See* Supra at p. 12.

### 4. No Evidence of Retaliatory Animus

Plaintiff claims Farber was motivated by retaliatory animus, claiming the DAN: (i) was issued three months after Plaintiff's December 2020 State Division Complaint; (ii) was issued after Plaintiff changed Units; and (iii) sought Plaintiff's dismissal. These claims fail. First, it is undisputed that Farber issued the DAN upon learning of the above-detailed complaints raised by six Supreme Court Justices. The fact that Farber acted promptly in issuing the DAN after learning of these judicial complaints undermines any inference of retaliatory causation. *Summit v. Equinox Holdings, Inc.,* No. 20-4905, 2022 WL 2872273, at *15 (S.D.N.Y. July 21, 2022) (granting summary judgment where decision to terminate "arose only upon the report of [plaintiff's] . . . outburst and threat of [] violence"). Moreover, a three month interval is not, on its own sufficient to establish temporal proximity. *Hollander*, 895 F.2d at 85–86 (2.5 month interval insufficient).

Second, at deposition, Plaintiff could not articulate a single fact to support her claim that Farber retaliated against her because she changed Units in Torts: "Q: [W]hy do you think Farber would be motivated by retaliatory animus because you changed units within torts? A. I don't know." Pl's Tr. 343:24-344:3; *Campbell v. N.Y. City Transit Auth.,* 93 F. Supp. 3d 148, 178-79 (E.D.N.Y. 2015) (plaintiff failed to "provide[] any facts beyond her speculation and vague, conclusory allegations that retaliatory motive played any role in" her termination). Third, the fact

that Plaintiff disagrees with the severity of the discipline does not demonstrate retaliatory animus. *See* Supra at pp. 14-15.   Finally, here too, Plaintiff also has not identified comparators who were treated more favorably by Farber.  *See* Supra at p. 12.

## VI.    PLAINTIFF'S TITLE VII HOSTILE WORK ENVIRONMENT CLAIM FAILS

Plaintiff admits she never heard anyone at NYCTA making disparaging comments, jokes, or slurs about Jews.   Still, she brings hostile work environment claims based on the following alleged discrete and isolated incidents, which Plaintiff alleges resulted from Khahaifa's discriminatory and retaliatory animus: (i) Khahaifa once  "laughed" while Plaintiff ate matzah on Passover; (ii) Khahaifa once assigned Plaintiff a trial on Passover, and then reassigned it after being advised of the holiday; (iii) Khahaifa once asked if Plaintiff took time off for Shavuot; (iv) Khahaifa allegedly invited all Unit attorneys out for drinks on Friday nights, but not Plaintiff; and (v) after Plaintiff transferred to the Kings County Trial Unit, Khahaifa continued to give her new case assignments.[8]

### A.    There Is No Evidence of Discriminatory Animus

Compelling dismissal of her claims, Plaintiff has not identified any fact which connects the challenged conduct with discriminatory animus.  *Figueroa v. City of New York,* 118 F. App'x 524, 526 (2d Cir. 2004).  For instance, Plaintiff claims that Khahaifa, on one unidentified date, laughed while she was eating matzah.   Although this incident is disputed, Plaintiff concedes that she has

---

[8] In addition, at deposition, Plaintiff also advanced a host of facially neutral, routine, and ordinary course interactions that she claims were evidence of unlawful hostility.  For instance, Plaintiff testified that: (i) Khahaifa occasionally asked Plaintiff "where are you," and "do you plan to come back" to the office; (ii) Khahaifa, on an unidentified date, laughed when Plaintiff said she was "going to the library"; (iii) Khahaifa asked Plaintiff "what's going on with trial" when Plaintiff was on trial; (iv) Khahaifa told Plaintiff she wanted to know where Plaintiff was at all hours of the day (*see e.g.,* Khahaifa Dec. Ex. I); (iv) Khahaifa once (on an unidentified date) asked Plaintiff to return to the office after taking a deposition and was allegedly "hostile" to her; and (v) Khahaifa spoke badly about Plaintiff with others.  At deposition, Plaintiff was unable to articulate a link between any of the foregoing conduct and alleged discriminatory animus by Khahaifa.  Pl's Dept. Tr. 308:8-327:10.

