UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
AMELIA YEHOSHUA,

                    Plaintiff,

vs.

MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY, THE
NEW YORK CITY TRANSIT AUTHORITY,
and WESLII KHAHAIFA,

                    Defendants.
------------------------------------------------------------ X

Civil Action No. 1:21-cv-04055-FB-SJB

**DECLARATION OF WESLII KHAHAIFA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, **WESLII KHAHAIFA**, declare that:

1. I am employed by the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"). My title is Assistant General Counsel, Level III. I have held this title since in or around 2017.

2. From 2015 through 2022, I was the Borough Chief for the New York County ("NY Co.") Trial Unit ("Unit") in the Law Department. When I held this role, there was a separate unit for NY Co. pre-trial matters. In 2022, the pre-trial and trial units were consolidated into a single NY Co. Litigation Unit. Since the consolidation, I have held the position of Borough Chief for the NY Co. Litigation Unit.

3. I submit this Declaration in support of Defendants' Motion for Summary Judgment. Unless otherwise noted, I make this Declaration on the basis of my personal knowledge. Where statements are made upon information and belief, the sources of my information and the basis of my belief are the records and files maintained by the New York City Transit Authority and MaBSTOA (collectively, "NYCTA"), which I believe to be true and correct.

4. Unless otherwise noted, the facts in this Declaration relate to the time period of 2016 through 2021.

### About the Torts Division of the NYCTA Law Department

5. The Torts Division of the NYCTA Law Department ("Torts") was primarily responsible for defending NYCTA in personal injury and property damage cases.

6. As is described briefly above, Torts was divided into units that were organized, in large part, by New York City borough. Units associated with certain boroughs, such as the New York County and Kings County Units, were further divided into pre-trial and trial units.

7. Plaintiff worked in the NY Co. Trial Unit from her hire until March 2020.

### About the New York County Trial Unit

8. As a member of the NY Co. Unit, Plaintiff was primarily responsible for defending NYCTA in tort litigations that were filed in New York State Supreme Court, NY Co.

9. The nature of case assignments in the Unit included, on the whole, cases assigned for "trial purposes," or for "all purposes."

10. In the NY Co. Supreme Court, certain courtrooms (*i.e.*, parts) were specifically designated for the litigation of NYCTA tort actions. It is my understanding that from time to time, non-tort actions would also be assigned to the NYCTA parts. There was one NYCTA pre-trial part, and another NYCTA trial part.

11. Pre-trial phases of litigation were primarily handled in the NYCTA pre-trial part. From in or around 2017 through 2020, Justice Lisa A. Sokoloff was assigned to this part. From 2020 to 2022, Justice Suzanne Adams was assigned to the NYCTA pre-trial part.

12. Tort actions that were designated as trial ready were transferred to the NYCTA trial part for the purpose of having a trial judge assigned. It is my understanding that, absent restrictions

imposed by the judges or the Court, any judge sitting in NY Co. Supreme Court could be assigned to oversee a NYCTA trial. From at least 2018 through 2021, the trial part was overseen by Justice Deborah A. Kaplan.

13. Generally, in my Unit, one trial assistant was assigned to support a particular attorney, or to support outside counsel.

14. For the reasons more fully discussed at my deposition, I elected to change the trial assistant assignments throughout the Unit. As a result of this change, all attorneys continued to be supported by a trial assistant; I merely altered the specific assignments.

15. This brief change lasted no longer than a few days (if a week), during which time, I do not recall Plaintiff having a trial.

16. The below chart accurately reflects case assignments in the Unit, broken down by year and by attorney. This chart reflects cases that were assigned for trial purposes and for all-purposes. I created this chart based on the books and records of NYCTA, which I believe to be true and correct and based on the information reflected in an excel spreadsheet produced in this litigation, and which bears Bates stamp number NYCTA 019755.

|      | Yehoshua | Jerman | Vandoros | Coyne |
|------|----------|--------|----------|-------|
| 2016 | 14       | 5      | 4        | 9     |
| 2017 | 9        | 9      | 2        | 11    |
| 2018 | 6        | 9      | 1        | 0     |
| 2019 | 8        | 11     | 6        | N/A   |
| 2020 | 0        | 14     | 7        | N/A   |

17. [Intentionally left blank]

18. This analysis shows that I assigned no new cases to Plaintiff in 2020, including both before *and* after Plaintiff transferred out of the Unit in March 2020.

3

19. Jennifer Coyne left the Unit in or around the middle of 2018, and therefore she is indicated as "N/A" in the years which follow.

