# Exhibit D

**Khahaifa, Weslii**

| | |
|---|---|
| **Sent:** | Thursday, June 27, 2019 1:30 PM |
| **Subject:** | anecdotals |

6/16/19-received voicemail message telling me she is sick, etc. and would like me to reassign her next two trials because she doesn't want to be burned out.  Also told me that she would not be able to adjourn Gontarek trial, which is on for 6/18, so she "doesn't know what to tell you".

6/17/19- spoke to ADY about the voicemail(conversation turned into a confrontation/argument.  She told me she is burned out (even though this is only her 2nd trial for the year) and that she doesn't think she is "a good fit" for this unit because she doesn't want to do back to back trials.  I told her I understand that she is stressed, but her cases are her responsibility and that she has to adjourn Gontarek tomorrow.   I told her everyone else manages to address their other cases and adjourn or conference them, even when on trial and she responded: well maybe I'm not as good as them.  I told her it was a matter of managing her calendar.  Reminded her that we spoke about this issue on numerous occasions.

　　-spoke with YGG told her about the conversation with ADY and that I believe she doesn't want to do trials or be in this unit anymore and I asked how I should handle it.  She told me putting it in writing would not go over well with LH and that he would cover her either way.  I told her that I'm tired of dealing with the disrespect/confrontation/insubordination and that I would speak to Larry.

　　-spoke with LH shortly thereafter and advised him that I have an issue.  Told him that she told me she didn't think she is a good fit. Told him that she intimated (but didn't say) that she didn't want to do trials anymore.  Told him that she said she is overworked.  I told him that I believe she was overwhelmed due to her trial. Told him that she is not overworked and that I am insulted at the insinuation since I take my time and put great thought and consideration into assigning cases to my staff, based on their caseload and capabilities.  I also told him that I didn't believe she prepared the file early enough and that she hadn't begun to review the file until she was sent out to pick a jury (the file lingered in the file room until _____,although the case was assigned to her in March; in the midst of the trial, she didn't know who plaintiff's expert doctor was despite them serving a 3101(d); didn't know that plaintiff served a 4532(a) notice b/c file was in TFR when we received it [even though I told her to review the file right away and although had a meeting/had instructed the staff to make sure they have possession of the cases assigned to them for trial because of the loose papers crisis in the TFR]).  Also told him that I don't think notice was her strong point (as I have had prior conversations on the issue of notice and also had a conversation with her prior to the beginning of the trial where she couldn't articulate her defense to me other than plaintiff is not credible, I had to point out to her that the defect tickets, etc were not related to the alleged s/w and that from my previous review of the file that there may be an issue as to the labeling of the s/w in question. I also told him that I had spoken to her on numerous occasions on timely review and preparation of the case.  He inquired as to how much time I give and I advised that I generally assign the cases to staff 2-3 months in advance.  In addition, the cases seldmonly go forward on the original trial date and are usually adjourned allowing more time for preparation.  I explained that I requested that she give me an initial memo for each case assigned to her once she has reviewed the file and she has given me a cursory review once or twice, then stopped altogether.

I told him that I can't do my job (managing) because she doesn't want to do hers.  I also told him that there is  no respect for the chain of command and no incentive to do so.

6/27/19-LH and ADY entered my office together.  After a few seconds, LH pointed out an article in the Law Journal entitled "CPLR 5501(c) Review in the ag of Summation 'Anchoring' Abuse".  ADY began to speak and  LH

1

CONFIDENTIAL                                                                                                          NYCTA 004235

