# Exhibit E

# Memorandum

 New York City Transit

| | |
|---|---|
| **Date** | **February 27, 2021** |
| **To** | **David Farber, General Counsel** |
| **From** | **Weslii Khahaifa, Assistant General Counsel III** |
| **Re** | **Amelia Dweck Yehoshua** |

During the latter part of 2019, I received complaints from several judges sitting in New York County Supreme Court about Amelia Dweck Yehoshua.  The judges complained that Amelia had displayed a pattern of unprofessional and unethical behavior, which ultimately led to the Administrative Judge prohibiting Amelia from appearing in New York County Supreme Court.

I supervise the New York County trial unit and have done so since the latter part of 2014, shortly before the retirement of my predecessor Danielle Ruttman in 2015.  Gail Goode is my immediate supervisor, followed by Larry Heisler, who is the head of Torts. Amelia was a trial attorney in the New York trial unit from the time that she was hired in 2013 until March 1, 2021, when she was administratively transferred to the Kings County trial unit as a direct result of the issues that arose with the judges in the New York County Supreme Court that are outlined below.

On November 7, 2019, Amelia appeared before Judge Lisa Ann Sokoloff for a compliance conference in connection with the Alexander Wood case.  At that time Judge Sokoloff was the IAS Judge who presided over the Transit Part in New York County Supreme Court.  Alexander Wood is a major case involving a 27 year old customer who became pinned in the gap between a northbound Lexington Avenue line train and the platform after he stepped into the gap as the train was leaving the Union Square station, causing him to be dragged a short distance until the conductor activated the emergency brake.  Mr. Wood sustained catastrophic injuries, including an open fracture of the left femur and de-gloving with partial amputation of the left leg as a result of this accident.

On November 7, 2019, I received a call from Judge Sokoloff, who reported that she was calling me directly from the bench to express her extreme dissatisfaction with Amelia's unethical and unprofessional behavior. The Judge indicated that Amelia had just appeared before her on the Alexander Wood case and that the conference was cut short due to Amelia's behavior.  The Judge reported that the parties were discussing Transit's written response to plaintiff's demand for witnesses wherein Amelia falsely

represented that Transit had no knowledge of any witnesses with regard to the subject accident. Counsel for plaintiff complained to the judge that Transit was withholding information and/or documents and requested that Transit turn over the NYPD DD5 reports in its possession. The judge reported that she was surprised to hear that that there were no witnesses identified, given the extensive investigations that are usually undertaken by both Transit and the NYPD in these types of cases. Judge Sokoloff told me that she asked Amelia whether Transit was in possession of the DD5s and that Amelia lied to her at least twice, "parsing her words" with regard to Transit's possession of these reports. The judge reported that upon further questioning, Amelia admitted that Transit might have the reports. It turns out that Transit was aware of at least one witness, who had been interviewed by Transit investigators, as well as the press. The judge then directed Transit to exchange the names of the witnesses listed in the DD5 reports and/or exchange those DD5 reports that contain witness information. The judge reported that Amelia took offense to her ruling, and her characterization of Amelia's behavior. Amelia then insisted that a court reporter be ordered so that she could put everything on the record. The Judge then advised Amelia against going on the record, as it could be "very dangerous" for her. The judge reported that she was concerned about the adverse consequences that might ensue if Amelia's dishonesty and unprofessional behavior were memorialized on the record. Ultimately, Amelia changed her mind and the parties did not go on the record. Judge Sokoloff ended the conference and called me immediately thereafter to report what had occurred.

The judge advised that she had directed Transit to exchange the names of the witnesses listed in the DD5s and/or exchange the DD5s that contain witness information, as requested in plaintiff's demand, in advance of the next conference. Judge Sokoloff told me that she would adjourn the conference for 2 weeks and requested that Amelia not appear at the next conference. The judge expressed her concerns about Amelia making future appearances in her courtroom because sooner or later she would have to judge the veracity of Amelia's statements and she felt uncomfortable doing so.

During that November 7 phone call, the judge recalled a prior incident involving Amelia. The Judge reported that some months earlier, she had found Amelia eating lunch in her jury room while having a conversation with plaintiffs on a Transit case, who were represented by counsel. At the time, the plaintiffs' attorney was in the courtroom with the Transit attorney engaged in settlement discussions. The clients were instructed by the judge to wait in the jury room as the discussions proceeded. The judge reported that after witnessing Amelia speaking with the plaintiffs, she admonished Amelia and advised her that it was inappropriate to speak with parties represented by counsel. Amelia responded by telling her that the conversation was harmless because she was not discussing the substance of their case. It should be noted that Judge Sokoloff had previously reported this behavior to both myself and Sherri Ehrlich, who supervises the New York County E&P unit. In fact, it was Sherri Ehrlich who first brought it to my attention because Judge Sokoloff had contacted her to report the situation and to inform Sherri that Amelia should have no involvement with that case in the future. I do not recall the name of the case, but I believe Sherri Ehrlich may.

NYCTA 003284

The conversation ended with the Judge warning me that she would not countenance the conduct displayed by Amelia going forward and indicated that she felt very uncomfortable and upset that Amelia had put her in a position where she might have to report her to the Grievance Committee.  The judge expressed her reluctance to do so and explained that she didn't want to be responsible for ruining Amelia's career, so she decided to bring the issue to my attention instead. I expressed to the judge that such behavior is not condoned or tolerated by Transit and assured the judge that her complaints would be addressed.  I also assured the Judge that Transit would comply with the court's discovery directives and that Amelia would not be appearing in her Part anytime in the near future.  The Judge also mentioned that she had gotten negative feedback about Amelia from other New York County judges and indicated that she wanted to further discuss the issue at some point at my convenience.

After I finished speaking with the judge, I sent an email to Amelia advising her of the disturbing phone call and indicating that I wanted to address the issue with her when she returned to the office (see attached email sent by me on 11/7/19 at 3:27pm). Amelia emailed me back indicating that the judge was wrong and that she would fill me in upon her return to the office (see attached emails sent by Amelia on 11/7/19 at 3:39pm and 4:40pm).

After the phone call with the judge I also spoke to my supervisor, Gail Goode, about the issue.  I reported to Gail the complaints made by the judge and asked for guidance on how to handle the issue.  She advised that I speak with Larry Heisler. To my knowledge, there was no further action taken by Gail to address the issue.

