UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AMELIA YEHOSHUA,

            Plaintiff,            21-cv-04055 (FB) (SJB)

-against-

MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, THE NEW YORK CITY TRANSIT AUTHORITY, and WESLII KHAHAIFA,

            Defendants.

**DECLARATION OF DAVID FARBER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, David Farber, declare as follows:

1. I am currently the Vice President and General Counsel of the New York City Transit Authority. I have worked at the New York City Transit Authority since November 2018, when I was hired as a Deputy Executive Assistant General Counsel. I became Acting General Counsel in or around early 2019, and was promoted into the Vice President and General Counsel position in or around November 2019.

2. Unless otherwise noted, the statements in this Declaration are made upon my personal knowledge. Where statements are made upon information and belief, the sources of my information and the basis of my belief are the records and files maintained by New York City Transit Authority or Manhattan and Bronx Surface Transit Operating Authority (collectively, "NYCTA"), which I believe to be true and correct.

3. I am Jewish.

311858995v.2

## The MTA Office of Inspector General January 2020 Report

4. In early 2020, I received a copy of an investigative report authored by the MTA Office of Inspector General ("OIG Report"). I understand that a copy of the OIG Report dated January 23, 2020 was marked as Defendant's Exhibit 2 at Plaintiff's deposition.

5. Plaintiff was the subject of the OIG Report.

6. At the time, Plaintiff was an attorney in the NYCTA Law Department's Division of Torts ("Torts").

7. Among other findings, the OIG Report concluded that Plaintiff violated various provisions of the MTA All-Agency Code of Ethics, the New York State Public Officers Law, and the MTA All-Agency Computer and Social Media Usage Policy Directive.

8. I found the conclusions of the OIG Report to be problematic. Even the appearance of impropriety by a NYCTA lawyer is prohibited by applicable law. Further, as a public benefit corporation, NYCTA maintains a zero-tolerance stance with respect to ethical violations.

9. The OIG Report recommended that Plaintiff be disciplined as deemed appropriate by NYCTA.

10. The OIG Report is the only OIG report I have received in my entire tenure at NYCTA which substantiated allegations of unethical conduct by an attorney in the NYCTA Law Department.

11. Based on the conduct as described in the OIG Report, I determined that termination of Plaintiff's employment was the appropriate disciplinary remedy. I made this decision with input from NYCTA's Labor Relations Department. I did not seek or receive input from employees within the NYCTA Law Department.

311858995v.2

12. In making this determination, I did not seek input from Torts management, including Lawrence Heisler, who at the time was the Head of Torts. At the time, I believed there was no reason for Heisler's input. To the contrary, the OIG findings were clear, and the substantiated violation of numerous ethical rules, in my opinion, precluded implementation of any discipline other than termination. Further, I was aware that Heisler had been interviewed by the OIG, and therefore, his opinions regarding the alleged conduct were encompassed in the OIG's report.

13. Still, I advised Heisler of my decision prior to implementing discipline.

14. I also contacted Weslii Khahaifa who had been Plaintiff's supervisor for several years, and who was also Plaintiff's supervisor at the time of the conduct which formed the basis of the OIG Report. It is my recollection as well that, at the time I contacted Khahaifa, she was still technically Plaintiff's supervisor "on paper."

15. I informed Khahaifa of the OIG's investigation, and of the findings in the OIG Report.

16. I asked Khahaifa to sign and deliver the Disciplinary Action Notice ("DAN") to Plaintiff. I provided a copy of the DAN to Khahaifa. It is my understanding that a copy of this DAN was marked as Defendant's Exhibit 1 at Plaintiff's deposition.

17. Khahaifa played no role in my determination of the appropriate discipline to impose upon Plaintiff.

18. At the time I asked Khahaifa to sign and deliver the DAN to Plaintiff, I was not aware of any issues or concerns between Plaintiff and Khahaifa. I was not aware of any claim by Plaintiff that Khahaifa had ever treated her unfairly or unlawfully.

311858995v.2

19. Plaintiff, through an attorney, appealed the proposed penalty of dismissal set out in the DAN.

20. Based in part on the arguments asserted in Plaintiff's appeal, I reduced the recommended discipline to a 20-day unpaid suspension.

**Multiple Judges Complain About Plaintiff**

21. In or around February 2021, I learned that sitting judges in New York Supreme Court, County of New York, complained about Plaintiff's conduct when representing NYCTA in their courtrooms.

22. To the best of my recollection, I learned of these complaints as the result of NYCTA's investigation into Plaintiff's State Division of Human Rights complaint which, upon information and belief, she filed on or around December 30, 2020.

23. After discovery of this issue, I asked Khahaifa to prepare a memorandum for my review summarizing the complaints and explaining how the complaints had been addressed within Torts.

24. Khahaifa provided the requested memorandum to me in or around February 2021. It is my understanding that a copy of this memorandum was marked as Defendant's Exhibit 19 at Plaintiff's deposition.

25. Based on the nature of the complaints levied against Plaintiff by sitting New York Supreme Court judges, and based on what appeared to me to be a pattern of escalating dishonest and unethical conduct, I determined that Plaintiff's employment should be terminated.

26. I am not aware of any NYCTA Law Department attorney other than Plaintiff who, during my tenure at NYCTA, received complaints from multiple judges about his or her lack of candor, dishonesty and unprofessional conduct before the Court. Certain of the complaints

4

against Plaintiff were also memorialized in a published opinion, which I found particularly disturbing.

27. I did not consult management within Torts, including Heisler, in connection with my decision to terminate Plaintiff's employment. I did not consult Heisler because I was advised that Heisler had been aware of these complaints against Plaintiff but had not taken any disciplinary action.

28. I issued a DAN to Plaintiff as a result of these complaints on or about March 29, 2021. I understand that a copy of this DAN was marked at Plaintiff's deposition as Defendant's Exhibit 16. This DAN recommended the termination of Plaintiff's employment.

29. Plaintiff, through an attorney, appealed the proposed penalty of dismissal.

30. In or around July 2021, I directed Mariel Thompson – a NYCTA attorney – to conduct an investigation into the allegations underlying the March 29, 2021 DAN.

31. To the best of my knowledge, Thompson is Jewish.

32. Attached hereto as Exhibit A is a true and correct copy of a memorandum dated September 17, 2021 which was prepared by Thompson. This document bears Bates Stamp Nos. NYCTA 003309-003319. Thompson's memorandum, on the whole, substantiates the allegations underpinning the specifications contained with the March 29, 2021 DAN.

33. I denied Plaintiff's appeal and sustained the recommended penalty of dismissal.

34. Attached hereto as Exhibit B is a true and correct copy of a letter I prepared and sent to Plaintiff's counsel on or about October 14, 2021 which sustained the recommended penalty of dismissal. This document bears Bates Stamp No. NYCTA 000258.

311858995v.2

## Timekeeping Approval

35. I am aware that in or around June 2020, Khahaifa retained timekeeping approval for Plaintiff, even though Plaintiff had transferred out of Khahaifa's Unit earlier in the year. It is my recollection that, as of June 2020, the records and files of NYCTA indicated that Khahaifa was still Plaintiff's manager.

36. It is my understanding that this was an administrative error. During and immediately following the COVID-19 health crisis at NYCTA, there were numerous administrative errors and delays.

/ / / / /

311858995v.2

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 12, 2024 at Brooklyn, New York.

_____
DAVID FARBER

311858995v.2