# Exhibit A

**DRAFT** – PRIVILEGED & CONFIDENTIAL

 **New York City Transit**

# Memorandum

**Date:** September 17, 2021

**To:** David I. Farber, Vice President & General Counsel

**From:** Mariel A. Thompson, Executive Agency Counsel

**Subject:** Summary of Investigation into Responses to Notice of Disciplinary Charges DAN No. 21-6314-0001

**BACKGROUND**: The purpose of this memorandum is to provide a summary of the investigation into allegations made by Amelia Yehoshua ("Yehoshua") in her letter dated April 26, 2021, in which she responds and objects to the Notice of Disciplinary Charges (DAN No. 21-6314-0001) issued on or about March 29, 2021. Yehoshua categorically denies that she violated any of NYCT's Rules and Regulations, including engaging in an improper performance of duty, gross misconduct or conduct unbecoming an authority employee.

As part of this investigation, interviews were conducted with witnesses alleged to have or reasonably calculated to have personal knowledge of the relevant facts alleged in both the disciplinary charges and responses to the disciplinary charges. Specifically, interviews were conducted with Matthew Finkel, Agency Attorney, New York County E&P Unit; Weslii Khahaifa, Chief, New York County Trial Unit; Alexandra Vandoros, Executive Agency Counsel, New York County Trial Unit; Gail Good, Deputy Executive General Counsel, Trials; Adrian Thompson, Supervisor, Claims Examiner, New York County Trial Unit; Lisa Urbont, Chief, Kings County Trial Unit; and Sherri Ehrlich, (retired) former Chief, New York County, E&P Unit.

All materials upon which the disciplinary charges were based along with any additional relevant documents identified during the investigation were reviewed, excepting any privileged communications.

**SUMMARY OF YEHOSHUA'S RESPONSES AND INVESTIGATION INTO THE RESPONSES**:

1) **Yehoshua's response to Specification I related to the November 7, 2019 conference before Judge Sokoloff**: Yehoshua denies any improper conduct before Judge Sokoloff during the discovery conference on November 7, 2019 related to the case of *Alexander Wood v. NYCT* matter (TA-2017-08-06-01-001). Specifically, Yehoshua alleges that "prior to appearing on this newly assigned matter, Yehoshua spoke with her colleague Matt Finkel who advised that NYCT's legal position was not to provide certain information

1

**DRAFT** – PRIVILEGED & CONFIDENTIAL

being requested by the plaintiff it was already available as a public record." She said she "argued before Judge Sokoloff that certain information at issue was not subject to discovery under the CPLR." Yehoshua alleges that "Judge Sokoloff disagreed with the NYCT position on the items at issue", and so she "advised Mr. Heisler of the situation" who "disagreed with the Judge's decision, but given her ruling directed that NYCT disclose to plaintiff any of the items at issue." Yehoshua also claims that "a review of the file found that the items sought by the plaintiff's attorney did not exist, and that plaintiff was merely speculating that the items may have existed" so the issue was "rendered moot."

a. **Investigation**: In connection with the investigation into Yehoshua's response to this specification, interviews were conducted with Matthew Finkel, the Agency Attorney referred to in Yehoshua's response, Weslii Khahaifa ("Khahaifa"), Yehoshua's direct supervisor at the time, Alexandra Vandoros, a senior trial attorney in Yehoshua's unit who was ultimately reassigned the *Wood* case, and Sherri Ehrlich, who supervised E&P for New York County and was identified as having personal knowledge. Contemporaneous communications and records related to the *Wood* matter were also reviewed.

   i. *Summary of Matthew Finkel Interview*: Agency Attorney Matthew Finkel was interviewed and asked about Yehoshua's assertion that she sought and relied on legal advice from him. Finkel stated that he does not recall any specific conversation with Yehoshua concerning discovery and thought it would be strange for a senior trial attorney to seek legal advice from him, since he is not a trial attorney and is a lower level attorney in the E&P unit. However, Finkel said that if they did have a general conversation about discovery in connection with a case she was working on, his answer would have depended on the specific record being requested (e.g., a news article in the public domain he would likely assert was a public record). When asked specifically about police reports, he said that his understanding is that if a plaintiff asks NYCT to turn over NYPD records in its possession, NYCT first asks plaintiffs to subpoena the records directly from the NYPD since they are not records generated by NYCT. However, Finkel said it is possible a Judge ask that we turn those records in our possession over, noting that they contain very helpful information. He also said NYCT routinely request those records at the beginning of a case. He said he did not really work with Yehoshua.

