# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AMELIA YEHOSHUA,

                Plaintiff,                21-cv-04055 (FB) (SJB)

   -against-

MANHATTAN AND BRONX SURFACE TRANSIT
OPERATING AUTHORITY, THE NEW YORK CITY
TRANSIT AUTHORITY, and WESLII KHAHAIFA,

                Defendants.

## DECLARATION OF JUSTICE KATHRYN E. FREED

I, Kathryn E. Freed, declare as follows:

1. I served as an elected Supreme Court Justice in New York State Supreme Court, County of New York, Civil Term from 2014 through 2020. I retired from the bench on or around December 31, 2020.

2. Prior to serving as a Justice of the Supreme Court, I had an active career in politics for approximately twenty-five years, including serving as a New York City Council member representing Lower Manhattan from in or around January 1992 through December 2001. I have always held myself to the highest of ethical and moral standards.

3. Unless otherwise noted, the statements in this Declaration are made upon my personal knowledge.

4. In or around December 2017, I agreed to take on a few cases involving the New York City Transit Authority ("Transit") and its related agencies, some of which were taken on for the limited purpose of trial.

5. It was in this context that I came to know various attorneys who represent Transit. One of these attorneys was Amelia Dweck Yehoshua, whom I knew as Ms. Dweck.

### The Maria Garcia Trial

6. Ms. Dweck appeared before me on behalf of the defendants in the litigation captioned *Maria Garcia v. Metropolitan Transportation Authority and New York City Transit Authority*, which bore Index No. 157482/2012. A true and correct copy of a decision I authored in that case is attached hereto as Exhibit A. Many of my concerns regarding Ms. Dweck's conduct are also memorialized in this decision.

CONFIDENTIAL

NYCTA_019945

7. *Garcia* was a personal injury action in which, to the best of my recollection, the plaintiff claimed to have suffered an injury when she fell on stairs inside a New York City subway station on a rainy day. The defendants in that case, the Metropolitan Transportation Authority ("MTA") and Transit, were alleged to have operated the subway station at issue.

8. Throughout the trial and post-trial motion practice in *Garcia*, Ms. Dweck's conduct was unbecoming of an attorney. She was repeatedly dishonest, unprofessional, late to Court and disrespectful to my Court staff and to me.

9. My concerns surrounding Ms. Dweck's lack of candor before the Court started immediately. For example, I recall that during our first pre-trial conference, Ms. Dweck provided me with copies of documents that she intended to use at trial. I specifically asked Ms. Dweck whether the plaintiff had received copies of all of her proposed trial exhibits. Ms. Dweck assured me, unequivocally, that all of the documents had been exchanged. As is explained in more detail below, this representation was false.

10. At the time, I believed Ms. Dweck's statements to be true not only based on Ms. Dweck's express representation, but also because, by the time of our pre-trial conference, Ms. Dweck had already participated in a Part 40 interview before Justice Judith McMahon. A Part 40 interview provides parties to a litigation with a final opportunity prior to jury selection to explore resolution by settlement. I was advised by Justice McMahon's law clerk that Ms. Dweck had been instructed during the Part 40 interview to exchange these same documents with the plaintiff.

11. I came to learn, however, that many of Ms. Dweck's proposed trial exhibits had not, in fact, been provided to the plaintiff. I recall that the list of documents that Ms. Dweck failed to exchange was extensive.

12. As is detailed in Exhibit A, it is my recollection that during discovery in the *Garcia* matter, in January of 2013, Ms. Garcia served a demand on Transit for documents in its possession relating to the maintenance and cleaning of the subway station, including power washing records. These same records were sought by subpoenas served by Ms. Garcia in November of 2016 and August of 2017.

13. Although Transit did produce some documents responsive to these requests during discovery, including a cleaning report for the day of Ms. Garcia's accident, it did not provide time logs, control sheets, maintenance records nor cleaning schedules. Notably, Transit also did not provide records relating to power washing of the relevant subway station. In our pre-trial discussions, Ms. Dweck insisted (incorrectly) that Ms. Garcia only sought cleaning records and did not specifically ask for power washing reports.

14. It was not until the eve of trial on November 30, 2017 that Ms. Dweck provided the requested records to Ms. Garcia, including cleaning schedules for the station which showed when it was power washed. Even then, however, Ms. Dweck withheld critical documents. In particular, she failed to include any records addressing whether the subway station was power washed on the day of Ms. Garcia's incident. Ms. Dweck instead produced records relating to

2

CONFIDENTIAL

NYCTA_019946

power washing during the approximately 100 or so days leading up to the date of Ms. Garcia's accident, but *not the day of the accident*, which was the relevant record.

