# EXHIBIT P

**MTA/OIG Report #2020-02**                                **January 2020**



## Office of the Inspector General
**Metropolitan Transportation Authority**
One Penn Plaza, 11th Floor, Suite 1110
New York, NY 10119
212-878-0000

**Carolyn Pokorny**
**MTA Inspector General**

January 23, 2020

Andrew Byford
President
MTA New York City Transit
2 Broadway, 20th Floor
New York, NY 10004

                                       **Re:  NYCT Employee's Ethics Violations**
                                                    **(Transit Attorney)**
                                                    **MTA/OIG #2020-02**

Dear Mr. Byford:

      The Office of the MTA Inspector General (OIG) has concluded its investigation into allegations against a New York City Transit (NYC Transit) Executive Agency Counsel (Transit Attorney). It was alleged that the Transit Attorney retained a lawyer (Outside Counsel), a longtime contracted vendor for NYC Transit, to represent her in a personal litigation and did not pay the Outside Counsel for his legal services. The OIG has substantiated the allegations. In addition, the OIG also found that the Transit Attorney used MTA resources to correspond with the Outside Counsel and others for her personal litigation. The OIG further found that the Outside Counsel was not provided with a copy of the MTA Vendor Code of Ethics.

      We recommend that the Transit Attorney be disciplined by NYC Transit as it deems appropriate. We further recommend that the MTA ensure that all outside counsels working on personal injury matters are provided with a copy of the MTA Vendor Code of Ethics and review its retainer agreements with them to ensure that counsel certify that they have received, and will abide by, the MTA Vendor Code of Ethics. [1] The Transit Attorney's conduct also appears to violate the New York State Public Officers Law. Accordingly, we are forwarding this matter to the New York State Joint Commission on Public Ethics (JCOPE) for action as it may deem appropriate.

---

[1] The MTA advised that retainer agreements for outside counsel, other than those that work on personal injury matters, have the Vendor Code of Ethics incorporated in their retainer agreements.

**Office of the MTA Inspector General**             P000415

| MTA/OIG Report #2020-02 | January 2020 |
|---|---|

## I. BACKGROUND

NYC Transit hired the Transit Attorney in April 2013 as a trial attorney in its Law Department Torts Division (Torts Division). The Transit Attorney was in private practice for 17 years before joining NYC Transit's Torts Division.

The Outside Counsel has worked as outside counsel to the Tort Division since 1990 and his practice has consisted primarily of NYC Transit work since 2005. The Attorney's retainer agreement with the MTA dates back to May 7, 2004.

## II. INVESTIGATION

### A. Record Review

According to the court records, the Transit Attorney has been a plaintiff in civil litigation against her former construction contractor since 2009 (the Personal Case). The Outside Counsel represented the Transit Attorney in the Personal Case from 2014 to January 31, 2019. On January 15, 2019, the Transit Attorney lost her Personal Case after a trial. On January 31, 2019, the day after the OIG interviewed the Transit Attorney, the Outside Counsel was replaced on the Personal Case.

An OIG review of the Transit Attorney's work email account revealed that, from at least May 2016 through November 2018, she used her work email to correspond with the Outside Counsel about her Personal Case, including sending draft documents, scheduling, court filings, and other matters. In addition, the Transit Attorney used her work email to correspond with an expert witness for her Personal Case and sent draft documents to another Torts Division employee during work hours to get her colleague's opinion of the document. The Transit Attorney does not supervise this colleague.

The emails established that the Transit Attorney was aware that the MTA routinely retained Outside Counsel, as they corresponded with each other regarding NYC Transit litigation matters that they had in common.

The OIG also reviewed the Outside Counsel's retainer agreement with the MTA, dated May 7, 2004. This agreement was amended in 2005 and 2018 to update the fee schedule and other terms. None of the documents incorporate the MTA Vendor Code of Ethics. However, the 2004 agreement does require the Outside Counsel to "provide the [NYC Transit's] General Counsel with full disclosure" as to "any client or clients who may have conflicting, inconsistent, diverse or otherwise discordant interests from those of the Authority."

