# EXHIBIT Q



## Office of the MTA Inspector General

**Possible Unethical Behavior by Counsel Yehoshua**
**18-0140-I**

### Investigations Interview Memo

| | |
|---|---|
| **Interview of:** | Amelia Dweck Yehoshua, Executive Agency Counsel, Torts Division, NYC Transit |
| **Date of Interview:** | January 30, 2019 |
| **Prepared By:** | Maura E. Daly, Senior Associate Counsel |
| **OIG Attendees:** | Lawrence McGugins, Senior Principal Investigator |
| **Other Attendees:** | |



This morning Senior Principal Investigator Lawrence McGugins and I interviewed Amelia Dweck Yehoshua, Executive Agency Counsel, Torts Division, Law Department, NYC Transit.

*NYC Transit Background*

Yehoshua began working at NYC Transit on April 22, 2013, and she is assigned to the New York County Unit. She previously worked for two law firms that were in –house counsel to insurance companies defending its customers in auto claims. Those firms were Morris Duffy Alonzo & Faley and Cheven Keely & Hatzis. Her first supervisor was Danielle Ruttman, until she retired, and her current supervisor is Weslii Khahaifa.

Yehoshua explained that the Torts Division further divides each unit into the "EMP"[1] unit, which handles all aspects of a case prior to the filing of the Notice of Issue, after which the case will be transferred to a trial attorney. Yehoshua is a trial attorney and has no contact with a case while it is assigned to the EMP, where the majority of pre-trail discovery would be managed. Yehoshua told us that once a case reaches her, they do not assign tasks to outside counsel and the trial attorney is expected to do all of the work and it will be adjourned if there is a conflict in her schedule. Yehshua stated that she did not know who made the decision to assign tasks to outside counsel, and stated that she would never ask for outside counsel for her cases. She told us that she is not asked her opinion about the selection of outside counsel, and does not offer her opinion. She also stated that she does not approve bills or submit bills for experts or outside counsel.

---

[1] Yehoshua did not know what the acronym "EMP" meant, but based on her description it sounds as though it is probably a unit that handles early motion practice.

*Sean Smith*

Yehoshua stated that she has known Smith for nearly 20 years. She met him while working at her first job, Cheven Keeley & Hatzis. Her firm was inside counsel for Nationwide Insurance and he provided outside counsel services. They saw each other in court and social functions at co-workers' homes. She stated that she does not know if Smith ever represents plaintiffs suing NYC Transit, but knows that he represents both plaintiffs and defendants and does a lot of work in small claims court.

We then asked her about specific emails that were found in her email. There was an email exchange between she and Khahaifa about the "Anderson" case in which Yehoshua stated that Smith had the file and "he is prepared to select a jury." Yehoshua did not recall anything about the Anderson case, other than that she did not try the case. She could not recall her own involvement in the case, let alone Smith's. When asked if she had any idea what percentage of her outside counsel work was assigned to Smith, she stated that she had no idea how much work Smith has at Transit, and that she does not generally have outside counsel assigned to her work.

We also asked her about a case with a plaintiff named Lowther to which she was assigned and Smith had done EBT work after it was assigned to her. She explained that Smith had done EBTs on the case before it was assigned to her. She explained that the case is unusual because the plaintiff has had five surgeries. Every time a plaintiff has a surgery and an Independent Medical Examination (IME) and an EBT must be conducted. Yehoshua told us that Smith and Stan Schecter had done EBTs while the case was in EMP, so that is probably why in her email she told Adrian Thompson, a Claim Examiner, that she would see if either of them could sit in on an IME of the plaintiff. She reiterated that she does not have the ability to authorize payment for the work performed by outside counsel. She also could not remember whether she or Smith had done the EBT, since the email suggested that she would do it if she weren't on trial.

*Litigation between Yehoshua and Upside Realty*

Yehoshua told us that the in 2005 she entered in to a contract to convert a single family home into a two family home in order to take care of her elderly parents. Upside Realty was the contractor, and they failed to meet their contractual obligation. She retained an attorney, Mark Lefkowicz, and paid him an $8,000 retainer. A lawsuit was filed in 2009. She stated that Lefkowicz filed the summons and complaint that she drafted; he did nothing further on her cause of action. She also sued him in small claims court, but lost her case. She filed a grievance with the disciplinary committee.[2] She ultimately made a motion for a dismissal without prejudice in order to preserve her right to pursue her cause of action. In the interim she had three children and her parents' health continued to deteriorate.

Yehoshua began working at NYC Transit in 2013. She told us that in 2014 she saw Smith at NYC Transit and approached him about representing her in her lawsuit against the contractor. She told us that he was the attorney of records, but that she wrote all of the filings, which is consistent with the correspondence between Smith and Yehohua that we saw in her NYC Transit

---

[2] There is no record of public discipline for Lefkowicz.

2

email. Yehoshua stated that Smith refused to take a retainer or any other payment from her. Yehoshua stated that she did not request permission to have Smith represent her and did not tell anyone that Smith was representing her in private litigation until after the trial. Yehsohua told us that she told Larry Hesiler, about the trial, but did not tell him about Smith representing her.

Yehoshua told us that Baabaki had been the engineer that the contractor had used during the construction, which would have been in 2007 or 2008. When she needed an expert for her recent trial, she asked Baabaki if he could recommend someone, and he recommended William Ross. She stated that she had no idea that he had worked at NYC Transit, and told us that she thought Ross had retired "years ago."

*MTA Code of Ethics*

Yehoshua told us that she has had Ethics training and has annually certified that she is familiar with the All Agency Code of Ethics. Yehoshua stated that she believed that because Smith was not a NYC Transit employee that there was no problem. She also stated that she didn't think it was a conflict "because he represents both plaintiffs and defendants." When Yehoshua was told that Smith is considered a prohibited source because he is a vendor who provides services to her department, she did not seem to understand it. She insisted that because she is unable to assign work to Smith, that it does not violate any ethics rules. We explained to here that Smith may believe that his "gift" of legal services may benefit him in the future if she is able to assign him work or select him over other outside counsel. Before engaging Smith to represent her he should have sought an opinion from the NYC Transit Ethics officer, or, at a minimum, talked to her supervisor about it.

CONFIDENTIAL     NYCTA 003469