UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

AMELIA YEHOSHUA,

                                Plaintiff,                        Case No. 1:21-cv-04055 (FB) (SBJ)

      -against-

MANHATTAN AND BRONX SURFACE TRANSIT
OPERATING AUTHORITY, THE NEW YORK
CITY TRANSIT AUTHORITY, and WESLII
KHAHAIFA,

                                Defendants.

-----------------------------------------------------------------------X

**PLAINTIFF AMELIA YEHOSHUA'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**NESENOFF & MILTENBERG, LLP**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**.................................................................................................i

**INTRODUCTION**........................................................................................................1

**STATEMENT OF FACTS**.............................................................................................2

    **I.**    **Plaintiff Commences Employment with NYCTA.**.......................................2

    **II.**    **Khahaifa Becomes Aware that Plaintiff Complained to Heisler about Religious
Discrimination.**........................................................................................................3

    **III.**    **Khahaifa Subjects Plaintiff to Numerous Discriminatory and Retaliatory Actions
Following Yehoshua's Complaint to Heisler.**.......................................................4

    **IV.**    **Plaintiff Receives her First Disciplinary Action Notice.**.........................5

    **V.**    **Furious that Plaintiff was not Terminated and Following Plaintiff's Complaint to the
Division, Khahaifa Decides to Alert NYCTA's General Counsel to Stale Complaints from New
York County Supreme Justices.**...........................................................................6

    **VI.**    **Plaintiff's Claims in this Action**......................................................8

**ARGUMENT**..............................................................................................................9

    **I.**    **Legal Standard.**.................................................................................9

    **II.**    **Defendants' Motion for Summary Judgment Should be Denied.**.............10

        **A.**    **Plaintiff's Claims are Timely and May be Properly Considered by the Court.**...........10

        **B.**    **Issues of Fact Preclude Dismissal of Plaintiff's Religious Discrimination Claims.**.......12

        **C.**    **Issues of Fact Preclude Dismissal of Plaintiff's Retaliation Claims**.............18

        **D.**    **Issues of Fact Preclude Dismissal of Plaintiff's Hostile Work Environment Claims.**...20

        **E.**    **Plaintiff's Post-amendment SHRL and CHRL Claims Should Not be Dismissed.**.......22

**CONCLUSION**...........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456 (2d Cir. 2001) ...................................................................16

*Albunio v. City or New York*,
16 N.Y.3d 472 (2011) ...........................................................................24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...............................................................................9

*Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*,
647 F.2d 256 (2d Cir.1981) ....................................................................12

*Bilitch v. New York Health & Hosps. Corp.*,
194 A.D.3d 99 (2d Dep't 2021) ...............................................................25

*Brierly v. Deer Park Union Free Sch. Dist.*,
359 F.Supp.2d 275 (E.D.N.Y. 2005) ........................................................10

*Brightman v. Prison Health Serv., Inc.*,
108 A.D.3d 739 (2d Dep't 2013) ..............................................................26

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...............................................................................9

*Cenzon-DeCarlo v. Mt. Sinai Hosp.*,
101 A.D.3d 924 (2d Dep't 2012) ..............................................................26

*Chambers v. TRM Copy Ctrs. Corp.*,
43 F.3d 29 (2d Cir. 1994) .......................................................................15

*Cornwell v. Robinson*,
23 F.3d 694 (2d Cir. 1994) ......................................................................11

*Ellis v. Century 21 Dep't Stores*,
975 F.Supp.2d 244 (E.D.N.Y. 2013) ........................................................15

*Ellison v. Chartis Claims, Inc.*,
178 A.D.3d 665 (2d Dep't 2019) ..............................................................25

i

*Fitzgerald v. Henderson,*
  251 F.3d 345 (2d Cir. 2001) ..................................................................................11

*Graham v. Long Island R.R.,*
  230 F.3d 34 (2d Cir. 2000) ....................................................................................16

*Griffin v. Ambika Corp.,*
  103 F.Supp.2d 297 (S.D.N.Y. 2000) ....................................................................10

*Jaroslawicz v. Seedman,*
  528 F.2d 727 (2d Cir. 1975) ..................................................................................10

*Jeffreys v. City of New York,*
  426 F.3d 549 (2d Cir. 2005) ....................................................................................9

*Lefort v. Kingsbrook Jewish Med. Ctr.,*
  203 A.D.3d 708,(2d Dep't 2022) ..........................................................................24

*Leibowitz v. Cornell Univ.,*
  584 F.3d 487, 502 (2d Cir. 2009) ..........................................................................20

*Littlejohn v. City of New York,*
  795 F.3d 297 (2d Cir. 2015) ..................................................................................16

*McCarthy v. Dun & Bradstreet Corp.,*
  484 F.3d 184 (2d Cir. 2007) ....................................................................................9

*Moore v. Kingsbrook Jewish Med. Ctr.,*
  2013 WL 3968748 (E.D.N.Y. July 30, 2013)........................................................16

*National R.R. Passenger Corp. v. Morgan,*
  536 U.S. 101 (2002) ..............................................................................................12

*Nelson v. HSBC Bank USA,*
  87 A.D.3d 995 (2d Dep't 2011)..............................................................................24

*Patterson v. Cnty of Oneida,*
  375 F.3d 206 (2d Cir. 2004) ..................................................................................12

<u>*Pealo v. AAF McQuay, Inc.,*</u>
  140 F.Supp.2d 233 (N.D.N.Y. 2001)......................................................................10

*Philip v. City of New York*,
  2012 WL 1356604 (E.D.N.Y. 2012) ...................................................................13

*Quarantino v. Tiffany & Co.*,
  71 F.3d 58 (2d Cir. 1995) ...............................................................................14

*Quinby v. WestLB AG*,
  2007 WL 1153994 (S.D.N.Y. April 19, 2007) ................................................15

