# EXHIBIT E

**HARRIS BEACH** PLLC

ATTORNEYS AT LAW

April 26, 2021

677 BROADWAY, SUITE 1101
ALBANY, NEW YORK 12207
518.427.9700

100 WALL STREET
NEW YORK, NEW YORK 10005
212.687.0100

***VIA FIRST CLASS MAIL and***
***EMAIL: David.Farber@NYCT.com***

**KARL J. SLEIGHT**
MEMBER
DIRECT:   518.701.2716
FAX:       518.427.0235

David Farber, General Counsel
Law Department
MTA NYC Transit
130 Livingston Plaza, 12th Floor
Brooklyn, New York 11201

> **Re:    Amelia (Dweck) Yehoshua**
> **Notice of Disciplinary Charges, DAN No. 21-6314-0001**

Dear Mr. Farber:

Please be advised that I represent Amelia (Dweck) Yehoshua in connection with the Notice of Discipline dated March 29, 2021 described as DAN No. 21-6314-0001 (hereinafter the Second Notice). This letter constitutes the response to the Second Notice and all previous communications and documents related to this and previous attempts to have Ms. Yehoshua disciplined are incorporated herein with this response (hereinafter "Second Response").

Simply put, Ms. Yehoshua categorically rejects these unsubstantiated allegations as a false narrative created by elements within the NYCT seeking to have her terminated. None of allegations alleged are supported by any evidence to corroborate the narrative – the reason – because the allegations are patently false. Ms. Yehoshua is confident that a dispassionate, independent and unbiased inquiry into these allegations would find them unsubstantiated and highly inappropriate to rely upon as a basis to terminate Ms. Yehoshua, a high performing attorney for the NYCT.

<u>Background</u>

Less than two months after the NYCT punished Ms. Yehoshua with a four week suspension for purported conduct occurring from May 7, 2014 to January 31, 2020, the NYCT has issued a Second Notice dated March 29, 2021 relying on unsubstantiated allegations that allegedly occurred between November 7, 2019 and January 30, 2020. In doing so, the NYCT is improperly segmenting these allegations that allegedly took place during the same time period into two separate disciplinary matters. Termination of Ms. Yehoshua from employment with NYCT under these circumstances would be constitutionally impermissible, prohibited by statute, and policies established by decisional case law (see, <u>State Div. of Human Rights ex rel Cottongim v. County of Onondaga Sheriff's Dept.</u>, 71 N.Y.2d 623 (1988)).

As is specifically set forth in your February 3, 2021 letter, you concluded, in its entirety as follows:

CONFIDENTIAL

NYCTA 000221

Mr. David Farber, Esq.
April 26, 2021
Page 2

**HARRIS BEACH**
ATTORNEYS AT LAW

Dear Ms. Yehoshua:

This is in reference to the disciplinary charges in DAN No. 20-6314-0003. I have reviewed the response thereto from your attorney, Karl Sleight, dated July 6, 2020. Based upon my consideration of that response and review of the available records, the originally recommended disciplinary penalty of dismissal from service is hereby modified to twenty (20) days of suspension without pay. You are further cautioned that any further violations of the Authority's Rules & Regulations and/or Code of Ethics may result in your dismissal from service.

First, we appreciate the fact that the information provided in our July 6, 2020 submission informed you that termination was not the proper conclusion to the matter. Less than two months after the date of your letter, termination still remains the wrong conclusion. Ms. Yehoshua is the primary bread winner for her family and is raising three young children. Terminating her from employment under these circumstances and in the midst of a pandemic, over allegations that on their face are more than two years old (that Ms. Yehoshua denies) when there are very few legal positions available in the market would be cruel and unjust.

Second, we also note that this conclusion not to terminate was based on the "available records" and information in the possession of the NYCT. Although the Second Notice is devoid of any basis for the allegations, any and all information that could have been in the possession of the NYCT existed at the time of the implementation of your Suspension Without Pay penalty on February 3, 2021. Thus, the NYCT is attempting to base an employment proceeding on alleged events that are more than two years old and that, if they had actually occurred, would have consisted of records and information that existed prior to, during, and at the conclusion of the prior disciplinary proceedings.

Third, the employment proceeding was concluded with the warning that "any further violations of [agency policies] may result in your dismissal from service." Your letter properly stands for the warning that any prospective activities in violation of agency policies could result in termination. Conversely, it belies any logic that it was intended to permit a new employment disciplinary proceeding based on information that is two years old and, if it were true, would have been known to NYCT prior to allegations contained in the notice of discipline dated June 12, 2020 for DAN No. 20-6314-0003 ("First Notice").

Suspicious Allegations/Possible Implications of Professional Responsibility

As set forth in my letter to you dated April 3, 2021, the fact that the allegation concerning Judge Adams (see, Specification IV) had nothing to do with improper conduct by Ms. Yehoshua is stunning. In fact, this was a situation where Judge Adams recused herself from cases involving Ms. Yehoshua because the Judge and Ms. Yehoshua were former colleagues and the Judge was properly following the rules of judicial conduct governing New York judges. It is disturbing that this fact was contorted into a misleading statement and is being relied on by NYCT to terminate Ms. Yehoshua. I trust that how this was allowed to occur alone will give you pause.

Mr. David Farber, Esq.
April 26, 2021
Page 3

**HARRIS BEACH ⸙**
ATTORNEYS AT LAW

Moreover, we reached out to each and every judge named in the notice of discipline and not one judge has confirmed the truth and veracity of the written allegations. In our view that fact speaks volumes.

As the General Counsel for the Department of Law, I am sure you appreciate the potential seriousness of this situation. If in fact the allegations contained in the Second Notice and referencing a number of State Judges are misleading or false, attorneys associated with crafting the Second Notice for their client NYCT/MTA may be running afoul of the Rules of Professional Conduct ("RPC").

For example, Rule 4.1 entitled Truthfulness in Statements to Others, states that "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person." The attorneys employed by the NYCT and MTA represent their respective agencies as the client (see, Rule 1.13, Comment 9). Upon information and belief, in particular the mischaracterization of Judge Adams' recusal at Specification 4, this rule may be implicated.

Moreover, Rule 5.3 entitled Lawyer's Responsibility for Conduct of Nonlawyers, governs the responsibilities of NYCT/MTA attorneys who may be working in conjunction of non-lawyers, such as non-lawyer individuals working in the Office of Labor Relations (see, Rule 5.3(b)(1) "A lawyer who orders or directs the specific conduct or, knowledge of the specific conduct, ratifies it"). As restated in the comments, a lawyer with supervisory authority over a non-lawyer has a parallel duty to provide appropriate supervision of the supervised non-lawyer. (see, Comment 2).

Likewise, Rule 3.3 governing Conduct Before a Tribunal is broadly interpreted and includes "an ancillary proceeding" (see, Comment 1). Here, the underlying matters cited in the Second Notice are directly and unequivocally under the auspices and control of the Court. Moreover, it is a foundational principle that attorneys are required and expected to "refuse to offer or use evidence that the lawyer knows to be false, regardless of the client's wishes" (see, Comment 5 citing Rule 3.3).[1] Under these circumstances, and after a review of other provisions of the RPC we bring to your attention that for the reasons referenced herein, an independent investigation to determine the root cause of the mischaracterized allegations may be appropriate by you.[2]

I trust bringing the implications of the applicable principles to your attention is of assistance.

Rules Cited in Support of Second Notice

The NYCT/MTA rely on the following rules in the single violation described as Charge I, as follows:

---

[1] In this case, the "client" is NYCT and its parent agency the MTA.
[2] This includes the gross mischaracterization of the statement in Specification IV attributed to Judge Adams' recusal.

Mr. David Farber, Esq.
April 26, 2021
Page 4

**HARRIS BEACH** ⅊
ATTORNEYS AT LAW

<u>**CHARGE I**</u>

Improper Performance of Duty; False, Incomplete or Inaccurate Report; Failure to Comply; Gross Misconduct and Conduct Unbecoming an Authority Employee in that you violated Rules 2(a), 2(b), 2(d), 4(a), 8(a), 10(a) and 10(b) of the *Rules and Regulations*. The following violations were reported to the General Counsel on February 27, 2021.

Upon information and belief, an independent and dispassionate investigation of these mischaracterized allegations, that includes an unbiased and frank discussion with Ms. Yehoshua's current supervisor Lisa Urbont and former Department Supervisor Larry Heisler, will reveal that this Charge and the accompanying Specifications are questionable and should not be relied on to terminate Ms. Yehoshua.

In addition, the cited agency Rules are hopelessly vague and inapplicable to any of the allegations as drafted.

<u>Responses to the Specifications Contained in the Second Notice</u>

As clearly stated above, Ms. Yehoshua denies in their entirety the allegations and mischaracterizations contained in the Second Notice, particularly Specifications I through and including V and provides the following responses.

<u>Response to Specification I</u>: There is absolutely no independent evidence that this allegation occurred or could withstand any basic scrutiny. It is false and has not been substantiated. Upon information and belief, this false narrative was created with significant input from Ms. Yehoshua's former supervisor Weslii Khahaifa, who has previously been counseled for religious discrimination by NYCT/MTA against Ms. Yehoshua (see, July 6, 2020 Response to Notice of Disciplinary Charges, DAN No. 20-6314-003, p.2-3 and Exhibit "I").

Ms. Yehoshua successfully represented the NYCT on several matters before Judge Sokoloff from 2015 through 2019 while assigned to the NYCT Manhattan trial unit. Ms. Yehoshua was a forceful advocate for the NYCT before Judge Sokoloff and had no improper interactions with her during this period. During that period there were no instances of "improper performance of duty", "gross misconduct", "conduct unbecoming an authority employee", or any other violation of the other sections of the Rules and Regulations cited by the NYCT/MTA in the March 29, 2021 Notice.

