UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ X
                                    :

AMELIA YEHOSHUA                :      Civil Action No.:1:21-CV-04055-FB-RML
                                      :
                Plaintiff,        :      **DEFENDANTS' RESPONSE TO**
                                      :      **PLAINTIFF'S STATEMENT OF**
       -against-               :      **UNDISPUTED MATERIAL FACTS**
                                      :

MANHATTAN AND BRONX SURFACE  :
TRANSIT OPERATING AUTHORITY,   :
THE NEW YORK CITY TRANSIT      :
AUTHORITY, AND WESLII KHAHAIFA  :
                                      :
               Defendants.      :
                                      :
------------------------------------------------------ X

Defendants Manhattan and Bronx Surface Transit Operating Authority, New York City Transit Authority (collectively, "NYCTA") and Weslii Khahaifa ("Khahaifa" and collectively, "Defendants"), respectfully submit this Response to Plaintiff's Statement of Undisputed Material Facts ("Response" or "Defs' Resp. to Pl's SUF").[1]

9.1. **Plaintiff's Statement:** Yehoshua was transferred to the Kings County Trial Unit after she lodged numerous complaints with the Transit's Head of Torts, Lawrence Heisler ("Heisler") regarding the unequal and discriminatory treatment she received from Khahaifa. Pl. Dec. ¶¶ 69-71.

**Defendants' Response:** Although Defendants dispute this statement, it does not create a question of material fact. Heisler specifically testified that:

Q. When did Amelia start to raise the idea of transferring out of the unit?
A. I would say 2018. Certainly by the beginning of 2019, her complaints had increased.
Q. Her complaints against Weslii?

---

[1] Defined terms have the meaning ascribed to them in Defendants' Statement of Undisputed Material Facts, unless otherwise noted.

A. Yes. But, again, remember, these are like routine -- not routine, but workplace complaints. They weren't Weslii is out to get me because I'm leaving early on Friday or taking the Jewish holidays off.  She didn't say that. . . .
Q. Did Amelia ever say to you that she felt she was being discriminated against because she was Jewish by Weslii?
A. No.
Q. Did she ever say to you, in words or substance, that she felt singled out because she was Jewish by Weslii?
A. No.

*See* Heisler Dep. Tr. at 41:24-42:23.

9.2 **Plaintiff's Statement:**  The environment in the New York County Trial Unit (the "Unit") was so hostile for Yehoshua that she felt if she was unable to transfer, she would have no choice but to quit. *Id.*

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a question of material fact.  First, this statement is not supported by the citation offered by Plaintiff.  *See* Pl. Dec. ¶¶ 69-71.  Second, Plaintiff was given ample opportunity to testify during her deposition as to her desire to be transferred and the facts supporting her claims of discrimination and harassment.  *See, e.g.*, Pl. Dep. Tr. at 17:14-18:19, 21:12-23:6, 25:14-28:2, 37:17-43:4, 349:11-18.  Plaintiff did not testify that the alleged hostility was to such a degree that she contemplated quitting if she was not transferred out of Khahaifa's unit.  *See id.*

9.3. **Plaintiff's Statement**: Heisler testified that the disparate treatment Khahaifa subjected Yehoshua to was "stark" and that if Plaintiff had stayed in the New York Unit, there would have been a lawsuit. Heisler Dep. Tr. 67:19-71:7.

**Defendants' Response:**  Although for purposes of this Response, Defendants do not dispute the substance of Heisler's testimony, Heisler's statements about alleged disparate treatment are not admissible.  "In employment discrimination actions, 'Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a

315768830v.9

defendant's adverse employment decision.'" *Barrella v. Vill. of Freeport*, 814 F.3d 594, 611 (2d Cir. 2016) (quoting *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000)). "Although witnesses may testify regarding 'their own observations of the defendant's interactions with the plaintiff or with other employees,' they may not opine as to the motives, racial or otherwise, underlying those interactions." *Id.*; *Shapiro v. City of New York*, No. 13-8647, 2015 WL 4002437, at *9 (S.D.N.Y. July 01, 2015).

10.1. **Plaintiff's Statement:** Hodes-Urbont had observed Yehoshua in court before Plaintiff's transfer to Kings County and found her to be a "fierce advocate" and impressive trial attorney. Hodes-Urbont Dep. Tr. 29:6-19.

**Defendants' Response:** Although Defendants dispute portions of this statement, it does not create a question of material fact. In particular, Hodes-Urbont did not testify that Plaintiff was an impressive trial attorney. *See* Hodes-Urbont Dep. Tr. 29:6-19.

14.1. **Plaintiff's Statement:** Although there were not set start or end times to each day, the general understanding was that attorneys were required to work 8 hours per day. Pl. Dep. Tr. 177:4-21.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement.

14.2. **Plaintiff's Statement:** On Fridays, Plaintiff would either arrive to work earlier than usual to finish an 8 hour day with time to leave in observance of the Sabbath or work through her lunch hour. Pl. Dep. Tr. 178:13-20; Pl. Dec. ¶ 31.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement.

15.1 **Plaintiff's Statement:** Plaintiff's lateness was caused by a train delay beyond her control. Pl. Dec. ¶ 32.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement.

15.2 **Plaintiff's Statement:** In light of the train delay, Plaintiff obtained an incident report to note that her lateness was due to a train delay beyond her control. Plaintiff understood that the incident report would allow her lateness to be excused and allow her to be approved for a full day of work despite having to leave early in observance of the Sabbath. Pl. Dep. Tr. 179:19-189:15; Pl. Dec. ¶ 33.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement.

16.1 **Plaintiff's Statement**: Due to her religious observance of the Sabbath, Plaintiff could not work late to make up the time.  Pl. Dep. Tr. 188:20-189:22; Pl. Dec. ¶ 33.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement insofar as Plaintiff is contending that she was unable to work late on the Friday of the train delay.  Defendants nonetheless reiterate that Plaintiff first presented the train incident report on January 29, 2016, two weeks after the train delay on January 15, 2016.  Defs' SUF ¶¶ 15-18. Therefore, Plaintiff was no longer in a position to make up the time even if the delay occurred on a non-Friday workday.  Khahaifa Dep. Tr. at 56:2-8.

