UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AMELIA YEHOSHUA,

Plaintiff,

-against-

MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY,
NEW YORK CITY TRANSIT
AUTHORITY, and WESLII KHAHAIFA

Defendant.

**MEMORANDUM AND ORDER**
Case No. 21-CV-4055 (FB) (RML)

*Appearances:*

*For the Plaintiff:*
ANDREW T. MILTENBERG
GABRIELLE VINCI
HELEN J. SETON
COREY SCOTT STARK
Nesenoff & Miltenberg, LLP
363 Seventh Avenue
Ste 5th Floor
New York, NY 10001

*For the Defendants*
ROBERT KENNETH DRINAN
NYC Transit Authority
130 Livingston Street, 12th floor
Brooklyn, NY 11201

TRACEE ELAINE DAVIS
DANIEL IAN SMALL
GENA BROOKE USENHEIMER
HOWARD M WEXLER
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018

**BLOCK, Senior District Judge:**

Plaintiff Amelia Yehoshua brings suit against her former employee, the New York City Transit Authority ("NYCTA"), and her former supervisor, Weslii Khahaifa, for alleged violations of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Yehoshua claims she was subjected to a hostile work

1

environment and retaliation. Pending before the Court is Defendants' motion for summary judgement.

For the following reasons, the motion is **GRANTED**.

# I

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation. The facts are undisputed unless otherwise noted. The Court construes all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in that party's favor. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).

Plaintiff is a Jewish woman who observes the Sabbath. 56.1 Response ¶ 6.[1] In April 2013, Plaintiff was hired as a trial attorney by the NYCTA Law Department, Division of Torts ("Torts"). *Id.* at ¶ 1. Torts was divided into units organized by borough, and Plaintiff was assigned to work in the Kings County Unit ("the Unit"). *Id.* at ¶¶ 3, 5. At the beginning of 2015, Defendant Khahaifa was promoted to Borough Chief of the Unit and became Plaintiff's immediate supervisor. *Id.* at ¶ 8.

### Timekeeping Incident

On Friday, January 29, 2016, Yehoshua was 45 minutes late to work because of a train delay. *Id.* at ¶ 15. She provided Khahaifa with an incident report showing that the delay was beyond her control and requested that her lateness be excused. *Id.* at ¶¶ 17, 18. Khahaifa had never received such a request before, so she conferred with her superiors, as well as the

---

[1] The Court will cite to Plaintiff's Response to Defendants' Rule 56.1 Statement of Material Facts ("SOF"), *see* ECF No. 62-50, and will respond to Plaintiff's disputes as to those facts when necessary.

department's timekeeping staff. *Id.* at ¶¶ 19–21. Everyone she asked said that she was not allowed to excuse Yeshoshu's late arrival *Id.* Yehoshua's lateness was subsequently excused by Larry Heisler, head of the Torts department. *Id.* at ¶ 24. A year and a half after this incident, Khahaifa recommended that Yehoshua be promoted and receive a raise. *Id.* at ¶ 103.

### Trial Assistant Change

Yehoshua was assigned Adrian Thompson as a trial assistant. *Id.* at ¶ 25. Khahaifa believed that Plaintiff was relying too heavily on Thompson and was not sufficiently involved in her cases. *Id*. at ¶ 26. For this reason, and in the interest of furthering Plaintiff's professional development, Khahaifa changed Yehoshua's assigned trial assistant.[2] *Id.* at ¶ 28. Yehoshua complained about the change to Heisler and Gail Goode (Head of Trials in Torts), and Thompson was restored as her trial assistant.[3] *Id*. at ¶¶ 29, 30. The change lasted no more than a few weeks. *Id*. at ¶ 31.