no personal knowledge as to why Khahaifa may have laughed (Pl's Dep. Tr. 213:14-214:9), and it is undisputed that Khahaifa was raised in a religion which followed many of the Jewish dietary laws, including keeping "kosher" and eating matzah, undermining any inference of discrimination. SUF ¶ 105; *Bernstein v. Michael C. Fina Co.,* No. 151240/2014, 2016 WL 5816210, at *36-37 (Sup. Ct. N.Y. Cnty. Oct. 5, 2016) (comments about food during Jewish holidays not harassment); *Meyer*, 241 F. Supp. 3d at 391 (sharing same protected characteristic undermines discriminatory animus).

Similarly, Plaintiff complains that Khahaifa on one occasion assigned her a trial during the Passover holiday, but admits that once reminded of the holiday, Khahaifa reassigned the trial. *Yoselovsky,* 917 F. Supp. 2d at 277; *Stavis*, 769 F. Supp. 2d at 336.  Moreover, Plaintiff claims that on one occasion, Khahaifa asked Plaintiff whether she worked on Shavuot, a Jewish holiday, and that this inquiry was unlawful.  Here, too, it is undisputed that Khahaifa's inquiry was limited to obtaining the information needed to meet her own timekeeping responsibilities.  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 221-22, 235-42 (S.D.N.Y. 2021) (no discrimination where plaintiff was questioned about work schedule to accommodate religious holidays).

Plaintiff's allegation that Khahaifa invited "all the people" in the Unit to go out on Friday nights is also refuted by the undisputed record evidence.  While Khahaifa may have, from time to time, socialized after-work on Friday evenings with colleagues, this informal and causal activity is hardly discriminatory conduct directed at Plaintiff.  SUF ¶ 104; *Davis-Molina v. Port Auth. of N.Y. & N.J.,* No. 08- 7584, 2011 WL 4000997, at *11-12 (S.D.N.Y. Aug. 19, 2011) (no discrimination where coworkers were "cliquish" and excluded plaintiff from "get-togethers" and dinners); *Gerzhgorin v. Selfhelp Cmty. Servs., Inc.,* No. 18-cv-04344, 2021 WL 8013836, at *18-

21

19 (E.D.N.Y. Mar. 2, 2021) (same where plaintiff could not attend party at a non-Kosher restaurant).

Finally, even a high level review of the email correspondence (*see* SUF ¶ 33) shows that the communications between Khahaifa and Yehoshua after March 2020, were inquiries regarding Plaintiff's existing assignments for Khahaifa which she was expected to complete. *Brown v. Northrop Grumman Corp.*, No. 12 -1488, 2014 WL 4175795, at *7 (E.D.N.Y. Aug. 19, 2014) (work assignments not evidence of discrimination; "speculations, generalities, and gut feelings . . . do not" establish unlawful animus); *Jenkins v. N.Y.S. Banking Dep't,* No. 07- 6322, 2010 WL 2382417, at *10 (S.D.N.Y. June 14, 2010) (same).

### B.    There Is No Evidence of Retaliatory Animus

Plaintiff's retaliation claims rest on the flawed argument that the above-challenged actions followed the February 2016 timekeeping incident and therefore, are retaliatory.  Such a claim is insufficient to defeat summary judgment. *Chojar v. Levitt*, 773 F. Supp. 645, 655 (S.D.N.Y. 1991) (cannot defeat summary judgment by "pointing to . . . the sequence in time of the events").  While Plaintiff also claims that certain of these actions were retaliatory because they followed Plaintiff's alleged requests to transfer out of the NY Co. Unit, this argument is, as discussed above, refuted by Khahaifa's lack of knowledge of any such Plaintiff's request(s).  *See* Supra at p. 17.