20. When assigning new cases, I worked very hard to ensure as even of an allocation as possible between attorneys in the Unit. In addition to the factors discussed at my deposition, I also took into account the nature of cases when making assignments. For instance, a major case (*i.e.,* cases which typically involved injuries and damages of a significant nature) which was assigned for all purposes involved more work than a case assigned for trial purposes.

21. Moreover, I took great care when assigning new matters to ensure attorneys in my Unit had as much advance notice as possible with respect to upcoming deadlines. For instance, absent emergency situations, once I assigned a case, attorneys in the Unit had a minimum of between two and four weeks before the first deadline. Only in the rarest of circumstances would any work product be immediately due.

22. I did not have a specific day or time when I distributed new case assignments. I assigned new matters as dictated by business needs and based on my own schedule.

23. On occasion, I did deliver new case assignments on a Friday. As noted, however, no work product was immediately due.

24. I never required Plaintiff to respond to emails about new cases assignments, or to complete any work, on Friday afternoons or over the Jewish Sabbath.

25. I never required any attorney in my Unit, including Plaintiff to perform any work over the weekend, outside of emergency situations.

26. I understand that Plaintiff testified at her deposition that I invited all of the people in the Unit to go out for drinks on Friday nights and excluded her. I also understand that Plaintiff

4

testified this practice took place over the course of months, although Plaintiff was unable to recall when this occurred.

27. This allegation is not true. On the occasions when I hosted Unit-wide activities, I always took Plaintiff's religious observance into account when selecting a date and time and she was always invited. (*See e.g.,* ¶ 41 below.)

28. From time to time, I did meet colleagues (including individuals who did not work in the Unit) after work for drinks. Occasionally, this occurred on a Friday.

### Additional Relevant Facts

29. Sherri Ehrlich is a former employee of the NYCTA Law Department. Prior to her retirement in 2021, Ehrlich was the Borough Chief for the NY Co. pre-trial unit. As Borough Chiefs in NY Co., Ehrlich and I worked together closely. We were also both familiar with the justices in NY Co. Supreme Court, including, in particular, those justices who oversaw the NYCTA parts, including Justices Sokoloff and Kaplan.

30. To the best of my knowledge, Ehrlich is Jewish.

31. When I was growing up, my parents were affiliated with a religion that I no longer practice. While I am therefore not familiar with the specifics of my parents' beliefs, I do recall that many of the customs of this religion paralleled, and overlapped with, those of the Jewish faith. For instance, when I lived with my parents, they required me to observe many of the Jewish kashrut laws and to eat matzah.

### Documents

32. Attached hereto as Exhibit A is a true and correct copy of email correspondence dated February 4, 2016. This document bears Bates stamp numbers NYCTA 000034-000036.

33. Attached hereto as Exhibit B is a true and correct copy of email correspondence dated November 7, 2019. This document bears Bates stamp number NYCTA013316.

34. Attached hereto as Exhibit C is a true and correct copy of a text message exchange between Ehrlich and me. The text communications from Ehrlich are shaded in black bubbles in this document. This document bears Bates stamp number NYCTA 0004234.

35. Attached hereto as Exhibit D is a true and correct copy of contemporaneous notes I prepared from June 2019 through February 2020. This document bears Bates stamp numbers NYCTA 004235-004241.

36. Attached hereto as Exhibit E is a true and correct copy of a memorandum I prepared for David Farber. This document bears Bates stamp numbers NYCTA 003283-003308.

37. Attached hereto as Exhibit F is a true and correct copy of an email exchange dated January 30, 2020. This document bears Bates stamp numbers NYCTA 004758-004773. This email exchange followed the meeting Ehrlich and I had with Justice Deborah A. Kaplan on January 30, 2020, and referenced comments Judge Kaplan made in the meeting.

38. Attached hereto as Exhibit G are true and correct copies of email correspondence that I exchanged with Plaintiff regarding the completion of her outstanding case assignments. These documents bear Bates Stamp numbers NYCTA 003281-003282, 005485, 005479, 005489-005490, 005493-005495.

39. Attached hereto as Exhibit H is a true and correct copy of instructions I sent to Plaintiff on July 17, 2019. This document bears Bates stamp number NYCTA 017095.

40. Attached hereto as Exhibit I are true and correct copies of email correspondence I sent to Plaintiff on January 7 and January 9, 2019. This document bears Bates stamp number NYCTA 019969.

41. Attached hereto as Exhibit J are true and correct copies of email exchanges addressing Unit events. These emails are from 2016, 2017 and 2019. These documents bear Bates stamp numbers NYCTA 019911-019914.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Dated: New York, New York
July 15, 2024

WESLII KHAHAIFA