swiftly walked out of my office. She asked him why he was leaving and he didn't respond, nor did he return. She continued a convoluted conversation, in essence stating that she spoke to LH and HS and was told that Marty always gave trial attorneys 2 days off after they tried a case. I told her that I never heard such a thing, and ADY also admitted that she never heard that either. But, she continued, saying she was afraid to come to me, so she wanted Larry to come and tell me. I asked her to tell me what? I asked her what she was trying to say and she said she wanted another day off. I told her that I didn't understand there to be any policy in place that would allow that. She said that Helen told her she was entitled. She said that she was afraid to speak to me about it because in the past, I denied her request for a day off after a trial. I told her that I understand that it is at my discretion. But, that if there is going to now be a policy of giving 2 days off after a lengthy trial, then so be it. But, that I would look into it. She proceeded to discuss how stressed out she was during this last trial and that was why she ended up leaving me that voicemail. I asked her whether LH had spoken to her about the conversation that we had. She asked: what conversation? I reminded her the conversation that we had the next day where she indicated that she didn't think that she was the right fit for this unit. She said no he didn't and wanted to know what he wanted to speak to her about. I told her we should go and speak to him. Before we left for LH's office, I spoke to her briefly about a complaint that I received from Judge Sokoloff because she was engaging a represented plaintiff in conversation in J. Sokoloff's jury room. She indicated to me that J. Sokoloff was making a big deal out of the incident unnecessarily and had admonished her without allowing her to defend herself because although she knew that they were waiting for their attorney, she said she asked them if they had a transit case and they told her no. I advised her to never speak to a represented plaintiff in court regardless of whether it is a TA case or not and to be more mindful of the negative appearance that is associated with it. We then headed to LH's office. I told LH that ADY inquired as to what he wanted to discuss with her with regard to our conversations last week and he reminded me that he wanted to discuss the issue separately with her before we all discussed together. I told him that the conversation came up after he "dropped her off" at my office. He indicated that he didn't "drop her off" at my office and that she was there to discuss getting 2 days off. I told him that he certainly accompanied her to my office and then abruptly left when she started speaking. I told him that the conversation then turned to the voicemail and conversation that we had following the voicemail and I asked her if she had spoken to LH about that conversation. She indicated that she hadn't and asked what he wanted to speak to me about and that is why we went to him to discuss. LH was clearly caught off guard and not prepared and/or willing to discuss the matter at that time (which I was perfectly ok with). He asked ADY to let he and I speak privately. He then asked me what the issue is and I reminded him that, as I informed him last week: the issue is that she told me that she didn't think she was a good fit for this unit and that I don't believe she wants to do trials any longer. He asked me what are the options? I again reminded him that as we discussed last week: I don't know what the options are, that is why I am here and that he is the person with the power to say that. He told me that he had not yet spoken to her about the issue and hasn't spoken toher since her trial ended on 6/25 and reiterated that this was not a good time to have the conversation. I told him that I have no issue with waiting to have the conversation, the only reason we came to his office is because of the inquiry. So, we agreed to discuss the issue next week after YGG comes back from vacation.

I spoke to ADY and told her that I was not going to adopt the 2 days and that if she wanted to take a 2nd day on 7/5 as she indicated, she would have to use her time. She indicated that she had thought she had a PLD that she would use.

11/7/19   I received a call (directly from the bench)this afternoon from J. Sokoloff who proceeded to report her extreme dissatisfaction with Amelia.   Amelia appeared before the Judge today for a conference on a man-under case she is handling - Jay Dankner is plaintiff's counsel.  The parties were discussing the TA's written response to plaintiff's discovery demand where Amelia previously denied any witnesses to the accident.   Judge Sokoloff asked Amelia whether she was in possession of the NYPD DD5's.  J. Sokoloff reported that Amelia *lied to her at least twice* regarding her

2

CONFIDENTIAL                                                                                                          NYCTA 004236

Case 1:21-cv-04055-FB-RML   Document 62-7   Filed 03/11/25   Page 4 of 8 PageID #: 1682

possession of these reports and was "parsing her words". Upon further questioning from the Judge, Amelia stated she "may have the DD5's". Adding insult to injury, Amelia then insisted on going on the record. The Judge warned her that could be "very dangerous" for her. Ultimately, the parties did not go on the record.

J. Sokoloff advised me that she was putting the conference over for 2 weeks and instructed that Amelia not appear before her at the next conference. She also requested that we exchange the names of witnesses listed in the DD5's and/or exchange those DD5's that contain witness information as requested in plaintiff's demand in advance of the next court date.

Lastly, J. Sokoloff also reiterated another instance of Amelia's inappropriate conduct where she was in the Judge's jury room having lunch and talking with pro se plaintiffs on a TA case. The Judge confronted Amelia and she responded that she was not discussing the substance of their case with them. The Judge also mentioned negative feedback about Amelia from other NY county trial judges.

Regarding today's events, the Judge clearly stated she will not countenance that conduct from an attorney and felt very uncomfortable that Amelia put her in the position where she knew Amelia was being disingenuous. The Judge indicated that she could report Amelia but would not do so and wanted to bring this situation to my attention.