After speaking with Gail, I went to Larry's office and advised him of the situation. As I outlined the details of the judge's complaints, he repeatedly cut me off, while simultaneously downplaying the severity of the situation.  I pointed out the seriousness of the matter and advised that Amelia's behavior reflected poorly on the Transit Authority and that action needed to be taken. He indicated that we would discuss the issue at a later time.

When Amelia returned from court that afternoon, she came to my office to discuss the issue.  She denied behaving inappropriately and indicated that the judge was wrong and was simply trying to force her to exchange documents that plaintiff was not entitled to.  I explained to her the seriousness of the accusations and advised her that I would not be sending her on any appearances in Judge Sokoloff's part going forward.  I also advised her to timely comply with the Judge's directives and to make sure that Transit remained in compliance with all court orders and discovery demands on the Wood case going forward.

On December 3, 2019, I met with Judge Sokoloff in her chambers to further discuss the issue, pursuant to her request.  During our meeting, the judge recounted the events that took place during the Alexander Wood conference and reiterated her displeasure with Amelia's unethical and unprofessional conduct.

I again apologized to the Judge, advising her that Transit does not condone the reported behavior and that the incident had been reported to management. The Judge then reported that there were other judges with similar complaints about Amelia who

wanted to speak to me. The judge then walked me over to Judge Kathryn Freed's courtroom. Judge Freed's court attorney advised that the judge was not currently available but asked that I return the next day as Judge Freed was eager to speak with me. Judge Sokoloff then walked me over to Judge Lyle Frank's chambers, indicating that he was another judge that wanted to speak to me about Amelia.

Judge Sokoloff returned to her chambers and I spoke privately with Judge Frank. Judge Frank told me that he did not wish to preside over another trial with Amelia for at least a year. He indicated that he had been exasperated by Amelia when she was on trial before him last year on the Jonathan Chinn case. Judge Frank reported that Amelia was overly adversarial, disrespectful, disruptive and child-like. The judge likened her behavior to that of his young children. The judge highlighted an occasion during the Chinn trial when he made a ruling that Amelia didn't like. The judge indicated that Amelia got very angry and he thought that she was going to hold her breath (like a child). He also reported that Amelia badgered the plaintiff during her cross examination and that he was not certain that Amelia understood the law. I apologized to Judge Frank and assured him that the reported behavior is not condoned and would not be tolerated by Transit. I further advised him that the issue would be promptly reported to management and addressed.

On December 4, 2019, I met with Judge Kathryn Freed. Judge Freed, who had presided over another Transit part consisting of insurance take-overs, indemnification cases, and any other Transit case in which outside counsel appeared as the attorney of record, is one of the Judges that were administratively retired in December 2020.

During my meeting with Judge Freed she also expressed her disdain for Amelia's behavior. Judge Freed reported that she was deeply affected and still very angry about Amelia's behavior during the Maria Garcia trial which had been tried before her in 2017. Judge Freed reported that during the Garcia trial Amelia was repeatedly late, dishonest, disrespectful and unprofessional. The judge also reported that on one occasion during the trial, the judge emerged from her chambers to find Amelia, who had arrived to court late, in the courtroom blow drying her hair in the jury box.

The judge was also unhappy with Amelia's behavior during the oral argument of the post-trial motions, especially when Amelia accused the judge of "colluding with the plaintiff". This accusation was made on the record and is addressed in Judge Freed's 11-21-18 decision. (see attached copy). The judge also reported that after being accused of colluding with the plaintiff, she decided that she would no longer handle Transit cases and the Transit cases that had been assigned to her were transferred to Judge Sokoloff. Finally, Judge Freed indicated that Amelia was no longer welcome in her courtroom and warned that she would have Amelia removed if necessary.

On December 4, 2019, following my meetings with the judges, I sent an email to Gail Goode and Larry Heisler advising them of the judges' complaints and requesting a meeting to discuss the issue. Larry indicated that we would meet on Friday morning. (see attached email sent by me on 12/4/19 at 2:33pm and Larry's response at 2:35pm). He then sent another email requesting the identity of the other judges who complained

(see attached email sent by Larry on 12/4/19 at 2:35pm). The December 6 meeting never happened, nor was it rescheduled.

On January 9, 2020, after having a contentious discussion with Amelia about her failure to comply with Judge Sokoloff's discovery order in the Alexander Wood case, I sent a follow-up to Gail Goode and Larry Heisler regarding my December 4, 2019 email regarding the judges' complaints about Amelia's behavior and again seeking to address the issue (see attached email sent by me on 1-9-20 at 11:45am). Larry Heisler responded to my email immediately, stating that today is Judge Sokoloff's last day in the Transit Part (see attached email sent by Larry on 1-9-20 at 11:46am). A few minutes later, Larry appeared in my office and told me that we could meet at 3pm that day.

At 3pm, I reported to Larry's office to discuss the issue. Larry displayed the same indifference he had displayed the first time that I brought the issue to his attention in November. He continued trying to convince me that the issue was being blown out of proportion. He told me that he was not "worried" about Judge Freed and elaborated by reporting that the character committee had called him asking for his opinion of the judge and based upon the information that he provided, nobody would believe her allegations. Larry tried to portray the situation as one where the judge simply doesn't like Amelia. I reminded him that I had received complaints from 3 different judges and I was told there were others. I also reminded him that Judge Freed's complaints about Amelia being dishonest, unprofessional, unethical, unprepared, etc., are memorialized in the record of the Maria Garcia trial and post-trial arguments, as well as the judge's post-trial decision. I also reminded him about my complaints about Amelia's dishonesty and unprofessional behavior throughout her tenure with Transit.

Finally, I pointed out to Larry that he was not acknowledging the seriousness and the gravity of this situation. Larry continued to minimize the situation and characterized it as one where the judges simply don't like her style. I argued that it had nothing to do with Amelia's style and that ignoring the situation would have an adverse effect and reflect poorly on Transit. I further advised that Transit could not afford to create any adversarial relationships within the courts.

After much back and forth, and after realizing that my opinion was not going to change, Larry then stated that Amelia is "not going anywhere so forget about that". I told him that some action needed to be taken, that this is not something that can be simply ignored. He then stated that the only solution was to transfer her to a different unit that didn't require her to appear in New York County Supreme Court. Larry then warned me to consider the optics of voluntarily reducing my unit, already down to 3 attorneys since Jennifer Coyne resigned in 2018, to 2 attorneys. I then advised him to consider the consequences of the MTA finding out that one of its attorneys had been repeatedly disrespecting and lying to judges, sometimes under oath, with no consequences or measures taken to address it.