   ii. *Summary of Khahaifa Interview*: Khahaifa rejected Yehoshua's assertion that the issue before the Judge was turning over a public record. She explained that the Judge reported to her that the parties were discussing NYCT's written response to plaintiff's demand for witnesses wherein Yehoshua falsely represented that NYCT had no knowledge of any witnesses with regard to the subject accident. Counsel for plaintiff (Wood) complained to the Judge that NYCT was withholding information and documents and requested that NYCT turn over the NYPD DD5 reports in its possession. It was learned that Yehoshua had inadvertently turned over a record from that report that had a witness's name on it. The Judge told Khahaifa that when Yehoshua denied knowledge of any witnesses, she (Judge Sokoloff) conveyed her

2

**DRAFT** – PRIVILEGED & CONFIDENTIAL

surprise to hear that, given the extensive investigations that were usually undertaken by both NYCT and the NYPD. Judge Sokoloff told Khahaifa that she asked Yehoshua whether Transit was in possession of the DD5s and that Yehoshua lied to her at least twice, "parsing her words" with regard to NYCT's possession of these reports. The Judge reported that upon further questioning, Yehoshua admitted that NYCT might have the reports, and it was at some point confirmed that NYCT was aware of at least one witness who had been interviewed by NYCT investigators as well as the press. The Judge directed Transit to exchange the names of the witnesses listed in the DD5 reports and/or exchange those DD5 reports that contain witness information. Khahaifa said that Judge Sokoloff warned her that she would not countenance the conduct displayed by Yehoshua going forward and indicated that she felt very uncomfortable and upset that had put her in a position where she might have to report her to the Grievance Committee. Judge Sokoloff also directed that Yehoshua not appear before her again on this case, referred to negative feedback about Yehoshua from other New York County judges, and indicated that she wanted to further discuss the issue at some point at Khahaifa's convenience. Details of this conversation are set forth in a Memo by Khahaifa dated February 27, 2021.

iii. *Summary of Alexandra Vandoros Interview*: Vandoros is a senior trial attorney in New York County who at times worked very closely with Yehoshua and was ultimately reassigned the *Wood* case. Vandoros recalled the events leading up to her assignment of the Alexander Wood case and reviewed related emails. Vandoros recalled learning from Khahaifa on or shortly after the date of Yehoshua's November 7, 2019 appearance before Judge Sokoloff, that the Judge called Khahaifa to convey her disappointment about Yehoshua's conduct and to instruct that Yehoshua not appear on the case again. The next scheduled conference in the *Wood* case was for November 21, 2019, and on November 20, 2019, she said that she, Khahaifa, John Jerman (another senior trial attorney in the group) and Yehoshua met in the office to discuss the case with the purpose of helping Yehoshua with preparation of discovery responses that were outstanding, and to prepare for the conference that was on for November 21st that Yehoshua was not permitted to attend. Vandoros said that at that time, either John Jerman or she was going to be assigned to cover the conference the following day and ultimately she was asked to attend the conference. Vandoros said she reviewed the file in anticipation of the conference, including discovery orders/materials, and copies of draft responses Yehoshua had prepared as of that date. Vandoros said that among other things, the drafts required substantial revision and a lot of the documentation and diagrams which NYCT needed to respond to the plaintiff's demands had not even been requested (*see* more in the Response to Specification IV section below).