15. When I questioned her about this extremely late and incomplete production, Ms. Dweck asserted that she, personally, never received the 2016 subpoena. I found this assertion to be disingenuous, as it was evident from the date stamp on the subpoena that it had been received by her office. Regardless, the documents were also the subject of discovery requests and a subsequent subpoena, dated August 2017, which Ms. Dweck's office also received.

16. Ms. Dweck also explained that the reason she intentionally withheld these critical documents from discovery was because the records were the subject of her prior motion to quash the plaintiff's August 2017 subpoena (thereby admitting her receipt of the subpoena). My understanding is that the motion to quash had been fully resolved in plaintiff's favor well in advance of the *Garcia* trial. Therefore, this "explanation" did not explain or justify the failure to have produced these documents.

17. Although I no longer recall specifics, I very clearly remember believing at the time (*i.e.,* during the *Garcia* trial) that I had caught Ms. Dweck in numerous lies. Although I elected not to sanction Ms. Dweck for her dishonesty, I found her conduct to fall outside the bounds of normal courtroom behavior. In all my years on the bench, Ms. Dweck's conduct negatively stood apart.

18. In addition to the above, Ms. Dweck was repeatedly late to Court. Her failure to appear at Court on time for trial was the topic of numerous discussions and admonishments from the bench.

19. Further, I found that Ms. Dweck was not prepared for trial. She was not well-versed in the relevant facts or applicable law, and I found her substantive knowledge (with respect to the rules of evidence, in particular) to be substandard. In my opinion, her conduct during the *Garcia* trial did not advance her clients' interests.

20. In addition, Ms. Dweck was dismissive of my staff and me throughout the trial. For instance, on one occasion during the trial, my law clerks witnessed Ms. Dweck blow drying her hair in the jury box in my courtroom. Additional instances of Ms. Dweck's disrespectful courtroom conduct are memorialized in the transcript of the *Garcia* trial, which I understand were produced in the instant litigation and which I reviewed prior to signing this declaration.

21. Following the trial, Ms. Dweck filed a motion on behalf of the defendants in the *Garcia* action to set aside the jury verdict in Ms. Garcia's favor. During oral argument, Ms. Dweck accused the Court – me – of having "colluded" with the plaintiff, Ms. Garcia. Throughout my political and judicial career, I cannot remember a time when anyone else questioned my veracity or moral character and I decried this "unusually extreme accusation" in my Decision and Order (Exhibit A).

22. Moreover, I believe that Ms. Dweck left a rude review about my court attorneys and me on the website known as the "Robing Room" shortly after the *Garcia* trial.

3

CONFIDENTIAL

NYCTA_019947

23. Overall, Ms. Dweck's conduct during the *Garcia* trial is what I would describe as a judge's worst nightmare.

24. On or about December 4, 2019, I met with Weslii Khahaifa. I understood at the time that Ms. Khahaifa was Ms. Dweck's supervisor at Transit. I relayed to Ms. Khahaifa my general disdain for Ms. Dweck's unprofessional conduct throughout the *Garcia* trial. I informed Ms. Khahaifa of many, if not all, of the instances described above and expressed that I was still upset and angry about Ms. Dweck's conduct. I also advised that Ms. Dweck was no longer welcome in my courtroom and warned that I would have Ms. Dweck removed from my courtroom, if necessary.

<u>Discussion With Administrative Judge Kaplan</u>

25. I relayed my concerns regarding Ms. Dweck's conduct to Justice Kaplan, in her then role as Administrative Judge, Supreme Court, New York County, Civil Term.

26. Justices Lisa Sokoloff and Lyle Frank participated in this discussion with Administrative Judge Kaplan. They shared similar concerns about Ms. Dweck's lack of candor and unprofessional conduct in their courtrooms.

27. I advised Administrative Judge Kaplan that I would not oversee another trial with Ms. Dweck again. I also stated that Ms. Dweck was no longer welcome in my courtroom. Justices Sokoloff and Frank made similar statements to Administrative Judge Kaplan.

<u>Following the *Garcia* Trial, I No Longer Accepted Transit Cases</u>

28. After my experience with Ms. Dweck in *Garcia*, I no longer accepted new cases involving Transit or its related entities.