### B. OIG's Interviews of NYC Transit Employees

*1. The Transit Attorney's Supervisor*

The Transit Attorney's supervisor, the Assistant General Counsel, Torts Division (Supervisor) stated that generally, outside counsel conducts the discovery phase, including the

| MTA/OIG Report #2020-02 | January 2020 |
|---|---|

depositions and preparing the Note of Issue for trial. Then, a NYC Transit trial attorney is assigned to conduct the trial. Once a NYC Transit trial attorney is assigned, pretrial work, including most depositions, has usually been completed. Typically, an NYC Transit trial attorney's only contact with outside counsel would be to discuss the outside counsel's work during the discovery phase, including the depositions taken by the outside counsel. The Supervisor stated that sometimes an NYC Transit trial attorney can ask outside counsel to take a deposition, but that this happens infrequently. The NYC Transit trial attorney does not have contact with outside counsel prior to the trial attorney's assignment to a case. A designated supervisor is responsible for assigning matters to outside counsel. The NYC Transit trial attorney does not approve or submit outside counsel's bills.

2. *The Transit Attorney*

   i. The Outside Counsel's Representation of the Transit Attorney

The Transit Attorney stated that she has known the Outside Counsel for nearly 20 years. She met him while working at her first job at a law firm, to which the Outside Counsel provided outside counsel services. She stated that they saw each other in court and at social functions at co-workers' homes.

Regarding her Personal Case, in 2005, she signed an agreement with a contractor to convert a single-family home to a two-family home. According to the Transit Attorney, the contractor did not meet its contractual obligations. The Transit Attorney paid a retainer to an attorney who, in 2009, filed a summons and complaint that the Transit Attorney drafted. The Transit Attorney later moved to dismiss the case without prejudice so that she could pursue her cause of action at a later time.

After she began working at NYC Transit in 2013, the Transit Attorney saw the Outside Counsel and approached him about representing her in the Personal Case. She stated that although he was the attorney listed on the filings, she drafted all of the court documents. The OIG's review of her NYC Transit emails confirms that she drafted the litigation documents. The Transit Attorney stated that the Outside Counsel refused to take a retainer or any other payment from her. The Transit Attorney stated that she did not request permission from her supervisor or the NYC Transit Ethics Officer to have the Outside Counsel represent her.

   ii. Ethics Training

The Transit Attorney confirmed that she has received MTA Ethics training, completed the annual certification, and has reviewed the MTA Code of Ethics. She claimed that she believed that because the Outside Counsel was not an NYC Transit employee, his representation of her was not a problem. She further stated that she did not think having the Outside Counsel represent her would present a conflict "because [the Outside Counsel] represents both plaintiffs and defendants." When OIG investigators explained that the Outside Counsel is considered a "prohibited source" under the MTA Code of Ethics §1.01 (Definitions p. 6), she insisted that because she could not assign work to the Outside Counsel she had not violated any ethical rules.

| MTA/OIG Report #2020-02 | January 2020 |
|---|---|

### 3. The Outside Counsel's Interview

#### i. The Outside Counsel's Work at NYC Transit

The Outside Counsel has been retained by the Torts Division since 1990, and worked on NYC Transit matters almost exclusively since 2005. The Outside Counsel stated that most of his work involves taking depositions, reviewing Notes of Issue, and conducting trials for NYC Transit. He estimated that 1% to 2% of his work may be related to work that is assigned to the Transit Attorney. The Outside Counsel stated that he did not believe that the Transit Attorney was in a position to give him work because she is not a manager and he does not submit his invoices to her. The Outside Counsel stated that he submits his invoices to one of the four employees in the Examination and Practices unit, not to the attorney assigned to the case. The Outside Counsel stated that he usually gets his assignments from the Hearing Officer, although sometimes an NYC Transit attorney will reach out to him directly if another NYC Transit attorney is unavailable to conduct a deposition. The Outside Counsel stated that only a Borough Chief can assign a trial.

#### ii. The Outside Counsel's Representation of the Transit Attorney

The Outside Counsel stated that the Transit Attorney first approached him about representing her in her Personal Case in 2007 or 2008, but he declined because he primarily handled personal injury work. He did not think he would be a good choice to represent her for a construction case. The Outside Counsel stated that, at the time, the Transit Attorney was working at the same law firm as one of his friends.

When the Transit Attorney began working at NYC Transit she mentioned to the Outside Counsel that the litigation had not been resolved. She again asked if he would represent her, and he agreed to on a contingency fee basis, but did not put the agreement in writing. When asked why he changed his mind about taking on a construction case in 2014, he explained that the Transit Attorney had not been served well by her prior counsel, who also did not engage in construction litigation. The Outside Counsel noted that an insurance company represented the defendant. He had hoped to settle the matter with the insurer and that he would get 30% of the settlement, which represented the contingency fee. After a seven-day jury trial, a verdict was rendered against the Transit Attorney. Not long after the trial concluded, and the day after the Transit Attorney was interviewed by the OIG, the Outside Counsel was substituted for different counsel. The Outside Counsel stated that the Transit Attorney paid all the filing fees related to the litigation.