*Russell v. Cnty. of Nassau*,
  696 F.Supp.2d 213 (E.D.N.Y. 2010) ...............................................................16

*Sanderson-Burgess v. City of New York*,
  173 A.D.3d 1233 (2d Dep't 2019) ...................................................................26

*Schwapp v. Town of Avon*,
  118 F.3d 106 (2d Cir. 1997) ............................................................................10

*Sethi v. Narod*,
  12 F.Supp.3d 505 (E.D.N.Y. 2014) .................................................................15

*Taddeo v. L.M. Berry & Co.*,
  526 Fed. Appx. 121 (2d Cir. 2013) ..................................................................10

*Van Zant v. KLM Royal Dutch Airlines*,
  80 F.3d 708 (2d Cir. 1996) ..............................................................................11

*Weinstock v. Colombia Univ.*,
  224 F.3d 33 (2d Cir. 2000) ..............................................................................14

*Williams v. New York City Tr. Auth.*,
  171 A.D.3d 990 (2d Dep't 2019) .....................................................................24

*Williams v. Palladia, Inc.*,
  2009 WL 362100 (S.D.N.Y. Feb. 10, 2009) ....................................................15

*Wright v. Compass Grp. USA*,
  72 Misc.3d 1202(A), 147 N.Y.S.3d 887 (Sup. Ct. Kings Co. June 8, 2021) ...........24

*Zakrzewska v. New School*,
  14 N.Y.3d 469, 479 (2010) ..............................................................................25

## INTRODUCTION

Plaintiff Amelia Yehoshua ("Plaintiff" or "Yehoshua") respectfully submits this memorandum of law in opposition to Defendants Manhattan and Bronx Surface Transit Operating Authority, New York City Transit Authority (collectively, "NYCTA") and Weslii Khahaifa ("Khahaifa" and collectively, "Defendants") Motion for Summary Judgment.

Yehoshua was employed by NYCTA as a trial attorney in NYCTA's New York County Trial Unit (the "Unit") from 2013 until her transfer in 2020. Throughout her tenure in the Unit, Plaintiff amassed an impressive record of defense verdicts, as recognized by the Unit's Head of Torts. Despite her impressive record and years of dedication to NYCTA, Defendants swiftly turned their backs on Plaintiff after Plaintiff had the bravery to stand up against her supervisor, Khahaifa, and report the antisemitic and discriminatory treatment she received as an Orthodox Jewish woman in the Unit. Indeed, following Khahaifa's knowledge and understanding that Yehoshua had complained that Khahaifa had interfered with Plaintiff's religious observance of the Sabbath, Khahaifa subjected Plaintiff to a hostile work environment, "stark" disparate treatment, and ultimately continued to target Plaintiff even after Plaintiff was transferred to a new unit, leading directly to Plaintiff's improper termination of employment.

Accordingly, Plaintiff commenced this action asserting claims of religious discrimination, a hostile work environment, and retaliation against Defendants. Through its motion, Defendants attempt to skirt liability by misconstruing the record evidence to argue that this matter should be dismissed before trial. For the reasons set out in detail below, Defendants' motion should be denied.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Response in Opposition to Defendant's 56.1 Statement of Material Facts, Defendant's 56.1 Statement of Material Facts where not disputed, the Declaration of Gabrielle M. Vinci, and all exhibits annexed thereto, and the Declaration of Plaintiff, and all exhibit annexed thereto for a full recitation of the facts relevant to the determination this motion. The following is a high-level summary of the facts underlying the present motion[1].

### I.    Plaintiff Commences Employment with NYCTA.

Plaintiff, an Orthodox Jewish woman, commenced employment with the NYCTA as a Trial Attorney within NYCTA's Law Department, Division of Torts. (SOF ¶¶ 1, 6). Specifically, Plaintiff was assigned to work in the New York Country Trial Unit (the "Unit") and was responsible for handling tort trials on behalf of NYCTA. (SOF ¶ 5). Over the course of her tenure in the Unit, Plaintiff routinely secured defense verdicts against so-called "titan" plaintiff counsels and impressed many of NYCTA's high-ranking administrators, including the Kings County Borough Chief Lisa Hodes-Urbont ("Hodes-Urbont") and Head of Torts, Lawrence Heisler ("Heisler"). (SOF ¶ 10; Heisler Dep. Tr.[2] 17:3-11, 64:19-65:9; Pl. Decl.[3] at Ex. A). Beginning in or around January of 2015, Plaintiff began to be supervised by Khahaifa. (SOF ¶ 8).

As a practicing Orthodox Jewish woman, Plaintiff observed the Sabbath. (SOF ¶¶ 6). As such, she was required to leave early on Friday afternoons in keeping with her Jewish faith. (SOF

---

[1] Unless cited directly to an Exhibit or Declaration, all statements of fact contained herein are followed by a citation to the appropriate paragraph number of Plaintiff's or (if undisputed) Defendant's Rule 56.1 Statement as "(SOF ¶ _)", which therein contain a fuller citation to the appropriate source for the statement of fact.

[2] The deposition transcript of Lawrence Heisler is annexed to the Declaration of Gabrielle M Vinci at Exhibit 2 and cited herein as "Heisler Dep. Tr. _".

[3] The Declaration of Plaintiff Amelia Yehoshua, submitted herewith, is cited herein as "Pl. Decl.".

¶¶ 6). In order to meet NYCTA's requirement that attorneys work an 8-hour workday, Plaintiff would either arrive to work earlier than usual on Fridays or work through her lunch. (SOF ¶ 7).