With regard to the factual narrative set forth in the March 29, 2021 Notice, Ms. Khahaifa assigned Ms. Yehoshua to the Wood litigation which has previously been handled by NYCT attorney Alexander Vandoros immediately after a successful conclusion of the Jones litigation.[3]

---

[3] The Wood litigation was a significant matter where plaintiff had a leg amputation and was alleging NYCT liability and seeking damages related thereto. Ms. Yehoshua settled the Jones litigation for far less than the plaintiff's demand and the resolution was considered a win by NYCT senior officials (Khahaifa excluded as she rarely, if ever,

CONFIDENTIAL

Mr. David Farber, Esq.
April 26, 2021
Page 5

**HARRIS BEACH ᴾᴸᴸᶜ**
ATTORNEYS AT LAW

Prior to appearing on this newly assigned matter, Ms. Yehoshua spoke with her colleague Matt Finkel who advised that NYCT's legal position was not to provide certain information being requested by the plaintiff, if it was already available as a public record. Ms. Yehoshua argued before Judge Sokoloff that certain information at issue was not subject to discovery under the CPLR. Judge Sokoloff disagreed with the NYCT position on the items at issue. After returning to her office, Ms. Yehoshua advised her supervisor Mr. Heisler of the situation. He disagreed with the Judge's decision, but given her ruling directed that NYCT disclose to plaintiff any of the items at issue. A review of the file found that the items sought by the plaintiff's attorney did not exist, and that plaintiff was merely speculating that the items may have existed. As such, the issue was rendered moot. Ms. Yehoshua did nothing improper in this situation.

The Notice alleges that Ms. Yehoshua was improperly "in a jury room speaking with the plaintiffs on a case against the Authority, while plaintiff's attorney was conducting settlement negotiations with another Authority attorney in the courtroom". Upon closer examination, it is revealed that nothing improper was done by Ms. Yehoshua. By way of background, Ms. Yehoshua was permitted to use the Lawyers Conference Room in the courthouse by a court officer. It was not a "jury room". Although individuals were also seated in the conference room, no discussion whatsoever about the case against NYCT took place. Ms. Yehoshua initiated no conversations with these individuals. She did respond to a benign comment by one of these individuals about the weather. Judge Sokoloff did not "admonish" Ms. Yehoshua. Rule 4.2(a) of the Rules of Professional Standards states: "In representing a client, a lawyer shall not communicate or cause another to communicate <u>about the subject of the representation</u> with a party the lawyer knows to be represented by another lawyer in the matter …". Since there were no communications about the subject matter of the case against the NYCT, there was no improper conduct by Ms. Yehoshua.

Obviously, none of these events rise to the level of "improper performance of duty", "gross misconduct", "conduct unbecoming an authority employee", or any other violation of the other sections of the Rules and Regulations cited by the NYCT/MTA in the March 29, 2021 Notice. As such, Ms. Yehoshua should not be terminated from her position with the NYCT.

<u>Response to Specification II</u>: There is absolutely no independent evidence that this allegation occurred or could withstand any basic scrutiny. It is false and has not been substantiated. Upon information and belief, this false narrative was created with significant input from Ms. Yehoshua's former supervisor Weslii Khahaifa, who has previously been counseled for religious discrimination by NYCT/MTA against Ms. Yehoshua (see, July 6, 2020 Response to Notice of Disciplinary Charges, DAN No. 20-6314-003, p.2-3 and Exhibit "I").

The specifications of this narrative appear to pertain to a significant litigation, in which Ms. Yehoshua served as trial counsel in June 2019 against a plaintiff seeking a $3 million award. The trial lasted a month and NYCT Trial Supervisor Gail Goode (Khahaifa's supervisor) assisted

---

praised Ms. Yehoshua's successes on behalf of the NYCT). In 2019, Ms. Yehoshua had tried five major cases to verdict, far more than anyone else in the Manhattan unit.

CONFIDENTIAL                                                                NYCTA 000225

Mr. David Farber, Esq.
April 26, 2021
Page 6

**HARRIS BEACH** ᴾᴸᴸᶜ
ATTORNEYS AT LAW

in the preparation of cross examination and observed the trial. The jury found no liability by the NYCT resulting in no monetary award for the plaintiff. A report in the New York Law Journal of the decision is attached hereto as **Exhibit "A"**. Both Mr. Heisler and Ms. Goode were very pleased with the outcome of the trial. Although counsel for both sides in this litigation were passionate advocates, Ms. Yehoshua did nothing improper and she was never counselled or made aware of any complaints by the presiding judge. Moreover, it belies common sense that Judge Frank would wait six months after the trial to report his concerns to the NYCT. These facts should give the NYCT pause and an independent internal inquiry should be conducted to get to the root cause of the false narratives in the Notice.

Consistent with other allegations contained herein against Ms. Yehoshua, none of these events rise to the level of "improper performance of duty", "gross misconduct", "conduct unbecoming an authority employee", or any other violation of the other sections of the Rules and Regulations cited by the NYCT/MTA in the March 29, 2021 Second Notice. As such, Ms. Yehoshua should not be terminated from her position with the NYCT.

Response to Specification III: There is absolutely no independent evidence that this allegation occurred or could withstand any basic scrutiny. It is false and has not been substantiated. Upon information and belief, this false narrative was created with significant input from Ms. Yehoshua's former supervisor Weslii Khahaifa, who has previously been counseled for religious discrimination by NYCT/MTA against Ms. Yehoshua (see, July 6, 2020 Response to Notice of Disciplinary Charges, DAN No. 20-6314-003, p.2-3 and Exhibit "I").

By way of background, outside of Ms. Yehoshua's appearance in the Garcia matter before Judge Freed, the NYCT had significant concerns about all litigation matters before Judge Freed. Documents in the possession of NYCT confirm this fact, as well as previously expressed concerns by supervisors Ms. Goode and Mr. Heisler. Upon information and belief, the City Bar of New York was also made aware of the NYCT legal bureau's concerns. These macro concerns of the NYCT contributed in part to the filing of motion papers co-written by supervisor Mr. Heisler raising concerns about Judge Freed's treatment of the matter. A copy of a portion of the NYCT motion papers, which relies on the Court of Appeals decision in DiMichel v. South Buffalo Ry. Co, 80 N.Y.2d 184 (1992) is attached hereto as **Exhibit "B"**. Given the history of Judge Freed with NYCT cases and the involvement of Mr. Heisler in the decision to file this motion, there was no improper conduct on the part of either Mr. Heisler or Ms. Yehoshua. Not surprisingly, the decision by the NYCT to raise such an issue with the Judge could (and apparently did) generate a negative reaction from the Judge. However, none of this would equate to "improper performance of duty", "gross misconduct", "conduct unbecoming an authority employee", or any other violation of the other sections of the Rules and Regulations cited by the NYCT/MTA in the March 29, 2021 Notice.

NYCTA 000226

Mr. David Farber, Esq.
April 26, 2021
Page 7

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

Simply put, the tale that Ms. Yehoshua blow dried her hair in the jury box is preposterous and patently false. Ms. Yehoshua does not even own a hair dryer. Moreover, there are no electrical outlets in that courtroom jury box.[4]

Ms. Yehoshua was not "repeatedly late, unprepared, dishonest, unethical, disrespectful and unprofessional". Nothing in the record of this case supports this allegation.

The statement that Judge Freed "removed herself from hearing all Authority cases" after Ms. Yehoshua's appearances in the Garcia matter is false. Attached as **Exhibit "C"** is a copy of 23 cases that Judge Freed supervised after the Garcia matter.

Response to Specification IV: There is absolutely no independent evidence that this allegation occurred or could withstand any basic scrutiny. It is false and has not been substantiated. Upon information and belief, this false narrative was created with significant input from Ms. Yehoshua's former supervisor Weslii Khahaifa, who has previously been counseled for religious discrimination by NYCT/MTA against Ms. Yehoshua (see, July 6, 2020 Response to Notice of Disciplinary Charges, DAN No. 20-6314-003, p.2-3 and Exhibit "I").

Ms. Yehoshua was not in violation of any discovery order by Judge Sokoloff, because she was not assigned to that matter on January 9, 2020. Records of the NYCT will clearly show that from December 2-23, 2019, Ms. Yehoshua was in trial on the Adika matter before Judge Hagler.[5] Immediately thereafter, Ms. Yehoshua suffered a case of viral conjunctivitis and was out of the office on sick leave. The Wood matter was handled by NYCT colleague Alexander Vandoros and the physical file was in the possession of Ms. Vandoros.

Response to Specification V: There is absolutely no independent evidence that this allegation occurred or could withstand any basic scrutiny. It is false and has not been substantiated. Upon information and belief, this false narrative was created with significant input from Ms. Yehoshua's former supervisor Weslii Khahaifa, who has previously been counseled for religious discrimination by NYCT/MTA against Ms. Yehoshua (see, July 6, 2020 Response to Notice of Disciplinary Charges, DAN No. 20-6314-003, p.2-3 and Exhibit "I").

As previously pointed out in my letter to you of April 3, 2021, the statement concerning Judge Adams is an egregious misrepresentation deserving of an independent investigation. The Notice states: "On or about January 23, 2020, Judge Suzanne Adams advised Authority

---

[4] Ms. Yehoshua knows this to be true based on her experience in that courtroom dating to 2017, based on statements by the presiding judge to jurors concerning their mobile phones and the inability to charge their phone batteries since the jury box has no outlets.

[5] This was another notable achievement of Ms. Yehoshua in a month long trial in which the plaintiff sustained significant injuries and underwent five surgeries. Plaintiff sought $5 million from NYCT. The case resulted in no liability on behalf of NYCT. Attached as **Exhibit "D"** is a copy of the New York Jury Verdict Reporter concerning the case.

Mr. David Farber, Esq.
April 26, 2021
Page 8

**HARRIS BEACH** ᴾᴸᴸᶜ
ATTORNEYS AT LAW

management that she would recuse herself from all cases you [Ms. Yehoshua] were involved in and requested another attorney be assigned to cases before her."

Ms. Yehoshua and Judge Adams (prior to her taking the bench) were colleagues for a decade at the law firm of Morris Duffy Alonso & Faley (2003-2013). Judge Adams took the bench beginning in 2019 and Ms. Yehoshua never appeared before her. It is remarkable that that statement is relied on to suspend and seek dismissal of Ms. Yehoshua from her position, where she has had great success on behalf of NYCT as repeatedly set forth herein. The reader is intentionally left with the impression that Judge Adams recused herself from cases in which Ms. Yehoshua might appear because of some impermissible or inappropriate actions committed by Ms. Yehoshua. In fact, Judge Adams recused herself from cases involving Ms. Yehoshua because the Judge and Ms. Yehoshua were former colleagues and the Judge was properly following the rules of judicial conduct governing New York judges (see, NY Jud. Adv. Opns. 07-35, 00-119; People v. Moreno, 70 N.Y.2d 403 (1987)(All standing for the principle that "in cases where recusal is not mandatory under 22 NYCRR 100.3(E)(1), the decision to recuse, based on whether the judge believes he/she can remain fair and impartial, is left to the sound discretion of the judge").