16.2. **Plaintiff's Statement:** Plaintiff offered to make up the time on a different day but Khahaifa rejected that suggestion. Pl. Dep. Tr. 188:20-189:22; Pl. Dec. ¶¶ 35-36.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.  Defendants nonetheless reiterate that Plaintiff first presented the train incident report

4

on January 29, 2016, two weeks after the train delay on January 15, 2016.  Defs' SUF ¶¶ 15-18.

Therefore, Plaintiff was no longer in a position to make up the time even if the delay occurred on

a non-Friday workday.  Khahaifa Dep. Tr. at 56:2-8.

17.1 **Plaintiff's Statement:**  Plaintiff presented Khahaifa was an train incident report to

show that her delay in arrival was due to a train delay.  Pl. Dec. ¶¶ 32-33.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this

statement.

17.2 **Plaintiff's Statement:** Khahaifa's predecessor had routinely excused latenesses due

to train delays, in particular with respect to Yehoshua's observance of the Sabbath. Pl. Dec. ¶ 34.

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a

question of material fact.  First, this statement is not supported by the citation offered by

Plaintiff.  *See* Pl. Dec. ¶ 34.  Second, Plaintiff testified at her deposition, that the incident in

question (in 2016) was the first time she arrived late to work due to a train delay on a Friday.  *See*

Pl's Dep. Tr. at 179:11-180:19.  This newly crafted contrary testimony is inadmissible.  *See e.g.,*

*Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996) (a "party may not create

an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by

omission or addition, contradicts the affiant's previous deposition testimony."); *Kennedy v. City*

*of New York*, 570 F. App'x 83, 84-85 (2d Cir. 2014) (affirming summary judgment against "party

who testified [at] deposition that he was unable to remember a particular fact, and then, . . .

submitted an affidavit claiming a recollection of events that would have  raised an issue for

trial."); *Brown v. Henderson*, 257 F.3d 246, 252, 256 (2d Cir. 2001) (same).

17.3 **Plaintiff's Statement:**  Heisler testified that he was aware of other instances wherein such latenesses were excused where the employee brought in documentation of a train delay. Heisler Dep. Tr. 25:16-27:8.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

17.4 **Plaintiff's Statement:** Khahaifa had the authority to excuse minor delays, such as the one being presented in Yehoshua's case, and such latenesses were routinely excused in the office. Heisler Dep. Tr. 29:12-30:6.

**Defendants' Response**:  Although Defendants dispute this statement, it does not create a question of material fact.  In particular, this statement is not supported by the citation offered by Plaintiff.  *See* Heisler Dep. Tr. 29:12-30:6.  Further, the characterization of Plaintiff's 45-minute delay as "minor" is inaccurate.  Moreover, the record is undisputed that Khahaifa had never received such a request before, had never approved (or denied) such a request before, that she conferred with the Head of Trials in Torts, multiple Borough Chiefs and timekeeping professionals, and was advised, uniformly, that she was not permitted to excuse this delay.  *See* Def's SUF ¶¶ 17-22.

18.1 **Plaintiff's Statement:**  Khahaifa had the authority to excuse minor delays, such as the one being presented in Yehoshua's case, and such latenesses were routinely excused in the office.  Heisler Dep. Tr. 29:12-30:6.

**Defendants' Response**:  Although Defendants dispute this statement, it does not create a question of material fact for the reasons stated above.  *See supra,* Defs' Resp. to Pl's SUF ¶ 17.4.

20.1 **Plaintiff's Statement:** Khahaifa did not consult with her supervisor and Head of Torts, Heisler. Khahaifa Dep. Tr. 52:7-53:16, 55:16-22.

**Defendants' Response**: Although Defendants dispute this statement, it does not create a question of material fact. The record is undisputed that Khahaifa consulted, among many other individuals, her supervisor, the Head of Trials in Torts. Def's SUF ¶¶ 17-21.

20.2. **Plaintiff's Statement:** It is Plaintiff's understanding that Khahaifa did not advise any of the persons she purportedly spoke to that the incident fell on Friday when Plaintiff was required by her religious custom to leave early. Pl. Dec. ¶¶ 37-38.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute what Plaintiff may or may not have understood.

21.1 **Plaintiff's Statement:** Heisler testified that he was aware of other instances wherein such latenesses were excused where the employee brought in documentation of a train delay. Heisler Dep. Tr. 25:16-27:8.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement.

21.2 **Plaintiff's Statement:** Khahaifa had the authority to excuse minor delays, such as the one being presented in Yehoshua's case, and such latenesses were routinely excused in the office. Heisler Dep. Tr. 29:12-30:6.

**Defendants' Response**: Although Defendants dispute this statement, it does not create a question of material fact for the reasons stated above. *See supra,* Defs' Resp. to Pl's SUF ¶ 17.4.

22.1 **Plaintiff's Statement:** Khahaifa told Plaintiff that it did not matter that the day of the delay coincided with Yehoshua's observance of the Sabbath. Pl. Dec. ¶¶ 35-36.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement. Defendants nonetheless reiterate that Plaintiff first presented the train incident report on January 29, 2016, two weeks after the train delay on January 15, 2016. Defs' SUF ¶¶ 15-18.

Therefore, Plaintiff was no longer in a position to make up the time even if the delay occurred on a non-Friday workday. Khahaifa Dep. Tr. at 56:2-8.

24.1. **Plaintiff's Statement:** When Yehoshua spoke with Heisler, she explained the situation and complained that she was being discriminated against. Pl. Decl. ¶ 41.

**Defendants' Response:** Although Defendants dispute this statement, it does not create a question of material fact. Plaintiff's claim that "When Yehoshua spoke with Heisler, she explained the situation and complained that she was being discriminated against" is not supported by the record evidence including the declaration to which Plaintiff cites. Further, Heisler denied this in his deposition, explaining that Plaintiff did not complain to him that Khahaifa was discriminating against Yehoshua based on her religion or otherwise. Heisler Dep. Tr. 30:12-24.

24.2. **Plaintiff's Statement:** Heisler agreed that Khahaifa's actions could be interpreted as being motivated by discriminatory animus or bias and was annoyed that Khahaifa would but Transit in such a position. Heisler Dep. Tr. 27:9-28:4.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement.

24.3. **Plaintiff's Statement:** Heisler confronted Khahaifa and asked her why she would put a put [sic] "a bulls eye on Transit's back", stated it made no sense why she would not excuse the small lateness and raise the possibility of a lawsuit. Heisler Dep. Tr. 31:16-32:9. Heisler clearly implied that Khahaifa had discriminated against Yehoshua on the basis of her religious observance. Heisler Dep. Tr. 37:14-38:15.