### Case Distribution and Assignment Schedule.

Defendants assert that Yehoshua was assigned the same, or fewer, number of cases as her peers. *Id.* at 33. Yehoshua offers no evidence to the contrary. Defendants' records show that Plaintiff was assigned fourteen cases in 2016, nine in 2017, six in 2018, and eight in 2019. *Id.* By comparison, another of the Unit's attorneys, John Jarman, was assigned five cases in 2016, nine in 2017, nine in 2018, and eleven in 2019. *Id.* Yehoshua's personal records indicate that, of cases that reached settlement or trial, she litigated two cases in 2016, four in 2017, four in 2018, and

---

[2] Plaintiff disputes Khahaifa's motivation for the change but fails to cite any evidence in the record to support her version of events. *See* SOF ¶ 28 Response. Whether or not Yehoshua was a successful trial attorney is irrelevant to her manager's belief that she was relying too much on her trial assistant.
[3] Plaintiff's dispute as to ¶ 29 is irrelevant. *See* SOF ¶ 29 Response.

seven in 2019. Pl.'s Decl. Opp. Ex A, ECF No. 62-61. Larry Heisler reported that he had seen a breakdown of how Khahaifa assigned trials and "it made no impression on [him]," suggesting that there was nothing out-of-the-ordinary about the Unit's case assignments. Heisler Dep. 53:14–19.

The parties dispute whether Khahaifa's timing when assigning cases was discriminatory. In her deposition, Plaintiff claimed that Khahaifa would assign cases late on Fridays to intentionally burden her Sabbath observation. Pl.'s Dep. 217:2–16. As evidence, she provided a single email sent on Friday June 12th at 1:24 P.M. *Id.* at 218:3–6. Plaintiff also cites a single instance of Khahaifa assigning a deposition on Friday which had to be completed on Monday. *Id.* at 221:7–24. Khahaifa asserts that she had no schedule for assigning cases and that cases were assigned based on the Unit's needs, including on Friday afternoons. SOF ¶¶ 34–35. The parties do not dispute that Khahaifa never required Yehoshua to reply to emails or complete any work during the Sabbath. *Id.* at ¶ 37.

### Judges' Complaints Against Yehoshua

Beginning in 2019, Khahaifa began to hear complaints from judges responsible for overseeing NYCTA trials involving Yehoshua. *Id.* at ¶¶ 47–59. Judge Kathryn Freed presided over a trial in 2017 where Plaintiff was "repeatedly dishonest, unprofessional, late to Court and disrespectful to [the] Court." Freed Decl. at ¶ 8. Judge Lyle Frank presided over a 2019 trial with Yehoshua and described her conduct as "overly adversarial, disrespectful and disruptive." Frank Decl. at ¶¶ 3, 6. After these experiences, Judge Frank was "reluctant" to have Yehoshua back in his courtroom while Judge Freed stopped accepting NYCTA cases entirely. SOF ¶¶ 51, 59. Relying on their peers' concerns, two other judges assigned to handle NYCTA cases—Adam

4

Silvera and Suzanne Adams—informed Khahaifa that they would not allow Yehoshua to appear in their courtrooms. Silvera Decl. at ¶ 2; Adams Decl. at ¶ 3; 56.1 SOF ¶¶ 65, 66.

### Yehoshua's Transfer to Kings County Unit.

By the beginning of 2019, Yehoshua began suggesting to Heisler that she would like to transfer out of the Unit. Heisler Dep. 41:21–25. She told Heisler that she was overworked in the Unit but never said she was being discriminated against on the basis of her being Jewish or because of her Sabbath observance. *Id*. at 39:9–42:23. Khahaifa had no prior indication that Yehoshua was so unhappy in the Unit that she wanted to transfer.[4] SOF ¶ 64; Khahaifa Dep. 98:2–17. Heisler approved the transfer at the beginning of 2020. SOF ¶ 62. Plaintiff's transfer coincided with Khahaifa's bringing the Judges' complaints to Heisler and Goode's attention. *Id*. at ¶¶ 60, 61. Plaintiff's new supervisor was Lisa Hodes-Urbont, the Borough Chief for NYCTA's Brooklyn Trial Unit. *Id*. at ¶ 10. Hodes-Urbont reportedly found the idea of Khahaifa discriminating against Yehoshua "ridiculous." Hodes-Urbont Dep. 74:23.