### C.    There Is No Evidence of Severe or Pervasive Conduct

Plaintiff's allegations do not rise to the level of establishing that the workplace was permeated with intimidation, ridicule, and insult.  *Winston*, 2013 WL 4516097, at *3 (Block, J.). Similarly, the challenged conduct consists of isolated and discrete instances and comments — certainly not the "continuous and concerted" conduct required to maintain a hostile work environment claim.  *Georgy*, 2002 WL 449723, at *10; *Ferguson v. N.Y. City Transit Auth.*, No. 01- 1259, 2005 WL 3149524, at *9 (E.D.N.Y. Nov. 23, 2005).

## VII.    PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS FAIL[9]

Discrimination and hostile work environment claims asserted under the NYCHRL[10] require a plaintiff to prove that she was "treated 'less well' than other similarly situated employees at least in part for discriminatory reasons." *Williams v. N.Y.C. Hous. Auth.*, No. 18 -5912, 2021 WL 1109842, at *21 (S.D.N.Y. Mar. 23, 2021).  Plaintiff "bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511, 522 (S.D.N.Y. 2019) ("NYCHRL does not alter the kind, quality or nature" of evidence); *Melman*, 98 A.D.3d at 114 ("burden of persuasion . . . remains with the plaintiff").  The NYCHRL does not impose liability for conduct that is nothing more than "what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Lambert v. Macy's E., Inc.*,  34 Misc. 3d 1228(A), at *11 ( Sup. Ct. Kings Cnty. Apr. 30, 2010); *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 79-80, (1st Dep't 2009) (NYCHRL not a "general civility code").

Under the NYSHRL, a discrimination claim follows the Title VII analysis detailed above. *Williams,* 2021 WL 1178118, at *10.  Hostile work environment claims under the NYSHRL which accrued on or after October 11, 2019, follow the NYCHRL.  *Wellner v. Montefiore Med. Ctr.,* No. 17 -3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y Aug. 29, 2019).  Prior to October 11, 2019, Title VII and NYSHRL were governed by the same standards.  *Id.*

Finally, the "elements of retaliation under Title VII, the NYSHRL, and NYCHRL are identical, except that the NYCHRL employs a broader standard of an adverse employment action

---

[9] Claims accruing before December 3, 2017 are time-barred as well under Plaintiff's state and city law claims, including COVID tolling.

[10] NYCTA does not concede that it is subject to the NYCHRL. The New York Court of Appeals has yet to rule on this question.

than the federal and state statutes." *Ndong v. Bank of China Ltd.*, No. 22 -05896, 2023 WL 2215261, at *6 (S.D.N.Y. Feb. 24, 2023) (internal quotations and citations omitted).

For the reasons detailed throughout, Plaintiff has failed to come forward with any evidence of discriminatory or retaliatory animus, compelling dismissal of each and every one of her claims. *Mathew v. North Shore - Long Island Jewish Health Sys.*, 582 F. App'x 70, 71 (2d Cir. 2014) (affirming NYCHRL dismissal where no evidence actions were "because" of protected characteristic); *Williams*, 2021 WL 1178118, at *10, 11. Moreover, Plaintiff's claims of facially neutral, minor work-related incidents, constitute nothing more than what a reasonable plaintiff would consider to be petty slights or trivial inconveniences, providing an independent basis for dismissal. *Short v. Deutsche Bank Sec., Inc.*, 79 A.D.3d 503, 506 (1st Dep't 2010) ("complaints about [supervisor's] conduct . . . nothing more than non-actionable petty slights and minor inconveniences" which "may be viewed by a reasonable employee as a function of [] management style, unrelated to [unlawful animus]").

Finally, where, as here, the underlying claims are meritless, Plaintiff cannot sustain a claim for individual liability, compelling dismissal of the claims against Khahaifa. *United States v. N.Y.C. Dep't of Educ.,* 407 F. Supp. 3d 365, 401-402 (S.D.N.Y. 2018).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment and dismiss the Amended Complaint, in its entirety, and with prejudice.

Dated:  New York, New York
       July 15, 2024

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ *Gena Usenheimer*
    Gena Usenheimer
    gusenheimer@seyfarth.com
    Daniel Small
    dsmall@seyfarth.com
    620 Eighth Avenue
    New York, New York  10018
    Telephone:  (212) 218-5500
    Facsimile:  (212) 218-5526

*Attorneys for Defendants*