Amelia's conduct before the Judge is disconcerting – it reflects poorly on her own behalf, as an officer of the Court and as a representative of the Authority…

12/3/19 at her request, I met in person with Judge Sokoloff – who reiterated her displeasure with Amelia's unethical and disrespectful conduct. She advised that she believes that Amelia lied to her intentionally and was engaging in shark (?) practice, parsing her words when asked pointed questions the case. The issue was discovery on the Wood (12-9) case. Plf's counsel, Jay Dankner, accused TA of hiding witnesses. (Amelia sent plf a discovery response that inadvertently included a page depicted the name of a potential witness who was being looked up by investigations unit. She told plaintiff that the page was inadvertently attached to the response, but should be disregarded because it is not related to this case. Plaintiff specifically asked if the person was a witness in this case and she told him that the person was not a witness on this case and had nothing to do with the case. As it turns out, while going through the file with her for over 2 hours, we discovered that it was in fact a witness in this case. It was a witness who had spoken to the press and our investigators

12/3/19 met with Judge Frank- who was exasperated at her last trial (Chinn). He expressed the fact that he did not wish to preside over another trial with her in the next year. He indicated that her behavior was overly adversarial, disrespectful, disruptive and child-like. He likened her behavior to that of his young children. He even illustrated with an example: He made a ruling that she didn't like and she got very angry and he thought she was going to hold her breath (like a child). He indicated that she basically badgered the plaintiff during cross examination. He was not certain that she understood the law.

12/4/19 met with Judge Freed-printed out her decision on the post-trial motion on the Maria Garcia case, which was tried before her in late 2017. She believes this Order speaks for itself. She indicated that Amelia was repeatedly late, dishonest, disrespectful and unprofessional. She also indicated that on one occasion during the trial, Amelia came to court late. When the judge came from her Chambers to the court room, she found Amelia in the jury box blow drying her hair. Her Court attorney also weighed in on the complaints. Judge Freed indicated that she would not allow Amelia in her court room and would have her removed if necessary. She believes that shortly after the trial, Amelia went on the "Robing Room" website and left a nasty review about the judge and her court attorneys. Judge Freed is clearly still very angry at the way Amelia behaved during the Garcia trial

3

CONFIDENTIAL                                                                                                                                    NYCTA 004237

and during oral arguments of the post-trial motion where Amelia accused the judge of colluding with the plaintiff (which is addressed in the order).  The judge was trying to locate the transcript of the post-trial motion arguments, but couldn't find it. She also expressed that after being accused of colluding with plaintiff, she decided that she would not handle Transit cases any longer (the cases have since been transferred back to Judge Sokoloff).

12/4/19 advised Larry and Gail (via email) of the judges complaints.

<u>Adika trial</u> – jury selection scheduled for 12/5.  did not meet with her witnesses for the first time until 12/3 and 12/4.  Although due in court at 9:30am for jury selection, came into the office on 12/5 at 9:37am, then went to court.

12/9/19- came back from court to complain that she doesn't have time to revise the Wood discovery responses and that Alexandra will not look at them again. She stated the discovery responses have been sitting on her desk for 2 weeks because Alexandra hasn't looked at them after suggesting revisions.  She is now too busy with the Adika trial and cannot attend to the Wood discovery (despite the fact that she just started picking the jury today and first met with her witnesses last week Tuesday and Wednesday.

12/17/19-just another example of unpreparedness.  while attempting to use plaintiff's city of new York statutory hearing transcript during the Adika trial, plaintiff objected and stated that they never received the city's hearing transcript.  In an effort to show that plaintiff had, in fact, gotten the transcript from the city before they were let out of the case,  Amelia called Adrian and asked him to contact the city to obtain proof.

12/18/19- despite having a conversation last week (via email) with me, Amelia failed to arrange coverage for a compliance conference and a statutory hearing scheduled for 12/19.  Instead, she emailed Adrian on the evening of 12/17 to direct him to try to adjourn both, and in the event that he is unable to, he should ask me to assign someone else to cover.

1/6/20- I inquired as to the status of the conductor's deposition in the Wood case, which was to be conducted on 1/6 per J. Sokoloff's order. She told me the ebt had been adjourned to 2/11.  I asked her why the deposition had been adjourned, given the contentious proceedings in November.  I also reminded her that the next status conference in the case was scheduled for 2/6 (prior to the conductor's ebt)  and inquired as to the status of the train operator's ebt which was ordered to take place on 1/13.  She did not respond.  On 1/8, I learned that she had requested the adjournment of the conductor's deposition because she was allegedly on vacation.  However, it was clear that the conductor had no scheduled vacation time until March 29.  On 1/9/20 I again inquired as to why she had adjourned the conductor's deposition and falsely claimed that she was on vacation.  She responded by announcing the dates that the depositions and status conference had been adjourned to and said that she told the plaintiff that the conductor was on vacation instead of the train operator and that she could explain it to me in person.  I responded that I just needed to know the reason the conductor's ebt was adjourned.