I also challenged Larry to simply replace Amelia with an attorney from another unit. He stated he could not do so because nobody from the Kings trial unit, where Amelia is going to be transferred, wants to transfer to the New York unit. I then reminded him that Okwede Okoh in the Queens unit had been expressing an undying desire to try cases

and asked him to simply switch the two of them, to which he refused. When I asked why not, he responded that "Queens E&P is a mess". I told him that shouldn't be a reason and that I should not have to lose an attorney. He responded by giving me permission to periodically assign trials to <u>certain</u> attorneys from different units if they are interested and available. The attorneys that he identified were: Okwede Okoh (Queens E&P), Alison Estess (Bronx E&P), Elias Falcon (Kings E&P) and Wayne Glasgow (Kings Trials).

Larry indicated that Amelia's transfer would be a gradual process wherein she would be a member of the Kings trial unit by March 1, 2020 and directed me to reassign her cases accordingly. He ended the meeting by warning me (as he has in the past) to be careful what I put in writing, to avoid spreading information. I advised him that I had not "spread" any information, I simply sent a very general, email to him and Gail apprising them of this situation. I also reminded him that, other than the 2015 issue with Amelia's timesheet, I had not put anything else in writing to him.

Following my meeting with Larry, I spoke to Amelia to advise her of the transfer and that she was required to finish her open assignments before her New York County files would be transferred to another attorney.

Judge Sokoloff's tenure as the Transit Judge ended on January 9, 2020. Judge Sokoloff was replaced by Judge Suzanne Adams and Judge Larry Love. Judge Adams has recused herself from all cases in which the City of New York is a named party. Thus, Judge Love was assigned to handle the City cases, as well as the Transit cases where the City is also a named party.

On January 23, 2020, I went to court to meet the newly installed Transit judges. Sherri Ehrlich, who supervises the New York County E&P unit, was also present in court to meet the judges. Shortly after being introduced to Judge Adams, she advised me that she would recuse herself from any cases in which Amelia is involved and asked that I send another attorney to court instead. I inquired as to the reason for her recusal, but Judge Adams declined to divulge that information. I assured her that Amelia would not be making any appearances before her. Sherri and I then went to meet Judge Love.

While waiting in judge Love's courtroom, Judge Adam Silvera stopped in to speak with another attorney who was in the courtroom. After speaking with that attorney, Judge Silvera then came to me and advised that he also did not want Amelia in his courtroom. I told Judge Silvera that Amelia was being transferred to a different unit and would therefore, not be appearing before him in New York County.

When I returned to the office, I spoke to Gail Goode and Larry Heisler, advising them that Judge Adams, our new Transit judge, did not want Amelia in her courtroom. I didn't mention Judge Silvera, because I believed that at this point, it was redundant. I later learned from Sherri that Larry had asked her if the judge mentioned Amelia in court and she confirmed that both Judge Adams and Judge Silvera told me that Amelia was not welcome in their courtrooms.

On January 30, 2020, Sherri and I were summoned to court for a meeting with the Administrative Judge, Deborah Kaplan. Sherri and I met with Judge Kaplan and her

Chief Clerk, Denis Reo, in the judge's chambers. Judge Kaplan discussed the court's plans to expand their ADR initiative and informed us that she wished to hear our input and concerns with the program. Inevitably, she brought up the issue of Amelia and the effect that her behavior is having on the court. In an attempt to avoid the conversation, I informed Judge Kaplan that Amelia was in the process of being transferred to another unit. The judge's response was: "great, that will make our conversation shorter". The judge then advised that Amelia was not welcome in the courthouse. The Judge reported that she has to personally step in for the clerk in the Trial Assignment Part in order to find a judge willing to preside over Amelia's cases. She expressed great concern that she will no longer be able to find any judges willing to do so. She went on to point out some of the specific complaints made by various judges, without divuling the sources of the complaints. Unbeknownst to Judge Kaplan, each of the complaints had already been reported to me by the various judges themselves. Judge Kaplan pointed out the blow-drying incident (Judge Freed) and the incident where Amelia was caught having a conversation with represented plaintiffs on a Transit case (Judge Sokoloff). She also discussed multiple instances of lying to various judges and the unfortunate position the judges found themselves in as a result. Judge Kaplan also expressed her reluctance to report Amelia, as it would no doubt ruin her career. However, she advised that the court would no longer tolerate her behavior. I apologized to the Judge and assured her that the accusations had been reported to management and reiterated that Amelia was being transferred to a different unit on March 1 as a result. I assured the judge that Amelia would make no appearances in New York County Supreme Court unless absolutely necessary.

Again, I advised Gail and Larry of the complaints made by the Administrative Judge and reported that the Administrative Judge did not want Amelia in the courthouse. No further action, other than the previously agreed upon transfer, was taken.

| | |
|---|---|
| **From:** | Heisler, Lawrence |
| **To:** | Khahaifa, Weslii; Goode, Y. Gail |
| **Subject:** | Re: Judge Sokoloff |
| **Date:** | Thursday, January 9, 2020 11:45:52 AM |

Judge Sokoloff last day as Transit judge is today's

Get Outlook for iOS

---

**From:** Khahaifa, Weslii <Weslii.Khahaifa@nyct.com>
**Sent:** Thursday, January 9, 2020 11:44:31 AM
**To:** Goode, Y. Gail <Y.Gail.Goode@nyct.com>; Heisler, Lawrence <Lawrence.Heisler@nyct.com>
**Subject:** RE: Judge Sokoloff

Good Morning,

It has been 2 months since this issue arose and I would like some clarity on what action, if any, will be taken.  I am trying to plan my calendar and case assignments and would appreciate if this could be addressed as soon as possible.

Please advise.