Vandoros said that it was either when she appeared at the *Wood* status conference on November 21, 2019 or following a court appearance on one of her cases soon thereafter (she did not recall the precise date) that Judge Sokoloff called Vandoros to the bench individually after the conference was completed and shared with her what

3

CONFIDENTIAL

NYCTA 003311

**DRAFT** – PRIVILEGED & CONFIDENTIAL

took place on November 7th. Judge Sokoloff said she was still shaken and upset by what had occurred and explained that when the parties and Court were discussing a written response to plaintiff's discovery demand for witness information, Yehoshua denied knowledge of any witnesses to the accident which was later proved to be false.[1] The Judge also said she was very surprised about Yehoshua's denial about having DD5 reports since the NYCT usually obtained the NYPD reports right away.[2] The Judge told Vandoros that when Judge Sokoloff asked Yehoshua whether she had the NYPD DD5's in her file, she said Yehoshua denied having the DD5's or knowledge of any witnesses, and upon further questioning, equivocated, leading the Judge to conclude that Yehoshua was lying to her. The Judge said that upon further questioning, Yehoshua indicated she might have the DD5's.

Vandoros recounted that at the November 21st conference, after some back and forth about discovery, Plaintiff's counsel and she entered into an order concerning the outstanding discovery. The order required NYCT to serve responses, several of which were due in advance of the next deposition in the case scheduled for January 6, 2020. Vandoros also requested additional discovery from plaintiff at that time.

Following Vandoros's November 21st appearance, she said she discussed the case with Yehoshua and provided Khahaifa and Yehoshua a copy of the November 21, 2019 order to notify Yehoshua about the deadlines. She asked Yehoshua to revise her prior draft responses, but in the interim, because Yehoshua had a trial that was about to commence, she did not complete and serve the responses. In light of the discovery deadlines set forth in the November 21, 2019 order, Vandoros stepped in and prepared and served a number of discovery responses and demands, and also requested medical record authorizations for the plaintiff and preserved NYCT's right to take an IME, which she said had not been requested by Yehoshua despite the fact that plaintiff's deposition had already occurred, and despite the fact that there were psychological injuries claimed in the case (*see* more below). Yehoshua was copied on these emails with plaintiff's counsel regarding the exchange of the discovery responses and demands. Vandoros said she was reassigned the case on or about January 29, 2020 in anticipation of Yehoshua's transfer to Kings County.

---

[1] Based on Vandoros's review of her emails, prior to the November 9, 2017 conference, Yehoshua had previously served a discovery response relating to witnesses attaching a document containing information for a person named Alexis Lamster. Following service of that response, Yehoshua contacted plaintiff's counsel, Jay Dankner, indicating that the exchange of that document was a mistake, was related to a different case and asked him to remove that paper from her response. At the November 7, 2019 conference, the Court asked Yehoshua to exchange any witnesses contained in the DD5's, and she subsequently exchanged the unredacted DD5's. Those unredacted DD5's contained information for Alexis Lamster.

[2] Vandoros had explained that in high exposure, complicated cases like these (man-under), the Law Dept. obtains the unredacted NYPD case file (containing the DD5's) early on, during the claim-stage of litigation, as it was for the *Wood* case. That is why it would have been surprising to Judge Sokoloff that at this later stage in the litigation, NYCT was not in possession of such reports.

4

CONFIDENTIAL

NYCTA 003312

**DRAFT** – PRIVILEGED & CONFIDENTIAL

  iv. *Summary of Sherri Ehrlich Interview*: Sherri Ehrlich (now retired) routinely appeared before Judge Sokoloff during the relevant time period for pre-trial issues including settlement conferences. She said Judge Sokoloff spoke directly with her (Sherri Ehrlich) about Yehoshua's conduct at the November 7, 2019 conference. Ehrlich said she was usually before Judge Sokoloff on Fridays for settlement and other conferences, and she surmises that the Judge spoke to her on November 8, 2019, which was a Friday and the day after the November 7th (Thursday) conference had taken place. Ehrlich said that Judge Sokoloff told her that she was extremely upset and disappointed by what she believed to Yehoshua's direct to lie to the court about a discovery issue in a case Yehoshua was handling. Yehoshua was not under Ehrlich's supervision and she was not familiar with that particular case.

  v. *Summary of Gail Goode Interview* Gail Goode recalled Khahaifa informing her about the conversation she had with Judge Sokoloff either on or around the same day. According to Goode, Heisler did not intend to pursue any action with respect to Yehoshua.

 b. **Conclusion:** In sum, the accounts from the witnesses and the records support this part of Specification I.