29. Cases that were assigned to me at the time of the *Garcia* trial and Ms. Dweck's post-trial motions were slowly re-assigned to other judges, including, in particular, Justice Sokoloff who at the time was overseeing the Transit-specific Part.

I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct.

Executed on November 13, 2023 at New York, New York.

_____
JUSTICE KATHRYN E. FREED (RET.)

CONFIDENTIAL

NYCTA_019948

# Exhibit A

CONFIDENTIAL

NYCTA_019949

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | HON. KATHRYN E. FREED | PART | IAS MOTION 2 |
|---|---|---|---|
| | *Justice* | | |

-----------------------------------------------------------------X

MARIA GARCIA,

                  Plaintiff,

                  - v -

METROPOLITAN TRANSPORTATION AUTHORITY AND NEW YORK CITY TRANSIT AUTHORITY,

                  Defendants.

INDEX NO.           157482/2012

MOTION SEQ. NO.     002

**DECISION AND ORDER**

-----------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57

were read on this motion to/for                     SET ASIDE VERDICT                     .

Upon the foregoing documents, it is ordered that the motion and cross motion are decided as follows.

        This action arises from an incident in which plaintiff Maria Garcia was allegedly injured when she slipped and fell on stairs inside the subway station located at 168th Street and Broadway in New York County (the station), which was allegedly operated by defendants Metropolitan Transportation Authority (MTA) and New York City Transit Authority (NYCTA) (collectively defendants). As a result of the accident, plaintiff sustained injuries to her hand and teeth. A trial was held in this matter from December 4 – 15, 2017, after which a jury awarded plaintiff $110,000 for past pain and suffering, $90,000 for future pain and suffering, and $20,000 for future dental expenses. The jury apportioned liability as follows: 51% to defendants and 49% to plaintiff.

        Defendants now move, pursuant to CPLR 4404(a), to set aside the verdict and for a new trial on the grounds that 1) plaintiff failed to establish a prima facie case of liability; 2) the verdict

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION        Page 1 of 12
Motion No.  002

1 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019950

was against the weight of the evidence; 3) this Court improperly precluded defense witness Ecliff Aladdin from referring to his records during his trial testimony; 4) this Court improperly issued a negative inference instruction to the jury against defendants regarding Aladdin's records; 5) this Court improperly allowed the records of plaintiff's treating dentist, Dr. Moshe Aaron Glick, to be admitted into evidence despite the fact that the records were not provided to defense counsel in accordance with 22 NYCRR 202.17(b)(1); 6) this Court improperly instructed the jury that they were permitted to award plaintiff future dental expenses despite the fact that such damages were not pleaded; 7) this Court improperly issued a missing witness charge regarding MTA witness William Kava; and 8) for such other and further relief as this Court deems just and proper.

Plaintiff cross-moves 1) to deny defendants' motion; 2) pursuant to CPLR 4401, granting plaintiff a directed verdict on liability and awarding her $40,000 in future medical expenses; 3) alternatively, setting aside the verdict apportioning liability to plaintiff as against the weight of the evidence; 4) pursuant to CPLR 4404, increasing the amount of damages awarded for future medical expenses to $40,000; and 5) for such other and further relief as this Court deems just and proper.

## DEFENDANTS' MOTION

### Prima Facie Case/Weight of the Evidence

> CPLR 4404(a) provides that "the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial ... where the verdict is contrary to the weight of the evidence [or] in the interests of justice." The standard for setting aside the verdict and entering judgment for the moving party as a matter of law is whether "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men [and women] to the conclusion reached by the jury on the basis of the evidence presented at trial. The criteria to be applied in making this assessment are essentially those required of a trial judge

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION                Page 2 of 12
Motion No. 002

2 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019951

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:32 PM                INDEX NO. 157482/2012
NYSCEF DOC. NO. 60                                              RECEIVED NYSCEF: 11/28/2018

asked to direct a verdict." *Cohen v. Hallmark Cards*, 45 NY2d 493, 499, 382 N.E.2d 1145, 410 N.Y.S.2d 282 (1978). However, "in any case in which it can be said that the evidence is such that it would not be utterly irrational for a jury to reach the result it has determined upon, and thus, a valid question of fact exists, the court may not conclude that the verdict is as a matter of law not supported by the evidence." Id (citation omitted). Moreover, "[i]n considering the motion for judgment as a matter of law, the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant." *See Szczerbiak v. Pilat*, 90 NY2d 553, 556 (1997).