#### iii. MTA Vendor Code of Ethics

The Outside Counsel stated that he never received a copy of the MTA Vendor Code of Ethics. OIG investigators explained to the Outside Counsel that under the MTA Vendor Code of Ethics, he is prohibited from providing gifts to MTA employees, which included providing free legal services to a MTA employee.

| MTA/OIG Report #2020-02 | January 2020 |
|---|---|

### III. POLICIES AND ANALYSIS

#### A. MTA All-Agency Code of Ethics

*1. § 2.01: Gift Prohibition*

The MTA All-Agency Code of Ethics, Section 2.01, Gift Prohibition-Zero Tolerance, states, in pertinent part:

> Employees are prohibited from soliciting or receiving Gifts, directly or indirectly, from any Prohibited Source.[2]

The Transit Attorney solicited free legal services from a Prohibited Source. The Outside Counsel was a Prohibited Source, as he provides services to NYC Transit's Law Department, and more specifically the Tort Divisions where the Transit Attorney is employed. The Outside Counsel represented the Transit Attorney throughout her litigation including conducting a seven-day trial without compensation. Although the Outside Counsel told OIG investigators that he had agreed to take the case on contingency, he nevertheless provided the Transit Attorney with a valuable service for free. Therefore, his representation would certainly be considered a gift from a Prohibited Source.

*2. § 4.01: Conflict of Interest*

The MTA All-Agency Code of Ethics, Section 4.01, Conflict of Interest, states, in pertinent part:

> Employees shall not have any interest, personal, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity or incur any obligation of any nature, which is or may be in conflict with the proper discharge of his or her duties.
>
> Employees must notify their Agency Ethics Officer or Ethics Committee directly regarding any possible Conflict of Interest.
>
> Employees must not only avoid Conflicts of Interest with the MTA but also even the appearance of a conflict.

The Transit Attorney's soliciting and accepting the Outside Counsel's representation of her in private litigation created a conflict of interest. Although the Transit Attorney does not have the authority to assign the Outside Counsel work, she might have occasion to review work

---

[2] A Prohibited Source is defined in the Code of Ethics, section 1.01, as "a Vendor, including any person, seller of goods or services, bidder, proposer, consultant, contractor, trade, contractor or industry association, or any person/entity with which your MTA Agency is doing business . . . whose activities directly of in directly benefit your Agency, or who have a history of doing business with your Agency in the recent past."

| MTA/OIG Report #2020-02 | January 2020 |
|---|---|

he previously performed on one of her cases. Her personal interest in his representation of her might prevent her from properly reporting problems with the Outside Counsel's work product.

3. *§ 4.02: Public Trust*

The MTA All-Agency Code of Ethics, Section 4.02, Public Trust, states, in pertinent part:

(a) Employees shall not engage in a course of conduct that will raise suspicion among the public that they are likely to be engaged in acts that are in violation of the public trust. Employees shall avoid even the appearance that they can be improperly (1) influenced in the performance of their official duties or (2) induced to violate the public trust or impair their independence of judgment in the exercise of their official duties.

(c) Employees shall not by their conduct give reasonable basis for the impression that any person can improperly influence them or unduly enjoy their favor in the performance of their official duties, or that they are affected by kinship, rank position or influence of any party or person.

The Outside Counsel's representation of the Transit Attorney on contingency without a retainer agreement could raise suspicion that the Transit Attorney is engaged in a course of conduct that might violate the public trust. To someone unfamiliar with how the NYC Transit Torts Division assigns work to outside counsel, the arrangement between the Outside Counsel and Transit Attorney might suggest that outside counsel may not be selected on merit, thereby appearing to put personal interest ahead of the needs of NYC Transit.

4. *§ 8.04: Use of MTA Property*

The MTA All-Agency Code of Ethics, Section 8.04, Prohibition Against the Use of MTA Property, states, in pertinent part:

MTA's names, logos, supplies, equipment, computer resources, personnel and other resources may not be utilized for non-governmental purposes, including for personal purposes or for outside activities of any kind.

The Transit Attorney used her NYC Transit email to send documents relating to her Personal Case to the Outside Counsel and an expert witness, and to a co-worker's NYC Transit email during work hours to request her opinion. Therefore, she used MTA computer resources and personnel for personal purposes.

| MTA/OIG Report #2020-02 | January 2020 |
|---|---|

### B. MTA All-Agency Computer and Social Media Usage Policy Directive

The MTA All-Agency Computer and Social Media Usage Policy Directive, Section IV(A), General Guidelines, states, in pertinent part:

1. Computer Users are required to protect Computer Resources – both Information Assets and Physical Assets, and are responsible for the following:

    a. Preserving and protecting Computer Resources by following all password, protection and disposal requirements; and

    b. Using Computer Resources solely for their intended purposes.