## II.    Khahaifa Becomes Aware that Plaintiff Complained to Heisler about Religious Discrimination.

On or about January 15, 2016, a Friday, during Plaintiff's commute to work, Plaintiff experienced a train delay of approximately 45-mniutes. (SOF ¶ 15). Normally, Plaintiff would have been able to make up the time delay by staying late at the office; however, as the delay occurred on a Friday, Plaintiff was unable to stay late without violating her observance of the Sabbath. (SOF ¶ 16). In the past, Plaintiff's predecessor had advised that in the event of a train delay, Plaintiff could obtain an incident report and have the delay in arrival excused so as not to have to make up the time. (SOF ¶ 17). Thus, Plaintiff obtained an incident report, presented the incident report to Khahaifa, and requested that the 45-minute delay in her arrival be excused. (SOF ¶¶ 17-18). Despite the delay having occurred on a Friday, and after rejecting Plaintiff's offer to make up the time on a different day, Khahaifa refused to excuse the late arrival and told Plaintiff that it did not make a difference that the delay occurred on a Friday. (SOF ¶¶ 20-22).

After Khahaifa's refusal to excuse Plaintiff's late arrival, Plaintiff spoke with Khahaifa's supervisor and Head of Torts, Heisler. Plaintiff explained the situation to Heisler and complained that Khahaifa's actions were discriminatory towards her based on Plaintiff' religion. (SOF ¶ 24). Heisler was alarmed and annoyed at Khahaifa's treatment of Plaintiff and told Plaintiff that he would "take care of it." (*Id*.). Agreeing that Khahaifa's actions could be construed as discriminatory, Heisler spoke to Khahaifa about the situation. (*Id*.). Following that conversation, Khahaifa understood that Plaintiff had made a complaint of discrimination against her. (Vinci

Decl.[4], Ex. 4 at p. 2 ("To now be accused of interfering with her religious observance of the Sabbath is insulting, disappointing and could not be further from the truth.").

### III.    Khahaifa Subjects Plaintiff to Numerous Discriminatory and Retaliatory Actions Following Yehoshua's Complaint to Heisler.

Following Plaintiff's complaint to Heisler, which Khahaifa understood to be a complaint of discriminatory treatment against her, Plaintiff's work environment markedly worsened. (Pl. Decl. ¶ 45). Khahaifa, seemingly intentionally, overloaded Plaintiff with cases and work; Plaintiff found herself to be the only attorney in the Unit handling the most number of trials in the Unit. (SOF ¶ 33; Pl. Decl. ¶¶ 49-51). While Plaintiff's workload increased, Khahaifa also took away Plaintiff's trial assistant without notice or justification. (SOF ¶¶ 25-29). Plaintiff was the only attorney in the Unit to have her trial assistant reassigned. (*Id*.). After both Plaintiff and her trial assistant raised objections to the reassignment, the pair were assigned to work together again. (SOF ¶¶ 29-31).

In addition to overloading Plaintiff with work and the attempted reassignment of Plaintiff's trial assistant, Khahaifa would also assign Plaintiff new cases and files to work on *after* Plaintiff had left the office on Fridays in observance of the Sabbath. (SOF ¶¶ 34-37). Rather than assign the cases to attorneys in the office ready and available to immediately work on the files, as some of the files arguably required, Khahaifa chose instead to assign the case files to Plaintiff during a time she knew Plaintiff would not be able to review or work on them, and the cases would sit unattended to despite some needing attention on or before the following business day. (*Id*.). Khahaifa also refused to allow, and in fact reprimanded, Plaintiff's colleagues for assisting her in court. (SOF ¶ 108).

---

[4] The declaration of Gabrielle M. Vinci, submitted herewith, is cited herein as "Vinci Decl. _".

Plaintiff repeatedly complained to Heisler about the unfair treatment she received from Khahaifa. The work environment became so obviously toxic and volatile that Heisler testified that he had to transfer Plaintiff away from the Unit or risk a lawsuit because the disparate treatment Plaintiff was subjected to was "stark." (SOF ¶ 69). Accordingly, Heisler transferred Plaintiff to the Kings County Trial Unit under the supervision of Lisa Hodes-Urbont ("Hodes-Urbont") in January of 2020. (*Id*.).

Following Plaintiff's transfer to the Kings County Trial Unit, Khahaifa should not have had any more dealings or influence over Plaintiff's workday, assignments, or tasks. (SOF ¶¶ 72-74). Despite this, Khahaifa continued to oversee Plaintiff and went so far as to continue to oversee Plaintiff's timesheets, seeming taking advantage of an "administrative error" until Plaintiff complained of it in June of 2020. (SOF ¶¶ 72-75).

**IV.**   **Plaintiff Receives her First Disciplinary Action Notice.**

In June of 2020, despite no longer being Plaintiff's supervisor, Khahaifa sent Plaintiff a Disciplinary Action Notice, No.:20-6314-0003 (the "First DAN"). The First DAN related to a complaint from Plaintiff's adversary in a personal litigation and accused Plaintiff of violating NYCTA's policies by virtue of hiring a vendor, specifically an outside counsel, to perform personal work for Plaintiff without compensation. (SOF ¶¶ 78-83; Pl. Decl. ¶¶ 25-27; Pl. Decl., Ex. B). Previous to issuance of the First DAN, Plaintiff had truthfully reported to the Office of the Inspector General that she had indeed engaged the services of an outside counsel to represent her on a contingency basis in a personal litigation. (*Id*.). In response to the First DAN, Plaintiff hired counsel who submitted a robust response to each specification in the First DAN and argued against the proposed sanction of dismissal. (Pl. Decl., Ex. C).

While consideration of Plaintiff's response to the First DAN was underway, Plaintiff submitted a complaint of discrimination to the New York State Division of Human Rights (the "Division"). (SOF ¶ 92). Approximately two months after Plaintiff filed her discrimination complaint with the Division, NYCTA rendered a sanction of 20-day unpaid suspension in relation to the First DAN. (SOF ¶ 91).