The portion of the Notice narrative stating, "Judge Adam Silvera also advised Authority management that you were not to appear in his courtroom" is unbelievable on its face. Ms. Yehoshua has never appeared before Judge Silvera. Moreover, the reference to "Authority management" raises significant concerns. Just who was the person(s) described as "Authority management" who Judge Silvera allegedly had these communications with? Ms. Khahaifa? On behalf of Ms. Yehoshua, I again request that the NYCT and MTA issue, and as necessary re-issue, a litigation hold for any and all "Records" in the custody and control of the agencies.[6]

The statement that Administrative Judge Deborah Kaplan "advised Authority management that you were not welcome in the courthouse" is equally unbelievable. Again, the opaque reference to "Authority management" strongly suggests to Ms. Yehoshua that Ms. Khahaifa or her acolytes are connected to this false allegation. Ms. Yehoshua has no interaction with Judge Kaplan and such a serious statement from the Administrative Judge would have certainly resulted in a contemporaneous conversation with Ms. Yehoshua. None ever occurred. Finally, the statement that Ms. Yehoshua was transferred from New York County to Kings County because of this "prohibition" is a lie. As the senior management of NYCT is fully aware, it was Ms. Yehoshua who requested the transfer from the NYCT Manhattan office to Brooklyn after systemic religious discrimination and being subjected to a hostile work environment by Ms. Khahaifa, until it became

---

[6] As previously stated in my April 3, 2021 letter to you, "Records" in this context should be broadly defined consistent with Public Officers Law §86 and include, but not be limited to, any information kept, held, filed, produced or reproduced by, with or for an agency (including MTA, NYCT, MTA IG) … in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes.

Mr. David Farber, Esq.
April 26, 2021
Page 9

**HARRIS BEACH** ⸰
ATTORNEYS AT LAW

unbearable for Ms. Yehoshua. This is a knowingly false statement and it is shameful that the NYCT included this in a formal agency Notice. We sincerely hope the NYCT/MTA will investigate the corruption that led to the false narratives.

The fact that there is not a single reference to an email or other written communication from any of the six State Judges to corroborate any of these allegations cited is curious at best, and strongly suggests a perpetuation of the extreme hostility against Ms. Yehoshua at worst. Moreover, the notion that Ms. Yehoshua was not contemporaneously counselled when six State Judges purportedly lodged complaints against her is unbelievable on its face.

Conclusion

The initial review of this Notice strongly suggested that something improper was afoot. A closer examination of the Notice confirmed that indeed the NYCT/MTA employee disciplinary process had been hijacked in an effort to terminate Ms. Yehoshua by elements of "Authority management", which we strongly believe consist of (directly or indirectly) Ms. Khahaifa and her acolytes. This Second Notice and the attendant processes rises to the level of retaliation against Ms. Yehoshua for reporting actions where she was the target of religious discrimination and a hostile work environment.[7]

As set forth in my April 3, 2021 letter to you, the reliance on Judge Adams recusal as a twisted attempt to discipline Ms. Yehoshua should have sounded alarm bells with honest NYCT/MTA officials. The dissection of the allegations and "specifications" above in this Second Response, only confirms that there is something gravely amiss at NYCT/MTA that warrants an independent inquiry. It is Ms. Yehoshua's hope that such an inquiry or inquires will get to the bottom of these issues for the betterment of the NYCT/MTA.

There is nothing supporting the Charge that Ms. Yehoshua engaged in "improper performance of duty", "gross misconduct", "conduct unbecoming an authority employee", or any other violation of the other sections of the Rules and Regulations cited by the NYCT/MTA in the March 29, 2021 Second Notice.

In the meantime, this response clearly demonstrates that the suspension and termination is unwarranted. Ms. Yehoshua is a valuable and hardworking attorney who has done yeoman's work for the NYCT during her career. She simply wants to work free of a hostile environment and in the Brooklyn unit under Ms. Urbont she has found that ability. It is Ms. Yehoshua's fervent hope

---

[7] Religious discrimination is an important issue to keep front of mind by government agency leaders. Notably, the Federal Bureau of Investigation recently released its Hate Crime Statistics Report highlighting troubling trends related to hate crimes against Jews. According to the report, Jewish people were the targets of over 60% of religious bias-related hate crimes. Jews were targeted at significantly higher rates than any other religious group. This data indicates an increase of 41% since 2015. Over the past decade, hate crimes targeting Jews topped the charts every year, with rates ranging from 52% to 67% of the total religious bias crimes.

Mr. David Farber, Esq.
April 26, 2021
Page 10

**HARRIS BEACH** ᴾᴸᴸᶜ
ATTORNEYS AT LAW

that a careful and dispassionate review of this situation will result in Ms. Yehoshua continuing her employment with the NYCT, a position from which she serves as the main breadwinner for her family that includes three young children.

Finally, on behalf of Ms. Yehoshua, I would ask that pending a final determination from you on her employment status, that Ms. Yehoshua be permitted to immediately return to work at the NYCT Brooklyn unit or in the alternative have her interim status changed to Suspended With Pay.

Thank you for your consideration and attention to this matter.

Very truly yours,

HARRIS BEACH PLLC

Karl J. Sleight

KJS:kh

NYCTA 000230

# EXHIBIT A

CONFIDENTIAL

NYCTA 000231

## PREMISES LIABILITY

### Defense: No Evidence Plaintiff's Fall Was a Result of Leak

### Verdict: Defense

*Jonathan Chinn v. New York City Transit Authority, No. 156841/14*

**Court:** New York Supreme

**Plaintiff Attorney(s):** Nicholas I. Timko, Kahn, Gordon, Timko & Rodriques, New York
**Defense Attorney(s):** Amelia Dweck, New York City Transit Authority, Brooklyn

**Facts & Allegations:** On Dec. 14, 2013, plaintiff Jonathan Chinn, 42, an audio technician, fell while he was descending a stairway of a subway station that was located beneath the intersection of Broadway and East Houston Street, in the NoHo section of Manhattan. He claimed that he suffered an injury of a knee.

Chinn sued the subway station's maintainer, the New York City Transit Authority. The lawsuit alleged that the New York City Transit Authority    *» Page 13*

---

**VerdictSearch**

*The cases that appear here are derived from VerdictSearch New York, an affiliate of the New York Law Journal. For more detailed reports from VerdictSearch, to request research, or to submit a case for publication, go to VerdictSearch.com or call 1-800-832-1900.*





## Split

*Continued from page 4*

incongruous because it would attract a foreign party greater discovery rights than a party would have under the Federal Arbitration Act Id. at *39. The Sixth Circuit did not agree that "simply because similar discovery devices may not be available in domestic private arbitration, [§1782(a)] categorically does not apply to foreign or international private arbitration." Id. at *41-42. The Sixth Court specifically noted that the Supreme Court rejected these types of argument in *Intel*. Id. at *39. Similarly, the Sixth Circuit rejected Feofia's argument that permitting discovery under §1782 would undermine the "efficiency considerations" of arbitration because courts maintain discretion over discovery under §1782 and addressing these

policy concerns was "a task for Congress, not the courts." Id. at *38-39, *42-43. The Sixth Circuit remanded the case to the district court to conduct the multifactor analysis under the Supreme Court's decision in *Intel*. Id. at *47.

The Sixth Circuit expressly acknowledged that its decision was "at odds" with the Second and Fifth Circuit. Id. at *32. The Sixth Circuit faulted those courts for turning to "legislative history too early in the interpretation process." Id. at *33. Moreover, the Sixth Circuit indicated that its own review showed that there was nothing in the legislative history to affirmatively indicate that §1782 did not encompass private commercial arbitration. Id. at *34-38.

### Conclusions

The Sixth Circuit's decision increases the likelihood that the

Supreme Court will address the issue of whether private commercial arbitrations seated abroad fall within the scope of §1782. Until that time, the Sixth Circuit could become the preferred forum for seeking discovery in aid of private commercial arbitrations seated abroad of §1782.

> The Sixth Circuit's decision increases
> Supreme Court will address the issu
> commercial arbitrations seated abro
> of §1782.

commercial arbitration. However, such discovery will only be able to the extent the target of the discovery "resides" or is "found" in the states comprising the Sixth Circuit.

This development will understandably stoke concerns about U.S.-style discovery further encroaching upon international commercial arbitration. However, as the Sixth Circuit recognized,

## Verdicts

*Continued from page 3*

was negligent in its maintenance of the stairway. The lawsuit further alleged that the agency's negligence created a dangerous condition that caused Chinn's fall.

Chinn claimed that his fall was a result of him having slipped on a wet step. Chinn's counsel noted that a restroom was located immediately above the stairway's ceiling, and he suggested that the accident was a result of liquid having leaked from the restroom, through the stairway's ceiling and onto the stairway. He also noted that the New York City Transit Authority had requested repairs of one or more of the restroom's toilets. Chinn claimed to have noticed liquid leaking from the stairway's ceiling.

Defense counsel presented the subway station's supervisor, who claimed that she had requested a restroom repair, but that she was not aware of a leak that migrated outside of the restroom. The subway station's supervising plumber contended that a leak would not have reached the stairway, from the restroom. A New York City Transit Authority maintenance worker claimed that he had regularly cleaned the restroom and had not observed a leak.

Defense counsel suggested that the accident was a result of Chinn having slipped on water that had

been tracked onto the stairway, from outside of the subway station. Evidence indicated that a snowstorm was in progress at the time of the accident.

**Injuries/Damages:** Chinn was retrieved by an ambulance, and he was transported to New York-Presbyterian Hospital, in Manhattan. He claimed that his back, his legs and his shoulders were painful. He underwent X-rays and minor treatment.

Chinn ultimately claimed that he suffered a tear of his left knee's patellar tendon. After 10 days had passed, he underwent arthroscopic surgery that repaired the tear. He also underwent physical therapy, and he required use of a brace during his convalescence.

Chinn claimed that he suffers ongoing pain and limitations. He sought recovery of past medical expenses, damages for past pain and suffering, and damages for future pain and suffering.