**Defendants' Response:** Although Defendants dispute the first sentence of this statement, it does not create a question of material fact. Plaintiff misquotes and mischaracterizes

8

Heisler's cited deposition testimony. Heisler Dep. Tr. 32:3-9. Although Defendants dispute the second sentence of this statement, it does not create a question of material fact. Khahaifa testified that Heisler did not accuse her of discrimination when they spoke to discuss this incident. Khahaifa Dep. Tr. at 62:8-63:3. Moreover, Heisler's contemporaneous email to Khahaifa contradicts this portion of Plaintiff's statement. *See* Khahaifa Dec. Ex. A ("No one accused you of religious discrimination."; "I certainly didn't mean to imply you did anything wrong, and if I did, please accept my apologies."). Plaintiff admits she has no personal knowledge of any discussions between Heisler and Khahaifa regarding Plaintiff's alleged complaints about Khahaifa, and thus she cannot create a question of fact on this point. Pl. Dep. Tr. 265:11-266:2.

24.4. **Plaintiff's Statement:** Khahaifa understood that Yehoshua had complained that she (Khahaifa) had discriminated against Yehoshua on the basis of her religion or, at a minimum, her religious observance of the Sabbath [sic] declaration of Gabrielle M. Vinci ("Vinci Decl.) at Exhibit ("Ex.") 4, p. 2-3.

**Defendants' Response:** Although Defendants dispute this statement, it does not create a question of material fact. Khahaifa explicitly testified that she did not believe she "was accused of discrimination" by Plaintiff at that time. Khahaifa Dep. Tr. at 63:22-64:13; Khahaifa Reply Dec. ¶ 8. The record evidence upon which Plaintiff relies reveals that Khahaifa, in her email correspondence with Heisler, was expressing frustration and disappointment that Heisler – not Plaintiff – had accused her of discriminating against an employee. Khahaifa Dec. Ex. A; Khahaifa Reply Dec. ¶ 7.

25.1. **Plaintiff's Statement:** Yehoshua and Thompson got along well and never had any issues with working with one another. Pl. Dep. Tr. 226:11-21; Pl. Dec. ¶¶ 55-57.

315768830v.9

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

25.2.  **Plaintiff's Statement:** Thompson never complained to Plaintiff or, to Plaintiff's knowledge, anyone else that Yehoshua was overusing him or otherwise abusing him in his position as trial assistant. Pl. Dec. ¶¶ 55-57.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

37.1 **Plaintiff's Statement:**  Khahaifa would assign Yehoshua work on Friday after Yehoshua had left the office in observance of the Sabbath, including sending Yehoshua emails and leaving files on Yehoshua's desk or chair.  Pl. Dep. Tr. 216:21-217:16, 218:17-24; Pl. Dec. ¶¶ 45-48. These assignments would include work that needed to be performed for or by the following business day, Monday morning. Pl. Dep. Tr. 218:17-219:3, 220:24-221:13; Pl. Dec. ¶¶ 45-48.

**Defendants' Response:**  Although Defendants partially dispute this statement, it does not create a question of material fact.  First, Khahaifa did not have a specific date or time when she assigned new matters to attorneys in the Unit.  Khahaifa Dep. Tr. 89:25-90:14; Khahaifa Dec. ¶ 22.  Rather, new case assignments were made and distributed based on business needs and Khahaifa's own availability.  *Id.*  This practice sometimes resulted in assignment of new matters on Fridays, but  Khahaifa never required Yehoshua to respond to email correspondence about new matters, or to complete any work, on Friday afternoons or over the Jewish Sabbath. Khahaifa Dec. ¶¶ 23-25; Khahaifa Dep. Tr. 89:25-91:22.

Second, Plaintiff's claim that Khahaifa left her work assignments on "Friday after Yehoshua had left the office in observance of the Sabbath" and that "these assignments would

include work that needed to be performed for or by the following business day, Monday morning," such a statement is inadmissible.  At her deposition, Plaintiff unequivocally testified that she could only recall one only such emergency instance – in four years of working with Khahaifa -- in which she was required to complete a task on Monday.  *See* Pl. Dep. Tr. 216:21-217:19-224:8.  Plaintiff's statements asserted in her Declaration are contrary to her express deposition testimony, and thus are not admissible.  Compare Pl. Dec. ¶¶ 45-48 with Pl. Dep. Tr. 216:21-217:19-224:8.; *see also Hayes*, 84 F.3d at 619 (a "party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); *Kennedy*, 570 F. App'x at 84-85 (affirming summary judgment against "party who testified [at] deposition that he was unable to remember a particular fact, and then, . . . submitted an affidavit claiming a recollection of events that would have raised an issue for trial."); *Brown*, 257 F.3d at 252, 256 (same).

37.2. **Plaintiff's Statement:**  Yehoshua complained to Heisler about this practice. Heisler Dep. Tr. 39:12-16.

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a question of material fact.  Plaintiff's Statement is not supported by the deposition testimony to which she cites.  Heisler testified that Plaintiff complained that Khahaifa would assign cases to Plaintiff on Fridays, but no testimony was offered as to any work required to be completed by Monday (which is consistent with Plaintiff's own deposition testimony, *see supra,* Defs' Resp. to Pl's SUF ¶ 37.1).  In particular, Heisler testified:

> Q. Okay. Following this incident, did you become aware of any other issues between Weslii and Amelia?
> A. Yeah, fairly routine stuff.  Amelia would complain that Weslii would dump cases on her without discussing them. Often on Friday, when she was prepared to leave the office. There was some residue of ill feeling there. But, you know, that goes with any -- often goes with any law office. So I did not make much of it, you know.

11

Heisler Dep. Tr. 39:9-20; *see also* Heisler Dep. Tr. 39:20-41:20.

    38.1. **Plaintiff's Statement:** Yehoshua was tasked with covering an appearance before ▮▮▮▮▮▮▮▮▮▮ on the *Wood v. Metropolitan Transportation Authority and New York City Transit Authority* case, a matter assigned to and handled by Plaintiff's colleague Alexandra Vandoros. Pl. Dep. Tr. 270:16-21; Pl. Dec. ¶¶ 7-8.