### OIG Investigation for Unethical Conduct

In January 2020, the MTA's Office of the Inspector General ("OIG") completed an investigation of Yehoshua. SOF ¶ 78. The investigation found that Yehoshua had engaged in conduct in violation of the All-Agency Code of Ethics. *Id.* at ¶¶ 79, 83. According to the investigation, between May 2016 and November 2018, Yehoshua engaged one of NYCTA's contracted outside counsel to represent her in personal litigation without compensation. *See* Mot. for SJ Ex. P (OIG Investigation Report) ECF No. 62-34. David Farber, General Counsel of

---

[4] Yehoshua claims that Khahaifa knew she was unhappy in the Unit, pointing to a complaint she made to Khahaifa in or around 2019. This complaint was contemporaneous with the facts described here and therefore is not evidence to the contrary.

5

NYCTA, determined that Yehoshua's employment should be terminated. SOF ¶ 86. Although by this point Yehoshua had been transferred to Kings County, Farber instructed Khahaifa to sign the disciplinary action notice ("DAN") because she had been Yehoshua's supervisor at the time of the conduct which formed the basis of the OIG's report.[5] *Id*. at ¶ 88. Although Khahaifa played no role in Farber's disciplinary decision, she delivered the DAN to Yehoshua on June 12, 2020. *Id.* at ¶¶ 89, 90. After further internal deliberations, Farber reduced Yehoshua's punishment to a 20-day unpaid suspension in February 2021. *Id.* at ¶ 91.

### Yehoshua's Termination

In December 2020, Yehoshua filed a complaint with the NYS Division of Human Rights raising claims similar to those found in this action. *Id.* at ¶ 92. During the NYCTA's investigation of this complaint, David Farber became aware of the Judges' complaints regarding Yehoshua's conduct in court. *Id*. at ¶ 93. Khahaifa wrote Farber a memo explaining the situation with the Judges on February 27, 2021, and Farber decided to issue a DAN recommending Yehoshua's termination on March 29, 2021. *Id.* at ¶¶ 95, 98. Following an internal appeal, Farber sustained Plaintiff's dismissal. *Id.* at ¶ 102.

## II

A court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (A

---

[5] Plaintiff disputes whether Khahaifa was her manager at the time covered by the DAN, but her dispute seems to stem from a misunderstanding of the timeline. The conduct covered by the DAN occurred between 2014 and 2019. OIP Investigation Report, 3. As she didn't move to the King's County Unit until 2020, Plaintiff's manager during the relevant period was Khahaifa.

dispute as to a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). The movant bears the burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

Summary judgement is appropriate in discrimination cases. *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation."); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) ("[T]rial courts should not treat discrimination differently from other ultimate questions of fact.").[6]

Claims for religious discrimination and retaliation under Title VII and the NYSHRL are analyzed under the familiar *McDonnell Douglass* burden-shifting framework.[7] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must make out a *prima facie* case; if the plaintiff does so, defendant then has the burden of articulating a legitimate non-discriminatory and non-retaliatory reason for the complained of action; if the defendant meets its burden, plaintiff must adduce evidence "sufficient to raise a fact

---

[6] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.
[7] Discrimination and retaliation claims under the NYSHRL are analyzed identically and have the same outcome as their federal counterparts. *See Hyek v. Field Support Servs.,* Inc., 461 F. App'x 59, 60 (2d Cir. 2012) ("Claims brought under the NYSHRL are analyzed identically and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under Title VII."); *Kemp v. Metro–North R.R.,* 316 F. App'x 25, 26 (2d Cir. 2009) ("We analyze claims under the NYSHRL using the same standards that apply to federal civil rights statutes such as Title VII . . . and the ADA."). Thus, the Court will conduct a single analysis for Plaintiff's NYSHRL claims and their federal counterparts.