1/9/20 -She then came to my office to give her explanation.  She showed me the 12/31/19 email from Darryl Libert which listed the availability for several TA witnesses, including the conductor and train operator.  She told me that she didn't know which witness was the conductor because the email did not list the titles of the employees.  I reminded her that it is her case and she should be aware of the names of the various witnesses, furthermore, the court order listed the witnesses by name, not title.  She then proceeded to tell me that she was still suffering from pink eye the day that she requested the adjournment and had trouble reading the email because she couldn't see well and her

CONFIDENTIAL                                                                                                        NYCTA 004238

other eye was also messing up, so she read the email wrong.  After I picked my jaw up off of the floor, I realized that I cannot tolerate the lying and incompetence any longer.

1/9/20- I sent a followup to Larry and Gail regarding my 12/4 email regarding the complaints of the 3 judges about Amelia's behavior, including being unprofessional, unethical and lying (at least once under oath).  Larry Heisler responded that "Judge Sokoloff's last day as Transit judge is today."  He then walked over to my office and said that we could meet at 3pm.  I went to his office at 3pm, only to be met with the same indifference that he had the first time I had the discussion with him.  He repeatedly tried to convince me that this is not a big deal and told me that he is not "worried" about Judge Freed, indicating that the character committee had called him asking for his opinion of her and based on the information that he gave them, nobody would believe the allegations coming from her.  He tried to liken the situation to a judge that simply doesn't like Amelia. I reminded him that I received complaints directly from 3 different judges and I understand there are more.  I also reminded him that Judge Freed's complaints about Amelia lying and being unprofessional, unethical, unprepared, etc. were memorialized in the record of the Maria Garcia trial and post trial arguments and order.  I also reminded him that I had endured constant lying and unprofessional behavior since she joined NYCTA.  Finally, I told him that I didn't think he wasn't acknowledging the seriousness or gravity of this situation.  He continued to try to  minimize it as judges that just don't like her style.  I argued that it had nothing to do with that and that ignoring this situation would no doubt adversely reflect poorly on the Transit Authority at a time where we do not need any more enemies.

     He then advised that I should consider the optics of taking a unit already down from 4 attorneys to 3, to further reducing it to 2 attorneys, as I might give the impression that we are not necessary.  I then aked him how does he think the MTA would view getting wind of an attorney who has been repeatedly lying to judges, sometimes under oath, with no consequences or measures taken to correct it.  I also challenged him to simply replace her with another attorney.  He than told me that he could not because nobody from Kings, where she is going to be transferred, wants to come to New York.  I then reminded him that Okwede in the Queens unit has expressed her undying desire to do trials and told him to simply switch the two of them.  He refused.  When I asked him why, he responded: "Queens E&P is a mess".  I told him that shouldn't be a reason.  He then told me that I could periodically assign trials to certain attorneys from different units if they are interested and available: Okwede Okoh (Queens E&P), Alison Estess (Bronx), Elias Falcon (Kings E&P), and Wayne Glasgow (Kings Trials).  He said that I should reassign Amelia's cases and that her transfer will be a "gradual" process wherein she will be in the Kings trial unit by March 1.  He also warned me, as he has in the past, that I should be careful what I put in writing, so as not to spread information.  I advised that I had not "spread" any information by sending a very general brief email to him and Gail.  I advised him that, other than that 1 incident back in 2015, I had not put in writing at all.

1/23/20 I went to court to meet the new TA judges.  After meeting judge Adams, she immediately advised me that she would recuse herself from any case Amelia is involved in and asked that I send someone else to court instead.  I inquired as to the reason and she declined to divulge that info.  I subsequently went to meet judge Larry Love, who will now handle all cases involving the City.  While in judge Loves courtroom, judge Adam Silvera stopped in to speak with another attorney.  He approached me and advised that he also did not want Amelia in his courtroom.  He also divulged some other information about a time that she was "almost disbarred" for forging a doctor's signature on a document.  I advised Larry Heisler that Judge Adams did not want Amelia in her courtroom (I did not mention Judge Silvera).  He apparently didn't believe me, so he asked Sherri Ehrlich whether the court said anything about Amelia and Sherri told him that both Judge Adams and Silvera expressed to me that they did not want Amelia in their courtrooms.