Thanks,

*Weslii Khahaifa, Esq.*
*Borough Litigation Chief, New York County*
*130 Livingston Street, 11th Fl.*
*Brooklyn, New York 11201*
*(718)694-3991 Telephone*
*(718)694-1023 Fax*

---

**From:** Khahaifa, Weslii
**Sent:** Wednesday, December 4, 2019 2:33 PM
**To:** Goode, Y. Gail <Y.Gail.Goode@nyct.com>; Heisler, Lawrence <Lawrence.Heisler@nyct.com>
**Subject:** Judge Sokoloff

Gail and Larry,

You may recall our recent discussion regarding my conversation with Judge Sokoloff on 12/7 wherein she discussed an event that took place that day during a status conference on the

CONFIDENTIAL                                                                                    NYCTA 003290

Alexander Wood case (a 12-9) involving Amelia.  I met with Judge Sokoloff to discuss the issue and in addition to her extreme dissatisfaction with Amelia's conduct, she referred to me two other judges who voiced similar, disturbing complaints.  The judges all indicated that Amelia has demonstrated a pattern of unprofessional and unethical conduct.  I realize that Gail is not in today, however, I believe this issue needs to be addressed as soon as possible as it affects the Authority.  Please advise when you are available to discuss.

Thanks,

**Weslii Khahaifa, Esq**.
*Borough Litigation Chief, New York County*
*130 Livingston Street, 11th Fl.*
*Brooklyn, New York 11201*
*(718)694-3991 Telephone*
*(718)694-1023 Fax*

NYCTA 003291

| | |
|---|---|
| **From:** | Khahaifa, Weslii |
| **To:** | Goode, Y. Gail; Heisler, Lawrence |
| **Subject:** | RE: Judge Sokoloff |
| **Date:** | Thursday, January 9, 2020 11:44:00 AM |

Good Morning,

It has been 2 months since this issue arose and I would like some clarity on what action, if any, will be taken. I am trying to plan my calendar and case assignments and would appreciate if this could be addressed as soon as possible.

Please advise.

Thanks,

*Weslii Khahaifa, Esq.*

*Borough Litigation Chief, New York County*

*130 Livingston Street, 11th Fl.*

*Brooklyn, New York 11201*

*(718)694-3991 Telephone*

*(718)694-1023 Fax*

**From:** Khahaifa, Weslii
**Sent:** Wednesday, December 4, 2019 2:33 PM
**To:** Goode, Y. Gail <Y.Gail.Goode@nyct.com>; Heisler, Lawrence <Lawrence.Heisler@nyct.com>
**Subject:** Judge Sokoloff

Gail and Larry,

You may recall our recent discussion regarding my conversation with Judge Sokoloff on 12/7 wherein she discussed an event that took place that day during a status conference on the Alexander Wood case (a 12-9) involving Amelia. I met with Judge Sokoloff to discuss the issue and in addition to her extreme dissatisfaction with Amelia's conduct, she referred to me two other judges who voiced similar, disturbing complaints. The judges all indicated that Amelia has demonstrated a pattern of unprofessional and unethical conduct. I realize that Gail is not in today, however, I believe this issue needs to be addressed as soon as possible as it affects the Authority. Please advise when you are available to discuss.

Thanks,

*Weslii Khahaifa, Esq.*

*Borough Litigation Chief, New York County*

*130 Livingston Street, 11th Fl.*

*Brooklyn, New York 11201*

*(718)694-3991 Telephone*

*(718)694-1023 Fax*

CONFIDENTIAL

| | |
|---|---|
| **From:** | Yehoshua, Amelia |
| **To:** | Khahaifa, Weslii |
| **Subject:** | Re: Complaint from Judge Sokoloff |
| **Date:** | Thursday, November 7, 2019 4:40:29 PM |

I am on my way back now. Will you be in the office?

Get Outlook for Android

---

**From:** Yehoshua, Amelia <Amelia.Yehoshua@nyct.com>
**Sent:** Thursday, November 7, 2019 3:49:08 PM
**To:** Khahaifa, Weslii <Weslii.Khahaifa@nyct.com>
**Subject:** Re: Complaint from Judge Sokoloff

I'm still in court. I wish it was on the record. She was acting inappropriate. I'll fill you in when I get back. Give me the benefit of the doubt. Don't assume she's correct. She was wrong. I'll explain when I finish. I'm waiting for Perez plaintiff to show up.

Get Outlook for Android

---

**From:** Khahaifa, Weslii <Weslii.Khahaifa@nyct.com>
**Sent:** Thursday, November 7, 2019 3:26:58 PM
**To:** Yehoshua, Amelia <Amelia.Yehoshua@nyct.com>
**Subject:** Complaint from Judge Sokoloff

Amelia,

I just got a very disturbing phone call from Judge Sokoloff regarding your appearance in court this afternoon. The Judge was very upset and indicated that you were disingenuous, lying to her twice and that your behavior was unbecoming of an attorney or officer of the court. Please see me immediately upon your return to the office this afternoon.

Thanks,

*Weslii Khahaifa, Esq.*

*Borough Litigation Chief, New York County*

*130 Livingston Street, 11th Fl.*
*Brooklyn, New York 11201*
*(718)694-3991 Telephone*
*(718)694-1023 Fax*

CONFIDENTIAL                                                                 NYCTA 003293

| From: | Khahaifa, Weslii |
|---|---|
| To: | Yehoshua, Amelia |
| Subject: | Complaint from Judge Sokoloff |
| Date: | Thursday, November 7, 2019 3:26:00 PM |

Amelia,

I just got a very disturbing phone call from Judge Sokoloff regarding your appearance in court this afternoon. The Judge was very upset and indicated that you were disingenuous, lying to her twice and that your behavior was unbecoming of an attorney or officer of the court.

Please see me immediately upon your return to the office this afternoon.

Thanks,

**Weslii Khahaifa, Esq.**

*Borough Litigation Chief, New York County*

*130 Livingston Street, 11th Fl.*

*Brooklyn, New York 11201*

*(718)694-3991 Telephone*

*(718)694-1023 Fax*

NYCTA 003294

| | |
|---|---|
| **From:** | Khahaifa, Weslii |
| **To:** | Heisler, Lawrence; Goode, Y. Gail |
| **Subject:** | RE: Judge Sokoloff |
| **Date:** | Wednesday, December 4, 2019 2:35:00 PM |

Freed and Frank.

**From:** Heisler, Lawrence
**Sent:** Wednesday, December 4, 2019 2:35 PM
**To:** Khahaifa, Weslii <Weslii.Khahaifa@nyct.com>; Goode, Y. Gail <Y.Gail.Goode@nyct.com>
**Subject:** Re: Judge Sokoloff

Who were the two others?