2) **Yehoshua's Response to Specification I related to prior inappropriate discussions with represented plaintiffs**:

Yehoshua denies that she was "improperly 'in a jury room speaking with the plaintiffs on a case against the Authority, while plaintiff's attorney was conducting settlement negotiations with another Authority attorney in the courtroom." Yehoshua denies that she did anything improper, says she "initiated no conversations with these individuals" and that she "did respond to a benign comment by one of these individuals about the weather."

 a. **Investigation:** In connection with the investigation into Yehoshua's response to this part of Specification I, interviews were conducted Khahaifa and Ehrlich.

  i. *Summary of Khahaifa interview*: According to Khahaifa, during the November 7th phone call she had with Judge Sokoloff, the Judge recalled a prior incident involving Yehoshua some months earlier, where she had found Yehoshua eating lunch in her jury room while having a conversation with plaintiffs on a NYCT case, who were represented by counsel. The Judge said that at the time, the plaintiffs' attorney was in the courtroom with the NYCT attorney engaged in settlement discussions, and the clients were instructed by the Judge to wait in the jury room as the discussions proceeded. She recounted that the Judge reported that after witnessing Yehoshua speaking with the plaintiffs, she admonished Yehoshua and advised her that it was inappropriate to speak with parties represented by counsel. She said Yehoshua responded by telling her that the conversation was harmless because she was not discussing the substance of their case. Khahaifa said that Judge Sokoloff had reported the behavior to Khahaifa and to Sherri Ehrlich.

5

**DRAFT** – PRIVILEGED & CONFIDENTIAL

    ii. *Summary of Sherri Ehrlich Interview***:** Sherri Ehrlich recalled this incident with Yehoshua and Judge Sokoloff, though could not remember the name of the case or the plaintiffs. She said during settlement conferences, Judge Sokoloff often had the parties sit in a jury room and separated the parties if she wanted to have private, separate discussions with the parties. She does recall a conference at which she believes she was speaking with a plaintiff's attorney on a case about settlement, when Judge Sokoloff came over and expressed surprise and frustration over the fact that Yehoshua was speaking to the plaintiffs whom were represented by counsel, while their counsel was speaking with her (Ehrlich). She did not recall the date or the case but thought it was likely during one of her settlement conferences before Judge Sokoloff on a Friday.

   b. **Conclusion:** The accounts from the witnesses support this part of Specification I.

3) **Yehoshua's Response to Specification II**: Yehoshua denies that she engaged in any improper or unprofessional conduct before Judge Lyle Frank during a trial (*Jonathan Chinn v NYCT*, Index No. 156841/2014) that took place in June 2019. Yehoshua said she received a favorable result and that Larry Heisler and Gail Goode were pleased with the outcome. She also stated that Gail Goode assisted her with the case including assisting in the preparation of cross examination. She said that while counsel for both sides in this litigation were "passionate advocates", Yehoshua did nothing improper and was never counselled or made aware of any complaints by the presiding judge.

   a. **Investigation**: Khahaifa and Gail Goode were interviewed concerning this specification and the Chinn trial transcript was reviewed, along with any related communications.

    i. *Summary of Interview with Gail Goode*: Gail Goode oversees trials, and she happened to observe this particular trial (among others that were handled by Yehoshua). Gail Goode remembered this particular trial at 80 Centre Street before Judge Lyle Frank in around June 2019. When asked about the trial and Yehoshua's performance, she said that Judge Frank was generally challenging for defendants and could give parties a hard time. However, she recalled that this was made worse because she said Yehoshua could be surly and combative, and she said that Yehoshua generally does not have a firm understanding and concept of the laws of evidence or a real appetite to learn the law.[3] Goode said that Yehoshua usually had to be guided through very basic tasks of trial work such as writing out

---

[3] She also noted that unlike all the other trial attorneys, she felt she had to take what Yehoshua says "with a grain of salt"; in other words, she did not always feel that Yehoshua was forthcoming or that you were "always getting the truth."