The standard used in determining a motion to a set aside a verdict as against the weight of the evidence is whether the evidence so preponderated in favor of the moving party, that the verdict "could not have been reached on any fair interpretation of the evidence." *Lolik v. Big V Supermarkets, Inc.*, 86 NY2d 744, 746 (1995), quoting *Moffatt v. Moffatt*, 86 AD2d 864 (2d Dept 1982), aff'd 62 NY2d 875 (1985). This "does not involve a question of law, but rather a discretionary balancing of factors." *Cohen v. Hallmark Cards*, 45 NY2d at 499.

*Robaey v Air & Liquid Sys. Corp.*, 2018 NY Slip Op 32582[U], *2-3 (Sup Ct, NY County 2018).

At trial, plaintiff testified that she fell on wet slippery stairs at the station on a rainy day. Tr. 158, 335-339.[1] On the day of the accident, she wore flat shoes. Tr. 333. She had been to the station many times before and, on the date of the incident, it was in the same condition as on days when she had seen the station being cleaned. Tr. 156-158. She further stated that there were puddles in the station that day. Tr. 349. Although plaintiff saw an MTA employee present, she did not know whether he was cleaning. Tr. 349. Nor did she recall whether she was holding a handrail at the time she fell. Tr. 436. Additionally, Ecliff Aladdin, defendants' cleaning supervisor, testified that, when the station was cleaned, it was power washed, which process caused the platforms and stairways to be wet. Tr. 633-634.

---

[1] The abbreviation "Tr" refers to specific pages of the trial transcript.

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION              Page 3 of 12
Motion No. 002

CONFIDENTIAL

CONFIDENTIAL

NYCTA_019952

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:32 PM   INDEX NO. 157482/2012
NYSCEF DOC. NO. 60                                 RECEIVED NYSCEF: 11/28/2018

Given the foregoing testimony, this Court cannot conclude that plaintiff failed to establish a prima facie case of negligence as against defendants. This Court also declines to set aside the verdict as against the weight of the evidence since the evidence did not preponderate so greatly in favor of defendants that the verdict could not have been reached based on a fair interpretation of the evidence. Although defendants contend that the station was wet due to rain, the jury could have concluded that the accident arose from their failure to maintain the station in a safe condition.

**Preclusion of Aladdin From Referring to His Records**

In January of 2013, during the course of discovery, plaintiff served a demand on defendants for documents in their possession relating to the maintenance and cleaning of the station. Tr. 2, 20. By letter dated August 6, 2013, defendants produced several documents "prepared in the ordinary course of business pertaining to the alleged accident." Although defendants did produce some records during discovery, including a cleaning report for the day of the accident, they did not provide time logs, control sheets, maintenance records or cleaning schedules. Tr. 3-4. However, during discovery, defense counsel failed to provide any records relating to power washing of the station, insisting that plaintiff only demanded cleaning records and did not specifically ask for power washing reports. It was not until the eve of trial, November 30, 2017, that defense counsel provided the foregoing records, including cleaning schedules for the station which showed when it was "power washed". Tr. 3-4. Defense counsel conceded that the records produced at the time of trial had not previously been provided (Tr. 5.), despite the fact that these documents had been demanded during discovery and were sought by subpoenas served by plaintiff on defendants in November of 2016 and August 2017.[2]

---

[2] Although defense counsel disingenuously asserted at trial that she, personally, never received the 2016 subpoena, it is evident from the date stamped on the subpoena, November 2, 2016, that it had been received by her office. Tr.

157482/2012 GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION    Page 4 of 12
Motion No. 002

4 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019953

Disturbingly, when the records were finally provided to plaintiff's attorney and this Court, they still failed to include any records addressing whether the station was power washed on the day of the incident. Defense counsel did, provide records relating to power washing during the days leading up to the date of the accident, just omitting the actual day of the accident, which obviously, would have been the relevant record regarding liability in this matter. Tr. 21-22. Thus, defense counsel's representation to this Court that she had provided plaintiff's attorney with *all* of the aforementioned records was false. Tr. 21-22, 26-27. This Court was also appalled by the fact that defense counsel initially handed the said records to this Court and, when this Court inquired whether plaintiff's attorney had already been provided with a copy of the same, counsel misrepresented to this Court that the records had previously been provided to plaintiff's counsel. Tr. 10-11, 15, 19-21. When asked about the records by this Court, however, plaintiff's counsel vehemently denied having ever received the complete package of documents that was provided to this Court. Tr. 19. Upon inspection of plaintiff's documents, it was clear that plaintiff's counsel had not received the same set of documents that defense counsel provided to the Court. Tr. 20-22. Although defense counsel initially represented to this Court that defendants' failure to produce the records arose from a misunderstanding, she later said that the records were not provided to plaintiff's attorney because they were the subject of her motion to quash plaintiff's 2017 subpoena which the said documents. Tr. 8, 15.