2. Occasional and incidental personal use must be consistent with the requirements and guidelines of this policy directive.

As described above, the Transit Attorney improperly used MTA computer resources. The use of her work computer was not occasional and incidental personal use.

### C. New York State Public Officers Law

*1. § 73(5)(a): Gifts*

Public Officers Law section 73(5)(a) states, in pertinent part:

No . . . state officer or employee shall, directly or indirectly

(a) solicit, accept or receive any gift having more than a nominal value, whether in the form of money, service, loan, travel, lodging, meals, refreshments, entertainment, discount, forbearance or promise, or in any other form, under circumstances in which it could reasonably be inferred that the gift was intended to influence him, or could reasonably be expected to influence him, in the performance of his official duties or was intended as a reward for any official action on his part….

As discussed above, in the context of the MTA All-Agency Code of Ethics, § 2.01, by soliciting and accepting the Outside Counsel's free legal representation in the Personal Case, the Transit Attorney improperly accepted a gift.

| MTA/OIG Report #2020-02 | January 2020 |
|---|---|

2. *§ 74: Conflict of Interest*

   Public Officers Law section 74 states, in pertinent part:

   d. No officer or employee of a state agency . . . should use or attempt to use his or her official position to secure unwarranted privileges or exemptions for himself or herself or others, including but not limited to, the misappropriation to himself, herself or to others of the property, services or other resources of the state for private business or other compensated nongovernmental purposes.

   ****

   f. An officer or employee of a state agency . . . should not by his or her conduct give reasonable basis for the impression that any person can improperly influence him or her or unduly enjoy his or her favor in the performance of his or her official duties, or that he or she is affected by the kinship, rank, position or influence of any party or person.

As an Executive Agency Counsel in the division that utilizes the Outside Counsel's services as outside counsel, the Transit Attorney was able to use her position to secure free representation in her Personal Case from the Outside Counsel. Moreover, the Transit Attorney's representation by the Outside Counsel could reasonably create the impression that the Outside Counsel may benefit in his future work with the NYC Transit Torts Division through his free representation of the Transit Attorney.

## IV.  FINDINGS

1. The Transit Attorney solicited and hired the Outside Counsel, a Prohibited Source, to represent her in personal litigation for which representation he was not paid, in violation of MTA All-Agency Code of Ethics §§ 2.01 and 4.02, and NYS Public Officers Law §§ 73(5), 74(d) and 74(f).

2. The Transit Attorney failed to recognize the conflict of interest and seek guidance or notify the NYC Transit Ethics Officer in violation of MTA All-Agency Code of Ethics § 4.01.

3. The Transit Attorney used her NYC Transit email and her co-worker to conduct personal business related to non-NYC Transit litigation in violation of the MTA All-Agency Code of Ethics § 8.04.

4. The Transit Attorney used her NYC Transit email to conduct personal business related to non-NYC Transit litigation in violation of the MTA All-Agency Computer and Social Media Usage Policy Directive § IV(A).

5. The MTA did not ensure that the Outside Counsel received the MTA Vendor Code of Ethics when it was adopted in 2008.

| MTA/OIG Report #2020-02 | January 2020 |
|---|---:|

## V.  RECOMMENDATIONS

1. NYC Transit should impose discipline on the Transit Attorney as it deems appropriate.

2. NYC Transit should review the retainer agreement to require compliance with the MTA Code of Ethics and provide the Outside Counsel with the MTA Vendor Code of Ethics.

3. The MTA should ensure that a copy of the MTA Vendor Code of Ethics is provided to outside counsel working on personal injury matters (it already does so for other matters) and review its retainer agreements with them to ensure that counsel certify that they have received, and will abide by, the MTA Vendor Code of Ethics.

As always, we appreciate your continued courtesy and cooperation. Please advise me within 30 days of any action you intend to take and the result of any action taken. Should you have any questions, or need additional information, please contact Executive Deputy Inspector General for Legal Pei Pei Cheng-de Castro at (212) 878-0072.

Very truly yours,

/S/
Carolyn Pokorny

cc: Thomas Quigley, General Counsel, MTA Headquarters
    David Farber, General Counsel, NYC Transit
    Kim Moore-Ward, V.P. Labor Relations, NYC Transit
    Paige Graves, Ethics Officer, NYC Transit
    Monica Stamm, General Counsel, NYS Joint Commission on Public Ethics