**V.   Furious that Plaintiff was not Terminated and Following Plaintiff's Complaint to the Division, Khahaifa Decides to Alert NYCTA's General Counsel to Stale Complaints from New York County Supreme Justices.**

Khahaifa was purportedly furious that Plaintiff was not terminated following the First DAN. (SOF ¶ 91). Angered that Plaintiff was not dismissed from employment, Khahaifa took the opportunity to resurrect moot and previously resolved alleged complaints from Justices sitting in the New York County Supreme Court to attack Plaintiff once again.

Specifically, in or around 2019 and early 2020, Khahaifa reported to Heisler that a number of judges had allegedly made complaints to her (Khahaifa) regarding Plaintiff. Specifically, Khahaifa reported that Justice ████ had complained that Plaintiff acted unprofessionally during a court appearance related to Plaintiff's colleague's case. (SOF ¶¶ 43-44). Heisler, having been apprised of the issue in the case previously, did not show a large amount of concern as, "in the larger scheme of things" the issue was minor and, to his mind, already resolved. (SOF ¶ 44).

Thereafter, in or around November and December 2019, Khahaifa saw Heisler in the hallway and smirked while stating that "the judges don't like [Yehoshua]" but did not provide any further context. (SOF ¶ 60). Khahaifa also sent Heisler and Gail Goode an email regarding alleged complaints that Justices Freed, who had a history of bias against NYCTA, and Frank had lodged made against Plaintiff. (SOF ¶¶ 60-61). Other than Khahaifa's reports about the alleged complaints, Heisler was not shown any evidence of the alleged complaints. Nor was Plaintiff aware

of any complaints made by the judges or ever told that she was not welcome in front of any judge. (Pl. Decl. ¶¶ 10, 18). It was not uncommon for judges to complain about attorneys to NYCTA. (SOF ¶ 97).

Also, in or around January 2020, Khahaifa allegedly received complaints from Justices Adams ,Silvera, and Kaplan, that they did not wish to have Plaintiff appear before them. (SOF ¶¶ 65-71). Notably, such alleged complaints were not based on any personal knowledge the justices had regarding Yehoshua, as Plaintiff had not even been before a number of them in the past for them to have personal knowledge of her conduct in court, appropriate or otherwise. (*Id*.). Moreover, at the time of the alleged complaints (January 2020), Plaintiff had already been transferred to the Kings County Trial Unit and would no longer be appearing in the New York County Supreme Court. (*Id*.).

At the time of these alleged complaints, Khahaifa reported the justices' concerns to Heisler. (SOF ¶¶ 43-44, 60). However, even though she was not satisfied with Heisler's response to her report of the complaints, Khahaifa chose not to escalate the situation any further, testifying that there was no need to at that point. (SOF ¶ 95). Apparently, the need to escalate her concerns over the alleged complaints came only after she was angered by Plaintiff's suspension in lieu of termination and Plaintiff's complaint of discrimination to the Division. Following these instances, Khahaifa reported the judge's complaints to NYCTA's General Counsel, David Farber ("Farber") during a discussion about the First DAN. (SOF ¶ 93). Following that discussion, Khahaifa sent a formal memorandum to Farber detailing the justices alleged complaints to her dating back to 2019. (SOF ¶ 95).

As a result of Khahaifa's memorandum to Farber, NYCTA issued Plaintiff Disciplinary Action Notice No. 21-6314-0001 (the "Second DAN"). (SOF ¶ 98; Pl. Dec., Ex. D). Notably, and

uncommonly for the usual practice at NYCTA, Heisler and Hodes-Urbont were completely left out of the disciplinary process with respect to the Second DAN. (SOF ¶ 100). Heisler testified that he believed he was left "out of the loop" due to his status as an Orthodox Jewish man as he had been involved in many other disciplinary action processes with respect to non-Jewish employees at NYCTA. (SOF ¶ 100). The Second DAN again sought Plaintiff's dismissal. (Pl. Decl., Ex. D). Plaintiff, working with the same counsel who responded to the First DAN, submitted an appeal of the Second DAN detailing the many inconsistencies and insufficiencies in NYCTA's specifications against Plaintiff. (SOF ¶ 99; Pl. Decl., Ex. E). Plaintiff's appeal purportedly sparked an investigation by an NYCTA-tasked attorney, Mariel Thompson, into the allegations in the Second DAN. (SOF ¶ 100). Notably, neither Plaintiff, Hodes-Urbont, or Heisler were involved in the alleged investigation. (SOF ¶¶ 100-101). Heisler would have been able to detail a myriad of reasons why the specifications in the Second DAN were faulty and unworthy of the suggested sanction of dismissal. (SOF ¶ 101; Heisler Dep. Tr. 117:4-130:3).

Following the supposed investigation, Plaintiff's employment with NYCTA was terminated. (SOF ¶ 102).

**VI.**    **Plaintiff's Claims in this Action**

Plaintiff has alleged the following causes of action against Defendants: (i) Religious Discrimination in violation of the New York State Human Rights Law ("SHRL"), the New York City Human Rights Law ("CHRL"), and Title VII of the Civil Rights Act of 1964 ("Title VII") and (ii) Retaliation in violation of SHRL, CHRL, and Title VII.

# ARGUMENT

## I.    Legal Standard.

The Second Circuit has ruled that the granting of a motion for summary judgment is a drastic remedy, which must be used "sparingly". The burden is on the moving party to establish the absence of any material factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In making this determination, the court "must resolve all ambiguities, credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment, and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 484 F.3d 184 (2d Cir. 2007). A fact is "material" if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In reviewing such a motion, "the judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). If there are any doubts as to the existence of a triable issue of fact or if a material issue of fact is arguable, summary judgment must be denied. *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975).