Defense counsel contended that Chinn achieved a full recovery.

**Result:** The jury rendered a defense verdict. It found that the New York City Transit Authority was not liable for Chinn's fall.

### MOTOR VEHICLE

**Defense: Motorcyclist struck**

**rear of turning car**

**Verdict: Defense**

**Giorgio C. Dealmeida v. Luis G. Salazar, No. 714150/16**

**Court:** Queens Supreme

**Plaintiff Attorney(s):** Jay H. Tanenbaum, Jay H. Tanenbaum Law Firm, New York

**Defense Attorney(s):** Daniel C. Gramlich, Kelly, Rode and Kelly, Mineola

**Facts & Allegations:** On Sept. 25, 2016, plaintiff Giorgio Dealmeida, 43, a hairdresser, was motorcycling on the southbound side of 108th Street, near its intersection at 36th Avenue, in the North Corona section of Queens. His motorcycle struck the rear end of a southbound vehicle that was being driven by Luis Salazar. Dealmeida who propelled off of his motorcycle, and he claimed that he suffered injuries of a hip, his neck and a shoulder.

Dealmeida sued Salazar. The lawsuit alleged that Salazar was negligent in the operation of his vehicle.

Dealmeida claimed that the impact occurred about three car lengths ahead of the intersection. He claimed that Salazar suddenly entered traffic from a double-parked position, without having signaled his intent. Dealmeida claimed that he could not have

## LITIGATION SUPPORT

To advertise Litigation Support Services and to re

please contact **Sonya**

Phone: 973-854-2929 · snu

NYCTA 000233



CONFIDENTIAL

# EXHIBIT B

CONFIDENTIAL

NYCTA 000235

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM

NYSCEF DOC. NO. 28

INDEX NO. 157482/2012

RECEIVED NYSCEF: 01/16/2018

TA 2012-06-29-0004-001
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x
MARIA GARCIA,

                           Plaintiff(s),

              - against -

METROPOLITAN TRANSPORTATION AUTHORITY,
and NEW YORK CITY TRANSIT AUTHORITY,

                       Defendant(s).

-------------------------------------------------------------------------x

*AFFIRMATION IN SUPPORT*

**Index No. 157482/2012**

      **AMELIA DWECK**, an attorney duly admitted to the practice of law before the Courts of the State of New York, affirms the following pursuant to CPLR Section 2106:

      1.  I am associated with the offices of Lawrence Heisler, attorneys for defendants **NEW YORK CITY TRANSIT AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY** (hereinafter referred to as the **"AUTHORITY"**).

      2.  I make this affirmation upon information and belief. The source of my information and the basis of my belief regarding this action are the records and files maintained by the **AUTHORITY**.

      3.  This affirmation is submitted in support of the **AUTHORITY**'s motion for an Order pursuant to §4404(a) of CPLR **setting aside the verdict and granting a new trial** in the interest of justice based upon the following grounds:

           a)  the plaintiff failed to make a prima facie case of liability as a matter of law, and the complaint should accordingly be dismissed;

           b)  the verdict was against the weight of the evidence;

           c)  the court improperly precluded the defense witness, ALADDIN from using his records during his trial testimony;

           d)  that the Court further improperly issued a negative inference instruction to the jury against the defendant TRANSIT AUTHORITY regarding those records;

CONFIDENTIAL

NYCTA 000236

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM

NYSCEF DOC. NO. 28

INDEX NO. 157482/2012

RECEIVED NYSCEF: 01/16/2018

e) that the Court improperly allowed Dr. Glick's dental records to be moved into evidence when they were not provided to defense counsel pursuant to CPLR § 202.17(b)(1);

f) that the Court improperly asked the Jury to award future dental expenses when they were never pleaded;

g) that the Court further issued a missing witness instruction to the jury with regards to a former Transit Authority employee, KAVA, not under the control of the Authority; and

h) for such other and further relief as this Court may deem just, proper and equitable.

4. This is an action to recover damages for personal injuries allegedly sustained by plaintiff, MARIA GARCIA on June 29, 2012 while she was walking down the subway steps at 168th Street, New York, New York. The issues of liability and damages were tried from December 4 through December 15, 2017. The jury rendered a plaintiff's verdict with 51% of fault attributed to the **AUTHORITY** and 49% of fault attributed to the plaintiff. The plaintiff was awarded $110,000 for past pain and suffering; $90,000 for future pain and suffering and $20,000 for future dental expenses over a period of 5 years. (See Verdict Sheet annexed hereto as Exhibit "**A**").

**POINT I**

**THE AUTHORITY MOVES TO SET ASIDE THE VERDICT ON THE GROUNDS THAT THE PLAINTIFF FAILED TO SUSTAIN HER BURDEN OF PROOF TO PROVE A PRIMA FACIE CASE OF LIABILITY AS A MATTER OF LAW**

"The standard for making that determination [verdict against weight of evidence], and reviewing it on appeal, was whether " 'the evidence so preponderate[d] in favor of the [plaintiff] that [the verdict] could not have been reached on any fair interpretation of the evidence' " **Lolik et al., Appellants, v. Big V Supermarkets, Inc.,** 86 N.Y.2d 744 (1995) citing (**Moffatt v Moffatt**, 86 AD2d 864, *affd* 62 NY2d 875; *see also,* Delgado v Board of Educ., 65 AD2d 547, *affd no opn* 48 NY2d 643).

CONFIDENTIAL

NYCTA 000237

INDEX NO. 157482/2012
NYSCEF DOC. NO. 28
RECEIVED NYSCEF: 01/16/2018

> For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence, however, requires a harsher and more basic assessment of the jury verdict. It is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial. The criteria to be applied in making this assessment are essentially those required of a Trial Judge asked to direct a verdict.

Cohen v. Hallmark Cards, Inc., 45 N.Y.2d 493 (1978)

5.    The facts at trial in the instant case demonstrated that there was no competent proof that the condition of the staircase was made wet by the Transit Authority cleaner thereby causing the plaintiff to fall down the staircase. The plaintiff produced no records, or testimony other than her own self serving testimony that the staircase was always wet. In fact, on the date of the accident, she testified that she did see any MTA cleaners that were cleaning the staircase on the morning of her accident (See **Exhibit "B"** of Trial transcript p.342, lines 22-26). The following undisputed facts were elicited from the plaintiff at trial; that it was raining outside at the time of the occurrence; that the first and second staircase from the street level were wet from the rain, that the plaintiff had a wet umbrella upon entering the train station; and that her shoes and feet were wet from the rain. There was not one iota of admissible evidence presented at trial that showed that the MTA cleaners were cleaning the staircase in question at the time of the occurrence and left it wet or unsafe. Therefore, the verdict was against the weight of the evidence.

### POINT II

### THE COURT IMPROPERLY PRECLUDED THE DEFENSE WITNESS, ALLADIN FROM USING HIS RECORDS DURING HIS TRIAL TESTIMONY

6.    On November 30, 2017, Mr. Ecliff Alladin, employed by the New York City Transit Authority since 1986 signed an Affidavit attesting to the fact that he arrived at the subject train station on the accident date of June 29, 2012 and inspected the station. He found it to be dry, well lit and defect free. Furthermore, he reviewed the

CONFIDENTIAL                                    NYCTA 000238

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM

NYSCEF DOC. NO. 28

INDEX NO. 157482/2012

RECEIVED NYSCEF: 01/16/2018

maintenance records in his department and attested to the fact that no power wash was done on that date. (See **Exhibit "C"** for a copy of his affidavit).

7. Although, these records were exchanged with the Court and plaintiff's counsel prior to the trial as a part of the defendant's Memorandum of Law, the Court improperly precluded Mr. Alladin from using his records during his trial testimony. See **Exhibit "D"** of the trial transcript, page 80, lines 4-14. These records were evidence that the station was not cleaned with any power wash materials on the date of the incident and was not wet. Instead the Jury was misled into believing that the station was wet, a fact that was not true!

8. The Court improperly precluded the evidence and prejudiced the defendants from defending this case with the truth. Many discussions were held prior to the trial. Plaintiff's counsel showed the Court subpoenas that were dated in 2017 requesting cleaning records. Defense counsel explained that the power wash records were not included in the cleaning records but in the Time Control Logs. Defense counsel herein showed the Court our motion to quash those subpoenas prior to trial. None of those subpoenas ever asked for power wash records. And in fact, plaintiff never asked for those records, prior his Note of Issue and Certificate of Readiness for trial which was e-filed on July 29, 2014, more than 3 years prior to trial.

9. Still further, there was never a decision on your affirmant's motion to quash those subpoenas until the trial was underway. See **Exhibit "E"** for a copy of the decision that was dated December 4, 2017 but was e-filed on December 11, 2017. Plaintiff's counsel told the Court that he served subpoenas in 2016. Defense counsel herein was not given a copy of that subpoena at any time.

10. Moreover, plaintiff's counsel admitted that he never made a motion to compel discovery after service of the alleged subpoenas in 2016 nor in 2017. Therefore, plaintiff's counsel waived such discovery. In fact, the plaintiff's counsel never asked for any power wash records prior to trial by any motion. The Court improperly precluded Mr. Alladin from testifying with regards to his records.

CONFIDENTIAL

NYCTA 000239

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM

NYSCEF DOC. NO. 28

INDEX NO. 157482/2012

RECEIVED NYSCEF: 01/16/2018

## POINT III

### THE COURT IMPROPERLY ISSUED A NEGATIVE INFERENCE INSTRUCTION TO THE JURY AGAINST THE DEFENDANT TRANSIT AUTHORITY REGARDING THOSE RECORDS

11. The Court punished defense counsel by: improperly precluding the Time Control Logs examined by Mr. Alladin; improperly precluding that testimony by Mr. Alladin; and by improperly giving a negative inference regarding those records to jury, when plaintiff's counsel never even asked for a negative inference at any time. (See **Exhibit "F"** of the trial transcript, page 80, lines 15-23).

12. Furthermore, the Court improperly permitted the plaintiff's counsel to tell the Jury that power wash was done according to Mr. Alladin on the accident date, during his summation. The summation was not based on any evidence presented at trial, it was made up by plaintiff's counsel and although defense counsel objected, the Court improperly overruled the objection further prejudicing the defendants. See **Exhibit "G"** of the trial transcript, page 986, lines 23-26.