    **Defendants' Response**: For purposes of this Response, Defendants do not dispute that Plaintiff was appearing before ▮▮▮▮▮▮▮▮ on the *Wood v. Metropolitan Transportation Authority and New York City Transit Authority* case. *See* Defs' SUF ¶ 38. Although the remainder of this statement is disputed, it does not create a dispute of material fact. The undisputed, contemporaneous record establish that the *Wood* case was at all relevant times assigned to Plaintiff, and only reassigned to Vandoros after ▮▮▮▮▮ directed that Plaintiff on longer appear in her courtroom. Khaifaifa Dec. ¶ 38, Ex. H; Khaifaifa Reply Dec. ¶¶ 9-10, Ex. A; Usen. Dec. Ex. Y; Khaifaifa Dep. Tr. at 154:16-157:9, 160:11-161:7, 174:2-19; Farber Dec., Ex. A, pp. 3-4, 8-9.

    38.2. **Plaintiff's Statement:** Prior to the appearance, Yehoshua spoke to another attorney about a discovery issue in the case and was advised to tell ▮▮▮▮▮▮▮ that the records at issue were a matter of public record. Plaintiff did so which ▮▮▮▮▮▮▮ disagreed was appropriate. Pl. Dep. Tr. 272:11-273:5; Pl. Dec. ¶¶ 7-9.

    **Defendants Response:** For purposes of this Response, Defendants do not dispute the substance of any discussion between Plaintiff and another attorney. Although the remainder of this statement is disputed, it does not create a question of material fact. As is clear from the undisputed record evidence, ▮▮▮▮▮▮▮ concern with Plaintiff's unethical behavior

extended well beyond the question of whether a particular record was a matter of public record. *See* Usen. Dec. Ex. F ¶¶ 4-11; Khahaifa Dec. Ex. E; Farber Dec. ¶¶ 21-25.

38.3. **Plaintiff's Statement:** Yehoshua refuted ████████ alleged complaints through prior counsel in connection with Transit's Second Disciplinary Action Notice in April of 2021. Pl. Dec. ¶ 23, Ex. D, E.

**Defendants Response**: Although Defendants dispute this statement, it does not create a question of material fact. Prior counsel's representations are inadmissible hearsay. *In re N.Y.C. Asbestos Litig. (Allen v. Air & Liquid Sys. Corp.),* No. 190352/2016, 2019 NY Misc Lexis 124 (Sup. Ct. N.Y. Cnty. Jan. 11, 2019) (attorney's statement as inadmissible hearsay). Further, it is undisputed that ████████ "alleged complaints" are corroborated by ████████ and that these complaints were relayed to Khahaifa. *See* Defs' SUF ¶¶ 38-42, 45-46.

40.1. **Plaintiff's Statement:** Yehoshua was tasked with covering an appearance before ████████ on the *Wood v. Metropolitan Transportation Authority and New York City Transit Authority* case, a matter assigned to and handled by Plaintiff's colleague Alexandra Vandoros. Pl. Dep. Tr. 270:16-21; Pl. Dec. ¶¶ 7-8.

**Defendants' Response**: For purposes of this Response, Defendants do not dispute that Plaintiff was appearing before ████████ on the *Wood v. Metropolitan Transportation Authority and New York City Transit Authority* case. *See* Defs' SUF ¶ 38. Although the remainder of this statement is disputed, it does not create a dispute of material fact for the reasons stated above. *See supra,* Defs' Resp. to Pl's SUF ¶ 38.1.

40.2. **Plaintiff's Statement**: Prior to the appearance, Yehoshua spoke to another attorney about a discovery issue in the case and was advised to tell ████████ that the

13

records at issue were a matter of public record. Plaintiff did so which ████████ disagreed was appropriate.  Pl. Dep. Tr. 272:11-273:5; Pl. Dec. ¶¶ 7-9.

**Defendants' Response**:  For purposes of this Response, Defendants do not dispute the substance of any discussion between Plaintiff and another attorney.  Although the remainder of this statement is disputed, it does not create a question of material fact for the reasons stated above.  *See supra,* Defs' Resp. to Pl's SUF ¶ 38.2.

40.3.  **Plaintiff's Statement**:  Yehoshua refuted ████████ alleged complaints through prior counsel in connection with Transit's Second Disciplinary Action Notice in April of 2021. Pl. Dec. ¶ 23, at Ex. D, E.

**Defendants Response**:  Although Defendants dispute this statement, it does not create a question of material fact for the reasons stated above.  *See supra,* Defs' Resp. to Pl's SUF ¶ 38.3.

40.4.  **Plaintiff's Statement**:  At no point in time did ████████ advise Plaintiff that she (Plaintiff) was not welcome to appear in ████████ courtroom again. Indeed, Plaintiff continued to be assigned to appearances before ████████ and did so appear without incident. Pl. Dec. ¶ 10.

**Defendants' Response**:  Although Defendants dispute this statement, it does not create a question of material fact.  First, it is undisputed that both ████████ and Khahaifa understood that ████████ instructed that Yehoshua was no longer welcome in ████████ courtroom.  These understandings are memorialized in contemporaneous documentation and also in ████████ Declaration. *See e.g.*, Khahaifa Dec. Ex. D and E; Usen. Dec. Ex. F ¶ 9.  Plaintiff lacks personal knowledge sufficient to create a question of fact on this point.  *See e.g.*, Pl's Dep. Tr. 267:20-271:9.

14

Moreover, when given the opportunity, Plaintiff testified she could not recall a time when she appeared before ████████ again.  Pl's Dep. Tr. at 280:24-281:13.  *See e.g., Hayes*, 84 F.3d at 619 (a "party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); *Kennedy*, 570 F. App'x at 84-85 (affirming summary judgment against "party who testified [at] deposition that he was unable to remember a particular fact, and then, . . . submitted an affidavit claiming a recollection of events that would have raised an issue for trial."); *Brown,* 257 F.3d at 252, 256 (same).

Similarly, contemporaneous documentation evidences that Khahaifa did not permit Yehoshua to return to ████████ courtroom.  Usen. Dec., Ex. Y; Khahaifa Dep. Tr. at 160:4-161:7, 174:2-19.

41.1 **Plaintiff's Statement**:  Plaintiff was never advised by any judge that she was unwelcome to appear in any courtroom or that they felt the need to recuse themselves from Plaintiff's cases due to any fault of Plaintiff.  Indeed, several judges complimented Plaintiff's professionalism and tenacity. Pl. Dec. ¶¶ 18-19.