issue as to whether [the employer]'s reason was merely a pretext" for discrimination or retaliation. *Id.*

The NYCHRL imposes a stricter standard on employers and requires that "unlawful discrimination must play no role in an employment decision." *Ellison v. Chartis Claims, Inc.*, 115 N.Y.S.3d 53, 58 (2d Dep't 2019).Therefore, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (cleaned up). In other words, summary judgement for NYCHRL claims is only appropriate if "the record establishes as a matter of law" that discrimination or retaliation "play[ed] *no* role" in the defendant's actions. *Mihalik*, 715 F.3d at 110 n.8.

### Hostile Work Environment Claims

"A hostile work environment claim requires a showing . . . that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and . . . that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *see also Quinn v. Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (same standard governs state law claims). That is, a plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano*, 294 F.3d at 373. "[A] hostile work environment claim analyses a workplace environment as a whole to discover whether it is abusive." *Raniola v. Bratton*, 243 F.3d 610, 617 (2d. Cir. 2001).

Plaintiff contends that Defendants "created, promoted, and maintained a pervasively hostile work environment and atmosphere." Compl. ¶ 28, ECF No. 1. She points to the following events as evidence of such an atmosphere: (1) that Khahaifa refused to excuse her late arrival, (2) that Khahaifa changed her trial assistant for a few weeks, (3) that Khahaifa assigned cases unevenly and timed her assignments to interfere with Yehoshua's Sabbath observance, and (4) that she was disciplined for her workplace misconduct in a discriminatory manner.

Because there is no evidence linking these facially neutral actions to a religiously hostile working environment Plaintiff is unable to show "intimidation, ridicule, and insult" severe enough to have altered the conditions of her employment. *Alfano*, 294 F.3d at 373. Far from being pervasive, the incidents described were episodic at best and occurred for nondiscriminatory reasons rooted in departmental policy. Because the record does not indicate that any of these actions were discriminatory or served to alter the conditions of Plaintiff's employment, her hostile workplace claims fail.

First, as to the timekeeping dispute, Yehoshua argues that her tardiness should have been excused because she needed to leave work early for the Sabbath. However, while antidiscrimination laws require reasonable accommodations for religious practices, they do not require employers to overlook workplace misconduct in order to accommodate those same practices. Furthermore, Khahaifa had never received a similar request, so Plaintiff cannot identify a similarly situated employee treated more favorably. SOF ¶ 19; *Alston v. New York City Transit Auth.*, No. 97-108, 1999 WL 540442, at *6 (S.D.N.Y. July 26, 1999), aff'd, 208 F.3d 202 (2d Cir. 2000) (inability to show employees engaged in similar conduct treated more favorably counsels in favor of summary judgment). Finally, while this incident took place in 2016, Khahaifa recommended Plaintiff receive a promotion and a raise the next year. This detail is fatal

9

to Plaintiff's suggestion that the timekeeping dispute set off a years-long discriminatory campaign by Khahaifa. *See e.g., Williams v. N.Y. City Dep't of Educ.,* No. 19-01353, 2021 WL 1178118, at *10 (S.D.N.Y. Mar. 29, 2021) (intervening promotion breaks causal chain of discrimination and retaliation).

Second, Yehoshua claims that her trial assistant was reassigned to punish her for the timekeeping dispute but provides no evidence to support this allegation. Khahaifa claims she changed trial assistant assignments because Yehoshua was relying too heavily on her assistant, and this is supported by the assistant's declaration. 56.1 Resp. at ¶¶ 26–28; Thompson Decl. at ¶ 14. Plaintiff has offered no evidence to undermine the validity of this legitimate and non-discriminatory explanation. *See Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 335 (S.D.N.Y. 2020) (temporary reassignment legitimate and non-discriminatory when intended for professional improvement of plaintiff).