CONFIDENTIAL                                                                                                               NYCTA 004239

1/29/20 I responded to an email dated 1/27/20 that I was copied on by Amelia regarding scheduling of IME exams. She had forwarded an email from plaintiff expressing concern for the multiple IME exams that were noticed and that his client lives out of state and would not be able to appear on multiple dates. I sent her an email inquiring as to the number of IMEs and what exams we were requesting. She responded that she spoke to Celeste and requested ortho, neuro, pm&r, plastic and vascular exams. She offered to cancel the pm&r. I sent her a responsive email advising her not to cancel the pm&r as it was definitely an exam that we would need, and asked her what prompted the vascular IME request.        I then went over to Daysy to have her send out an IME report. Daysy was on the phone speaking to Amelia about the exams. After she hung up the phone, she told me that Amelia said I told her to cancel the pm& r exam, then said it was a mistake, and that I told her to cancel the vascular exam instead. I advised Daysy that I made no such statement. I then went to Amelia's office and asked her why did she say that I told her to cancel the vascular exam. She denied telling Daysy that and instead insisted that she told Daysy, she might have to cancel the exam, but made no mention of me. I told her to stop all work on the file, as it was going to be reassigned. 5 minutes later, Amelia brought the file to my office. I sent an email to Daysy, Maria and the IME service to direct all inquiries, questions and responses to my attention until further notice as the file is being reassigned.

1/30/20       At the request of the Administrative Judge, Sherri and I met with her and her Chief Clerk Denis Reo (former court attorney to Judge Silver) in her chambers. She expressed the court's desire to expand their ADR intitiative and advised that she would like our input and to hear our concerns and desires in the program. She also brought up Amelia. Before we began the discussion about her, I informed J. Kaplan that Amelia would be transferred to Kings effective 3/1. Her response was: great, that will make our conversation shorter. She proceeded to express her concern for Amelia's ability to be in the courthouse because of the number of complaints that she has received. She indicated that she has to step in for the clerk in the Trial Assignment Part to find a judge willing to preside over her cases. She expressed great concern that she will no longer be able to find any willing participants. She further went on to point out some of the specific complaints (all of which I had heard from the various judges themselves). She pointed out the incident where she showed up late and the judge came out of chambers and into the courtroom to find her in the jury box blow drying her hair. She discussed an incident where she was caught having a conversation with actual plaintiffs on a Transit case as they sat in the judges jury room while their attorney conferenced the case in the courtroom. She discussed multiple instances of lying to various judges and putting them in a bad position. She expressed the fact that she does not want to report her and possibly ruin her career (as has been the case with the other judges that I spoke to), but the court cannot continue to tolerate her behavior. I apologized to the court and assured her that I had reported these accusations to the powers that be and as a result she would be transferred to Kings county and that for the remainder of her time in New York county she would not be appearing in court unless absolutely necessary.

2/5/20 Amelia has 2 cases on the pretrial conference calendar for 2/6 (Arevalo, which had been assigned to her since 7/17/19 and Middletown, which had been assigned to her since 8/23/19). I told her to brief the covering attorney on both cases so that they would be prepared for the conference. She then sent an email with 2 sentences that provided no information and advised that the files were in her office. I responded by telling her I needed to know from her, as the attorney assigned to these cases, what discovery is outstanding and what should be requested at the conference. I advised her that the covering attorney should not be required to review her file for her to determine what needs to happen at the conference, as the coverage is a courtesy to her. She then responded by giving a bit more information about the facts of the case and demonstrated her lack of knowledge of what was actually going on with either case. For example, she indicated that there had been no discovery demands received on either case. But, I recalled from the previous conference in

Judge Heitler's part that the 2nd 3rd party defendant (whom she impleaded) indicated that he had served demands with his answer and was waiting for responses from our office. I then asked her if she had responded to their demands and told me she did not. I instructed her to do so. She also indicated that she needed to leave the office by 5pm and again indicated that the files were available, this time she would leave them by Adrian Thompson. I then instructed AXV to thoroughly review the Arevalo file to determine what discovery is outstanding, as it is a major case. It was immediately apparent that nothing had been done since the case had been assigned to Amelia back in June. In fact, every conference had been adjourned during that time, at least one at her request. There were no depositions held after plaintiff's and no followup on discovery owed by plaintiff and the internal investigation suggestions made by AXV when I requested her to review the file in early 2019 before it was assigned to Amelia. (As an aside, that review prompted the trial unit takeover of the file in the first place and it was assigned to Amelia). Apparently, she's done nothing since it was assigned to her.

**Weslii Khahaifa, Esq**.
*Borough Litigation Chief, New York County*
*130 Livingston Street, 11th Fl.*
*Brooklyn, New York 11201*
*(718)694-3991 Telephone*
*(718)694-1023 Fax*

CONFIDENTIAL                                                                                                                      NYCTA 004241