Get Outlook for iOS

**From:** Khahaifa, Weslii <Weslii.Khahaifa@nyct.com>
**Sent:** Wednesday, December 4, 2019 2:33:28 PM
**To:** Goode, Y. Gail <Y.Gail.Goode@nyct.com>; Heisler, Lawrence <Lawrence.Heisler@nyct.com>
**Subject:** Judge Sokoloff

Gail and Larry,

You may recall our recent discussion regarding my conversation with Judge Sokoloff on 12/7 wherein she discussed an event that took place that day during a status conference on the Alexander Wood case (a 12-9) involving Amelia.  I met with Judge Sokoloff to discuss the issue and in addition to her extreme dissatisfaction with Amelia's conduct, she referred to me two other judges who voiced similar, disturbing complaints.  The judges all indicated that Amelia has demonstrated a pattern of unprofessional and unethical conduct.  I realize that Gail is not in today, however, I believe this issue needs to be addressed as soon as possible as it affects the Authority.  Please advise when you are available to discuss.

Thanks,

*Weslii Khahaifa, Esq.*
*Borough Litigation Chief, New York County*
*130 Livingston Street, 11th Fl.*
*Brooklyn, New York 11201*
*(718)694-3991 Telephone*
*(718)694-1023 Fax*

CONFIDENTIAL                                                                    NYCTA 003295

| | |
|---|---|
| **From:** | Khahaifa, Weslii |
| **To:** | Heisler, Lawrence |
| **Subject:** | RE: Judge Sokoloff |
| **Date:** | Wednesday, December 4, 2019 2:35:00 PM |

## Ok. Thanks.

**From:** Heisler, Lawrence
**Sent:** Wednesday, December 4, 2019 2:35 PM
**To:** Khahaifa, Weslii <Weslii.Khahaifa@nyct.com>
**Subject:** Re: Judge Sokoloff

Friday morning.

Get Outlook for iOS

**From:** Khahaifa, Weslii <Weslii.Khahaifa@nyct.com>
**Sent:** Wednesday, December 4, 2019 2:33:28 PM
**To:** Goode, Y. Gail <Y.Gail.Goode@nyct.com>; Heisler, Lawrence <Lawrence.Heisler@nyct.com>
**Subject:** Judge Sokoloff

Gail and Larry,

You may recall our recent discussion regarding my conversation with Judge Sokoloff on 12/7 wherein she discussed an event that took place that day during a status conference on the Alexander Wood case (a 12-9) involving Amelia. I met with Judge Sokoloff to discuss the issue and in addition to her extreme dissatisfaction with Amelia's conduct, she referred to me two other judges who voiced similar, disturbing complaints. The judges all indicated that Amelia has demonstrated a pattern of unprofessional and unethical conduct. I realize that Gail is not in today, however, I believe this issue needs to be addressed as soon as possible as it affects the Authority. Please advise when you are available to discuss.

Thanks,

*Weslii Khahaifa, Esq.*

*Borough Litigation Chief, New York County*

*130 Livingston Street, 11th Fl.*
*Brooklyn, New York 11201*
*(718)694-3991 Telephone*
*(718)694-1023 Fax*

CONFIDENTIAL

NYSCEF DOC. NO. 60

RECEIVED NYSCEF: 11/28/2018

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| PRESENT: | **HON. KATHRYN E. FREED** | PART | **IAS MOTION 2** |
| | *Justice* | | |

--------------------------------------------------------------------------X

MARIA GARCIA,

                Plaintiff,

                - v -

METROPOLITAN TRANSPORTATION AUTHORITY AND NEW YORK CITY TRANSIT AUTHORITY,

                Defendants.

--------------------------------------------------------------------------X

INDEX NO.      157482/2012

MOTION SEQ. NO.      002

**DECISION AND ORDER**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57

were read on this motion to/for               SET ASIDE VERDICT           .

Upon the foregoing documents, it is ordered that the motion and cross motion are decided as follows.

This action arises from an incident in which plaintiff Maria Garcia was allegedly injured when she slipped and fell on stairs inside the subway station located at 168th Street and Broadway in New York County (the station), which was allegedly operated by defendants Metropolitan Transportation Authority (MTA) and New York City Transit Authority (NYCTA) (collectively defendants). As a result of the accident, plaintiff sustained injuries to her hand and teeth. A trial was held in this matter from December 4 – 15, 2017, after which a jury awarded plaintiff $110,000 for past pain and suffering, $90,000 for future pain and suffering, and $20,000 for future dental expenses. The jury apportioned liability as follows: 51% to defendants and 49% to plaintiff.

Defendants now move, pursuant to CPLR 4404(a), to set aside the verdict and for a new trial on the grounds that 1) plaintiff failed to establish a prima facie case of liability; 2) the verdict

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION
Motion No.  002

Page 1 of 12

1 of 12

CONFIDENTIAL

NYCTA 003297

NYSCEF DOC. NO. 60                                    RECEIVED NYSCEF: 11/28/2018

was against the weight of the evidence; 3) this Court improperly precluded defense witness Ecliff

Aladdin from referring to his records during his trial testimony; 4) this Court improperly issued a

negative inference instruction to the jury against defendants regarding Aladdin's records; 5) this

Court improperly allowed the records of plaintiff's treating dentist, Dr. Moshe Aaron Glick, to be

admitted into evidence despite the fact that the records were not provided to defense counsel in

accordance with 22 NYCRR 202.17(b)(1); 6) this Court improperly instructed the jury that they

were permitted to award plaintiff future dental expenses despite the fact that such damages were

not pleaded; 7) this Court improperly issued a missing witness charge regarding MTA witness

William Kava; and 8) for such other and further relief as this Court deems just and proper.

Plaintiff cross-moves 1) to deny defendants' motion; 2) pursuant to CPLR 4401, granting

plaintiff a directed verdict on liability and awarding her $40,000 in future medical expenses; 3)

alternatively, setting aside the verdict apportioning liability to plaintiff as against the weight of the

evidence; 4) pursuant to CPLR 4404, increasing the amount of damages awarded for future

medical expenses to $40,000; and 5) for such other and further relief as this Court deems just and

proper.