6

a cross examination and how to get records submitted into evidence. She said it was very surprising to her since Yehoshua was supposed to be a senior trial attorney. She recalled in this particular trial (*Chinn*) writing out (word for word) the cross examination for Yehoshua, which she directed Yehoshua to read line by line. Goode did not specifically recall Yehoshua holding her breath like a child or whether she actually "badgered" the witness, but said that it was often difficult for Yehoshua to accept, respect and move on from a Judge's ruling that she did not like, which she said at some point after you make a record, you have to. She said the Authority did receive a favorable outcome in this trial, and that she and Heisler did notify the Division and stated that they were pleased with the result.

ii. *Summary of Interview with Weslii Khahaifa*: Khahaifa reiterated Judge Frank's report from December 3, 2019, wherein Judge Frank said, among other things, that he continued to feel "exasperated" by Yehoshua when she was on trial before him last year on the Jonathan Chinn case and that he did not want to preside over another trial involving Yehoshua for at least a year.

iii. *Summary of Interview with Alexandra Vandoros*: Vandoros was asked if she had any recollection of working on this trial which she did not. However, she recalled receiving and was able to retrieve a text message from Yehoshua on or about June 16, 2019 asking her how to admit a certified weather report into evidence.

iv. *Chinn Transcripts*: The transcripts showed a number of arguments before Judge Frank and rulings with which Yehoshua disagreed on the record at times and pursued her arguments notwithstanding the ruling. However, it is difficult to ascertain from the transcript alone whether there was any inappropriate/ child-like behavior or expressions among the other things alleged.

b. **Conclusion:** The accounts from the witnesses and the report of the Judge support Specification II.

4) **Yehoshua's Response to Specification III**: Yehoshua denies that she engaged in any improper or unprofessional conduct before Judge Kathryn Freed during the trial of *Maria Garcia v. MTA, NYCT* (157482/2012). She says that NYCT had significant concerns about all litigation matters before Judge Freed. She said that these "macro concerns of NYCT contributed in part to the filing of motion papers co-written by supervisor Mr. Heisler raising concerns about Judge Freed's treatment of the matter." She denies that anything amounted to "improper performance of duty", "gross misconduct" or "conduct unbecoming of an employee."

a. **Investigation**: In connection with this Specification, Khahaifa and Goode were interviewed, and the decision issued by Judge Kathryn Freed dated November 28, 2018 was reviewed along with portions of the transcript.

7

**DRAFT** – PRIVILEGED & CONFIDENTIAL

    i. *Summary of Interview with Khahaifa*: Khahaifa recounted her meeting with Judge Freed in which Judge Freed expressed her disdain for Yehoshua's behavior. Judge Freed reported that she was "deeply affected and still very angry" about Yehoshua's behavior during the *Garcia* trial which had been tried before her in 2017. She said Judge Freed reported that during the *Garcia* trial Yehoshua was repeatedly late, dishonest, disrespectful and unprofessional. The Judge also reported that on one occasion during the trial, the Judge emerged from her chambers to find Amelia, who had arrived to court late, in the courtroom blow drying her hair in the jury box.

    ii. *Garcia Decision*: In the decision concerning NYCT's motion to set aside the verdict (an approximate $220K verdict for plaintiff), several scathing assertions were made about Yehoshua directly, including, among other things, that she engaged in "dilatory" conduct and made a number of direct "misrepresentations" including lying that she had provided plaintiff with a number of highly relevant records that were not in fact provided until the eve of trial and failing (without any explanation) to provide information about a key witness. The Judge also reprimanded Yehoshua for accusing the Court of colluding with plaintiff's counsel during oral argument on the motion, which she stated was an "unusually extreme" and "false" accusation. As a result of Yehoshua's conduct during discovery and at trial, the Court precluded key testimony and records, and instructed the jury to make negative inferences regarding Defendants' records. Further, the Judge issued an adverse inference instruction as a discovery sanction regarding a key witness as a result of Yehohsua's inexplicable failure to respond to subpoena served in 2016. The Judge's assertions were supported by the transcripts and records related to this case.

    iii. *Interview with Alexandra Vandoros*: Vandoros did not have any recollection of working on this trial but did recall hearing at that time about the blow-drying incident. She also said she believes there is an electrical outlet in that specific courtroom that she recalls is close by but not in the jury box.

  b. <u>**Conclusion:**</u> The records support Specification III.