Additionally, the attorneys for the parties disagreed about whether defendants were ordered to provide the said records during settlement discussions with Justice McMahon. Given the disagreement, this Court inquired whether Justice McMahon's law clerk had instructed defendant

---

48-49. The August 2017 subpoenas also bear stamps confirming receipt of the same by defense counsel's office. Although defense counsel moved to quash 2017 subpoenas served for defendants' records as well as for the deposition of defendants' employee, assistant train dispatcher William Kava, the motion was denied. Tr. 32, 74.

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION
Motion No. 002

5 of 12

Page 5 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019954

to turn these records over to plaintiff. Justice McMahon's law clerk confirmed that defendants' attorney was indeed instructed to provide plaintiff with the records. Thus, it is evident that defendants' attorney made every effort to withhold these relevant records from plaintiff's counsel until the eve of trial. The Court again notes that the most relevant document for the day of the incident, was never provided to either plaintiff or the Court.

Defendants sought to have Aladdin, whom they claim was most familiar with the records, testify about them at trial. Tr. 7-77. However, this Court precluded the introduction of the newly exchanged records into evidence, and prohibited Aladdin from testifying about them, "since they were not produced in a timely fashion", defense counsel conceded that they had been kept in the ordinary course of business, and plaintiff would be prejudiced if defendants had the opportunity to introduce them. Tr. 79-80.

Defendants now assert, without citing any legal authority, that this Court erred in precluding the records and Aladdin's testimony about them. However, CPLR 3126 provides a court with broad discretion to impose a wide range of penalties upon a party who "willfully fails to disclose information which the court finds ought to have been disclosed." Given that defendant did not disclose any maintenance or cleaning records in response to plaintiff's discovery demand, or in response to plaintiff's 2016 and 2017 subpoenas, but rather waited until the eve of trial to disclose this information, this Court properly acted within its discretion in precluding the records, as well as any testimony by Aladdin regarding the same, since defendants should not be rewarded for their dilatory conduct. *See Matter of State v John S.*, 23 NY3d 326, 344 (2014) (trial courts are "generally accorded broad discretion in making evidentiary rulings, which are entitled to deference on appeal absent an abuse of discretion"); *see also Matter of Gary F.*, 143 AD3d 495 (1st Dept 2016).

157482/2012 GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION                Page 6 of 12
Motion No. 002

6 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019955

**Negative Inference Charge Regarding Defendants' Records**

Defendants argue that this Court erred by instructing the jury that it could draw an adverse inference against defendants regarding the condition of the mezzanine and the stairs in the station. They claim that they were prejudiced by this instruction because the cleaning schedule records would have revealed that no power washing was performed on the day of the incident. Tr. 76-77. However, as discussed above, this Court has the authority and discretion, pursuant to CPLR 3126, to impose this sanction on defendants due to their failure to provide the cleaning records (*see Schilling v Quiros*, 23 AD3d 243 [1st Dept 2005]) and again notes that defendants never provided any records regarding whether the station was power washed on the date of plaintiff's accident. Although defense counsel conceded that these records were maintained by her clients during the regular course of business, they were not provided to plaintiff's counsel until the eve of trial, despite the latter's discovery demand and service of subpoenas in November 2016 and August 2017 seeking the same. Since defendants "fail[ed] to disclose the records in a timely fashion, despite due demand, then attempted to [provide this Court] with an incomplete set of records" (Tr. 922), and failed to produce the cleaning schedules "without adequate explanation", despite a request for the same by plaintiff's counsel (Tr. 925), this Court did not abuse its discretion in imposing this sanction (*see Matter of State v John S.*, 23 NY3d at 344).

Although defendants' attorney asserted at oral argument of the instant motion that this Court "colluded" with plaintiff's counsel by allowing the latter to discuss the precluded records during summation, this unusually extreme accusation is false. In their motion papers, defendants support this argument with references to the testimony of plaintiff and Aladdin and the document they refer to is an "unusual occurrence report", which was marked as an exhibit. Tr. 567, 986-987.