The Second Circuit has cautioned that "[w]here an employer acted with discriminatory intent, direct evidence of that intent will only rarely be available, so affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show

discrimination." *Taddeo v. L.M. Berry & Co.*, 526 Fed. Appx. 121, 122 (2d Cir. 2013). For this reason, the Second Circuit has repeatedly cautioned against granting summary judgment in employment discrimination cases because the employer's intent is often at issue and is difficult to determine. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Indeed, "in the context of employment discrimination cases, summary judgment is 'ordinarily inappropriate' because the allegations therein require exploration into an employer's motivation and intent for an employment decision." *Pealo v. AAF McQuay, Inc.*, 140 F.Supp.2d 233, 236 (N.D.N.Y. 2001) (quoting *Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 306 (S.D.N.Y. 2000)); *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F.Supp.2d 275, 289 (E.D.N.Y. 2005) (Opining that "[s]ummary judgment … should be granted with caution in employment discrimination cases")

## II.      Defendants' Motion for Summary Judgment Should be Denied.

### A. Plaintiff's Claims are Timely and May be Properly Considered by the Court.

Defendants claim that Plaintiff's allegations related to the 2016 timesheet issue and other instances of alleged discrimination and/or retaliation are time-barred.

It is well settled in the discrimination context that "[i]f a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). See also, *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994) ("where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period").

Generally, a continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Fitzgerald v. Henderson*, 251 F.3d 345 at 359. In such a case, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id.* (internal quotation marks omitted). *See also*, *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981).

Moreover, a claim of hostile work environment is considered timely so long as one act contributing to the claim occurred within the statutory period; if it did, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Patterson v. Cnty of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

Here, the record evidence establishes that the timekeeping incident was, in essence, the foundational incident which spurred years of discriminatory and retaliatory actions against Plaintiff by her former-supervisor, Khahaifa. Such incidents include, but were not limited to, a stripping of Plaintiff's trial assistant, overloading of Plaintiff's workload without regard to business needs or Plaintiff's observance of the Sabbath, micromanaging of Plaintiff's whereabouts and timesheets, and instigation of potentially career ending disciplinary charges against Plaintiff based on moot reports of misconduct without any evidence of same.

Accordingly, Defendant's arguments regarding the timeliness of Plaintiff's claims should be rejected and the continuing violation doctrine should apply.

Even if the court was to rule that the continuing violation doctrine does not apply in this case, the facts relating to events that occurred prior to the statute of limitations may still be considered by the court in determining Plaintiff's timely discrimination claims. *Philip v. City of*

*New York*, 2012 WL 1356604, at *6 (E.D.N.Y. 2012) ("The other alleged discriminatory acts (e.g., derogatory gestures and disparate treatment) though not actionable in themselves, may nevertheless be cited as evidence in support of plaintiff's timely claim (for example, as evidence of pretext) even if they fall outside the statute of limitations").

As the U.S. Supreme Court has made clear,

> The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. **Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.**

*National R.R. Passenger Corp. v. Morgan*, at 113 (emphasis added). Accordingly, in the event any part of Plaintiff's discrimination and retaliation claims are deemed untimely, this Court should still consider the untimely incidents as background and support for the timely adverse actions.

## B. Issues of Fact Preclude Dismissal of Plaintiff's Religious Discrimination Claims.

To establish a *prima facie* claim of discrimination[5], Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Weinstock v. Colombia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Notably, Plaintiff's burden of proof in a discrimination action is *de minimis* at the *prima facie* stage. *See Graham v. Long Island R.R.*, 230 F.3d 38, 40 (2d Cir. 2000) ("The burden a plaintiff, alleging that [s]he was discriminated against by [her] employer, carries to survive a

---

[5] Allegations of misconduct pre-dating the 2019 amendments to the SHRL are subject to the same standards as Plaintiff's Title VII claims. *Weinstock v. Colombia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

summary judgment motion at the prima facie stage is a minimal one"); *Quarantino v. Tiffany & Co.*, 71 F.3d 58, 65-66 (2d Cir. 1995).

Once the plaintiff establishes a *prima facie* case of discrimination, the burden then falls to the defendant to articulate some legitimate, nondiscriminatory reason for its action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Once the defendant has done so, the burden then shifts back to the plaintiff to demonstrate that "the [defendant's] proffered reason was a pretext for discrimination." *Id*.

Defendants maintain that Plaintiff has failed establish an inference of discrimination for any challenged adverse action and/or has failed to rebut Defendants' purportedly non-discriminatory justifications for such actions. In doing so, Defendants ask this court to view each alleged incident of discrimination as a standalone event subject to independent scrutiny. However, the case law is clear that such an inquiry is inappropriate. *Williams v. New York City Hous. Auth.*, 61 F.4th 55, 60 (2d Cir. 2023). As set forth herein, Plaintiff has, at a minimum, raised an issue of fact sufficient to overcome Defendants' motion for summary judgment on Plaintiff's religious discrimination causes of action.

To establish an inference of discrimination a plaintiff must put forth some evidence "from which a rational fact finder could infer that [the employer's actions] were motivated by [her protected characteristic]." *Williams v. Palladia, Inc.*, 2009 WL 362100, at *7 (S.D.N.Y. Feb. 10, 2009). Notably, the standard used to establish an inference of discrimination is a "flexible [one] that can be satisfied differently in differing factual scenarios." *Ellis v. Century 21 Dep't Stores*, 975 F.Supp.2d 244, 271 (E.D.N.Y. 2013). *See also*, *Sethi v. Narod*, 12 F.Supp.3d 505, 536 (E.D.N.Y. 2014). Indeed, "no one particular type of proof is required to show that [the adverse

employment action] occurred under circumstances giving rise to an inference of discrimination." *Id.*

Further, in determining whether an inference of discrimination exists, "'the court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file' that their actions are motivated by factors expressly forbidden by law.'" *Quinby v. WestLB AG*, 2007 WL 1153994, at *6 (S.D.N.Y. April 19, 2007) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). Therefore, courts recognize that most plaintiffs must rely on circumstantial evidence. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

A plaintiff alleging discrimination based upon a protected characteristic can demonstrate an inference of discrimination through many means, including "the employer's criticism of the plaintiff's performance in [] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action.]" *Sethi v. Narod*, 12 F.Supp.3d at 536 (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)).