13.Such prejudice was made apparent since the first **Jury Note (#1)** asked about plaintiff's closing regarding *power washing*; the judge's instruction regarding *power washing*; and Mr. Alladin's testimony regarding how the station was cleaned (*power washing*). See **Exhibit "H"** for a copy of jury note.

13. In effect, the trial court allowed plaintiff to make an argument that it knew was untrue. The power wash records indicate that the stairway wasn't hosed down on the day of the accident. Not only did the trial court refuse to allow the jury to hear the truth, it committed two additional errors that perverted the fact finding process. First, it allowed plaintiff to argue to the jury that the records said the opposite of what they said. Even worse, the Court colluded with plaintiff's misstatement by charging the jury they could draw an adverse inference from the Authority's failure to produce the records the Court barred it from producing.

14. ***DiMichel v. South Buffalo Ry. Co.***, 80 N.Y.2d 184 (1992) illustrates why the Court's error mandates a new trial. There, plaintiff successfully moved for a protective order, preventing defendant's rehabilitation doctor from examining plaintiff. At

CONFIDENTIAL                                                                NYCTA 000240

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM

NYSCEF DOC. NO. 28

INDEX NO. 157482/2012

RECEIVED NYSCEF: 01/16/2018

trial, when defendant sought to have the doctor testify about the amount plaintiff could have been expected to earn at alternative employment, the Court prevented him from doing so. Further, in summation, plaintiff attacked the limited testimony the doctor provided, arguing that the doctor hadn't physically examined plaintiff.

15. The Court of Appeals held this attack was error, given that it was plaintiff who succeeded in barring the doctor from physically examining him in the first place.

16. Here, the trial court went beyond the conduct condemned in *DeMichel.* First, it improperly precluded the Authority from producing relevant records, crucial to its defense, records demonstrating that the wash team did not clean the stairway on the day of the accident. But even if the court had been justified in precluding the Authority, it should not have folded its hands while plaintiff provided the jury an account that was palpably untrue, suggesting both that the Authority was hiding relevant documentation, and that the documentation would have said the opposite of what it actually did. Above all, it should not have lent a judicial imprimatur to plaintiff's misstatements by punishing the Authority with a missing witness charge, essentially informing the jury, if not in so many words, that plaintiff was right, that the Authority, on its own initiative, had declined to produce the records because they would undermine its defense.

17. The trial court Judge abused her discretion when she prevented defendants from presenting evidence that would have shown that no power wash was conducted on the date of the accident. Moreover, the plaintiff's conduct during his summation was highly prejudicial and improper. It can be said that "these errors permeated the trial and created a climate of hostility that effectively destroyed the defendant's ability to obtain a fair trial." Having been twice injured by the Court's ruling that permitted the jury to speculate about what the records depicted and permitted it to infer that, if the records had been produced, they would have supported plaintiff's contentions. ***DiMichel v. South Buffalo Ry. Co.***, 80 N.Y.2d 184 (1992).

### POINT IV

**THE COURT IMPROPERLY ALLOWED DR. GLICK'S MEDICAL RECORDS TO BE MOVED INTO EVIDENCE WHEN THEY WERE NOT PROVIDED TO DEFENSE COUNSEL PURSUANT TO CPLR § 202.17(b)(1)**

CONFIDENTIAL

NYCTA 000241

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM
NYSCEF DOC. NO. 28

INDEX NO. 157482/2012
RECEIVED NYSCEF: 01/16/2018

18. According to CPLR §202.17(b)(1),

> "at least 20 days before the date of such {physical} examination, or on such other date as the court may direct, the party to be examined shall serve upon and deliver to all other parties, the following, which may be used by the examining medical provider:

> (1) copies of the medical reports of those medical providers who have previously treated or examined the party seeking recovery.

When defense counsel raised this issue before the Court prior to the testimony of Dr. Glick during trial, the Court incorrectly ignored the statute, failed to address the plaintiff's failure to exchange the dental records prior to defendant's dental IME, failed to address the plaintiff's failure to exchange the records prior to trial and eventually stated that defendant's counsel's behavior was deplorable. (See **Exhibit "I"** of the trial transcript pages 188 through 207). Even after plaintiff's attorney admitted that he did not provide the records before trial, the Court still admitted the dental records into evidence. (See **Exhibit "J"** Page 198, lines 23-26) The Court erred in allowing these records into evidence when they were never exchanged pursuant to CPLR § 202.17(b)(1).

### POINT V

### THE COURT IMPROPERLY ASKED THE JURY TO AWARD FUTURE DENTAL EXPENSES WHEN THEY WERE NEVER PLEADED

19. To add insult to injury, the Court admitted Dr. Glick's dental records into evidence over defendant's objections and even allowed question #8 on the verdict sheet to ask the jury to award "future dental expenses" even though plaintiff's counsel never pleaded this in his bills of particulars. See **Reid v. Rubenstein**, 155 A.D.3d 448 (1st Dept. 2017) {precluding expert from testifying about need for bone grafting when plaintiff failed to include in bill of particulars.}

CONFIDENTIAL

NYCTA 000242

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM          INDEX NO. 157482/2012

NYSCEF DOC. NO. 28                                        RECEIVED NYSCEF: 01/16/2018

## POINT VI

### THE COURT IMPROPERLY ISSUED A MISSING WITNESS INSTRUCTION TO THE JURY WITH REGARDS TO A FORMER TRANSIT AUTHORITY EMPLOYEE, KAVA, NOT UNDER THE CONTROL OF THE AUTHORITY

20.    A party is entitled to a missing witness charge when the opposing party fails to call a witness, **who is under its control and availability**, and possesses information on a material issue and would be expected to provide non-cumulative testimony in favor of the opposing party. *See **Savage v. Thomas J. Shay Funeral Home, Inc**., 212 A.D.2d 875, 622 N.Y.S.2d 363 (3rd Dept. 1995)*. A witness is considered to be under the control of a party where the party had the physical ability to locate and produce a witness and where there was a legal or factual relationship between the witness and the party which would have made it natural to expect the party to have called the witness to testify in her favor. ***People v. Gonzalez**, 68 N.Y.2d 424, 509 N.Y.S.2d 796 (1986)*.

21.    As was made clear since over a month prior to trial, former employee KAVA was retired from the Transit Authority. His last known address was provided to plaintiff's counsel on November 6, 2017. See **Exhibit "K"** for a copy of defendant's exchange.

22.    Clearly, Mr. Kava was no longer under the control of the Transit Authority and the missing witness instruction was unwarranted. See **Exhibit "L"** for trial transcript Page 926, lines 2-23.

23.    What is further significant is that the plaintiff's counsel never even asked for his deposition prior to filing their note of issue. Thus, the relevance of his testimony was unknown. It was not shown that he possesses information on a material issue nor would he have been expected to provide non-cumulative testimony in favor of the opposing party. The Court erred in issuing a missing witness charge against KAVA, former employee of the AUTHORITY.

24.    Based on the foregoing, it is impossible to determine what the verdict would have been had the aforementioned errors not have been made.

**WHEREFORE**, it is respectfully requested that defendant NEW YORK CITY TRANSIT AUTHORITY's motion for an Order setting aside plaintiff's verdict and

CONFIDENTIAL                                NYCTA 000243

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM
NYSCEF DOC. NO. 28

INDEX NO. 157482/2012
RECEIVED NYSCEF: 01/16/2018

granting a new trial in the interest of justice be granted in its entirety for the reasons cited above.

Dated:    Brooklyn, New York
          January 11, 2018

AMELIA DWECK

CONFIDENTIAL                                    NYCTA 000244

INDEX NO. 157482/2012

RECEIVED NYSCEF: 01/16/2018

### *ATTORNEY AFFIRMATION*

**AMELIA DWECK** hereby affirms the following under penalties of perjury:

That she is an attorney and counselor-at-law admitted to practice in the Courts of this State.

That on the 11th day of January, 2018, affirmant served the **NOTICE OF MOTION/AFFIRMATION IN SUPPORT** hereto annexed **on THE EDELSTEINS, FAEGENBURG & BROWN,** Attorneys for Plaintiff by depositing a true copy thereof properly enclosed in a securely closed and duly post-paid wrapper in a post office box regularly maintained by the government of the United States under the care of the Post Office at 130 Livingston Street, Brooklyn, New York 11201, directed to said attorney(s) at 26 Broadway, Suite 901, New York, New York 10004, this being the address within the State designated by said attorneys for the purpose upon the preceding papers in this action.

Dated:    Brooklyn, New York
          January 11, 2018

**AMELIA DWECK**

CONFIDENTIAL                                            NYCTA 000245

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM

NYSCEF DOC. NO. 28

INDEX NO. 157482/2012

RECEIVED NYSCEF: 01/16/2018

**EXHIBIT A**

*TRIAL TRANSCRIPT*

**(APPENDED SEPARATELY)**

CONFIDENTIAL

NYCTA 000246

FILED: NEW YORK COUNTY CLERK 01/16/2018 04:39 PM

NYSCEF DOC. NO. 28

INDEX NO. 157482/2012

RECEIVED NYSCEF: 01/16/2018

TA 2012-06-29-0004-001
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------------x

MARIA GARCIA,                                                 Index No. 157482/2012

                              Plaintiff(s),

              - against -

METROPOLITAN TRANSPORTATION AUTHORITY,
and NEW YORK CITY TRANSIT AUTHORITY,

                              Defendant(s).