**Defendants' Statement**:  For purposes of this Response, Defendants do not dispute this statement.

48.1 **Plaintiff's Statement**:  Plaintiff appeared before Justice Frank in the matter *Chinn v. New York City Transit Authority*, Index. No. 15684/2014.  Pl. Dec. ¶ 6, Ex. A.  The case resulted in a defense verdict.  *Id.*; Heisler Dep. Tr. 64:14-65:10.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

50.1 **Plaintiff's Statement:** Heisler described Justice Frank's complaints as problematic in that they had a gender biased tone and would not have been complaints made against a male attorney. Heisler Dep. Tr. 64:6-66:24.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement insofar as it seeks to restate Heisler's deposition testimony. This testimony is, however, inadmissible. *See Barrella*, 814 F.3d at 611; *Hester*, 225 F.3d at 185. Further, Plaintiff does not have any gender discrimination claims in this action.

55.1 **Plaintiff's Statement:** Heisler testified that Justice Freed had a history of bias against Transit attorneys, including himself and Khahaifa. Heisler Dep. Tr. 62:3-19. Heisler was not concerned about Justice Freed's alleged complaints about Plaintiff due to this history and the inaccuracy in Justice Freed's complaint about papers submitted by Transit. Heisler Dep. Tr. 101:22-110:3.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement insofar as it seeks to restate Heisler's deposition testimony. Plaintiff, however, lacks any personal knowledge of any attorney against whom Freed had a bias (*see* Pl's Dep. Tr. at 293:2-295:6). In any event, this testimony does not somehow render Justice Freed's sworn statements as to Plaintiff's unprofessional conduct untrue or subject to question. For a more fulsome discussion of Justice Freed's complaints about Plaintiff, *see* Usen. Dec. Ex. E; Defs' SUF ¶¶ 54-59 (which, collectively, highlight Justice Freed's concerns that: (i) Plaintiff was repeatedly dishonest, unprofessional, late, disrespectful and unprepared; (ii) Plaintiff's conduct was unbecoming of an attorney; (iii) Plaintiff's conduct was a judge's worst nightmare and negatively stood apart from all other attorneys who had appeared before Justice Freed; (iv)

16

Plaintiff was disingenuous when addressing the Court; (iv) the Judge caught Plaintiff in numerous lies, and (v) Plaintiff demonstrated a lack of candor before the Court).

60.1. **Plaintiff's Statement:** Sometime in November or December, Khahaifa approached Heisler in the hallway and, wmirking [sic], advised him that judges did not like Plaintiff without more detail, explanation or context. Heisler Dep. Tr. 61:5-62:19, 67:5-18. Khahaifa also sent Heisler and Goode an email regarding the justices' complaints. Vinci Decl. at Ex. 5.

**Defendants' Response:** Although Defendants dispute the first sentence of this statement, it does not create a question of material fact. Plaintiff misquotes and mischaracterizes Heisler's cited deposition testimony. Heisler Dep. Tr. 61:5-10. Moreover, the assertion that Khahaifa merely advised Heisler that "the judges did not like Plaintiff without more detail, explanation or context" is contradicted by Heisler's testimony in which he relays specific details from Khahaifa, including, e.g., that certain referenced judges did not want to Plaintiff appearing before them. *Id*. at 61:16-62:19. For purposes of this Response, Defendants do not dispute the second sentence of this statement.

60.2. **Plaintiff's Statement:** Khahaifa wanted Yehoshua out, at a minimum, of the New York County Trial unit. *Id*.

**Defendants' Response:** Although Defendants dispute this statement, it does not create a question of material fact. Plaintiff relies on Heisler's deposition testimony in support of this statement, however, Heisler lacks personal knowledge of the "fact" about which he testifies. Heisler Dep. Tr. 67:5-18. Moreover, his testimony is refuted by Khahaifa who testified that she asked Heisler about Plaintiff's status following the judicial complaints because she was trying to schedule her Unit's calendar and she needed to know how to staff her matters, not because she

17

was looking to have Plaintiff removed from her unit.  Khahaifa Dep. Tr. at 175:3-178:15.  To the extent Plaintiff uses the phrase "at a minimum" to imply that Khahaifa wanted to have Plaintiff terminated, Defendants dispute this statement for the additional reason that Khahaifa testified that she would not want to see anyone lose their job.  Khahaifa Dep. Tr. at 137:24-138:9.

62.1  **Plaintiff's Statement:**  Yehoshua was transferred to the Kings County Trial Unit at her request, following numerous complaints of a hostile work environment and discrimination from Khahaifa. Heisler Dep. Tr. 67:19-71:3.  Heisler transferred Plaintiff out of Khahaifa's unit to avoid a catastrophe as the disparate treatment Plaintiff suffered at Khahaifa's hands was "stark". Heisler Dep. Tr. 67:19-68:10.

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a question of material fact for the reasons stated above.  *See supra,* Defs' Resp. to Pl's SUF ¶¶ 9.1, ¶ 9.3.

65.1.  **Plaintiff's Statement:**  Justice Adams and Plaintiff were previously colleagues at a prior firm before Justice Adams was elected to the bench.  Heisler Dep. Tr. 61:21-24; Pl. Dep. Tr. 295:25-296:3, 297:14-22; Pl. Dec. ¶ 14.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

65.2.  **Plaintiff's Statement:** To Plaintiff's understanding, Justice Adams rightfully recused herself from any case with Plaintiff not due to any alleged misconduct on Plaintiff's part, but to avoid the appearance of any conflict of interest given their past working relationship. *Id.*

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute Plaintiff's understanding.  It is, however, undisputed that Justice Adams also previously worked with Alexandra Vandoros at a prior law firm, and Justice Adams did not recuse herself from

Vandoros's cases. *See* Khahaifa Dep. Tr. 171:24-172:25; Farber Dec. Ex. A, at p. 10; Pl's Dep. Tr. 295:25-296:20.

65.3. **Plaintiff's Statement:** Transit used Justice Adams' ethical recusal of herself from Plaintiff's cases as a basis to terminate Plaintiff's employment. Vinci Dec. at Ex. 7.