Third, Yehoshua claims that she was assigned more cases than her non-Jewish co-workers and that Khahaifa intentionally assigned these cases late on Fridays to interfere with her observation of the Sabbath. The record, however, indicates that all attorneys in the Unit were assigned roughly the same number of cases, and Yehoshua has provided no evidence to the contrary. SOF ¶ 33. As for the assigning of cases on Friday evenings, the only evidence Yehoshua provided at her deposition was a single email assigning a case on Friday, June 12, 2020, at 1:24 P.M. Yehoshua Dep. 218:6. The Jewish Sabbath begins at sunset on Friday evenings, and on this particular evening the sun set in New York City at 8:27 PM.[8] Assigning

---

[8] June 2020 Calendar, Sunrisesunset.com, https://perma.cc/NB92-3F93.

work to an employee seven hours before the beginning of a religious observance is entirely reasonable.[9] As Plaintiff does not dispute that she was not expected to work during the Sabbath, and has provided the Court with no other evidence of discriminatory assignment practices, Khahaifa's case assignment practices do not support her claims. *See Yoselovsky v. Associated Press,* 917 F. Supp. 2d 262, 277 (S.D.N.Y. 2013) (plaintiff never had to "work on a Saturday (or any Jewish holiday)" weighing against discrimination).

Finally, Yehoshua argues that she was subjected to a discriminatory disciplinary process, specifically that Khahaifa played an ambiguous role in orchestrating the first DAN and later manufactured the Judges' complaints that led to the second DAN. Compl. ¶¶ 41, 42. As is described in greater detail in the section that follows, Plaintiff provides no evidence to support these allegations. To the contrary, the record—including declarations, depositions, NYCTA's internal documents, and the OIG's reports—directly contradicts her claims. These allegations therefore fail to support Plaintiff's hostile work environment claim. *See Connaughton v. Mount Vernon City Sch. Dist.*, No. 21 CIV. 692 (NSR), 2024 WL 1702148, at *6 (S.D.N.Y. Apr. 18, 2024) (summary judgment appropriate when "undisputed . . . evidence directly contradicts" allegations).

No reasonable juror could find that the Plaintiff was subjected to conduct that was sufficiently severe or pervasive, either in isolation or when viewed as a whole, to create a hostile work environment. As none of the events described in the Complaint raise even the specter of a

---

[9] Friday afternoons are also, notably, the end of the work week for *all* employees. If Khahaifa was assigning cases at this time it was presumably an annoyance for all employees, regardless of whether they were leaving work to observe the Sabbath or to go enjoy their weekend. Plaintiff provides no evidence suggesting that this practice was targeted specifically at her or particularly intended to interfere with her religious practice.

discriminatory motive, the Court need not conduct further analysis of Plaintiff's claims under NYCHRL. *Mihalik*, 715 F.3d at 110 n.8.

### Retaliation Claims

To establish a prima facie case of retaliation, an employee must show "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d. Cir. 1998). If the plaintiff establishes a prima facie case, "the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action." *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 552–53 (2d Cir. 2010). "If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a substantial reason for the adverse employment action." *Id.* at 553.

Plaintiff engaged in protected activity, first, by submitting complaints to management, and subsequently, by filing a discrimination complaint with the NYS Division of Human Rights. *Sumner v. United States Postal Service,* 899 F.2d 203, 209 (2d Cir. 1990) (Protected activity includes "the filing of formal charges of discrimination," and "informal protests of discriminatory employment practices, including making complaints to management."). She also experienced adverse employment decisions, first in her suspension, and later with her termination. However, despite satisfying the first two steps, she fails to provide any evidence of a causal connection between the two sequences of events and therefore fails to establish a prima facie case of retaliation.