## DEFENDANTS' MOTION

### Prima Facie Case/Weight of the Evidence

> CPLR 4404(a) provides that "the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial ... where the verdict is contrary to the weight of the evidence [or] in the interests of justice." The standard for setting aside the verdict and entering judgment for the moving party as a matter of law is whether "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men [and women] to the conclusion reached by the jury on the basis of the evidence presented at trial. The criteria to be applied in making this assessment are essentially those required of a trial judge

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION              Page 2 of 12
Motion No.  002

2 of 12

CONFIDENTIAL                                                          NYCTA 003298

NYSCEF DOC. NO. 60                                    RECEIVED NYSCEF: 11/28/2018

asked to direct a verdict." *Cohen v. Hallmark Cards*, 45 NY2d 493, 499, 382 N.E.2d 1145, 410 N.Y.S.2d 282 (1978). However, "in any case in which it can be said that the evidence is such that it would not be utterly irrational for a jury to reach the result it has determined upon, and thus, a valid question of fact exists, the court may not conclude that the verdict is as a matter of law not supported by the evidence." Id (citation omitted). Moreover, "[i]n considering the motion for judgment as a matter of law, the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant." *See Szczerbiak v. Pilat*, 90 NY2d 553, 556 (1997).

The standard used in determining a motion to a set aside a verdict as against the weight of the evidence is whether the evidence so preponderated in favor of the moving party, that the verdict "could not have been reached on any fair interpretation of the evidence." *Lolik v. Big V Supermarkets, Inc.*, 86 NY2d 744, 746 (1995), quoting *Moffatt v. Moffatt*, 86 AD2d 864 (2d Dept 1982), aff'd 62 NY2d 875 (1985). This "does not involve a question of law, but rather a discretionary balancing of factors." *Cohen v. Hallmark Cards*, 45 NY2d at 499.


*Rohaey v Air & Liquid Sys. Corp.*, 2018 NY Slip Op 32582[U], *2-3 (Sup Ct, NY County 2018).

At trial, plaintiff testified that she fell on wet slippery stairs at the station on a rainy day. Tr. 158, 335-339.[1] On the day of the accident, she wore flat shoes. Tr. 333. She had been to the station many times before and, on the date of the incident, it was in the same condition as on days when she had seen the station being cleaned. Tr. 156-158. She further stated that there were puddles in the station that day. Tr. 349. Although plaintiff saw an MTA employee present, she did not know whether he was cleaning. Tr. 349. Nor did she recall whether she was holding a handrail at the time she fell. Tr. 436. Additionally, Ecliff Aladdin, defendants' cleaning supervisor, testified that, when the station was cleaned, it was power washed, which process caused the platforms and stairways to be wet. Tr. 633-634.

---

[1] The abbreviation "Tr" refers to specific pages of the trial transcript.

**157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION**                **Page 3 of 12**
 Motion No. 002

CONFIDENTIAL                                                           NYCTA 003299

Given the foregoing testimony, this Court cannot conclude that plaintiff failed to establish a prima facie case of negligence as against defendants. This Court also declines to set aside the verdict as against the weight of the evidence since the evidence did not preponderate so greatly in favor of defendants that the verdict could not have been reached based on a fair interpretation of the evidence. Although defendants contend that the station was wet due to rain, the jury could have concluded that the accident arose from their failure to maintain the station in a safe condition.

**Preclusion of Aladdin From Referring to His Records**

In January of 2013, during the course of discovery, plaintiff served a demand on defendants for documents in their possession relating to the maintenance and cleaning of the station. Tr. 2, 20. By letter dated August 6, 2013, defendants produced several documents "prepared in the ordinary course of business pertaining to the alleged accident." Although defendants did produce some records during discovery, including a cleaning report for the day of the accident, they did not provide time logs, control sheets, maintenance records or cleaning schedules. Tr. 3-4. However, during discovery, defense counsel failed to provide any records relating to power washing of the station, insisting that plaintiff only demanded cleaning records and did not specifically ask for power washing reports. It was not until the eve of trial, November 30, 2017, that defense counsel provided the foregoing records, including cleaning schedules for the station which showed when it was "power washed". Tr. 3-4. Defense counsel conceded that the records produced at the time of trial had not previously been provided (Tr. 5.), despite the fact that these documents had been demanded during discovery and were sought by subpoenas served by plaintiff on defendants in November of 2016 and August 2017.[2]

---

[2] Although defense counsel disingenuously asserted at trial that she, personally, never received the 2016 subpoena, it is evident from the date stamped on the subpoena, November 2, 2016, that it had been received by her office. Tr.

**157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION**                    **Page 4 of 12**
**Motion No.  002**

CONFIDENTIAL                                                                NYCTA 003300

NYSCEF DOC. NO. 60

RECEIVED NYSCEF: 11/28/2018

Disturbingly, when the records were finally provided to plaintiff's attorney and this Court, they still failed to include any records addressing whether the station was power washed on the day of the incident. Defense counsel did, provide records relating to power washing during the days leading up to the date of the accident, just omitting the actual day of the accident, which obviously, would have been the relevant record regarding liability in this matter. Tr. 21-22.   Thus, defense counsel's representation to this Court that she had provided plaintiff's attorney with *all* of the aforementioned records was false. Tr. 21-22, 26-27. This Court was also appalled by the fact that defense counsel initially handed the said records to this Court and, when this Court inquired whether plaintiff's attorney had already been provided with a copy of the same, counsel misrepresented to this Court that the records had previously been provided to plaintiff's counsel. Tr. 10-11, 15, 19-21.  When asked about the records by this Court, however, plaintiff's counsel vehemently denied having ever received the complete package of documents that was provided to this Court. Tr. 19.  Upon inspection of plaintiff's documents, it was clear that plaintiff's counsel had not received the same set of documents that defense counsel provided to the Court. Tr. 20-22. Although defense counsel initially represented to this Court that defendants' failure to produce the records arose from a misunderstanding, she later said that the records were not provided to plaintiff's attorney because they were the subject of her motion to quash plaintiff's 2017 subpoena which the said documents.  Tr. 8, 15.

'Additionally, the attorneys for the parties disagreed about whether defendants were ordered to provide the said records  during settlement discussions with Justice McMahon.  Given the disagreement, this Court inquired whether Justice McMahon's law clerk had instructed defendant

48-49.  The August 2017 subpoenas also bear stamps confirming receipt of the same by defense counsel's office. Although defense counsel moved to quash 2017 subpoenas served for defendants' records as well as for the deposition of defendants' employee, assistant train dispatcher William Kava, the motion was denied. Tr. 32, 74.