5) <u>**Yehoshua's Response to Specification IV**</u>: Yehoshua denies that she was in violation of any discovery order by Judge Sokoloff, stating that she was not assigned to that matter on January 9, 2020 and was on trial on a different matter from December 2-23, 2019.

  a. <u>**Investigation**</u>: In connection with this Specification, Vandoros was interviewed along with the relevant emails/correspondence and PLIS records.

The records and an interview with Vandoros conclusively show that Yehoshua was still assigned to the *Wood* case on January 9, 2020. In anticipation of Yehoshua's transfer to Kings County, on or about January 28, 2020, Khahaifa transferred the case to

8

**DRAFT** – PRIVILEGED & CONFIDENTIAL

    Vandoros.  This is supported by a review of PLIS records, and by an e-mail dated January 29, 2020 from Khahaifa to Yehoshua, Daysy Otero and Maria Passione advising of the reassignment.

    However, since Yehoshua was prohibited from appearing on the case before Judge Sokoloff, Vandoros appeared on Yehoshua's behalf at the next conference on the case on November 21, 2019.  In an email exchange between Yehoshua, Vandoros and Khahaifa dated January 9, 2020, when asked by Khahaifa why she still had Yehoshua's file, Vandoros explained that she was helping Yehoshua comply with the November 21, 2019 order, and she listed the things she had done on the case.  Khahaifa specifically asked that Vandoros return the physical file to Yehoshua.  As alluded to above, the e-mails, orders and related discovery show that Yehoshua had not taken steps up to that point to fulfill a number of the outstanding discovery matters in the case, including i) obtaining documents that had been requested numerous times by opposing counsel; ii) serving necessary requests on opposing counsel; iii) serving proper responses to a number of discovery and inspection ("D&I") requests and supplemental D&I's.[4]

    It does not appear, however, that NYCT was actually in violation of the Judge's November 21, 2019 order on January 9, 2020.  Vandoros had ensured the deadlines were met.

    **b.**   **Conclusion:**   This Specification could be modified by eliminating the assertion that NYCT was in violation of a discovery order and replacing it with language to the effect that Yehoshua had failed to take fundamental steps to comply with discovery up to that point.

**6)**   **Yehoshua's Response to Specification V**: Yehoshua denies the allegation that Judge Adams's recusal from Yehoshua's cases related to improper conduct by Yehoshua.  She alleges that Judge Adams's recusal related to the fact that she had previously worked at a law firm of Morris Duffy Alonso & Faley (2003-2013).  She also denies that she was ever

---

[4] Worth noting is that Vandoros also relayed that upon reviewing the case file at the time, she saw several other additional misrepresentations and/or mistakes made by Yehoshua, including: 1) Yehoshua had advised the plaintiff's counsel on December 31, 2019 by email that the Conductor to be deposed was on vacation and asked to postpone that EBT to February 2020.  Vandoros learned, however, that the Conductor was not on vacation and was available for the EBT.  However, Yehoshua had never called in the Conductor to meet and start the preparation process for his EBT.  She said this was a complex case, with internal inconsistencies in the NYCT accident reports requiring extensive preparation of the Conductor; 2) Vandoros discovered that Yehoshua had exchanged an accident report that contained personnel information pertaining to the crew of the incident train, which is not discoverable in an action such as this and should have been redacted with an explanation as to the grounds for redaction, but the report was exchanged as is; 3) the plaintiff Wood had alleged psychological injuries early on during the litigation as part of his damages, yet Yehoshua failed to request any discovery from plaintiff relating to those injuries or reserve the right to conduct an IME relating to same.