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION                Page 7 of 12
Motion No. 002

7 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019956

**Admission of Dr. Glick's Records Into Evidence**

Defendants assert that this Court erred by failing to preclude the records of Dr. Glick, plaintiff's treating dentist, because plaintiff failed to comply with 22 NYCRR 202.17(b)(1), which requires that medical reports be provided to a defendant's examining physician at least 20 days before a physical examination is to be conducted. However, as this Court noted, defendants were not prejudiced in any way by the conduct of plaintiff's counsel. *See Hughes v Webb*, 40 AD3d 1035 (2d Dept 2007); *Freeman v Kirkland*, 184 AD3d 331 (1st Dept 1992). Defendants' dental expert, Dr. Donald Tanenbaum, conducted his examination of plaintiff on December 12. 2013. Tr. 199. Although defense counsel claimed defendants "didn't know that Dr. Glick treated plaintiff at all" (Tr. 191) and denied that she received Dr. Glick's records, or an authorization releasing them, prior to that date, plaintiff's counsel produced an affidavit of service proving that, on January 17, 2013, he served defendants with a notice of medical exchange containing Dr. Glick's records, as well as an authorization for the release of the same. Tr. 201-204. Therefore, this argument is without merit.

**Award of Future Dental Expenses**

Defense counsel maintains that this Court erred by allowing the jury to award plaintiff future dental expenses because such damages were not pleaded in the bill of particulars. However, as this Court noted, the bill of particulars specifically set forth the injuries claimed, including those dental in nature, alleged that all of plaintiff's injuries were permanent. Tr. 897. This Court properly exercised its discretion in instructing the jury that it was permitted to award future dental expenses

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019957

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:32 PM                          INDEX NO. 157482/2012
NYSCEF DOC. NO. 60                                                RECEIVED NYSCEF: 11/28/2018

given that the need for future medical treatment was clearly alleged in a bill of particulars setting forth a laundry list of injuries, both medical and dental. Tr. 897, 901. In so ruling, this Court further noted that the trial testimony reflected that plaintiff would need future dental treatment. Tr. 894.

In support of their argument, defendants rely on the case of *Reid v Rubenstein*, 155 AD3d 448 (2nd Dept 2017), in which an expert was precluded from testifying about plaintiff's need to undergo a bone graft where such injury was not alleged in the bill of particulars. However, *Reid* is distinguishable from this case since, as noted above, plaintiff in this matter clearly alleged dental injuries and itemized the same.

**Adverse Inference Instruction Regarding Kava**

Defense counsel argues that this Court erred by giving a missing witness charge regarding assistant train dispatcher William Kava, whose name appeared in defendants' incident reports and who was first on the scene after plaintiff's alleged accident. Tr. 907, 921. Defendants maintain that a missing witness charge is improper in this situation since they did not have control over Kava at the time they received the November 2016 subpoena. This, they urge, is because he retired in 2015.

As this Court noted at trial, plaintiff served defendants with a subpoena for Kava's deposition on or about November 2, 2016 and defendants failed to respond to the same. Tr. 913, 919. On or about August 29, 2017, plaintiff served an identical subpoena on defendants. Tr. 920. However, it was not until November 6, 2017 that defendants wrote to plaintiff's counsel to advise that Kava had retired in 2015. Tr. 920. That correspondence contained Kava's last-known address.

157482/2012 GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION                    Page 9 of 12
Motion No. 002

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019958

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:32 PM                INDEX NO. 157482/2012
NYSCEF DOC. NO. 60                                              RECEIVED NYSCEF: 11/28/2018

Tr. 920. Although plaintiff's counsel tried to subpoena Kava at that address, that attempt was unsuccessful and plaintiff's private investigator was unable to locate him. Tr. 920.

Given these facts, this Court ruled that it would give the jury an adverse inference charge regarding defendants' failure to provide information regarding Kava. Specifically, this Court determined that defendants' "failure to timely notify plaintiff that Kava * * * no longer worked for [defendants] and to provide [his] last-known address was prejudicial to plaintiff and has prevented plaintiff from securing [his] testimony in time for this trial." Tr. 920.