Moreover, a plaintiff may demonstrate an inference of discrimination by showing the defendant "engaged in a pattern of discriminatory treatment" of those in the plaintiff's protected category. *See Russell v. Cnty. of Nassau*, 696 F.Supp.2d 213, 232 (E.D.N.Y. 2010); *Moore v. Kingsbrook Jewish Med. Ctr.*, 2013 WL 3968748, at *6 (E.D.N.Y. July 30, 2013). Finally, "[a]n inference of discrimination can arise from … "'the more favorable treatment of employees not in the protected group…'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009).

Viewing the evidence in the light most favorable to Plaintiff, as the court must at this procedural juncture, at a minimum, the record evidence raises an issue of fact from which a reasonable juror could differ as to whether Defendants' numerous actions against Plaintiff raise an inference of discrimination. Specifically,

- With respect to the 2016 timekeeping issue, a reasonable juror could find that the record raises an inference of discrimination in light of the fact that (i) such incidents occurred regularly within NYCTA and were routinely excused; (ii) Khahaifa had the authority to excuse the lateness; (iii) Khahaifa refused to excuse Plaintiff's lateness; (iv) Khahaifa knew that Plaintiff was unable to make up the time specifically due to her observance of the Sabbath but refused to allow Plaintiff to make up the time on a different day; and (v) Khahaifa's own supervisor, Heisler, agreed that it appeared there was an ulterior motive in Khahaifa's action;

- With respect to the reassignment of Plaintiff's trial assistant, a reasonable juror could find that the record raises an inference of discrimination in light of the fact that (i) there was no basis to reassign Plaintiff's trial assistant; (ii) neither Plaintiff nor her trial assistant asked for or desired to be reassigned; and (iii) Plaintiff was the only attorney to have her trial assistant reassigned;

- With respect to the unfair assignment of cases to Plaintiff, a reasonable juror could find that the record raises an inference of discrimination in light of the fact that (i) Plaintiff observed she was handling more trials in the Unit than her colleagues; (ii) Plaintiff's colleagues were unable to assist her and were reprimanded for doing so; and (iii) Khahaifa would wait until Plaintiff left on Friday afternoons in observance of the Sabbath to assign

15

Plaintiff work, even where it would have reasonably made more sense to assign the cases to attorneys available to work them immediately;

- With respect to issuance of the First DAN, a reasonable juror could find that the record raises an inference of discrimination in light of the fact that (i) the allegations had been investigated years prior to issuance of the First DAN and, at the time, not deemed a large issue; (ii) Plaintiff had not engaged in the alleged conduct and had truthfully reported that she had not engaged in the alleged conduct; and (iii) even plaintiff's supervisor, Heisler, found the allegations and proposed sanction of dismissal 'foolish';

- With respect to the issuance of the Second DAN and Plaintiff's termination of employment, a reasonable juror could find that the record raises an inference of discrimination in light of the fact that (i) the Second DAN was based on allegations, without evidentiary support beyond Khahaifa's own assertions, that were known to NYCTA before issuance of the First DAN and that Khahaifa found "no need" to escalate at the time they became known; (ii) Khahaifa was angered by Plaintiff's suspension in lieu of dismissal following the First DAN; (iii) judges commonly complained to supervisors about NYCTA attorneys and those in a position to rebut the allegations in the Second DAN, namely Plaintiff and Heisler, were not included in NYCTA's alleged investigation of the Second DAN; (iv) Plaintiff's Orthodox Jewish supervisor, Heisler, was frozen out of any part of the Second DAN, an uncommon practice given his position at the time; (v) the allegations in the Second DAN were rendered moot by Plaintiff's transfer to the Kings County Trial Unit months before the issuance of the Second DAN; and (vi) a number of the allegations in the Second DAN were rebutted by Plaintiff's appeal of the proposed sanction of dismissal.

Moreover, a reasonable juror could find that the purported justifications of Defendants' actions are a mere pretext for unlawful discrimination. In proving pretext, a plaintiff may rely upon the same evidence that comprised her *prima facie* case, without more. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). It is well-settled that a plaintiff need not show that the employer's proffered reasons are false or that they did not play a role in the employment decision. Rather, a plaintiff only needs to show that those were not the ***only*** reasons, and that the discriminatory motive played ***some*** role in the decision. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (emphasis added). Notably, "the issue of pretext is 'ordinarily for the jury to decide at trial rather than for the judge to determine on a motion for summary judgment." *Shain v. Ctr. for Jewish History, Inc.*, 418 F.Supp.2d 360, 366 (S.D.N.Y. 2005).

Here, a reasonable juror could find that Defendants' purported basis for actions taken against Plaintiff are a pretext for discrimination. Specifically, in addition to the evidence highlighted *supra*, the record reflects that Plaintiff was repeatedly singled out by Khahaifa and subjected to an environment of disparate treatment so severe that the Head of Torts found it pertinent to separate Yehoshua from Khahaifa or risk a lawsuit, and described Khahaifa's disparate treatment of Plaintiff as "stark." Moreover, the record reflets that Defendants, though purporting to properly and objectively investigate the allegations against Plaintiff, did nothing to include exculpatory evidence and witnesses in their investigation leading to only one conclusion, that Plaintiff was guilty of the allegations against her. The record further reflects that the allegations lodged against Plaintiff-that she acted in a manner unbecoming of a NYCTA attorney-were either (a) not novel in that NYCTA had received complaints from Justices regarding NYCTA attorneys that were typically disregarded or (b) were easily rebutted by Plaintiff and her counsel. Despite

this, Defendants charged forward with the process to dismiss Plaintiff from employment after Khahaifa was angered that Plaintiff's employment was not terminated following the First DAN.