-------------------------------------------------------------------------------------------X

*NOTICE OF MOTION / AFFIRMATION IN SUPPORT*

-------------------------------------------------------------------------------------------X

*LAWRENCE HEISLER, ESQ.*
*Attorney for Defendant*
*NEW YORK CITY TRANSIT AUTHORITY*
*130 Livingston Street, 11th Floor*
*Brooklyn, New York 11201*
*718-694-3885*

*ATTORNEY CERTIFICATION*

*AMELIA DWECK, ESQ.*

CONFIDENTIAL                                    NYCTA 000247

# EXHIBIT C

CONFIDENTIAL

NYCTA 000248

*WebCivil Supreme - Case Search Results*

**678 Case(s) Match Your Search.**          **Page 21 of 35 pages**

| | Court | Index Number | Case Status | Plaintiff | Plaintiff Firm | Defendant | Defendant Firm | Appearance Date | Justice | |
|---|---|---|---|---|---|---|---|---|---|---|
| 399 | New York Supreme Court | 0160289/2016 | Active | ENGSTROM, VIERA A. | MARK E. WEINBERGER, P.C. | MADISON AVENUE FEE, LLC. | KEVIN WESTERMAN, LAW OFCS | 04/13/2021 | FREED, KATHRYN E. | M |
| 400 | New York Supreme Court | 0152859/2017 | Disposed | MERETTE, MARIAM | FARELLA MASCOLO PLLC | MAGGIO REALTY LLC | MORRISON MAHONEY LLP | 10/31/2019 | FREED, KATHRYN E. | |
| 401 | New York Supreme Court | 0150794/2017 | Disposed | SHEFFIELD FINANCIAL, A | DEILY & GLASTETTER, LLP | MAHMOOD, ABID | ANTONUCCI LAW FIRM, LLP | 06/18/2019 | FREED, KATHRYN E. | M |
| 402 | New York Supreme Court | 0151518/2017 | Disposed | AMERICAN EXPRESS CENTURION | ZWICKER & ASSOCIATES PC | MAHONEY, BRENDAN F | BRENDAN MAHONEY - Prose | 03/12/2018 | FREED, KATHRYN E. | M |
| 403 | New York Supreme Court | 0158557/2016 | Disposed | INCA, ANGEL ARMANDO | GINARTE GALLARDO GONZALEZ/ | MAIDEN & NASSAU LLC | KOWALSKI & DEVITO | 10/26/2020 | FREED, KATHRYN E. | M |
| 404 | New York Supreme Court | 0158270/2016 | Disposed | ASPIRE FEDERAL CREDIT UNION | WINDELS MARX LANE & MITTENDORF | MAKHON CAB CORP. | H. BRUCE FISCHER, PC | 05/29/2019 | FREED, KATHRYN E. | M |
| 405 | New York Supreme Court | 0150251/2017 | Disposed | PHILIP, THOMAS | GREY & GREY, LLP | MANHATTAN AND BRONX SURFACE | MANHATTAN AND BRONX SURFACE - Prose | 03/23/2017 | FREED, KATHRYN E. | M |
| 406 | New York Supreme Court | 0154626/2017 | Disposed | AMERICAN EXPRESS CENTURION | AMERICAN EXPRESS LEGAL | MARCIANO, VINCENT | LEBEDIN KOFMAN, LLP | 07/31/2018 | FREED, KATHRYN E. | M |
| 407 | New York Supreme Court | 0155210/2017 | Active | GR, AN INFANT BY HER MOTHER | WINGATE RUSSOTTI SHAPIRO/ | MARRIOTT INTERNATIONAL | RICHARD MIGGLIACIO | 04/26/2021 | FREED, KATHRYN E. | M |
| 408 | New York Supreme Court | 0156278/2016 | Disposed | PALMER, ARDYTHE | MICHAEL G O'NEILL, ESQ | MARRIOTT INTERNATIONAL, INC. | FORD HARRISON LLP | 11/12/2019 | FREED, KATHRYN E. | |
| 409 | New York Supreme Court | 0154810/2017 | Disposed | MUNOZ, MARIANO | BRIAN J. BURSTIN | MARTINEZ, DONNEL | DONNEL MARTINEZ - Prose | 06/28/2018 | FREED, KATHRYN E. | M |
| 410 | New York Supreme Court | 0154331/2017 | Stayed | BANKERS STANDARD INSURANCE | COZEN O'CONNOR | MARY CORSE | VOGEL BACH & HORN, LLP | 10/16/2018 | FREED, KATHRYN E. | M |
| 411 | New York Supreme Court | 0152711/2017 | Active | PARKER, AARON | SACKS & SACKS, LLP | MATSIL BROS INC. | MARSHALL CONWAY & BRADLEY, PC | 11/18/2020 | FREED, KATHRYN E. | M |
| 412 | New York Supreme Court | 0157945/2016 | Disposed | COUNTRY-WIDE INSURANCE COMPANY | JAFFE & KOUMOURDAS, LLP | MAYLER, DONAVAN | | 05/04/2017 | FREED, KATHRYN E. | M |
| 413 | New York Supreme Court | 0158695/2016 | Disposed | PUBLIC ADMINISTRATOR OF NEW | WILLIAM SCHWITZER & ASSOC. | MBC GENERAL CONSTRUCTION CORP. | | 09/04/2019 | FREED, KATHRYN E. | M |
| 414 | New York Supreme Court | 0151329/2017 | Active | WRIGHT, PETER | FERRO KUBA MANGANO SKLYAR, PC | MEMORIAL HOSPITAL FOR CANCER | DOPF, PC | 03/30/2021 | FREED, KATHRYN E. | M |
| 415 | New York Supreme Court | 0155433/2017 | Active | MIRONOV, SVETLANA | MEYER SUOZZI ENGLISH & | MEMORIAL HOSPITAL FOR CANCER | DOPF, PC | 10/22/2020 | FREED, KATHRYN E. | M |
| 416 | New York Supreme Court | 0157257/2016 | Active | WILLIAMS, JR, SAMUEL | FEINER AND LAVY, P.C. | MERCEDES-BENZ USA, LLC | HERZFELD & RUBIN PC | 05/07/2021 | FREED, KATHRYN E. | M |
| 417 | New York Supreme Court | 0152017/2017 | Disposed | BEHAR, HENRY | WARNER & SCHEUERMAN | MERMAID LAUDROMAT, INC. | MARSHALL DENNEHEY WARNER/ | 10/30/2018 | FREED, KATHRYN E. | M |
| 418 | New York Supreme Court | 0154116/2017 | Disposed | HSBC BANK USA, NATIONAL | PLATZER SWERGOLD LEVINE ET AL | METRIX GROUP, INC. D/B/A | | 12/12/2017 | FREED, KATHRYN E. | M |

                    NYCTA 000249

*WebCivil Supreme - Case Search Results*

**678 Case(s) Match Your Search.**                     **Page 22 of 35 pages**

| | Court | Index Number | Case Status | Plaintiff | Plaintiff Firm | Defendant | Defendant Firm | Appearance Date | Justice | |
|---|---|---|---|---|---|---|---|---|---|---|
| 419 | New York Supreme Court | 0156476/2017 | Active | LAING, JOSEPH | VIRGINIA & AMBINDER LLP | METRO ONE LOSS PREVENTION | BLANK ROME, LLP | 06/02/2020 | FREED, KATHRYN E. | M |
| 420 | New York Supreme Court | 0155308/2017 | Active | TESORO, ROBERT | JOSEPH MONACO, LAW OFCS | METROPOLITAN SWIMMING, INC. | FAUST GOETZ SCHENKER & BLEE | 06/02/2020 | FREED, KATHRYN E. | M |
| 421 | New York Supreme Court | 0150392/2017 | Active | ENGLEBARDT, DANIELLE | ABEND & SILBER, PLLC | METROPOLITAN TRANSPORTAT | | 03/08/2021 | FREED, KATHRYN E. | M |
| 422 | New York Supreme Court | 0151336/2017 | Disposed | BETHEL, ERRON | SACKS & SACKS, LLP | METROPOLITAN TRANSPORTAT | WILSON ELSER MOSKOWITZ/ | 02/13/2020 | FREED, KATHRYN E. | |
| 423 | New York Supreme Court | 0158472/2016 | Disposed | ANDERSON, CHARLENE | BRADLEY S HAMES, LAW OFCS | METROPOLITAN TRANSPORTAT | WOOD SMITH HENNING & BERMAN | 05/20/2019 | FREED, KATHRYN E. | M |
| 424 | New York Supreme Court | 0151120/2016 | Active | SCHUNEMAN, KARYN | MICHAEL J. GAFFNEY, ESQ. | METROPOLITAN TRANSPORTAT | KREZ & FLORES, LLP | 06/02/2020 | FREED, KATHRYN E. | |
| 425 | New York Supreme Court | 0160245/2016 | Disposed | MICHAEL G. KESSLER & ASSOC, PLLC | MAIDENBAUM & ASSOC, PLLC | METROPOLITAN TRANSPORTAT | NY LEGAL ASSISTANCE GROUP | 04/10/2018 | FREED, KATHRYN E. | M |
| 426 | New York Supreme Court | 0154608/2016 | Active | VEGA, CARLOS | WINGATE RUSSOTTI SHAPIRO/ | METROPOLITAN TRANSPORTAT | BLEAKLEY PLATT & SCHMIDT LLP | 03/30/2021 | FREED, KATHRYN E. | M |
| 427 | New York Supreme Court | 0153026/2017 | Active | O'BOYLE, MARION | LAW OFFICE OF LAWRENCE SAFTLE | METROPOLITAN TRANSPORTAT | | 08/10/2020 | FREED, KATHRYN E. | M |
| 428 | New York Supreme Court | 0153542/2017 | Active | DALY, DANIEL | SACKS & SACKS, LLP | METROPOLITAN TRANSPORTAT | NEWMAN LAW ASSOCIATES, PLLC | 06/09/2021 | FREED, KATHRYN E. | M |
| 429 | New York Supreme Court | 0157937/2016 | Active | SCHNEIDER, WILLIAM | SACKS & SACKS, LLP | METROPOLITAN TRANSPORTAT | FABIANI COHEN & HALL, LLP | 07/09/2020 | FREED, KATHRYN E. | |
| 430 | New York Supreme Court | 0156289/2017 | Active | BELL-BACCHUS, TAMIKO | MICHAEL S LAMONSOFF, LAW OFC | METROPOLITAN TRANSPORTATION | LANDMAN CORSI BALLAINE & FORD | 12/10/2020 | FREED, KATHRYN E. | M |
| 431 | New York Supreme Court | 0159259/2017 | Active | HAYEK, SAMUEL | SACKS & SACKS, LLP | METROPOLITAN TRANSPORTAT | SMITH MAZURE DIRECTOR/ET | 04/19/2021 | FREED, KATHRYN E. | M |
| 432 | New York Supreme Court | 0850231/2016 | Disposed | HNY CLUB SUITES OWNERS | DRUCKMAN LAW GROUP PLLC | METZGER, MARK J. | MARK J. METZGER - Prose | 08/28/2017 | FREED, KATHRYN E. | M |
| 433 | New York Supreme Court | 0156719/2017 | Disposed | LEGERME, YARDELIE | LURIE & FLATOW, PC | MFM CONTRACTING CORP. | AHMUTY DEMERS & MCMANUS ESQS | 01/09/2018 | FREED, KATHRYN E. | |
| 434 | New York Supreme Court | 0156752/2017 | Disposed | SHAH, DARSHINI | ELLERY IRELAND, ESQ | MHM SPONSORS CO. | LEWIS BRISBOIS BISGAARD SMITH | 10/01/2018 | FREED, KATHRYN E. | |
| 435 | New York Supreme Court | 0156889/2016 | Active | TRIBICH, EMILIE | BRIAN J ELBAUM | MHP LAND ASSOCIATES, LLC | CONWAY FARRELL CURTIN & KELLY | 03/30/2021 | FREED, KATHRYN E. | M |
| 436 | New York Supreme Court | 0100765/2017 | Disposed | POLESNY, EVELYN | EVELYN POLESNY - Prose | MICHAEL STERN | BEDFORD SOUMAS LLP | 11/14/2019 | FREED, KATHRYN E. | M |
| 437 | New York Supreme Court | 0158212/2016 | Disposed | LEMACHE, LUIS | SILBERSTEIN AWAD & MIKLOS, PC | MIP ONE WALL STREET | CARTAFALSA SLATTERY TURPIN/ | 07/30/2019 | FREED, KATHRYN E. | M |