**Defendants' Response:** Although Defendants dispute this statement, it does not create a question of material fact. *See supra,* Defs' Resp. to Pl's SUF ¶¶ 65.1-65.2; Usen. Dec., Ex. S. Moreover, the exhibit Plaintiff cites in support of this statement is the notes capturing Plaintiff's meeting with the OIG investigator during the OIG investigation of Plaintiff's alleged unethical conduct and in no way relates to the subject matter of this statement.

66.1 **Plaintiff's Statement:** Plaintiff never appeared before Justice Silvera before or after Justice Silvera's alleged complaints to Khahaifa. Pl. Dec. ¶¶ 17, 23 at Ex. D, E.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement.

70.1. **Plaintiff's Statement:** Yehoshua continued to appear in New York County Supreme Court and, indeed, continued to appear before judges that had allegedly complained about her. Plaintiff was never advised by any judge that she was unwelcome in any courtroom. Pl. Dec. ¶¶ 10, 18.

**Defendants' Response**: Although Defendants dispute this statement, it does not create a question of material fact. First, ▮▮▮▮▮▮▮f expressly testified that she instructed Plaintiff that she was no longer welcome in her courtroom, and Plaintiff conceded at deposition that she could not recall a time when she appeared before ▮▮▮▮▮▮ after ▮▮▮▮▮▮ instruction. *See* Khahaifa Dec. Ex. D and E; Usen. Dec. Ex. F ¶ 9; Pl. Dep. Tr. 280:24-281:13. Justice Freed also testified that she advised Plaintiff that she "was no longer welcome in my

courtroom and warned that I would have [Plaintiff] removed from my courtroom, if necessary." Usen. Dec. Ex. E ¶ 24; *see also supra,* Defs' Resp. to Pl's SUF ¶ 40.4.  Further, Plaintiff testified that she never appeared at all before Justices Silvera and Adams. Pl. Dep. Tr. 296:24-297:18, 298:18-22; Usen. Dec. Ex. I ¶ 3.  Finally, Khahaifa's undisputed testimony is that she never assigned Plaintiff to any cases involving Justice Lyle Frank after Khahaifa's December 3, 2019 meeting with Justice Frank nor to any cases involving Justice Deborah A. Kaplan after Khahaifa's January 30, 2020 meeting with Justice Kaplan.  Khahaifa Reply Dec. ¶¶ 11-12.

70.2.  **Plaintiff's Statement:**  Many judges in fact complemented Plaintiff on her professionalism while appearing before them.  Pl. Dec. ¶ 19.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

71.1.  **Plaintiff's Statement:**  Yehoshua continued to appear in New York County Supreme Court and, indeed, continued to appear before judges that had allegedly complained about her. Plaintiff was never advised by any judge that she was unwelcome in any courtroom. Pl. Dec. ¶¶ 10, 18.

**Defendants' Statement**:  Although Defendants dispute this statement, it does not create a question of material fact.  *See supra,*  Defs' Resp. to Pl's SUF ¶ 70.1.

71.2.  **Plaintiff's Statement:**  Many judges in fact complemented Plaintiff on her professionalism while appearing before them. Pl. Dec. ¶ 19.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

74.1.  **Plaintiff's Statement:**  Khahaifa should not have been assigning Plaintiff any work assignments after Plaintiff's transfer to Kings County in January 2020.  Heisler Dep. Tr. 77:4-78:15; Pl's Dec. ¶ 72.

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a question of material fact.  Plaintiff's claim that "Khahaifa should not have been assigning Plaintiff any work assignments after Plaintiff's transfer to Kings County in January 2020" is not supported by the record evidence.

First, the undisputed record evidence is that Plaintiff was transferred to the Kings County Trial Unit in March 2020.  In her Statement, Plaintiff relies on testimony by Heisler in which he is unsure about the date on which her transfer to Kings County was effective.  When asked, Heisler testified: "I don't know exactly.  I know she tried a case in Kings County early in 2020. Okay. I don't know if she was out a little bit at the beginning of the year or not. . ."  *See* Heisler Dep. Tr. at 77:3-15.  This statement cannot create a question of fact when compared to the explicit testimony offered by Hodes-Urbont and Khahaifa, especially when coupled with the robust and contemporaneous documentary evidence offered by Defendants as to the date of transfer.  *See e.g.,* Hodes-Urbont Dep. Tr. 26:5-18, 27:25-28:7; Khahaifa Dep. Tr. 40:20-25, 97:4-25; Khahaifa Dec. Ex. E; Usen. Dec. Ex. BB and Ex. CC; Hodes-Urbont Dec. ¶¶ 4-6.  It is, in any event, wholly undisputed that the relevant managers, *i.e.,* Hodes-Urbont and Khahaifa, understood that Yehoshua's transfer was effective March 2020.  *Id.*

Second, Plaintiff's statement ignores the undisputed record evidence establishing that Yehoshua was required to complete outstanding assignments for Khahaifa, even after she transferred Units.  *See* Hodes-Urbont Dep. Tr. 42:24-44:8; Khahaifa Dep. Tr. 97:8-15, 108:16-109:7; Hodes-Urbont Dec. ¶¶ 4-5.  It is, in any event, wholly undisputed that the relevant

21

managers, *i.e.,* Hodes-Urbont and Khahaifa, understood that Yehoshua was responsible for completing outstanding assignments after her transfer. *Id.* For instance, Hodes-Urbont swore that:

> Effective March 2020, Plaintiff Amelia Yehoshua transferred into my Kings County Trial Unit. At the time of her transfer, it was my understanding that the transfer was contingent on Yehoshua completing outstanding assignments for her prior Borough Chief, Weslii Khahaifa. In this way, there was no formal endpoint for when Yehoshua would stop handling cases previously assigned to her by Khahaifa. Rather, any "end date" was controlled by when the specific litigation concluded.

> * * *

> Throughout my years in Torts it was standard procedure for an attorney transferred to a new unit to complete outstanding assignments from her prior unit. I discussed this expectation with Khahaifa and with Yehoshua.

*See* Hodes-Urbont Dec. ¶¶ 4-5. Plaintiff offers no evidence, whatsoever, to show that Khahaifa was assigning her new work or new cases following her transfer out of the unit. In fact, Plaintiff's Declaration admits that Khahaifa "continued to follow up with [Plaintiff] about [her] prior NY cases . . .," but is silent as to the assignment of new work or new cases. *See* Pl's Dec. ¶ 72; *see also* Heisler Dep. Tr. 78:7-15 (in which Heisler questions why Khahaifa would be assigning Plaintiff new matters, *i.e.,* "giving [Plaintiff] cases," after the transfer).