In evaluating whether a causal connection exists between the adverse action and the protected activity, courts have considered their temporal proximity. *See, e.g., Cifra v. G.E. Co.,* 252 F.3d 205, 216 (2d. Cir. 2001); *Davis v. State University of New York,* 802 F.2d 638, 642 (2d Cir. 1986). While the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554–555, n. 5 (2d Cir. 2001) (collecting cases), district courts in this Circuit have consistently held that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line. *Ashok v. Barnhart,* 289 F.Supp.2d 305, 315 (E.D.N.Y 2003).

Here the relevant protected activity (Plaintiff's filing a complaint with the NYS Division of Human Rights) took place in December 2020, almost four months *after* the issuance of the first DAN, and the second DAN was not issued until the end of March 2021. This alone cautions against finding any causal relationship between the protected activity and the disciplinary proceedings. Furthermore, looking to the record, the only causal connection was that Farber learned about the Judges' complaints as a result of the NYCTA's internal investigation of Yehoshua's NYS Division of Human Rights complaint. SOF ¶ 93. NYCTA's investigation of Plaintiff's claims leading to the discovery of her own misconduct is not the kind of causal relationship that supports a finding of retaliation.

To the contrary, the evidence strongly supports Defendants' legitimate, nonretaliatory explanations for the disciplinary actions. First, Plaintiff was suspended after the OIG found that she had violated the All-Agency Code of Ethics by engaging a NYCTA vendor to represent her in personal litigation without compensation. SOF ¶¶ 79–91. While Plaintiff disputes the OIG

13

report's conclusion, she does not argue for any causal relationship between the investigation and her issues with Khahaifa. *Id.* at ¶ 83. In fact, Plaintiff undermines her own argument by admitting that the OIG's investigation was triggered by a complaint filed by the adversary in her personal litigation. *Id.* at ¶ 79.1. Later, Plaintiff was terminated when Farber learned that multiple judges responsible for NYCTA trials had so objected to her "lack of candor, dishonesty, and unprofessional conduct" that they refused to hear her cases. *Id.* at ¶¶ 96–98. Once again, Plaintiff provides no evidence that Farber's decision to terminate her was motivated by anything other than the Defendants' official reason.

The record shows, therefore, two different investigations found Plaintiff to have violated professional duties and workplace rules. S*ee Jenkins v. Holder*, No. 11-0268, 2014 U.S. Dist. LEXIS 42520, at *49 (E.D.N.Y. Mar. 28, 2014) (supporting summary judgement where "extensive disciplinary proceedings based on sustained findings of misconduct by two independent investigative bodies" indicated termination was for-cause and legitimate). Plaintiff offers no meaningful argument for how, or why, these disciplinary proceedings were pretextual— or related to her Jewish identity—and her retaliation claims therefore fail.

Under the NYCHRL, retaliation claims, like discrimination claims, are viewed under a broader interpretation than Title VII and NYSHRL and must be analyzed independently. *See Mihalik,* 715 F.3d at 112 (explaining the standard for evaluating retaliation claims under the NYCHRL). However, a plaintiff must still establish that there was a causal connection between her protected activity and the employer's subsequent action and must show that a defendant's legitimate reason for her termination was pretextual or "motivated at least in part by an impermissible motive." *Brightman v. Prison Health Serv., Inc.,* 970 N.Y.S.2d 789, 792, 108 A.D.3d 739, 741 (App. Div. 2013). As stated previously, Plaintiff provides neither evidence of a

14

causal connection between her protected activity and her termination nor evidence that any of the Defendants' actions were motivated by discriminatory animus or intention. Therefore, Plaintiff's retaliation claim fails even under the broader NYCHRL standard.

## CONCLUSION

Plaintiff has not presented sufficient evidence to show that there are genuine issues of material fact. Defendants' motion for Summary Judgement is GRANTED. Accordingly, the Clerk of the Court is requested to close this case.

**SO ORDERED.**

                                                        /S/ Frederic Block

                                                     FREDERIC BLOCK
                                                    Senior United States District Judge

Brooklyn, New York
November 21, 2025