5 of 12

CONFIDENTIAL

NYCTA 003301

to turn these records over to plaintiff. Justice McMahon's law clerk confirmed that defendants' attorney was indeed instructed to provide plaintiff with the records. Thus, it is evident that defendants' attorney made every effort to withhold these relevant records from plaintiff's counsel until the eve of trial. The Court again notes that the most relevant document for the day of the incident, was never provided to either plaintiff or the Court.

Defendants sought to have Aladdin, whom they claim was most familiar with the records, testify about them at trial. Tr. 7-77. However, this Court precluded the introduction of the newly exchanged records into evidence, and prohibited Aladdin from testifying about them, "since they were not produced in a timely fashion", defense counsel conceded that they had been kept in the ordinary course of business, and plaintiff would be prejudiced if defendants had the opportunity to introduce them. Tr. 79-80.

Defendants now assert, without citing any legal authority, that this Court erred in precluding the records and Aladdin's testimony about them. However, CPLR 3126 provides a court with broad discretion to impose a wide range of penalties upon a party who "willfully fails to disclose information which the court finds ought to have been disclosed." Given that defendant did not disclose any maintenance or cleaning records in response to plaintiff's discovery demand, or in response to plaintiff's 2016 and 2017 subpoenas, but rather waited until the eve of trial to disclose this information, this Court properly acted within its discretion in precluding the records, as well as any testimony by Aladdin regarding the same, since defendants should not be rewarded for their dilatory conduct. *See Matter of State v John S.*, 23 NY3d 326, 344 (2014) (trial courts are "generally accorded broad discretion in making evidentiary rulings, which are entitled to deference on appeal absent an abuse of discretion"); *see also Matter of Gary F.*, 143 AD3d 495 (1st Dept 2016).

**157482/2012   GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION**
**Motion No. 002**                                                      **Page 6 of 12**

CONFIDENTIAL                                                          NYCTA 003302

NYSCEF DOC. NO. 60    RECEIVED NYSCEF: 11/28/2018

**Negative Inference Charge Regarding Defendants' Records**

Defendants argue that this Court erred by instructing the jury that it could draw an adverse inference against defendants regarding the condition of the mezzanine and the stairs in the station. They claim that they were prejudiced by this instruction because the cleaning schedule records would have revealed that no power washing was performed on the day of the incident. Tr. 76-77. However, as discussed above, this Court has the authority and discretion, pursuant to CPLR 3126, to impose this sanction on defendants due to their failure to provide the cleaning records (*see Schilling v Quiros,* 23 AD3d 243 [1st Dept 2005]) and again notes that defendants never provided any records regarding whether the station was power washed on the date of plaintiff's accident. Although defense counsel conceded that these records were maintained by her clients during the regular course of business, they were not provided to plaintiff's counsel until the eve of trial, despite the latter's discovery demand and service of subpoenas in November 2016 and August 2017 seeking the same. Since defendants "fail[ed] to disclose the records in a timely fashion, despite due demand, then attempted to [provide this Court] with an incomplete set of records" (Tr. 922), and failed to produce the cleaning schedules "without adequate explanation", despite a request for the same by plaintiff's counsel (Tr. 925), this Court did not abuse its discretion in imposing this sanction (*see Matter of State v John S.,* 23 NY3d at 344).

Although defendants' attorney asserted at oral argument of the instant motion that this Court "colluded" with plaintiff's counsel by allowing the latter to discuss the precluded records during summation, this unusually extreme accusation is false. In their motion papers, defendants support this argument with references to the testimony of plaintiff and Aladdin and the document they refer to is an "unusual occurrence report", which was marked as an exhibit. Tr. 567, 986-987.

**157482/2012   GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION**
**Motion No. 002**                                                          **Page 7 of 12**

7 of 12

CONFIDENTIAL                                                     NYCTA 003303

NYSCEF DOC. NO. 60

RECEIVED NYSCEF: 11/28/2018

**Admission of Dr. Glick's Records Into Evidence**

Defendants assert that this Court erred by failing to preclude the records of Dr. Glick, plaintiff's treating dentist, because plaintiff failed to comply with 22 NYCRR 202.17(b)(1), which requires that medical reports be provided to a defendant's examining physician at least 20 days before a physical examination is to be conducted. However, as this Court noted, defendants were not prejudiced in any way by the conduct of plaintiff's counsel. *See Hughes v Webb*, 40 AD3d 1035 (2d Dept 2007); *Freeman v Kirkland*, 184 AD3d 331 (1st Dept 1992). Defendants' dental expert, Dr. Donald Tanenbaum, conducted his examination of plaintiff on December 12. 2013. Tr. 199. Although defense counsel claimed defendants "didn't know that Dr. Glick treated plaintiff at all" (Tr. 191) and denied that she received Dr. Glick's records, or an authorization releasing them, prior to that date, plaintiff's counsel produced an affidavit of service proving that, on January 17, 2013, he served defendants with a notice of medical exchange containing Dr. Glick's records, as well as an authorization for the release of the same. Tr. 201-204. Therefore, this argument is without merit.

**Award of Future Dental Expenses**

Defense counsel maintains that this Court erred by allowing the jury to award plaintiff future dental expenses because such damages were not pleaded in the bill of particulars. However, as this Court noted, the bill of particulars specifically set forth the injuries claimed, including those dental in nature, alleged that all of plaintiff's injuries were permanent. Tr. 897. This Court properly exercised its discretion in instructing the jury that it was permitted to award future dental expenses

CONFIDENTIAL                                                                      NYCTA 003304

NYSCEF DOC. NO. 60                                    RECEIVED NYSCEF: 11/28/2018

given that the need for future medical treatment was clearly alleged in a bill of particulars setting forth a laundry list of injuries, both medical and dental. Tr. 897, 901. In so ruling, this Court further noted that the trial testimony reflected that plaintiff would need future dental treatment. Tr. 894.

In support of their argument, defendants rely on the case of *Reid v Rubenstein*, 155 AD3d 448 (2nd Dept 2017), in which an expert was precluded from testifying about plaintiff's need to undergo a bone graft where such injury was not alleged in the bill of particulars. However, *Reid* is distinguishable from this case since, as noted above, plaintiff in this matter clearly alleged dental injuries and itemized the same.