9

**DRAFT** – PRIVILEGED & CONFIDENTIAL

before Judge Silvera or Administrative Judge Kaplan and that they would have ever spoken unfavorably of her.

    a. **Investigation**: Khahaifa, Vandoros and Ehrlich were interviewed and any related emails/correspondence as well.

        i. *Judge Suzanne Adams*: According to Khahaifa, on or about January 23, 2020, shortly after being introduced to Judge Adams, Judge Adams advised Khahaifa that she would recuse herself from any cases in which Yehoshua is involved and asked that Khahaifa send another attorney to court instead. According to Khahaifa, when she inquired as to the reason for her recusal, Judge Adams declined to divulge that information. She did not believe their prior work together would have been the reason for recusal since Yehoshua's colleague Vandoros had also worked with Judge Adams in or around 1999 at Ahmuty, Demers & McManusas as her mentor, and Judge Adams did not recuse herself from Vandoros cases. Vandoros has appeared before Judge Adams consistently since she took over the Transit part. However, there does not appear to be any written material or direct exchange with the Judge that would support a conclusion that misconduct, unprofessionalism, etc. constituted the reasons for the recusal.

        ii. *Judge Adam Silvera*: Yehoshua denies that she ever appeared before Judge Silvera. Khahaifa was interviewed concerning this response. Khahaifa said she had a conversation with Judge Silvera on January 23, 2020, the same day she was meeting the new New York County Judges. She said that along with Judge Adams, Judge Silvera advised that he did not want Yehoshua appearing before based on the various known concerns over Yehoshua's conduct. According to Khahaifa, she did not put anything in writing about the exchange, as Khahaifa felt it was not only redundant at that point, but also moot since Yehoshua was being transferred to Kings County.

        iii. *Administrative Judge Deborah Kaplan*: Yehoshua alleges that the report by Judge Deborah Kaplan was "unbelievable" and "false" and that "Yehoshua has no interaction with Judge Kaplan". She also denies that she was transferred because of the prohibition by the Judges, but rather because she requested a transfer because of religious discrimination.

        According to Khahaifa, Judge Kaplan had called a meeting with Sherri Ehrlich and herself to discuss the court's plans to expand their ADR initiative and to gather input and concerns with the program. Incidentally, the Judge brought up Yehoshua, commenting on her conduct and indicating that she now had to step in for the trial assignment clerk in order to find a Judge who would take a case with her. Khahaifa said she told Judge Kaplan that Yehoshua was in the process of being transferred to another unit and the Judge's response was "great, that will make our conversation

**DRAFT** – PRIVILEGED & CONFIDENTIAL

      shorter". The judge advised that Yehoshua was not welcome in the courthouse and also pointed out some of the specific complaints made by various judges, without naming such Judges. More details of this conversation are set forth in a prior Memo by Khahaifa dated February 27, 2021.

      Sherri Ehrlich recalled this meeting with Judge Kaplan and Khahaifa about the NYCT cases in New York County and how to get rid of the backlog and encourage more settlements. Though she said it was not the primary purpose of the conference, she did recall the Judge bringing up Yehoshua and her conduct and said the Judge had referred to her in an "unfavorable light" and expressed dissatisfaction with her conduct. She said it "rings a bill" when asked about Khahaifa saying Yehoshua was being transferred to Kings County and also that the Judge said word to the effect of "great, that will make our conversation shorter." She did not recall the words specifically at the time we spoke.

    iv. *Yehoshua's transfer*: Yehoshua claims the transfer to Kings County was the result of a request she made and a result of systemic discrimination in her group and not as a result of negative feedback by Judges. There does not appear to be any record or witness account supporting that assertion. The witnesses interviewed and emails/communications reviewed support the conclusion Yehoshua's transfer was the result of the problems Yehoshua was having with New York Court Judges. This was the understanding of Vandoros, Sherri Ehrlich and Gail Goode. Lisa Urbont was not aware of the reason for the transfer and said she had no problems with Yehoshua for the limited time they were together.

  b.   **Conclusion:** Specification V could be modified to exclude the portions concerning Judge Adams and Judge Silvera but is otherwise supported.

CONFIDENTIAL

NYCTA 003319