Despite the parties' references to a "missing witness" instruction which, as defense counsel asserts, would require, inter alia, that defendants had control over Kava (*see People v Savinon*, 100 NY2d 192 [2003]), it is apparent from the trial transcript that the adverse inference charge relating to Kava was not a missing witness charge but rather a discovery sanction pursuant to CPLR 3126. In granting plaintiff's request for the adverse inference instruction, this Court reasoned that, although defendants were notified by subpoena as early as 2016 that plaintiff sought to call Kava to testify at trial (Tr. 905-906, 913), defendants failed, "without adequate explanation" (Tr. 926), to provide plaintiff with any information regarding Kava's whereabouts, including the fact that he had retired in 2015, until the eve of trial. Tr. 905-906, 913, 920, 926. Therefore, this Court properly exercised its discretion in determining that defendants' delay in providing plaintiff with information regarding Kava, such as his last-known address or the fact that he had retired in 2015, "was prejudicial to plaintiff", "prevented the plaintiff from securing [Kava's testimony] in time for [the] trial", and led to "plaintiff's inability to call [him]" as a witness at trial (Tr. 920, 926). Any doubt that the adverse inference instruction was given as a discovery sanction is dispelled by the fact that this Court advised counsel that the instruction was being given based on the case of *Crooke v Bonofacio*, 147 AD3d 510 (1st Dept 2017), in which the Appellate Division, First

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION                Page 10 of 12
Motion No. 002

10 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019959

Department affirmed the IAS Court's discretionary striking of a defendant's affirmative defense where that defendant intentionally failed to appear for deposition. Tr. 921.

**PLAINTIFF'S CROSS MOTION**

**Denial of Defendants' Motion**

Plaintiff first asserts that it is entitled to an order denying defendants' motion to set aside the verdict. However, since defendants' motion is denied, this branch of plaintiff's cross motion is denied as moot.

**Directed Verdict as to Liability/Setting Aside Apportionment of Liability to Plaintiff**

Plaintiff argues that it is entitled to a directed verdict apportioning 100% liability to defendants. She also claims that the jury's finding that she was 49% at fault for the alleged accident must be set aside as against the weight of the evidence pursuant to CPLR 4404. However, this Court declines to disturb the jury's apportionment of fault. As noted previously, plaintiff testified that the station was wet at the time of the accident and could not state for certain whether it had been washed that day. Plaintiff also stated that it was raining on the day of the incident, she was wearing flat shoes, and that she could not recall whether she held the handrail on the stairs. Since a finder of fact could infer that plaintiff may not have exercised sufficient caution while walking in the wet station, the evidence did not preponderate so greatly in favor of plaintiff that the jury could not have apportioned liability of 49% to plaintiff based on a fair interpretation of the evidence. *See Lolik v Big V Supermarkets, Inc.*, 86 NY2d at 746.

**Future Dental Expenses**

157482/2012  GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION                Page 11 of 12
Motion No. 002

11 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019960

Plaintiff argues that she is entitled to an increase of her damages for future dental expenses from $20,000 to $40,000. Dr. Glick testified that plaintiff would need at least $30,000, and probably closer to $40,000, in future dental treatment. Tr. 250. Defendants' expert, Dr. Tanenbaum, did not contradict Dr. Glick and in fact conceded that, as plaintiff's treating dentist, Dr. Glick would be in the best position to evaluate plaintiff's future dental costs. Tr. 760-763. Given Dr. Glick's uncontradicted testimony, this Court hereby increases the award for plaintiff's future dental expenses from $20,000 to $35,000.

Therefore, in light of the foregoing, it is hereby:

ORDERED that the motion by defendants Metropolitan Transportation Authority and New York City Transit Authority to set aside the verdict is denied in all respects; and it is further

ORDERED that the cross motion by plaintiff Maria M. Garcia to set aside the verdict is granted only to the extent of vacating the award of $20,000 for future dental expenses and ordering a new trial on damages for future dental expenses, unless within 30 days of service of a copy of this decision and order with notice of entry, defendants execute a stipulation agreeing to increase the award to plaintiff for future dental expenses from $20,000 to $35,000; and it is further

ORDERED that this constitutes the decision and order of this court.

_____11/21/2018_____                              _____
        DATE                                      KATHRYN E. FREED, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

157482/2012 GARCIA, MARIA M. vs. METROPOLITAN TRANSPORTATION    Page 12 of 12
Motion No. 002

12 of 12

CONFIDENTIAL
CONFIDENTIAL

NYCTA_019961