## C. Issues of Fact Preclude Dismissal of Plaintiff's Retaliation Claims

Courts apply the same burden shifting framework used in claims of discrimination to analyze claims of retaliation. *See Westbrook v. City Univ. of New York*, 591 F.Supp.2d 207, 234 (E.D.N.Y. 2008). To establish a *prima facie* case of retaliation under the SHRL and Title VII, Plaintiff must establish that: (1) she participated in a protected activity; (2) the employer had knowledge of the protected activity; (3) she suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Davis v. Metro. Transp. Auth.*, 2012 WL 727696, at *10, (S.D.N.Y. Mar. 6, 2012).

Defendants argue that Plaintiff's retaliation claims must fail because Plaintiff has not plausibly alleged a causal link between Plaintiff's numerous complaints regarding religious discrimination and any of the complained of actions in this litigation. Defendants' arguments should be rejected.

"An inference of causation may be appropriate where there is close temporal proximity between protected activity and an adverse action." *Stratton v. Bentley Univ.*, 113 F.4th 25, 45 (1st Cir. 2024) (citing *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 85 (1st Cir. 2006)). Indeed, it is sufficient for Plaintiff to demonstrate, as she has, that her engagement in protected activity preceded Defendant's retaliatory act in order to satisfy her *de minimis* burden at the *prima facie* stage. *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001) (noting that a plaintiff's burden is "a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement"); *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist.*, 411 F.3d 306, 314 (2d Cir. 2005).

Here, the record reflects that Khahaifa knew and understood that Plaintiff complained of discrimination in January of 2016. Thereafter, Khahaifa engaged in a campaign against Plaintiff wherein she, among other things, (i) attempted to reassign Plaintiff's, and only Plaintiff's, trial assistant to outside counsel; (ii) overloaded Plaintiff with new files after Plaintiff had left the office in observance of the Sabbath; (iii) reprimanded Plaintiff's colleagues from assisting her in court; (iv) laughed at Plaintiff for engaging in Jewish customs such as eating matzah; and (v) improperly continued to monitor and oversee Plaintiff's work and timesheets following Plaintiff's transfer out of the Unit.

Moreover, the record reflects that while Khahaifa found no need to escalate the issue of alleged complaints from justices sitting in the New York County Supreme Court at the time Khahaifa learned of such complaints, just two months[6] after Plaintiff lodged an external complaint of discrimination with the Division, Khahaifa spoke to Farber about the, at that time moot, issues raised by the judges and submitted a formal memorandum sparking the disciplinary proceedings that ultimately, and wrongly, led to Plaintiff's termination of employment.

Based on the foregoing, a reasonable juror could determine that Defendants' purported non-retaliatory reasons for their actions against Plaintiff were pretextual and Defendants' motion should be denied.

---

[6] Courts have repeatedly found time lapses far exceeding two months sufficient to show a causal connection at the *prima facie* stage. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d. Cir. 2009) (six month temporal gap between protected activity and adverse action sufficient for finding of causal connection); *Raniola v. Bratton*, 243 F.3d at 624 (2d Cir. 2001) (fourteen month gap); *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001) (five month gap); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight month gap); *Salazar v. Bowne Realty Assoc., LLC.*, 796 F.Supp.2d 378, 385 (E.D.N.Y. 2011) (eight month gap.); *Leung v. New York Univ.*, 2010 WL 1372541, at *6 (S.D.N.Y. March 29, 2010) (ten month gap). *See also Rodriguez v. City of N.Y.*, 644 F.Supp.2d 168, 192 (E.D.N.Y. 2008) (finding a causal connection between plaintiff's protected activity and subsequent termination even where suggestion to terminate plaintiff occurred before plaintiff's EEOC complaint was submitted).

### D. Issues of Fact Preclude Dismissal of Plaintiff's Hostile Work Environment Claims.

Generally, in order to establish a hostile work environment, a plaintiff must show that (1) she is a member of a protected class; (2) she experienced unwelcome harassment; (3) the harassment was based on her membership in the protected class; and (4) the harassment was severe or pervasive enough to create a hostile work environment. *Ewing v. Coca Cola Bottling Co. of N.Y., Inc.*, 2001 WL 767070, at *7 (S.D.N.Y. June 25, 2001). Notably, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000).

Indeed, the work environment does not need to be deemed "unendurable" or "intolerable" in order to be deemed "hostile," and the Second Circuit has "repeatedly cautioned against setting the bar too high." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d at 70. Moreover, while it is undisputed that a plaintiff must, at a minimum, raise an issue of fact that the conduct was motivated by her protected characteristic, it is also well settled that "facially neutral" incidents may be included in the court's "totality of the circumstances." *Khan v. HIP Centralized Lab. Servs., Inc.*, 2007 WL 1011325, at *5 (E.D.N.Y. March 30, 2007).

On a motion for summary judgment, the question for the court is simply whether a reasonable fact-finder could conclude, considering all the circumstances, "that the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id*. Even where multiple actions taken by an employer are not individually sufficient to create a hostile working environment, "an accumulation of seemingly minor incidents" may combine to satisfy the standard. *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002).