CONFIDENTIAL

NYCTA 000250

## WebCivil Supreme - Case Search Results

**678 Case(s) Match Your Search.**          Page 23 of 35 pages

| | Court | Index Number | Case Status | Plaintiff | Plaintiff Firm | Defendant | Defendant Firm | Appearance Date | Justice | |
|---|---|---|---|---|---|---|---|---|---|---|
| 438 | New York Supreme Court | 0160849/2016 | Disposed | AMERICAN TRANSIT INSURANCE | DANIEL TUCKER, LAW OFC OF | MITCHELL, NICHOLAS | NICHOLAS MITCHELL - Prose | 11/21/2017 | FREED, KATHRYN E. | M |
| 439 | New York Supreme Court | 0101551/2016 | Disposed | ENGLISH, GREGORY | GREGORY ENGLISH - Prose | MIYAZAKI-ENGLISH, YOKO | YOKO MIYAZAKI-ENGLISH - Prose | 12/17/2019 | FREED, KATHRYN E. | M |
| 440 | New York Supreme Court | 0158960/2017 | Active | ANONYMOUS, ANONYMOUS | ANONYMOUS - Prose | MM&M 14C LLC | BRYANT & BLEIER | 05/12/2020 | FREED, KATHRYN E. | M |
| 441 | New York Supreme Court | 0153987/2017 | Active | BOARD OF MANAGERS OF THE | BELKIN BURDEN WENIG & | MORAN, TREVOR C. | ROZARIO & ASSOCIATES, PC | 03/03/2020 | FREED, KATHRYN E. | M |
| 442 | New York Supreme Court | 0101220/2016 | Disposed | OPPENHEIMER, PAUL | PAUL OPPENHEIMER - Prose | MORAVIAN OPEN DOOR, ET AL | MORAVIAN OPEN DOOR - Prose | 11/08/2018 | FREED, KATHRYN E. | M |
| 443 | New York Supreme Court | 0159204/2016 | Disposed | NATIONWIDE INSURANCE COMPANY | HOLLANDER LEGAL GROUP, PC. | MORILLO, CARLOS | | 05/01/2018 | FREED, KATHRYN E. | M |
| 444 | New York Supreme Court | 0152401/2017 | Active | THOMPSON, HOWARD | MICHAEL S LAMONSOFF, LAW OFC | MOUNT SINAI HEALTH SYSTEM, | FULLERTON BECK, LLP | 04/15/2021 | FREED, KATHRYN E. | M |
| 445 | New York Supreme Court | 0156104/2017 | Active | VARGAS, WALTER | HOWARD R SANDERS, ESQ | MOUNT SINAI HOSPITAL | RUBIN FIORELLA FRIEDMAN & MERC | 11/17/2020 | FREED, KATHRYN E. | |
| 446 | New York Supreme Court | 0151567/2017 | Disposed | LEONG, ERIC | STEWART LEE KARLIN LAW GRP. | MOUNT SINAI HOSPITALS GROUP, | AKERMAN LLP | 09/17/2018 | FREED, KATHRYN E. | M |
| 447 | New York Supreme Court | 0452539/2017 | Disposed | USRY, TERRY | LEVIDOW LEVIDOW & OBERMAN, PC | MTA | SMITH MAZURE DIRECTOR/ET | 03/03/2020 | FREED, KATHRYN E. | |
| 448 | New York Supreme Court | 0452290/2017 | Active | NARVAEZ, ANA L | JOHN V. DECOLATOR, ESQ. | MTA BUS COMPANY | FIDEN & NORRIS, LLP | 05/14/2020 | FREED, KATHRYN E. | |
| 449 | New York Supreme Court | 0155514/2017 | Active | KAZMIM, FNU ABBAS | MALLILO & GROSSMAN, ESQS | MTA BUS COMPANY | JEFFREY SAMEL & PARTNERS | 04/19/2021 | FREED, KATHRYN E. | M |
| 450 | New York Supreme Court | 0452115/2017 | Active | SARRAJ, BASSEL | LAW OFFICES OF JASON KESSLER | MTA BUS COMPANY | ZAKLUKIEWICZ PUZO & MORRISSEY | 04/23/2021 | FREED, KATHRYN E. | M |
| 451 | New York Supreme Court | 0158050/2017 | Disposed | CARBAJAL, MARVIN G. | | MTA METRO-NORTH RAILROAD | MTA METRO-NORTH RAILROAD - Prose | 10/31/2017 | FREED, KATHRYN E. | M |
| 452 | New York Supreme Court | 0656500/2016 | Active | ZIYA RESTAURANT INC. | DAVID J.PANITZ(EISB ROUCH, ANTO) | MULBERRY DEVELOPMEN T LLC | ZISHOLTZ & ZISHOLTZ, LLP | 04/13/2021 | FREED, KATHRYN E. | M |
| 453 | New York Supreme Court | 0159690/2016 | Disposed | WILES, NICOLE | ARMSTRONG TEASDALE, LLP | MURPHY, STACIA | OHRENSTEIN & BROWN, LLP | 11/13/2020 | FREED, KATHRYN E. | M |
| 454 | New York Supreme Court | 0152269/2017 | Disposed | PERFECTION CONNECTION OF NJ, | SCHEIER LAW FIRM, LLC | MURPHY-KENNEDY GROUP, LLC | TARTER KRINSKY & DROGIN, LLP | 11/12/2019 | FREED, KATHRYN E. | M |
| 455 | New York Supreme Court | 0152639/2016 | Disposed | AMERICAN TRANSIT INSURANCE | DANIEL TUCKER, LAW OFC OF | MUSEAU, RONALD | | 04/12/2017 | FREED, KATHRYN E. | M |
| 456 | New York Supreme Court | 0155812/2016 | Active | OROZCO, JESUS | BISOGNO & MEYERSON, LLP | MUSEUM OF ARTS AND DESIGN | EUSTACE MARQUEZ EPSTEIN/ | 01/25/2021 | FREED, KATHRYN E. | M |
| 457 | New York Supreme Court | 0450927/2017 | Disposed | WALTERS, PAULA | SILER & INGBER, LLP | MV PUBLIC TRANSPORTAT ION, INC. | SHEIN & ASSOCIATES | 03/31/2020 | FREED, KATHRYN E. | M |