75.1. **Plaintiff's Statement:** Despite not being Yehoshua's supervisor for months, Khahaifa did nothing to correct the alleged administrative error until Plaintiff complained of it in June 2020. Pl. Dec. ¶¶ 72-73.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this statement.

79.1. **Plaintiff's Statement:** Plaintiff's adversary in her personal litigation submitted the complaint which triggered the investigation. Pl. Dec. ¶ 25.

22

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

83.1.  **Plaintiff's Statement:**  Heisler disagreed with the OIG's determination that Yehoshua violated any rules and shared that sentiment with Farber.  Heisler Dep. Tr. 12:25-14:7.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

85.1.  **Plaintiff's Statement:** Plaintiff disputes that she engaged in any unethical or other misconduct and submitted a response to the allegations through prior counsel. Pl. Dec. ¶¶ 24-27; Pl. Dec. at Ex. B, C.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute that Plaintiff "disputes" the allegations against her.  Plaintiff, however, conceded the conduct underlying these findings of unethical conduct.  *See* Pl's Dep. Tr. 52:14-60:3; Usen. Dec. Ex. Q, O.  For the reasons discussed above, statements asserted by her prior counsel are inadmissible hearsay.  *See supra,* Defs' Resp. to Pl's SUF ¶ 38.3.

86.1.  **Plaintiff's Statement:** Plaintiff disputes that she engaged in any unethical or other misconduct and submitted a response to the allegations through prior counsel. Pl. Dec. ¶¶ 24-27; Pl. Dec., at Ex. B, C.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute that Plaintiff "disputes" the allegations against her.  Plaintiff, however, conceded the conduct underlying these findings of unethical conduct.  *See* Pl's Dep. Tr. 52:14-60:3; Usen. Dec. Ex. Q, O.  For the reasons discussed above, statements asserted by her prior counsel are inadmissible hearsay.  *See supra,* Defs' Resp. to Pl's SUF ¶ 38.3.

87.1. **Plaintiff's Statement:** Heisler disagreed with the OIG's determination that
Yehoshua violated any rules and shared that sentiment with Farber. Heisler Dep. Tr. 12:25-14:7.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this
statement.

89.1. **Plaintiff's Statement:** Khahaifa was not Plaintiff's supervisor at the time the First
DAN was delivered. Pl. Dec. ¶ 75. Plaintiff's supervisor at the time, Hodes-Urbont, was entirely
left out of the process involving the First DAN. Hodes-Urbont Dep. Tr. 48:2-49:6.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute this
statement. *See* Defs' SUF ¶¶ 88-89.

91.1. **Plaintiff's Statement:** Farber reduced Yehoshua's sanction after review of
Yehoshua's appeal of the determination which outlined the multiple ways Plaintiff had not
violated Transit's rules or procedures, and highlighted the discriminatory and inappropriate
involvement of Khahaifa in the First DAN. Pl. Dec. ¶¶ 24-28, Pl. Dec. at Ex. B, C.

**Defendants' Response:** For purposes of this Response, Defendants do not dispute that
Farber reduced Yehoshua's sanction after review of Yehoshua's appeal. *See* Defs' SUF ¶ 91.
Defendants, however, deny any implication that Plaintiff did not violate Transit's rules or
procedures and any suggestion that Khahaifa engaged in discriminatory or inappropriate conduct.

91.2. **Plaintiff's Statement:** Khahaifa was furious that Yehoshua was not terminated as
a result of the First DAN. Heisler Dep. Tr. 90:3-18.

**Defendants' Response:** Although Defendants dispute this statement, it does not create a
question of material fact. The testimony on which Plaintiff relies is inadmissible hearsay. It is
undisputed that Khahaifa was not furious, as Plaintiff alleges. *See* Urbont Dec. ¶ 9; Heisler Dep.
Tr. 90:3-18.

24

95.1. **Plaintiff's Statement:**  Khahaifa had made no effort to seek disciplinary action against Plaintiff in relation to the justices' concerns until after Plaintiff filed a formal agency complaint against Khahaifa because, prior to that, there was "no need" for her to escalate it. Khahaifa Dep. Tr. 138:25-139:6, 146:10-151:4.

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a question of material fact.  The undisputed record evidence establishes that Khahaifa immediately elevated the concerns relayed by justices to her own supervisor, Gail Goode, and to Goode's supervisor, Heisler.  *See* Defs' SUF ¶¶ 43-44, 60-61.

It is further undisputed that Farber learned of the judicial complaints in February 2021 in the course of NYCTA's investigation into Plaintiff's external discrimination complaint and he then asked Khahaifa to prepare a detailed summary of the judicial complaints.  *See* Defs' SUF ¶¶ 43, 60-61, 93-95; Farber Dec. ¶¶ 21-24.  Moreover, even if Khahaifa personally felt the Justices' complaints and Plaintiff's courtroom conduct warranted discipline, she did not have the power to initiate disciplinary action herself.  Khahaifa Dep. Tr. at 151:5-152:20.  It is undisputed that Khahaifa did not consider – and would have been uncomfortable – circumventing the established chain of command.  Khahaifa Reply Dec. ¶¶ 13-14.  Further, Khahaifa testified that she saw "no need" to raise the judicial complaints to Heisler's supervisors because she had already notified her own supervisors of these concerns and understood they would handle the matter as they saw fit.  Khahaifa Dep. Tr. 151:2-13:23; Khahaifa Reply Dec. ¶¶ 13-14.

99.1. **Plaintiff's Statement:** Plaintiff's counsel submitted a robust appeal of the proposed penalty of dismissal.  Pl. Dec. ¶ 23 at Ex. D, E.

**Defendants' Response:**  For purposes of this Response, Defendants do not admit nor deny this statement, but respectfully direct the Court to the appeal.  *See* Pl's Dec. ¶ 23, Ex. D, E.