**Adverse Inference Instruction Regarding Kava**

Defense counsel argues that this Court erred by giving a missing witness charge regarding assistant train dispatcher William Kava, whose name appeared in defendants' incident reports and who was first on the scene after plaintiff's alleged accident. Tr. 907, 921. Defendants maintain that a missing witness charge is improper in this situation since they did not have control over Kava at the time they received the November 2016 subpoena. This, they urge, is because he retired in 2015.

As this Court noted at trial, plaintiff served defendants with a subpoena for Kava's deposition on or about November 2, 2016 and defendants failed to respond to the same. Tr. 913, 919. On or about August 29, 2017, plaintiff served an identical subpoena on defendants. Tr. 920. However, it was not until November 6, 2017 that defendants wrote to plaintiff's counsel to advise that Kava had retired in 2015. Tr. 920. That correspondence contained Kava's last-known address.

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION                    Page 9 of 12
Motion No.  002

9 of 12

CONFIDENTIAL                                                        NYCTA 003305

NYSCEF DOC. NO. 60                                    RECEIVED NYSCEF: 11/28/2018

Tr. 920. Although plaintiff's counsel tried to subpoena Kava at that address, that attempt was unsuccessful and plaintiff's private investigator was unable to locate him. Tr. 920.

Given these facts, this Court ruled that it would give the jury an adverse inference charge regarding defendants' failure to provide information regarding Kava. Specifically, this Court determined that defendants' "failure to timely notify plaintiff that Kava * * * no longer worked for [defendants] and to provide [his] last-known address was prejudicial to plaintiff and has prevented plaintiff from securing [his] testimony in time for this trial." Tr. 920.

Despite the parties' references to a "missing witness" instruction which, as defense counsel asserts, would require, inter alia, that defendants had control over Kava (*see People v Savinon*, 100 NY2d 192 [2003]), it is apparent from the trial transcript that the adverse inference charge relating to Kava was not a missing witness charge but rather a discovery sanction pursuant to CPLR 3126. In granting plaintiff's request for the adverse inference instruction, this Court reasoned that, although defendants were notified by subpoena as early as 2016 that plaintiff sought to call Kava to testify at trial (Tr. 905-906, 913), defendants failed, "without adequate explanation" (Tr. 926), to provide plaintiff with any information regarding Kava's whereabouts, including the fact that he had retired in 2015, until the eve of trial. Tr. 905-906, 913, 920, 926. Therefore, this Court properly exercised its discretion in determining that defendants' delay in providing plaintiff with information regarding Kava, such as his last-known address or the fact that he had retired in 2015, "was prejudicial to plaintiff", "prevented the plaintiff from securing [Kava's testimony] in time for [the] trial", and led to "plaintiff's inability to call [him]" as a witness at trial (Tr. 920, 926). Any doubt that the adverse inference instruction was given as a discovery sanction is dispelled by the fact that this Court advised counsel that the instruction was being given based on the case of *Crooke v Bonofacio*, 147 AD3d 510 (1st Dept 2017), in which the Appellate Division, First

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION          Page 10 of 12
Motion No.  002

10 of 12

CONFIDENTIAL                                                        NYCTA 003306

NYSCEF DOC. NO. 60                                          RECEIVED NYSCEF: 11/28/2018

Department affirmed the IAS Court's discretionary striking of a defendant's affirmative defense where that defendant intentionally failed to appear for deposition. Tr. 921.

## PLAINTIFF'S CROSS MOTION

### Denial of Defendants' Motion

Plaintiff first asserts that it is entitled to an order denying defendants' motion to set aside the verdict. However, since defendants' motion is denied, this branch of plaintiff's cross motion is denied as moot.

### Directed Verdict as to Liability/Setting Aside Apportionment of Liability to Plaintiff

Plaintiff argues that it is entitled to a directed verdict apportioning 100% liability to defendants. She also claims that the jury's finding that she was 49% at fault for the alleged accident must be set aside as against the weight of the evidence pursuant to CPLR 4404. However, this Court declines to disturb the jury's apportionment of fault. As noted previously, plaintiff testified that the station was wet at the time of the accident and could not state for certain whether it had been washed that day. Plaintiff also stated that it was raining on the day of the incident, she was wearing flat shoes, and that she could not recall whether she held the handrail on the stairs. Since a finder of fact could infer that plaintiff may not have exercised sufficient caution while walking in the wet station, the evidence did not preponderate so greatly in favor of plaintiff that the jury could not have apportioned liability of 49% to plaintiff based on a fair interpretation of the evidence. *See Lolik v Big V Supermarkets, Inc.*, 86 NY2d at 746.

### Future Dental Expenses

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION     Page 11 of 12
Motion No. 002

CONFIDENTIAL                                              NYCTA 003307

NYSCEF DOC. NO. 60                                                     RECEIVED NYSCEF: 11/28/2018

Plaintiff argues that she is entitled to an increase of her damages for future dental expenses from $20,000 to $40,000. Dr. Glick testified that plaintiff would need at least $30,000, and probably closer to $40,000, in future dental treatment. Tr. 250. Defendants' expert, Dr. Tanenbaum, did not contradict Dr. Glick and in fact conceded that, as plaintiff's treating dentist, Dr. Glick would be in the best position to evaluate plaintiff's future dental costs. Tr. 760-763. Given Dr. Glick's uncontradicted testimony, this Court hereby increases the award for plaintiff's future dental expenses from $20,000 to $35,000.

Therefore, in light of the foregoing, it is hereby:

ORDERED that the motion by defendants Metropolitan Transportation Authority and New York City Transit Authority to set aside the verdict is denied in all respects; and it is further

ORDERED that the cross motion by plaintiff Maria M. Garcia to set aside the verdict is granted only to the extent of vacating the award of $20,000 for future dental expenses and ordering a new trial on damages for future dental expenses, unless within 30 days of service of a copy of this decision and order with notice of entry, defendants execute a stipulation agreeing to increase the award to plaintiff for future dental expenses from $20,000 to $35,000; and it is further

ORDERED that this constitutes the decision and order of this court.

| 11/21/2018 | | | | | |
|---|---|---|---|---|---|
| DATE | | | KATHRYN E. FREED, J.S.C. | | |
| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | | |
| | [ ] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | [X] OTHER | |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE | |

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION                Page 12 of 12
Motion No.  002

CONFIDENTIAL                                                              NYCTA 003308