It should be noted that the Second Circuit has cautioned that because the issue of harassment in a hostile work environment is a "mixed question of law and fact," it is "especially well-suited for jury determination." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) (quoting *Richardson v. New York State Dep't of Corr.*, 180 F.3d 426, 439 (2d Cir. 1999)); see also *Patterson v. Cty. of Oneida, New York*, 375 F.3d 206, 227 (2d Cir. 2004) ("Where reasonable jurors could disagree as to whether alleged incidents of ... harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law").

Here, the record is replete with evidence from which a reasonable factfinder could conclude Plaintiff was subjected to a hostile work environment on the basis of her religion and/or complaints of religious discrimination. Specifically, the record demonstrates that (i) Plaintiff was treated differently than her colleagues with respect to the excused lateness and her observance of the Sabbath was given no consideration or significance in the determination be Khahaifa to deny Plaintiff's request to excuse her lateness; (ii) Khahaifa knew, or at a minimum understood, that Plaintiff had lodged a complaint of discrimination against her following the timesheet incident; (iii) Khahaifa purposefully assigned Plaintiff a significant amount of work after Khahaifa knew Plaintiff had left the office in observance of the Sabbath, even if such work would have arguably been better attended to be available attorneys in office; (iv) Khahaifa singled out Plaintiff for reassignment of Plaintiff's trial assistant; (v) Khahaifa sought to rid, at a minimum, the Unit of Plaintiff; (vi) Khahaifa improperly continued to oversee Plaintiff's work and timesheets following Plaintiff's transfer to the Kings county Trial unit; (vii) Plaintiff was singled out by Khahaifa and NYCTA for dismissal twice based upon faulty, if not entirely rebuttable, allegations of misconduct

21

and unethical behavior; and (viii) the Head of the Unit, Heisler, believed that discrimination was occurring and the differential treatment Plaintiff received was "stark".

When viewed cumulatively and in the light most favorable to Plaintiff, a reasonable juror could find that the aforementioned harassment constitutes an actionable hostile work environment and therefore, Defendants' motion should be denied.

### E. Plaintiff's Post-amendment SHRL and CHRL Claims Should Not be Dismissed.

The CHRL is broader and more protective than its state law counterpart. *See Wright v. Compass Grp. USA*, 72 Misc.3d 1202(A), 147 N.Y.S.3d 887 (Sup. Ct. Kings Co. June 8, 2021) (quoting *Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 999 (2d Dep't 2011)). Indeed, "'[t]he NYCHRL is construed 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Lefort v. Kingsbrook Jewish Med. Ctr.*, 203 A.D.3d 708, 712 (2d Dep't 2022) (quoting *Williams v. New York City Tr. Auth.*, 171 A.D.3d 990, 992 (2d Dep't 2019)). See also, *Albunio v. City or New York*, 16 N.Y.3d 472, 477-78 (2011). Accordingly, the CHRL is to be "more broadly interpreted". See *Singh v. Covenant Aviation Sec., LLC.*, 131 A.D.3d 1158, 1161 (2d Dep't 2015) (citing *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010)).

Under the CHRL, "unlawful discrimination must play '**no role**' in an employment decision." *Ellison v. Chartis Claims, Inc.*, 178 A.D.3d 665, 668 (2d Dep't 2019) (citing *Singh v. Covenant Aviation Sec., LLC.*, 131 A.D.3d at 1161). See also, *Blitch v. New York Health & Hosps. Corp.*, 194 A.D.3d 999, 1002 (2d Dep't 2021) (opining that a plaintiff may prevail on a CHRL discrimination claim by showing "unlawful discrimination was one of the motivating factors of the complained-of conduct").

In order to prevail on their summary judgment motion to dismiss Plaintiff's CHRL religious discrimination claim, Defendants must demonstrate that there is "'no evidentiary route

that could allow a jury to believe that discrimination played a role in their challenged actions.'" *Lefort v. Kingsbrook Jewish Med. Ctr.*, 203 A.D.3d at 708 (quoting *Ellison v. Chartis Claims, Inc.*, 178 A.D.3d 665, 668 (2d Dep't 2019) (quoting *Cenzon-DeCarlo v. Mt. Sinai Hosp.*, 101 A.D.3d 924, 927 (2d Dep't 2012)). See also, *Bilitch v. New York Health & Hosps. Corp.*, at 1002 ("Summary judgment should be granted only if no jury could find [the] defendant liable under any of the evidentiary routes—*McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof.") (quoting *Sanderson-Burgess v. City of New York*, 173 A.D.3d 1233, 1235 (2d Dep't 2019)).

Similarly, the standard to demonstrate retaliation under the CHRL is more lenient. To establish a claim of retaliation under the CHRL, a plaintiff must demonstrate that (i) she engaged in protected conduct that the employer was aware of, (2) the employer engaged in conduct reasonably likely to deter a person from engaging in protected conduct, and (3) there is a causal connection between the employer's action(s) and the protected conduct. *See Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 740 (2d Dep't 2013). Where the employer has proffered a non-retaliatory reasons for its action(s), a plaintiff may still defeat summary judgment under the NYCHRL by "producing evidence that the reason(s) set forth by the defendant were merely a pretext, or show that, regardless of any legitimate motivations the defendant may have had, the defendant was motivated at least in part by an impermissible motive." *Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d at 741.

For the reasons stated *supra*, Defendants have failed to meet their burden of showing that "no evidentiary route exists that could allow a jury to believe that discrimination [or retaliation] played a role" in their treatment of Yehoshua and Defendants' motion for summary judgment should be denied.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment should be denied, and Plaintiff should be awarded such other relief as the Court deems just and proper.

Dated: November 25, 2024

Respectfully submitted,

NESENOFF & MILTENBERG, LLP
Attorneys for Plaintiff

By: /s/ *Andrew T. Miltenberg*
Andrew T. Miltenberg, Esq.
Gabrielle M. Vinci, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
gvinci@nmllplaw.com