## WebCivil Supreme - Case Search Results

678 Case(s) Match Your Search.                    Page 25 of 35 pages

| | Court | Index Number | Case Status | Plaintiff | Plaintiff Firm | Defendant | Defendant Firm | Appearance Date | Justice | |
|---|---|---|---|---|---|---|---|---|---|---|
| 478 | New York Supreme Court | 0153757/2016 | Disposed | NEW YORK MARINE AND GENERAL | SPEYER & PERLBERG, LLP | NEW YORK CITY TRANSIT | KREZ & FLORES, LLP | 08/15/2017 | FREED, KATHRYN E. | |
| 479 | New York Supreme Court | 0156648/2017 | Disposed | PEREZ, DIGNO | MIRMAN MARKOVITS & LANDAU, PC | NEW YORK CITY TRANSIT | SMITH MAZURE DIRECTOR/ET | 08/28/2018 | FREED, KATHRYN E. | |
| 480 | New York Supreme Court | 0157277/2017 | Active | THOMPSON, ROSALIND | BLOCK O'TOOLE & MURPHY, LLP | NEW YORK CITY TRANSIT | GALLO VITUCCI KLAR, LLP | 04/22/2021 | FREED, KATHRYN E. | M |
| 481 | New York Supreme Court | 0157647/2017 | Active | BAKI, SELIM MD ABDUL | HARMON LINDER & ROGOWSKY | NEW YORK CITY TRANSIT | MORRIS DUFFY ALONSO & | 03/17/2020 | FREED, KATHRYN E. | |
| 482 | New York Supreme Court | 0160497/2016 | Disposed | BRAVO, ANA | RICHARD M. ALTMAN | NEW YORK PRESBYTERIA N HOSPITAL | LUCA LAW, PLLC | 04/03/2020 | FREED, KATHRYN E. | M |
| 483 | New York Supreme Court | 0155360/2017 | Disposed | ELLIS, JULIO | DELL & DEAN, PLLC | NEW YORK SPORTS CLUB | GORDON REES SCULLY & MANSUKHAN | 08/24/2017 | FREED, KATHRYN E. | M |
| 484 | New York Supreme Court | 0154630/2017 | Disposed | TESSITORE, ANTHONY | ORTOLI ROSENSTADT LLP | NEW YORK STATE DEPARTMENT OF | | 10/11/2017 | FREED, KATHRYN E. | M |
| 485 | New York Supreme Court | 0159350/2016 | Disposed | MCCUE, TIMOTHY | SACKS & SACKS, LLP | NEW YORK STATE INSURANCE FUND | NEW YORK STATE INSURANCE - Prose | 01/01/2017 | FREED, KATHRYN E. | M |
| 486 | New York Supreme Court | 0150859/2017 | Disposed | MKX RESTAURANT INC. | | NEW YORK STATE LIQUOR | NYS LIQUOR AUTHORITY | 04/25/2017 | FREED, KATHRYN E. | M |
| 487 | New York Supreme Court | 0650170/2017 | Disposed | NEW YORK DIALYSIS SERVICES, | DUANE MORRIS LLP | NEW YORK STATE NURSES | NEW YORK STATE NURSES - | 01/26/2017 | FREED, KATHRYN E. | M |
| 488 | New York Supreme Court | 0154142/2017 | Disposed | MCCORMACK, BRENDAN | THE ORLOW FIRM | NEW YORK WHEEL LLC. | TOBIAS & KUHN, LAW OFC | 02/19/2019 | FREED, KATHRYN E. | |
| 489 | New York Supreme Court | 0157211/2014 | Disposed | CAVALRY SPV I, LLC | MULLOLLY JEFFREY ROONEY &FLYNN | NGUYEN, THY | THU NGUYEN AKA THU T TRUONG - Prose | 12/20/2017 | FREED, KATHRYN E. | M |
| 490 | New York Supreme Court | 0152745/2017 | Active | TREJO, ANNY | SUBIN ASSOCIATES, LLP | NOKIT REALTY CORP. | GANNON ROSENFARB & DROSSMAN | 06/11/2021 | FREED, KATHRYN E. | M |
| 491 | New York Supreme Court | 0655526/2016 | Disposed | FOREMOST SIGNATURE INSURANCE | CLAUSEN MILLER, PC | NUCOR CONSTRUCTIO N CORP., | WILSON ELSER MOSKOWITZ/ | 04/20/2017 | FREED, KATHRYN E. | M |
| 492 | New York Supreme Court | 0101443/2017 | Disposed | WALKER, JASON | JASON WALKER - Prose | NYC TRANSIT AUTHORITY | NYCTA, LAW DEPT, TORTS DIV | 03/06/2018 | FREED, KATHRYN E. | M |
| 493 | New York Supreme Court | 0154776/2017 | Active | ORJ PROPERTIES INC | KISNER MILLER HIMES PC | NYHK WEST 40 LLC | BYRNE & O'NEILL, LLP | 03/25/2021 | FREED, KATHRYN E. | M |
| 494 | New York Supreme Court | 0151524/2017 | Active | LOPALO, JOSEPH | SACKS & SACKS, LLP | NYU LANGONE MEDICAL CENTER | HEIDELL PITTONI MURPHY & BACH | 04/23/2021 | FREED, KATHRYN E. | M |
| 495 | New York Supreme Court | 0154834/2017 | Active | AME, BUJAR | LIPSIG SHAPEY MANUS & | OCEAN BREEZE TRACK & | TROMELLO & FISHMAN, LAW OFCS | 03/24/2020 | FREED, KATHRYN E. | M |
| 496 | New York Supreme Court | 0153038/2017 | Active | MCNEELEGE, HUGH | DANSKER & ASPROMONTE ASSOCS. | ONE BRYANT PARK LLC | FABIANI COHEN & HALL, LLP | 05/24/2021 | FREED, KATHRYN E. | M |

CONFIDENTIAL

# EXHIBIT D

CONFIDENTIAL                                        NYCTA 000253

| Verdict Search \| Submit a Case | |
|---|---|
| **Case Information** | |
| **Report Type:** | Verdict |
| **State:** | NY |
| **Court:** | New York Supreme Court |
| **Judge:** | Shlomo Hagler |
| **Case Type:** | Motor Vehicle |
| **Name of Case:** | Stephanie Adika v. The New York City Transit Authority, Manhattan and New York Surface Transit Operating Authority |
| **Docket/Index No.:** | 156526/2012 |
| **Verdict/Settlement Date:** | 12/23/2019 |
| **Award Information** | |
| **Verdict or Settlement Amount:** | $0 |
| **Fault Apportionment:** | 0% Defendant, 100% Plaintiff |
| **Plaintiff(s)** | |
| **Name, Occupation, Age, Gender, Marital Status and Number of Children for All Plaintiffs:** | Stephanie Adika (age 27 on date of accident), worked as an event planner for an energy information company setting up corporate conferences and meetings. Plaintiff was a white single female with no children. Only 1 plaintiff in this case |
| **Breakdown of Award:** | $0 |
| **Defendant(s)** | |
| **List all:** | The New York City Transit Authority, Manhattan and New York Surface Transit Operating Authority |
| **Insurance Carrier(s):** | Self Insured |
| **Plaintiff's Attorney(s):** | Sullivan Papain Block McGrath & Cannavo P.C. By Vito Cannavo, Esq. 120 Broadway New York, New York 10271 |
| **Defense Attorney(s):** | New York City Transit Authority Law Offices of Lawrence Heisler, Esq. By: Amelia Dweck, Esq. 130 Livingston Street Brooklyn, New York 11201 |

NYCTA 000254

| Verdict Search | Submit a Case |
|---|---|

**Plaintiff Expert Witness(es):** Dr. Leonard Harrision - Orthopedic Surgeon (Testified) 322 East 73rd Street New York, New York 10021

**Defense Expert Witness(es):** Dr. Jeffrey Passick - Orthopedic Surgeon (Testified) 421 Ocean Parkway Brooklyn, New York 11218 (914) 552 - 1594

**Description of Case:** Plaintiff Stephanie Adika claimed that on Sunday, April 22, 2012 at approximately 4:30 p.m., as she was exiting the M15 select bus through its middle doors (it was an articulated bus), she took 1 or 2 steps and fell directly into a defective tree well that was in front of the middle doors which resulted in 2 fractured ankles, left shoulder fracture and re-injury of her left elbow. Plaintiff had 2 photos of her feet inside the tree well that were moved into evidence. Defendants contend that plaintiff, after drinking for 3 hours (plaintiff admitted to drinking 2-3 mimosas during her 3 hour brunch celebrating a friend's birthday where all 4 friends drank alcohol) before boarding the bus, already had her left arm in a brace from a prior injury, lost her balance and fell onto sidewalk not into the nearby tree well. After she fell onto the sidewalk, she then positioned herself inside the tree well and took a photo of her feet inside the tree well. To defend the case on liability, defendant bus operator, Derrick Daniel testified that his bus was positioned with the middle doors opening onto the sidewalk and that he knows this to be true because the front of his bus was parked behind the 1st tree on the block which would place his middle doors opening to the sidewalk near the 2nd tree well. He was 100% certain that the middle doors opened to the sidewalk. There was no photo showing otherwise. Defendants also put on David Warren, fair inspector that previously worked as a cop for 20 years. He testified that that he was 2 feet away from the plaintiff when she fell in front of him. He collected the fare tickets from 8 or 9 customers that exited the bus before her, none of which fell and he watched as the plaintiff's friend provided assistance to her as she exited and fell off the bus. He obtained her name, her friend's name, EMT's name, Bus operator's name and put it in his memo book that was moved into evidence and published to the jury. Plaintiff's friend never came to trial to testify.

**Description of Injuries, Damages:** Plaintiff sustained: bilateral ankle fractures, left proximal humerus, and left displaced olecranon fracture. She was diagnosed with having osteogenesis imperfecta (brittle bone disease) and osteoporosis. She had open reduction internal fixation, bilateral ankle fractures of medial malleolus on the right, bimalleolar fracture on the left. She had another surgery on

**Verdict Search | Submit a Case**

her left elbow to remove and replace the hardware. The surgeries were performed on 4/27/12 by Dr. Kenneth Ego at the Hospital for Joint diseases, the same doctor that performed the initial surgery on the left elbow in January of 2012 when plaintiff fell after drinking at a bar on New Year's eve. Plaintiff had a long history of falling and sustaining fractures since she was a child due to her genetic condition of Osteogenesis imperfecta. There were voluminous medical records that all indicated this condition yet she denied having this as an adult and said that it went away after puberty. Plaintiff also denied having osteoporosis. Dr. Passick said osteogenesis imperfecta never goes away. He also showed the jury portions of the medical records that show that she was treated with reclast, a procedure that requires informed consent to treat osteoporosis with IV tubes which plaintiff receive in the year of both of her accidents.

**Date, Time and Place of Accident or Occurence:**

The accident was on Sunday, April 22, 2012 at approximately 4:30pm in the middle of east 68th and east 69th street on 1st Avenue. Plaintiff's claim was that the NYCTA bus did not provide a safe place to alight. The TA contends that the bus did provide a safe place to alight and that plaintiff was not telling the truth about how and why she fell since she ended up on the sidewalk according to David Warren, the fare inspector that witnessed her fall.

**Other Comments:**

The jury was significant in that it was not only attentive but participated in the trial process. They asked a total of 17 questions during the trial. They even asked questions that they wanted answered before the witness left the witness stand. The turning point was with the last jury question during deliberations. The plaintiff testified at her hearing 5 months after the accident that she boarded the bus after she fell to wait for the EMTs to arrive. She was cross examined with this testimony. Yet at trial, she told her lawyer that she never moved after she fell into the tree well which was the reason that she had the photos of her feet in the tree well. This inconsistency was brought to the jury after the questions and answers were read back to them and they reached a verdict within 10 minutes afterwards.

**Trial Length (Days):**    Nine (9) days

**Jury Composition:**    2 women, 4 men

**Jury Deliberations (Hrs/Days):**    10 minutes

NYCTA 000256

| Verdict Search \| Submit a Case | |
|---|---|
| **Jury Poll:** | Yes. Unanimous |
| **Settlement Negotiations** | |
| **Demand:** | $750 k |
| **Offer:** | $250 k |
| **Motion for a New Trial:** | Plaintiff, Denied |
| **Other Post-trial Motions:** | [pipe:58] |
| **Case on Appeal by:** | Please choose |
| **Personal Information** | |
| **Person:** | Amelia Dweck |
| **Job Title:** | Government Attorney |
| **Country:** | United States |
| **Firm:** | Law Offices of Lawrence Heisler, Esq. |
| **Address:** | 130 Livingston Street, Brooklyn, New York 11201 |
| **Telephone:** | 718-694-3885 |
| **Email:** | amelia.dweck@nyct.com |
| **Fax:** | 718-694-1023 |
| **Promo Code:** | [pipe:69] |

NYCTA 000257