100.1.  **Plaintiff's Statement:**  Plaintiff was never interviewed or spoken to as part of Transit's alleged investigation into the Second DAN.  Pl. Dec. ¶ 21.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

100.2.  **Plaintiff's Statement:**  Prior to the Second DAN, Hodes-Urbont had been preparing for Yehoshua's return to the Kings County unit. Hodes-Urbont Dep. Tr. 59:2-60:4.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

100.3.  **Plaintiff's Statement:**  Neither of Plaintiff's supervisors, Heisler or Hodes-Urbont, were interviewed or involved in any way with respect to the Second DAN, an uncommon practice given their standings in relation to Yehoshua. Pl. Dec. ¶ 22; Heisler Dep. Tr. 92:19-95:25, 110:19-111:14, 111:25-113:8; Hodes-Urbont Dep. Tr. 60:9-61:13.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute Plaintiff's statement that Heisler and Hodes-Urbont were not interviewed with respect to the Second DAN.  The remainder of Plaintiff's statement is not supported by admissible evidence, however, as Plaintiff lacks personal knowledge for what constitutes an "uncommon practice" nor does she even make such a statement in her Declaration.  Pl. Dec. ¶ 22.  Regardless, Plaintiff's conclusory allegation and the testimony cited cannot create a question of fact as to Farber's decision making as compared to Farber's unequivocal testimony as to the basis for his decision of who to speak with in connection with Plaintiff's termination.  *See* Farber Dec. ¶¶ 21-33.

100.4.  **Plaintiff's Statement:**  Heisler believed that his status as an Orthodox Jewish man played a role in Farber and Khahaifa leaving him 'out of the loop' with respect to the actions taken against Plaintiff. Heisler Dep. Tr. 113:9-115:20.

26

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this restatement of Heisler's deposition testimony, except to note that the cited testimony is silent as to Khahaifa's involvement with respect to actions taken against Plaintiff.  *See* Defs' SUF ¶¶ 81-82, 85-90, 92-102.  This testimony, is in any event, inadmissible.  *See, e.g., Barrella*, 814 F.3d at 611; *Hester*, 225 F.3d at 185; *Shapiro*, 2015 WL 4002437, at *9.  Further, Farber's testimony is undisputed as to the reason why he did not consult with Heisler regarding Plaintiff's discipline.  *See* Farber Dec. ¶ 27.

101.1.  **Plaintiff's Statement:** Plaintiff was never interviewed or spoken to as part of Transit's alleged investigation into the Second DAN. Pl. Dec. ¶ 21.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

101.2.  **Plaintiff's Statement:**  Heisler was never spoken to as part of the investigation into the Second DAN. Heisler Dep. Tr. 115:21-116:3.

**Defendants' Response:**  For purposes of this Response, Defendants do not dispute this statement.

**101.3.  Plaintiff's Statement:**  Heisler would have been able to dismantle each specification in the Second DAN and support Yehoshua and her counsel's appeal. Heisler Dep. Tr. 117:4-130:3.

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a question of material fact.  The deposition testimony referenced by Plaintiff is speculative. *Giaccio v. Michael Anthony Contracting Corp.*, No. 19-4491, 2022 WL 815931, at *7 (E.D.N.Y. Feb. 16, 2022).  The undisputed record conclusively establish the bases for Plaintiff's discipline, including the specifications in the Second DAN.  *See* Defs' SUF ¶¶ 38-71, 92-102.

315768830v.9

107.1.   **Plaintiff's Statement:** Khahaifa laughed at Yehoshua when she ate matzah during Passover.  Pl. Dep. Tr. 209:15-19, 213:14-214:3.

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a question of material fact.  Even if, as Plaintiff testified, Khahaifa laughed at Plaintiff *when* she ate matzah during Passover, Plaintiff's deposition testimony readily concedes that she has no facts to support the claim that Khahaifa laughed *because* Plaintiff was eating matzah.  Pl. Dep. Tr. 213:14-214:9.  Further, it is undisputed that Khahaifa grew up in a home that followed many of the Jewish laws of Kashrut and in which she ate matzah.  Khahaifa Dec. ¶ 31; Pl Dep. Tr. 214:10-15.

107.2.   **Plaintiff's Statement:**  Yehoshua's former trial assistant, Thompson, advised Yehoshua that Khahaifa complained that Heisler liked Yehoshua because they were both Jewish. Pl. Dep. Tr. 212:9-213:3.

**Defendants' Response:**  Although Defendants dispute this statement, it does not create a question of material fact.  This statement is based on inadmissible hearsay.  *See* Pl. Dep. Tr. 212:9-19.  It is in any event refuted by Thompson's statements in his Declaration that, "I never heard Khahaifa complain that Lawrence Heisler favored Yehoshua because Yehoshua is Jewish, or for any other reason.  I also never told Yehoshua that Khahaifa made such a statement," and "I never heard Khahaifa speak negatively about Yehoshua. I never heard Khahaifa make any negative comment about Yehoshua's religion."  Thompson Dec. ¶¶ 8-9.

108.1.   **Plaintiff's Statement:**  During one of Plaintiff's trials in New York County Supreme Court, Plaintiff was scheduled to appear for in a different part for an unrelated matter. Pl. Dec. ¶¶ 65-68. One of Plaintiff's colleagues offered to cover the appearance due to the conflict in Plaintiff's schedule and Plaintiff attempted to alert Khahaifa of the change in

28

coverage. *Id*. After Plaintiff's colleague covered the appearance, it came to Yehoshua's attention that he had been reprimanded by Khahaifa for helping Plaintiff. *Id.*

  **Defendants' Response:** Although Defendants dispute this statement, it does not create a question of material fact.  The undisputed contemporaneous evidence shows that it was Plaintiff who asked her colleague to cover the appearance.  *See* Defs' SUF ¶ 108; Usen. Dec., Ex. Z. Further, Plaintiff testified at deposition that she did not attempt to alert Khahaifa of the change in coverage.  Defs' SUF ¶ 108.  Defendants deny knowledge sufficient to admit or deny what came to "Yehoshua's attention," however, the record evidence is undisputed that Khahaifa did not reprimand anyone for helping Plaintiff.  *See* Defs' SUF ¶ 108; Usen. Dec., Ex. Z.


Dated: New York, New York       Respectfully submitted,
   March 4, 2025

               SEYFARTH SHAW LLP

               By: /s/ *Gena Usenheimer*
                 Gena Usenheimer
                Daniel I. Small
                gusenheimer@seyfarth.com
                dsmall@seyfarth.com
                620 Eighth Avenue
                New York, New York  10018
                Telephone:  (212) 218-5500
                Facsimile:  (212) 218-5526

                *Attorneys for Defendants*